James W. Quinn<br>
**JW Quinn ADR LLC**<br>
767 Fifth Avenue Suite RP4<br>
New York, NY 10153<br>
Tel: (646) 465-3607<br>
quinn@jwquinnlaw.com

BY ECF

March 21, 2025

Hon. Margaret M. Garnett
United States District Judge
Southern District of New York
40 Foley Square, Room 2102
New York, NY 10007

Re:   *Pospisil et al. v. ATP Tour, Inc. et al.,* No. 1:25-cv-02207-MMG (S.D.N.Y.) – Motion For Order Under Fed. R. Civ. P. 23(d)

Dear Judge Garnett,

We represent the Plaintiffs and the putative class members in this antitrust class action (the "Action"). We write concerning improper communications made by, at least, Defendant ATP Tour, Inc. ("ATP") to putative class members after the filing of this suit. In the class action context, the law protects putative class members against efforts by Defendants to intimidate, coerce, or threaten them for participating in the suit. *See Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1200-01 (11th Cir. 1985). Regrettably, that is precisely what is happening now.

Immediately after this lawsuit was filed, ATP initiated a series of meetings and conversations with putative class members at their place of work, the ongoing Miami Open tennis tournament. In some of these discussions, ATP officials have threatened players with adverse consequences for participating in this Action and asked players to sign an already-prepared document disavowing the lawsuit. We are actively investigating this issue, but our findings to date demonstrate impermissible conduct by ATP that requires prophylactic intervention from this Court. Through this letter motion, Plaintiffs seek a limited, narrowly-tailored order pursuant to Fed. R. Civ. P. 23(d) restraining the Defendants from engaging in improper, coercive, or threatening communications with Plaintiffs and putative class members. Plaintiffs also request that this Court expedite its consideration of this motion to put an immediate end to ATP's ongoing actions. This is Plaintiffs' first request for such relief. Because Defendants have not yet appeared, Plaintiffs will promptly serve this letter motion via e-mail and FedEx Overnight Delivery in conformance with Fed. R. Civ. P. 5.

Plaintiffs brought this lawsuit on behalf of all current, former, and future professional tennis players who compete in ATP's events. The case challenges ATP's anti-competitive practices under the federal antitrust laws: (i) the price fixing of the compensation that professional tennis players may earn; (ii) the systems implemented to limit player mobility and free competition for players' services; (iii) the restraints on competition between tournaments; and (iv) the abusive investigations and discipline imposed on players.

ATP has responded to the litigation by engaging in hamfisted tactics with individual players. For example, at the ongoing Miami Open tournament, Luben Pampoulov, a member of ATP's Board of Directors, approached a player in an area designated for players only and demanded that this player sign a pre-written letter denouncing this lawsuit. *See* Declaration of Wajid Mir Syed ("Syed Decl.") ¶ 12. Mr. Pampoulov had a pen and paper in hand. *Id.* Senior ATP officials also have entered player-only areas at the Miami Open to demand players condemn this Action and warn that ATP plans to respond by reducing their wages and their pensions. *Id.* ¶¶ 9-10. This conduct constitutes flagrant interference with this Court's jurisdiction and Plaintiffs and putative class members' rights to participate in litigation and to vindicate their rights.

Plaintiffs respectfully request that the Court enter an order under Fed. R. Civ. P. 23(d) restricting Defendants from engaging in further communications with putative class members that interfere with their rights and the integrity of this Action.

## I.  Legal Standard

"[E]ven prior to certification, a district court may, pursuant to Rule 23(d), regulate communications by parties and their counsel with putative class members." *Hinds County v. Wachovia Bank N.A.*, 790 F. Supp. 2d 125, 134 (S.D.N.Y. 2011); *see also* Fed. R. Civ. P. 23(d)(1); *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101-02 (1981); *Dodona I, LLC v. Goldman, Sachs & Co.*, 300 F.R.D. 182, 184 (S.D.N.Y. 2014). "[A] district court's authority under Rule 23(d) is not limited to communications that actually mislead or otherwise threaten to create confusion, but extends to communications that interfere with the proper administration of a class action or those that abuse the rights of members of the class." *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 252-53 (S.D.N.Y. 2005).

