

Proskauer Rose LLP   Eleven Times Square   New York, NY 10036-8299

March 23, 2025

Bradley I. Ruskin
Member of the Firm
d +1.212.969.3465
f 212.969.2900
bruskin@proskauer.com
www.proskauer.com

**By ECF**

Hon. Margaret M. Garnett
United States District Judge
Southern District of New York
40 Foley Square, Room 2102
New York, New York 10007

Re:   *Pospisil, et al. v. ATP Tour, Inc., et al.*, No. 1:25-cv-02207-MMG (S.D.N.Y.);
      ATP Tour Inc.'s opposition to March 21, 2025 letter motion

Dear Judge Garnett:

On behalf of defendant ATP Tour, Inc. ("ATP"), we write in opposition to Plaintiffs' March 21, 2025 motion seeking to impermissibly restrain lawful communications by ATP—including in particular by its player representatives—with its player members (ECF No. 20) (the "Motion"). We submit this letter without prejudice to and preserving any objections and defenses ATP may assert by answer, motion to dismiss, or the like, in response to the Complaint (ECF No. 1), including objections to jurisdiction, forum and venue. Contrary to the Motion, ATP has not made any false or misleading statements, violated any players' rights, or interfered with the administration of the case. Plaintiffs prematurely filed a poorly investigated complaint, based largely on unreliable hearsay, and no relief beyond the status quo is needed.

**Background**

ATP, which operates a men's professional tennis tour, is "a non-profit corporation consisting of a membership of men's professional tennis players ["Player Members"] and organizers of men's professional tennis tournaments." *Deutscher Tennis Bund v. ATP Tour, Inc.*, 610 F.3d 820, 824 (3d Cir. 2010) (affirming verdict rejecting antitrust challenge to ATP's format). The Player Members elect from their own ranks a ten voting-member Player Advisory Council that, in turn, elects four of ATP's nine directors to represent the Player Members. These four directors vote (together with four directors elected by the tournament members) to appoint the ninth director, the chair of the Board. A crucial role of ATP's staff, the Board (particularly the four player representatives), and the Player Advisory Council, is to regularly be in contact with Player Members in order to receive player feedback and discuss measures taken or being considered by ATP.

On March 18, 2025, the Professional Tennis Players Association ("PTPA"), six ATP Player Members, and six other individuals (collectively, "Plaintiffs"), brought this putative class action alleging violations of the antitrust laws by ATP (and asserting additional claims against other tennis entities). PTPA, which claims to be an advocacy group for professional tennis players (ECF No. 1 ¶ 33), is not a union, has no function within ATP, and does not elect any member of the Player Advisory Council or any Board representatives.

Without any effort to contact ATP, Plaintiffs brought the Motion, purportedly supported with a declaration by PTPA's general counsel, Wajid Mir Syed, that claims to describe statements by "ATP's representatives or agents" that "players have reported" to Mr. Syed or of which they have "informed [him]." (Syed Decl. ¶¶ 10-11.) Mr. Syed was not present for any of the alleged communications, and in the one instance in which he

identifies (again, based on secondhand information) someone who was—Luben Pampoulov, a player representative on the ATP Board—Mr. Syed gets the facts wrong. Specifically, Mr. Syed conflates a position statement concerning the PTPA lawsuit with an unrelated player-advocacy letter. (Pampoulov Decl. ¶¶ 6-9.) Mr. Syed's secondhand account of this conversation is wrong in other respects, including false assertions that Mr. Pampoulov prevented a player from contacting counsel or taking a photograph of the position statement, and that Mr. Pampoulov said he would speak to the ATP chair about the player's signing the statement—all false. (*Id.* ¶ 9.)

As Mr. Pampoulov describes in his own declaration, Mr. Pampoulov provided a Player Member with the opportunity to sign the following position statement:

> We, the undersigned Player members of the ATP Tour, understand that the PTPA and certain players have brought a lawsuit against the ATP Tour and other tennis entities. We wish to make clear that we are not members of the PTPA, that the PTPA does not represent us, and that we are not supportive of this litigation against the ATP.

(*Id.* ¶ 7.) As Mr. Pampoulov further explains, PTPA is harming ATP's mission to support Player Members: "By holding itself out in this lawsuit and in public statements as an alternative or shadow representative of men's professional tennis players, the PTPA erodes Player Members' trust in, and the healthy functioning of, ATP Tour." (*Id.* ¶ 10.)

