James W. Quinn
**JW Quinn ADR LLC**
767 Fifth Avenue Suite RP4
New York, NY 10153
Tel: (646) 465-3607
quinn@jwquinnlaw.com

BY ECF

March 31, 2025

Hon. Margaret M. Garnett
United States District Judge
Southern District of New York
40 Foley Square, Room 2102
New York, NY 10007

Re:   *Pospisil et al. v. ATP Tour, Inc. et al.,* No. 1:25-cv-02207-MMG (S.D.N.Y.) – Motion for Order under Fed. R. Civ. P. 23(d)

Dear Judge Garnett,

Plaintiffs submit this reply in support of their Letter Motion seeking relief under Fed. R. Civ. P. 23(d). ECF No. 20 ("Mot."). As described in the Motion and the accompanying declaration of Wajid Mir Syed (ECF No. 20-1), ATP and its representatives have improperly engaged putative class members at their place of work and urged or pressured them to sign written statements disavowing this lawsuit. Mot. at 2-3. ATP's letter in opposition (ECF No. 24 ("Opp.")) and the declaration from one of its board members, Luben Pampoulov, (ECF No. 25) fully validate this concern. ATP does not dispute that it has approached putative class members to encourage them to sign a statement denouncing the lawsuit. Nor does ATP dispute that it has advised putative class members that legal fees incurred by ATP in defending this lawsuit would deplete funds available to players. ATP instead suggests that an order restricting communications with putative class members infringes on its First Amendment rights. But that is incorrect, as courts in this District routinely grant prophylactic orders in class actions to protect the Court's jurisdiction and the integrity of the litigation without offending First Amendment principles. The Court should grant Plaintiffs' request for an appropriately tailored order under Rule 23(d).

## I.   ATP Admits That It Pressured Putative Class Members To Denounce The Lawsuit

ATP does not dispute the following material facts, each of which demonstrates that ATP is improperly pressuring putative class members:

i.   Mr. Pampoulov—a member of ATP's Board of Directors—admits to following a putative class member back to his locker room and soliciting him to sign a "position statement" stating that he is not represented by Plaintiffs and is "not supportive of this litigation." ECF No. 25 ¶¶ 6-8.
ii.  Mr. Pampoulov did so because he views this lawsuit and the PTPA's mission as "detrimental" to ATP and to players' "trust in, and the healthy functioning of, ATP Tour." *Id.* ¶ 10.
iii. ATP's agents have advised putative class members that "legal fees could decrease available player funds." Opp. at 3.

ATP's and Mr. Pampoulov's admissions alone justify the relief Plaintiffs request. And, since Plaintiffs filed their Letter Motion on March 21, an additional class member has come forward to state that ATP is seeking to dissuade participation in this lawsuit by threatening players that it will "reduce the compensation and benefits of the players who are party to, or supportive of, this lawsuit." Decl. of Reilly Opelka ¶ 3 (attached). Given ATP's monopolistic position over the men's tour, and the overt and subtle ways ATP can threaten and punish players, agents, and coaches, it is not surprising that its efforts to sow player division and discord are causing real-world harm. An actual named plaintiff in a related suit in the United

| | |
|---|---|
| Hon. Margaret M. Garnett<br>March 31, 2025<br>Page 2 | JW QUINN ADR LLC |

Kingdom—who is a class member in this case and also formally represented by undersigned counsel—recently withdrew from the U.K. case only thirteen days after filing because of "external distractions."[1]

Plaintiffs have established a factual basis for a Rule 23(d) order that is more compelling than the records in other cases where courts in this District have granted relief. In *Urtubia v. B.A. Victory Corp.* 857 F. Supp. 2d 476, 480, 484-85 (S.D.N.Y. 2012), for example, Chief Judge Swain restrained a defendant from communicating with putative class members (who were the defendant's employees) based on a declaration submitted by the named plaintiff describing communications the named plaintiff had been told about by others. *See* Decl. of Jamie Urtubia ¶¶ 24-26, *Urtubia*, 857 F. Supp. 2d 476 (No. 11-cv-2901), ECF No. 25-2. Judge Swain explained that the named plaintiff's accounts were "corroborated" by letters from a putative class member that were "sufficiently suggestive of [the] actual interference" relayed in the named plaintiff's declaration. *Urtubia*, 857 F. Supp. 2d at 480, 485.[2] Here, like the employer in *Urtubia*, ATP is in "a position to exercise strong coercion in connection with potential class members' decisions regarding participation in th[e] litigation." *Urtubia*, 857 F. Supp. 2d at 485. Plaintiffs also will present additional evidence at the evidentiary hearing on April 11, 2025.

## II. ATP's Counterarguments Are Meritless

**Improper Communications**: ATP argues that its communications are permitted because its "mission" is to support putative class members and it has not issued any explicit ultimatums. Opp. at 3. Mr. Pampoulov similarly suggests that his communications with putative class members are justified because he occupies his board seat as a representative appointed by ATP's Player Advisory Council. ECF No. 25 ¶¶ 2-3, 10.