Accordingly, courts routinely issue orders restricting communications made from defendants to putative class members that may chill participation in a lawsuit, create confusion, or otherwise impair the fairness of class proceedings. *See, e.g., Romano v. SLS Residential Inc.*, 253 F.R.D. 292, 297-99 (S.D.N.Y. 2008); *Shulman v. Becker & Poliakoff, LLP*, 2018 WL 4961003, at *5-7 (S.D.N.Y. 2018). Courts have also held that such orders are especially warranted when a defendant has a special relationship with putative class members, such as an employer, because the defendant's influence may exert undue pressure on plaintiffs. *See, e.g., Urtubia v. B.A. Victory Corp.*, 857 F. Supp. 2d 476, 485 (S.D.N.Y. 2012) ("Defendants' workplace relationship with current employees, and their knowledge of sensitive information about current and former employees, put them in a position to exercise strong coercion in connection with potential class members' decisions regarding participation in this litigation"); *Ralph Oldsmobile v. Gen. Motors Corp.*, 2001 WL 1035132 at *4 (S.D.N.Y. 2001) (defendant must issue corrective statement where "potential class members depend[ed] upon the defendant for information, supplies, and credit"); *Kleiner*, 751 F.2d at 1203 (upholding restrictions on communications with potential class members regarding class action because "unsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal[, and t]he damage from misstatements could well be irreparable").

## II.  ATP's Communications Are Coercive and Undermine the Integrity of the Litigation

ATP is uniquely positioned to exert pressure over putative class members, all of whom are subject to ATP's governance, rules, and potential disciplinary actions. Put simply, no player can play professional tennis without ATP's approval, and ATP has multiple ways to punish players and degrade their professional experience. These include the selection of practice times and practice locations, the withholding of wildcard invitations to upcoming tennis tournaments and the manipulation of when and how those invitations are extended, the selection of match start and location times, and the seizure of cell phones as part of "investigations" into betting or doping allegations, among many other examples. The coercive and retaliatory message is loud and clear. Given ATP's total control over tournament participation, ranking point systems, and revenue distribution, players reasonably perceive communications from ATP regarding this Action as attempts to dissuade players from participation, or as attempts to retaliate against those who join the Action. ATP's coercive power over the players is undeniable.

Hon. Margaret M. Garnett  **JW QUINN ADR LLC**
March 21, 2025
Page 3

ATP officials have leveraged that power to directly or indirectly contact putative class members regarding this Action in a manner that is misleading, deceptive, and coercive. Specifically, ATP has:

   i. Threatened putative class members that, if this litigation persists, ATP plans to reduce their compensation, including prize money and pensions, to offset ATP's attorneys' fees, Syed Decl. ¶ 10;
  ii. Confronted at least one player in a highly sensitive location within his place of work with a pen and paper seeking the player's signature on a letter opposing this lawsuit, and refused that player's request to show the letter to his attorneys, *id.* ¶ 12; and
 iii. Attempted to pressure players to sign statements stating they had no prior knowledge of this Action, when indeed they did have prior knowledge, *id.* ¶ 11.

Such communications create a clear risk of chilling participation and undermining putative class members' ability to make an informed decision about vindicating their legal rights. Courts often intervene in similar circumstances to prevent defendants from leveraging their control over the workplace to obstruct fair participation in litigation.

### III. Requested Relief

To protect the rights of putative class members and to ensure the fair administration of justice, Plaintiffs respectfully request that the Court issue an order:

1. Prohibiting Defendants from communicating with putative class members regarding their participation or involvement in this Action, other than through Plaintiffs' counsel, absent Court permission;
2. Requiring Defendants to disclose all prior communications with putative class members regarding this Action, including the contents and recipients of such communications;
3. Requiring Defendants to preserve all communications (emails, texts, chats, draft statements, signed statements, etc.) relating to their efforts to approach players and ask them to sign paperwork condemning this lawsuit; and
4. Authorize the Plaintiffs to issue a corrective statement to all putative class members explaining their legal rights to participate in this lawsuit free from retaliation by the Defendants.

These proposed remedies mirror those imposed by other courts and are narrowly tailored to prevent abuse, while still allowing ATP to communicate with players in the ordinary course of its business administering professional tennis. *See Kleiner*, 751 F.2d at 1205-06; *Urtubia*, 857 F. Supp. 2d at 485.

Given ATP's significant influence over the players, this intervention is necessary to ensure players can make informed decisions about their participation in this case, and fully and freely pursue their legal rights without undue influence by the same parties who control their paychecks and professional endeavors.

We appreciate the Court's attention and are available for a hearing at the Court's convenience.

Respectfully submitted,

*/s/ James W. Quinn*

James W. Quinn
*Counsel for Plaintiffs*