Since filing this suit, PTPA has embarked on an extensive press campaign, claiming, misleadingly, the action was brought "on behalf of the entire player population"[1] and to have the "overwhelming support" of the "probably 300 different players" PTPA "briefed."[2] Player Members are confused by the PTPA's suit and its role with ATP. The PTPA's co-founder—ATP Member Novak Djokovic—told reporters he disagreed with parts of the lawsuit and the harsh language in the complaint.[3] Another prominent player whose comments the PTPA cited in its Complaint (at ¶ 213) told reporters he does not support the suit and was surprised by it.[4]

## Argument

Any order limiting a defendant's communications with potential class plaintiffs "imposes 'serious restraints on expression' and implicates First Amendment values." *See, e.g.*, *Vilella v. Pup Culture LLC*, No. 23-CV-2291 (LJL), 2023 WL 6318168, at *2 (S.D.N.Y. Sept. 28, 2023) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 103 (1981)) (denying motion to limit contact with potential class members); *see also Cohen v. Ne. Radiology, P.C.*, 2021 WL 293123, at *11-12 (S.D.N.Y. Jan. 28, 2021) (First Amendment constrains putting limits on contacts with potential class members; denying motion to limit contact). Any such order "should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties," and courts must pay "attention to whether the restraint is justified by a likelihood of serious abuses." *Gulf Oil*, 452 U.S. at 101, 103-04. Such an order, cannot be justified by "the mere possibility of abuses." *Id.* at 104. Plaintiffs fail to make the required showing.

---

[1] *PTPA Press Release*, Mar. 18, 2025 *available at* https://www.ptpaplayers.com/legal-actions-filed/.
[2] *Inside the PTPA Lawsuit to Upend Tennis*, Mar. 21, 2025, *available at*: https://www.benrothenberg.com/p/ptpa-lawsuit-tennis-atp-wta-itf-itia-novak-djokovic-class-action-jannik-sinner-ahmad-nassar-professional-tennis-players-association-bill-ackman.
[3] *Djokovic explains his absence from PTPA lawsuit*, Mar. 21, 2025, *available at* https://www.msn.com/en-xl/news/other/djokovic-explains-his-absence-from-ptpa-lawsuit/ar-AA1BnXwl.
[4] *Carlos Alcaraz says he doesn't agree with the legal action launched by Novak Djokovic's players' association*, Mar. 21, 2025, *available at* https://www.cnn.com/2025/03/20/sport/carlos-alcaraz-ptpa-legal-action-spt-intl/index.html

**Proskauer**

*First*, "Plaintiff has not submitted evidence from which the Court can make the necessary findings." *Vilella*, 2023 WL 6318168, at *3; *see also Wu v. Pearson Educ. Inc.*, 2011 WL 2314778, at *6 (S.D.N.Y. June 7, 2011) ("[C]ounsel's unsworn allegations of misconduct cannot support an order restricting communications with potential class members."). Mr. Syed's declaration is admittedly a hearsay account of another person's supposed complaint. And the Motion's recitation of "potential disciplinary actions" and ATP's "multiple ways to punish" players are "mere possibilit[ies] of abuses," *Gulf Oil*, 452 U.S. at 104, which cannot be the basis for an order here. Plaintiffs cite no evidence—not even Mr. Syed's inadmissible hearsay—that any player, including any of the six Player Members who are named plaintiffs, has been threatened or punished for affiliating with the PTPA.

*Second*, the only admissible evidence of any communication with a Player Member demonstrates that communication was not coercive or misleading. Mr. Pampoulov provided the Player Member with the statement's content, and let the individual know that the document would be available for his signature at ATP Tour's office (where the document was being kept), if he was interested in doing so. Mr. Pampoulov did not threaten the Player Member or condition anything on the Player Member signing the document (and, in fact, the player did not sign).

*Third*, ATP needs to continue to communicate with its Player Members to reasonably and properly fulfill its mission. It accomplishes these crucial communications through player representatives on its Board, through its Player Advisory Council, and through members of its staff, including dedicated player services representatives. That includes gathering and disseminating truthful information about Player Members' reaction to the PTPA and its lawsuit, which the PTPA has baselessly suggested is widely backed by the Player Member body. And even if some "representatives or agents" (Syed Decl. ¶ 9) of ATP told a Player Member that legal fees could decrease available player funds (a statement that ATP has not confirmed was made by any representative), that is precisely the kind of information Player Members ought to know *because they are members of ATP*. It is not coercive or misleading to inform Player Members of the effect this suit might have on the organization of which they are members.[5]

For these reasons, the Motion should be denied.

Respectfully submitted,

*Bradley I. Ruskin*

Bradley I. Ruskin
*Counsel for Defendant ATP*

---

[5] The cases cited by Plaintiffs involve far different conduct than that here and do not counsel a different outcome. Most involved false or misleading statements. *See Romano v. SLS Residential Inc.*, 253 F.R.D. 292, 297 (S.D.N.Y. 2008) ("In bad faith, [defendants] provided class members with patently false and misleading information about what this Court has done [and] what the Court will do . . ."); *Shulman v. Becker & Poliakoff, LLP*, 2018 WL 4961003, at *4 (S.D.N.Y. 2018) (putative class members' own lawyer, who was the defendant, sent to client misleading, seemingly official class opt-out forms); *Ralph Oldsmobile, Inc. v. Gen. Motors Corp.*, 2001 WL 1035132, at *4 (S.D.N.Y. 2001) (defendant solicited and obtained releases from putative class members without disclosing existence of putative class action). The others involved outrageous conduct not remotely present here: a threat to have a class member "reported to immigration authorities and possibly deported," *Urtubia v. B.A. Victory Corp.*, 857 F. Supp. 2d 476, 484–85 (S.D.N.Y. 2012), and the violation of a court order governing solicitation procedures, *Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1200-02 (11th Cir. 1985).

3