Those arguments are meritless. Courts in the Second Circuit and beyond have held that where, as here, a defendant communicates about a pending class action with putative class members financially dependent on the defendant, those communications are inherently coercive and warrant relief under Rule 23(d). In *Tedesco v. Mishkin*, for example, Judge Edelstein of this Court "restrain[ed] further communications by [a defendant named] Mishkin with class members." 629 F. Supp. 1474, 1484 (S.D.N.Y. 1986). Judge Edelstein explained that "*any communications* by Mishkin to the class members regarding . . . the propriety of this suit . . . are likely to be deceptive and coercive," because class members "ha[d] large sums of money invested in several . . . enterprises, all of which [were] controlled by Mishkin, and ha[d] loans outstanding . . . which were arranged by Mishkin." *Id.* (emphasis added). Similarly, in *Hampton Hardware, Inc. v. Cotter & Co.*, "the defendant and potential class members [had] an on-going business relationship" and the defendant mailed notices to putative class members "warn[ing] of the potential cost [of the lawsuit] to them" and "advis[ing them] not to participate in the lawsuit." 156 F.R.D. 630, 633 (N.D. Tex. 1994). The court explained that "any common sense reading of the [notices] reveal[ed] that they [were] an attempt to prevent member participation in the class action," and the court therefore "prohibited" "defendant and defendant's counsel . . . from contacting potential class members in any manner with regard to the instant litigation." *Id.* at 632, 635. And *Li v. Fleet N.Y. Metro. Reg'l Ctr.* held that the defendant's communications with putative class members "regarding 'why a class action would be against their interests'" as investors with the defendant were "clear attempts to affect the litigation and unilaterally coerce investors into expressing opposition to the class action." 2022 WL 1666963, at *10 (E.D.N.Y. May

---

[1] Neil McLeman, *British Tennis Star Withdraws from Novak Djokovic-Led PTPA Lawsuit and Gives Reason*, Express (Mar. 31, 2025), www.express.co.uk/sport/tennis/2034893/british-tennis-news-novak-djokovic.

[2] ATP suggests that *Wu v. Pearson Educ. Inc.* holds otherwise, but *Wu* denied relief because the record revealed no inappropriate communications with class members. 2011 WL 2314778, at *6-7 (S.D.N.Y. June 7, 2011).

| | |
|---|---|
| Hon. Margaret M. Garnett<br>March 31, 2025<br>Page 3 | JW QUINN ADR LLC |

25, 2022). Such communications were "improper" and "particularly problematic given [the defendant's] ongoing business relationship with the putative class members." *Id.*; *see also Gortat v. Capala Bros.*, 2009 WL 3347091, at *4-5 (E.D.N.Y. Oct. 16, 2009) (communications between defendant and putative class member employees, asking them to "express[] their lack of interest in joining the litigation" were "improper and potentially coercive"); 3 Newberg and Rubenstein on Class Actions § 9:7 (6th ed. 2022).

Similarly, ATP's communications to putative class members about this litigation are clear attempts to pressure them into expressing opposition to the lawsuit and to refrain from supporting it. Mr. Pampoulov admits that he asked a putative class member to sign a written statement stating that the player does not support this case. ATP's interests directly conflict with those of the putative class members, as the Complaint alleges in detail how ATP engages in anticompetitive conduct that injures all class members. Mr. Pampoulov is an ATP Director and *owes a fiduciary duty to ATP*, not to the individual putative class members whose interests he claims to represent, and who are adverse to ATP in this lawsuit.

**No First Amendment Violation:** The relief sought by Plaintiffs is narrowly tailored and does not run afoul of the First Amendment. Plaintiffs do not ask for an order requiring Defendants to cease all communication with putative class members. Instead, Plaintiffs ask the Court to restrict communications between Defendants and putative class members only "regarding their participation or involvement in this Action." Mot. at 3. Restricting communications *only* about this case "limits speech as little as possible, consistent with the rights of the parties under the circumstances." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 (1981). Consistent with well-established precedent, such an order is narrowly drawn to protect Defendants, putative class members, and the integrity of the judicial process, and it would not interfere with Defendants' ordinary course of business or First Amendment rights. *See Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1204-07 (11th Cir. 1985); *Urtubia*, 857 F. Supp. 2d at 485; *Tedesco*, 629 F. Supp. at 1484; *Hampton Hardware*, 156 F.R.D at 633-34.[3]

Plaintiffs have brought this action to improve their economic well-being and quality of life and to secure a meaningful voice in the governance of tennis. The pressure on the individuals who have put their names forward as class representatives, and on other players who are considering coming forward as named plaintiffs or as witnesses, is immense. ATP is making sure of that. The players are entitled to have this case decided on the merits, free from the coercion and pressure from ATP and its administrators, who have a vested interest in protecting the unlawful status quo.

Respectfully submitted,

*/s/ James W. Quinn*

James W. Quinn
*Counsel for Plaintiffs*

---

[3] ATP's cases are inapposite. *Vilella v. Pup Culture LLC* denied relief not because the plaintiffs' request was overbroad but because the record did not reveal improper conduct. 2023 WL 6318168, at *3 (S.D.N.Y. Sept. 28, 2023). And whereas the plaintiffs in *Cohen v. Ne. Radiology, P.C.*, sought to prohibit "all further communications with the putative class members," 2021 WL 293123, at *12 (S.D.N.Y. Jan. 28, 2021), Plaintiffs here seek to limit Defendants' communications *only about this case*. *Gulf Oil* too involved an order "requiring prior judicial approval of all communications," 452 U.S. at 103, a prohibition far broader than Plaintiffs propose.