## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VASEK POSPISIL, NICHOLAS KYRGIOS, ANASTASIA RODIONOVA, NICOLE MELICHAR-MARTINEZ, SAISAI ZHENG, SORANA CÎRSTEA, JOHN-PATRICK SMITH, NOAH RUBIN, ALDILA SUTJIADI, VARVARA GRACHEVA, TENNYS SANDGREN, and REILLY OPELKA, on behalf of themselves and all others similarly situated,<br><br>-and-<br>THE PROFESSIONAL TENNIS PLAYERS ASSOCIATION,<br><br>              Plaintiffs,<br><br>        *v.*<br><br>ATP TOUR, INC., WTA TOUR, INC., INTERNATIONAL TENNIS FEDERATION LTD., and INTERNATIONAL TENNIS INTEGRITY AGENCY LTD.,<br><br>              Defendants. | Case No. 1:25-cv-02207-MMG<br><br>**ORAL ARGUMENT REQUESTED** |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT WTA TOUR INC.'S MOTION TO COMPEL ARBITRATION, MOTION TO DISMISS, AND MOTION TO STAY PROCEEDINGS

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ...........................................................................................................1

II.   FACTUAL BACKGROUND ........................................................................................2

     A.   The Player Plaintiffs' Claims.............................................................................2
     B.   WTA Arbitration Terms .....................................................................................2

III.  LEGAL FRAMEWORK ...............................................................................................3

     A.   Arbitration of WTA Player Claims.....................................................................3
     B.   Dismissal of ATP Player Claims ........................................................................5

IV.   ARGUMENT .................................................................................................................6

     A.   The WTA Plaintiffs Are Bound By The WTA Rulebook, So Their Claims
          Belong In Arbitration ........................................................................................6
          1.    The WTA Players Agreed to Arbitrate Their Disputes With the
               WTA .......................................................................................................7
          2.    The Arbitrability of WTA Disputes Is Determined By The
               Arbitrator................................................................................................8
          3.    The WTA Plaintiffs' Claims Qualify As "Any Dispute" .........................10
     B.   WTA's Motion Is Timely ..................................................................................11
     C.   The Court Must Stay Proceedings .....................................................................12
     D.   The ATP Plaintiffs Cannot State A Claim Against The WTA .............................12

V.    CONCLUSION.............................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Abbott Lab'ys v. Adelphia Supply USA*,
  No. 15-cv-5826, 2017 WL 5992355 (E.D.N.Y. Aug. 10, 2017) ...............................................6

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*,
  190 F.3d 1051 (9th Cir. 1999) .......................................................................................15

*Am. Express Co. v. Italian Colors Rest.*,
  570 U.S. 228 (2013) ........................................................................................................7

*Amron v. Morgan Stanley Inv. Advisors Inc.*,
  464 F.3d 338 (2d Cir. 2006) ..........................................................................................14

*Arista Recs. LLC v. Lime Grp., LLC*,
  532 F. Supp. 2d 556 (S.D.N.Y 2007) ............................................................................14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................................5

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) ........................................................................................................4

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................5, 6, 14

*Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*,
  448 F.3d 573 (2d Cir. 2006) ..........................................................................................12

*Contec Corp. v. Remote Sol. Co.*,
  398 F.3d 205 (2d Cir.2005) ............................................................................................10

*Daly v. Citigroup Inc.*,
  939 F.3d 415 (2d Cir. 2019) ..........................................................................................11

*De Jesus v. Gregorys Coffee Mgmt., LLC*,
  No. 20-cv-6305, 2022 WL 3097883 (E.D.N.Y. Aug. 4, 2022) .....................................12

*Edmundson v. Klarna, Inc.*,
  85 F.4th 695 (2d Cir. 2023) .........................................................................................4, 7

*Epic Sys. Corp. v. Lewis*,
  584 U.S. 497 (2018) ........................................................................................................7

*Gatt Comm'ns, Inc. v. PMC Assocs., L.L.C.*,
   711 F.3d 68 (2d Cir. 2013)..................................................................................6, 16

*Genesco, Inc. v. T. Kakiuchi & Co.*,
   815 F.2d 840 (2d Cir. 1987), *abrogated on other grounds* by *Rodriguez-Depena v. Parts Auth., Inc.*, 877 F.3d 122 (2d Cir. 2017) ......................................5

*Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*,
   246 F.3d 219 (2d Cir. 2001)..................................................................................1

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   586 U.S. 63 (2019)..................................................................................................10

*Hines v. Overstock.com, Inc.*,
   380 F. App'x 22 (2d Cir. 2010) ..............................................................................4

*In re Aluminum Warehousing Antitrust Litig.*,
   No. 13-md-2481, 2014 WL 4277510 (S.D.N.Y. Aug. 29, 2014), *aff'd on other grounds*, 833 F.3d 151 (2d Cir. 2016) ..................................................................6

*In re Aluminum*,
   833 F.3d at 159-61 ..........................................................................................6, 15

*In re Am. Express Fin. Advisors Secs. Litig.*,
   672 F.3d 113 (2d Cir. 2011)...................................................................................4

*In re Currency Conversion Fee Antitrust Litig.*,
   265 F. Supp. 2d 385 (S.D.N.Y. 2003)...................................................................11

*In re Elevator Antitrust Litig.*,
   502 F.3d 47 (2d Cir. 2007) (per curiam).....................................................2, 5, 14

*In re Generali COVID-19 Travel Ins. Litig.*,
   577 F. Supp. 3d 284 (S.D.N.Y. 2021)...................................................................12

*Jessup v. Am. Kennel Club*,
   862 F. Supp. 1122 (S.D.N.Y. 1994)................................................................5, 14

*JLM Indus., Inc. v. Stolt-Nielsen SA*,
   387 F.3d 163 (2d Cir. 2004), *abrogated on other grounds* by *Loc. Union 97, Int'l Brotherhood of Elec. Workers, AFL-CIO v. Niagara Mohawk Power Corp.*, 67 F.4th 107 (2d Cir. 2023) ......................................................................5

*JSC Surgutneftegaz v. President & Fellows of Harvard Coll.*,
   167 F. App'x 266 (2d Cir. 2006) .............................................................................9

*Katz v. Cellco P'ship*,
   794 F.3d 341 (2d Cir. 2015)..................................................................................13

*Lawrence v. NYC Med. Prac., P.C.*,
   No. 18-cv-8649, 2023 WL 4706126 (S.D.N.Y. July 21, 2023)............................................12

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014)............................................................................................................15

*LifeTree Trading Pte. Ltd. v. Washakie Renewable Energy, LLC*,
   764 F. App'x 105 (2d Cir. 2019) .......................................................................................13

*Long Island Anesthesiologists PLLC v. United Healthcare Ins. Co. of. N.Y. Inc.*,
   No. 22-cv-4040, 2025 WL 1031093 (E.D.N.Y. Apr. 7, 2025), *appeal filed*,
   No. 25-1167 (2d Cir. May 6, 2025) ......................................................................................6

*Meyer v. Uber Techs., Inc.*,
   868 F.3d 66 (2d Cir. 2017)....................................................................................................7

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614 (1985)..............................................................................................................5

*Morgan v. Sundance, Inc.*,
   596 U.S. 411 (2022)............................................................................................................12

*PaineWebber Inc. v. Bybyk*,
   81 F.3d 1193 (2d Cir. 1996)...........................................................................................5, 10

*PPG Indus. v. Webster Auto Parts*,
   128 F.3d 103 (2d Cir. 1997)...............................................................................................12

*Prime Int'l Trading, Ltd. v. BP P.L.C.*,
   784 F. App'x 4 (2d Cir. 2019) ...........................................................................................15

*Shearson Lehman Hutton, Inc. v. Wagoner*,
   944 F.2d 114 (2d Cir. 1991)...............................................................................................12

*Starke v. SquareTrade, Inc.*,
   913 F.3d 279 (2d Cir. 2019)................................................................................................8

*Wortham v. Total Transp. Corp.*,
   No. 21-cv-85, 2024 WL 4449411 (E.D.N.Y. Oct. 2, 2024) ..............................................12

## STATUTES

9 U.S.C. § 3..............................................................................................................................13

Sherman Act
   § 1................................................................................................................................2, 6
   § 2................................................................................................................................2, 4

# RULES

AAA Rule R-7(a)...................................................................................................10

AAA Rule R-7(b)...................................................................................................10

## I.    INTRODUCTION

The WTA Player Plaintiffs ("WTA Plaintiffs") and the ATP Player Plaintiffs ("ATP Plaintiffs") (together, "the Player Plaintiffs") brought this putative class action against WTA Tour, Inc. ("WTA") for violation of the antitrust laws and unjust enrichment.  Compl. ¶¶ 115, 469, ECF No. 1 ("Compl.").[1]  None of the Player Plaintiffs' claims should have been brought in this court.

The WTA Plaintiffs' claims must be heard in arbitration, pursuant to a binding agreement between the parties.  A dispute must be sent to arbitration if there is a valid arbitration agreement, and the dispute falls within the scope of the agreement.  *Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001).  Before the WTA Plaintiffs brought this suit in federal court, they agreed to abide the "2025 WTA Rulebook" (the "WTA Rulebook"), which broadly states that "Any Dispute" shall be "submitted exclusively" to the American Arbitration Association ("AAA") for a single arbitrator proceeding.  Ex. 1 at 403.[2]  WTA Plaintiffs in the Complaint acknowledge that they are bound by the WTA Rulebook.  Compl. ¶¶ 80, 86.  By agreeing to arbitrate "Any Dispute" with the WTA, the WTA Plaintiffs agreed to arbitrate the claims in this case.  The Court should compel arbitration and stay this litigation until that arbitration concludes.

The ATP Plaintiffs' claims should be dismissed, as they have not stated an antitrust claim against the WTA.  Because men's professional tennis players do not participate in the women's professional tennis tour, the ATP Plaintiffs have not alleged any competitive harm to them caused

---

[1] The WTA Plaintiffs are Sorana Cîrstea, Varvara Gracheva, Nicole Melichar-Martinez, Anastasia Rodionova, Aldila Sutjiadi, and Saisai Zheng; the ATP Plaintiffs are Nicholas Kyrgios, Reilly Opelka, Vasek Pospisil, Noah Rubin, Tennys Sandgren, and John-Patrick Smith.   Compl. ¶¶ 20-31.

[2] All exhibits referenced herein are to the concurrently filed May 20, 2025 Declaration of Lawrence E. Buterman in Support of Defendant WTA Tour, Inc.'s Motion to Compel Arbitration.

by the WTA.  Nor can they, as no facts alleged support any conspiracy between the ATP Tour, Inc. (the "ATP") and the WTA.  Without alleging an unlawful agreement, the Complaint does not state a Section 1 claim under the Sherman Act.  *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50-51 (2d Cir. 2007) (per curiam).  The Court should dismiss the ATP Plaintiffs' case against the WTA.

## II.    FACTUAL BACKGROUND

### A.    The Player Plaintiffs' Claims

The Player Plaintiffs allege that the WTA has engaged in anticompetitive conduct in violation of the antitrust laws.  Specifically, the WTA is alleged to have entered unlawful agreements in violation of Section 1 of the Sherman Act and also violated Section 2 of the Sherman Act.

The Complaint defines two separate relevant markets: "the market for the services of women's professional tennis players" and "the market for the services of men's professional tennis players."  Compl. ¶ 279.  There are also two separate Plaintiff classes, with a separate class for players in WTA-sanctioned tournaments and a class for players in ATP-sanctioned tournaments. *Id.* ¶¶ 20-32, 311-12.

The Complaint does not include factual allegations that the WTA participates in—or harmed—the market for the services of male professional tennis players in any way.

### B.    WTA Arbitration Terms

As noted in the Complaint, the WTA Plaintiffs are bound by the WTA Rulebook.  *Id.* ¶¶ 80, 86.  And as provided by the "Final Dispute Resolution" chapter of the WTA Rulebook, "Any Dispute between or among the WTA, WTA Tournaments or WTA Players . . . arising out of the application of any provision of this Rulebook" that "is not finally resolved by applicable provisions of this Rulebook, shall be submitted exclusively to the American Arbitration Association ("AAA") for final and binding arbitration . . . ."  Ex. 1 at 403.  The WTA Rulebook only provides an

exception for "any Dispute relating to or arising out of a change in Tournament Class Membership status." *Id.*

The WTA Rulebook also states that the laws of the State of New York apply to any dispute arising out of the application of any provision of the WTA Rulebook, and a request for arbitration shall be filed with the AAA. *Id.*

The "Amended and Restated By-Laws of WTA Tour, Inc." reiterate that "[n]o current or prior Member" can commence, assert, or cause any claim or counterclaim against the WTA "without first exhausting . . . any and all available appeals expressly provided for in the WTA Tour Rules." Ex. 2 at 42-43.

Every year, players reaffirm their assent to be bound by the Rules and By-laws by signing the "WTA Annual Player Form" (the "Player Form"). Exs. 5-25; see also Compl. ¶¶ 86, 270. WTA Plaintiffs Cirstea, Gracheva, Melichar, Rodionova, Sutjiadi and Zheng, affirmatively and individually agreed to the WTA rules and By-laws by signing their Annual Player Forms. *See e.g.*, Exs. 5-25. Additionally, the WTA Rulebook states that by "enter[ing] or participat[ing] in any WTA Tournament," a player "consents and agrees to . . . comply with and [be] bound by all the provisions of the Rulebook and the WTA By-laws." Ex. 1 at 15. The affirmation is a condition of entry and participation in a WTA tournament. *Id.* at 16 ("A player must complete the Annual Player Form prior to playing her first match in each Tour Year. . . ."). WTA Plaintiffs entered and participated in various WTA Tournaments during the relevant time. *See* Compl. ¶¶ 114, 312.

## III.    LEGAL FRAMEWORK

### A.    Arbitration of WTA Player Claims

Under the Federal Arbitration Act ("FAA"), an agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Congress enacted the FAA to replace "widespread judicial hostility

to arbitration agreements" with a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citation omitted).

A motion to compel arbitration turns on only two questions: "(1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." *In re Am. Express Fin. Advisors Secs. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011).

For step one, the test is whether "(1) a '"reasonably prudent" person would be on *inquiry* notice of the terms . . . and (2) [Plaintiff] unambiguously manifest[ed] assent 'through . . . conduct that a reasonable person would understand to constitute assent.'" *Edmundson v. Klarna, Inc.*, 85 F.4th 695, 703 (2d Cir. 2023) (emphasis in original) (citations omitted). Once the defendant demonstrates that the plaintiff entered into an agreement to arbitrate, the burden is on the plaintiff to attempt to demonstrate the invalidity of that agreement. *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010).

For step two, the factual allegations in the complaint dictate whether a claim falls under the arbitration agreement. *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 173 (2d Cir. 2004), *abrogated on other grounds* by *Loc. Union 97, Int'l Brotherhood of Elec. Workers, AFL-CIO v. Niagara Mohawk Power Corp.*, 67 F.4th 107 (2d Cir. 2023). Not all motions to compel arbitration require this second step. "[T]he arbitrability of a given issue is a question for the court," except where "there is 'clear and unmistakable' evidence from the arbitration agreement . . . that the parties intended that the question of arbitrability shall be decided by the arbitrator." *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1198-99 (2d Cir. 1996) (citation omitted). Where there is clear and unmistakable intent to arbitrate arbitrability, step one alone compels arbitration.

To the extent a court must determine arbitrability, where allegations underlying the claims "touch matters" covered by the parties' agreements, then those claims must be arbitrated. *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987) (citation omitted), *abrogated on other grounds* by *Rodriguez-Depena v. Parts Auth., Inc.*, 877 F.3d 122 (2d Cir. 2017). Antitrust claims are no exception, as the Supreme Court has held that antitrust claims are arbitrable. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 636-37 (1985).

## B.    Dismissal of ATP Player Claims

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Dismissal of conspiracy claims under the Sherman Act are appropriate when claims are alleged in "entirely general terms without any specification of any particular activities by any particular defendant." *In re Elevator Antitrust Litig.*, 502 F.3d at 50 (citation omitted). A claim cannot survive a motion to dismiss when "the pleadings mention[] no specific time, place, or person involved in the alleged conspiracies." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 565 n.10 (2007); *see e.g.*, *Jessup v. Am. Kennel Club*, 862 F. Supp. 1122, 1129 (S.D.N.Y. 1994) (plaintiff did not "identify or refer to specific acts or activities suggesting any illegal agreement or concerted action").

When evaluating whether a plaintiff has pleaded sufficient facts to state a claim under Section 1 of the Sherman Act, a court should consider "common economic experience" and "obvious alternative explanation[s]." *Twombly*, 550 U.S. at 557, 565, 567. In addition, the plausibility of an antitrust claim is determined by applying basic economic principles. *See, e.g.*, *Abbott Lab'ys v. Adelphia Supply USA*, No. 15-cv-5826, 2017 WL 5992355, at *10 (E.D.N.Y. Aug. 10, 2017); *see also In re Aluminum Warehousing Antitrust Litig.*, No. 13-md-2481, 2014 WL 4277510, at *29 (S.D.N.Y. Aug. 29, 2014) (dismissing antitrust claims that "[did] not make

economic sense"), *aff'd on other grounds*, 833 F.3d 151 (2d Cir. 2016) . Following basic economic

principles, a horizontal conspiracy can only be formed between horizontal competitors. *In re*

*Aluminum*, 833 F.3d at 159-61; *see also Long Island Anesthesiologists PLLC v. United Healthcare*

*Ins. Co. of. N.Y. Inc.*, No. 22-cv-4040, 2025 WL 1031093, at *9 (E.D.N.Y. Apr. 7, 2025)

("Multiplan and United are not competitors in Plaintiff's alleged relevant antitrust market and

therefore cannot have plausibly engaged in a 'horizontal conspiracy.'" (citation omitted)), *appeal*

*filed*, No. 25-1167 (2d Cir. May 6, 2025).

A private Sherman Act claim also requires allegation of antitrust injury. Antitrust injury

is a component of antitrust standing, which is "a threshold, pleading-stage inquiry and when a

complaint by its terms fail to establish this requirement we must dismiss it as a matter of law."

*Gatt Comm'ns, Inc. v. PMC Assocs., L.L.C.*, 711 F.3d 68, 75 (2d Cir. 2013) (citation omitted).

Generally, "only those that are participants in the defendants' market can be said to have suffered

antitrust injury." *In re Aluminum*, 833 F.3d at 158 (recognizing "the antitrust standing requirement

that the putative plaintiff participate in the market that is directly manipulated by the collusive

conduct").

## IV.    ARGUMENT

This Court should compel arbitration for the WTA Plaintiffs in accordance with the

arbitration provision in the WTA Rulebook, dismiss the ATP Plaintiffs' claims against the WTA

for failure to state a claim, and stay this case.

### A.    The WTA Plaintiffs Are Bound By The WTA Rulebook, So Their Claims Belong In Arbitration

The WTA Rulebook requires any disputes arising under the WTA Rules to be "submitted

exclusively" to the AAA for "final and binding arbitration." Ex. 1 at 403. Courts must "'rigorously

enforce' arbitration agreements according to their terms." *Am. Express Co. v. Italian Colors Rest.*,

570 U.S. 228, 233 (2013) (citation omitted); *see also Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 506 (2018) (recognizing the FAA requirement to enforce arbitration agreements).   "Not only did Congress require courts to respect and enforce agreements to arbitrate, it also specifically directed them to respect and enforce the parties' chosen arbitration procedures." *Epic*, 584 U.S. at 506.  By agreeing to the WTA Rulebook, the WTA Plaintiffs are bound by the entire set of rules, including the agreement to arbitrate.

### 1.     The WTA Players Agreed to Arbitrate Their Disputes With the WTA

To assess whether a party agreed to arbitrate, this Court must ask whether a reasonably prudent person would be on inquiry notice of the terms, and whether the Plaintiffs unambiguously manifested assent through conduct that a reasonable person would understand to constitute assent. *See Edmundson*, 85 F.4th at 703.  Courts apply state-law principles of contract formation for this analysis. *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 73-74 (2d Cir. 2017).  Under controlling New York law, in order to be binding, a contract requires a "meeting of the minds" and a "manifestation of mutual assent." *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288 (2d Cir. 2019) (citation omitted). Even without actual notice, inquiry notice is sufficient. *Id.* at 289.  The key question is whether the term was called to attention, which usually turns on whether the terms were presented in a "clear and conspicuous way." *Id.*

The WTA Plaintiffs had ample notice of the WTA's Rules, including the arbitration provision, and unambiguously manifested assent to them.  The WTA Rulebook presents the arbitration provision unambiguously and conspicuously.  Specifically, the WTA Rulebook has a chapter titled "Final Dispute Resolution," and clearly states that "[a]ny dispute . . . which is not finally resolved by applicable provisions of this Rulebook, shall be submitted exclusively to the American Arbitration Association ("AAA") for final and binding arbitration before a single

arbitrator in accordance with the Expedited Procedures of the AAA's Commercial Arbitration Rules." Ex. 1 at 403.

The WTA Plaintiffs recognize the operative arbitration clause in the Complaint. *See* Compl. ¶ 270. And as Plaintiffs have acknowledged, they are bound by the WTA Rulebook to support their claims against the WTA. *Id.* ¶¶ 80, 86. The WTA Plaintiffs may not pick and choose the provisions of the WTA Rulebook that do and do not apply to them. The WTA Rulebook *in its entirety* exists for the benefit of all WTA participants.

The Complaint also concedes that players additionally manifested assent to be bound by the WTA Rulebook by signing the WTA Annual Player Form. Signing the Player Form means agreeing to be bound by the WTA Rulebook, and unambiguously manifests assent to be bound by the WTA Rulebook and its provision requiring arbitration. The WTA Plaintiffs affirmed their assent to be bound by the Rules and Bylaws by signing annual Player forms. *See e.g.*, Exs. 5-25; see also Compl. ¶¶ 86, 270.

Additionally, the WTA Rulebook states that by "enter[ing] or participat[ing] in any WTA Tournament," a player "consents and agrees to . . . comply with and [be] bound by all the provisions of the Rulebook and the WTA By-laws." Ex. 1 at 15. The affirmation is a condition of entry and participation in a WTA tournament. *Id*. at 16 ("A player must complete the Annual Player Form prior to playing her first match in each Tour Year. . . ."). The WTA Plaintiffs entered and participated in various WTA Tournaments during the relevant time. *See* Compl. ¶¶ 114, 312.

For all of these reasons, the WTA Plaintiffs had sufficient notice of the Rules requiring arbitration, and unambiguously manifested assent to be bound by the Rules. This court should find that the arbitration provision is binding on the WTA Plaintiffs.

        2.      <u>The Arbitrability of WTA Disputes Is Determined By The Arbitrator</u>

The WTA Plaintiffs' agreement to the arbitration by AAA includes an agreement to determination of arbitrability by AAA arbitration. An arbitration agreement incorporating the AAA's commercial arbitration rules demonstrates the parties' clear and unmistakable intent to refer arbitrability to the arbitrator. *See JSC Surgutneftegaz v. President & Fellows of Harvard Coll.*, 167 F. App'x 266, 268 (2d Cir. 2006). The Second Circuit has explained that "the arbitrability of a given issue is a question for the court," except where "there is 'clear and unmistakable' evidence from the arbitration agreement . . . that the parties intended that the question of arbitrability shall be decided by the arbitrator." *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1198-99 (2d Cir. 1996) (citation omitted). Agreeing to arbitrate in accordance with AAA rules clearly and unmistakably evidences an agreement to decide arbitrability by the arbitrator.

The WTA Rulebook expressly incorporates the AAA rules, requiring arbitration "in accordance with the Expedited Procedures of the AAA's Commercial Arbitration Rules." Ex. 1 at 403. Rule 7(a) of the AAA Commercial Arbitration Rules states "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim. . . ." Ex. 4 at 13. Further, Rule 7(b) states that the arbitrator "shall have the power to determine the existence or validity of a contract of which an arbitration clause form a part." *Id.* The parties thus agreed to arbitrate the issue of arbitrability and this Court therefore should compel the WTA Plaintiffs to arbitrate their claims. *Contec Corp. v. Remote Sol. Co.*, 398 F.3d 205, 210 (2d Cir.2005) (ruling that arbitrability is "within the jurisdiction of the arbitrator pursuant to AAA Rule R-7(a) as incorporated into [the agreement]").

Therefore, once the Court finds that the WTA Plaintiffs agreed to AAA arbitration, the Court's inquiry ends, and arbitration should be compelled. To the extent the WTA Plaintiffs intend

to challenge whether their claims fall within the scope of the arbitration agreement, those issues must be decided by an arbitrator and not the Court. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68, 71-72 (2019) (holding that where there is "clear and unmistakable evidence" that the "contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract," "even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless" (citation omitted)).  The Court need not further decide to grant the WTA's motion to compel arbitration.

### 3.    The WTA Plaintiffs' Claims Qualify As "Any Dispute"

Even if the contract term was not clear and unmistakable (it is), the Court should still enforce the parties' arbitration agreement covering "Any Dispute."  The provision plainly encompasses the WTA Plaintiffs' claims. *See In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 405-06 (S.D.N.Y. 2003) (collecting cases).  Consistent with the "strong federal policy favoring arbitration," courts must compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019) (citation omitted).

The WTA Rulebook states that a "dispute" is subject to arbitration if it "aris[es] out of the application of any provision of this Rulebook." Ex. 1. at 403.  All of Plaintiffs' claims fall squarely within the broad scope of the arbitration provision.  Specifically, the Complaint focuses on the WTA Plaintiffs' grievances regarding player earnings, prize money, the Ranking Points system, player schedules, and player requirements, among other topics. Compl. ¶¶ 1, 5, 9, 14.  The WTA Rulebook addresses all of these topics, with chapters dedicated to tournament schedules, player responsibilities, the WTA ranking system, prize money, prize money formula, tournament membership, and code of conduct, as examples. *See e.g.*, Ex. 1 at 61, 101, 135, 163, 241, 269,

277. The WTA Plaintiffs' claims are undoubtedly related to matter covered by the WTA Rulebook and are therefore encompassed by the arbitration provision.

### B.    WTA's Motion Is Timely

While the WTA Rulebook sets out a timeline for arbitration, WTA is moving to compel arbitration according to the schedule agreed upon by the parties and ordered by the Court.  Ex. 1 at 403 (twenty-one days).  Accordingly, Plaintiffs cannot contend waiver or prejudice.

Indeed, WTA's motion is timely under all relevant arbitration waiver tests in this Circuit. *Wortham v. Total Transp. Corp.*, No. 21-cv-85, 2024 WL 4449411, at *2 (E.D.N.Y. Oct. 2, 2024) (identifying and describing two standards); *see also Lawrence v. NYC Med. Prac., P.C.*, No. 18-cv-8649, 2023 WL 4706126, at *12 (S.D.N.Y. July 21, 2023).  The "stripped down arbitration standard" assesses whether significant time has elapsed, or substantive litigation has occurred. *Wortham*, 2024 WL 4449411, at *2.  The "general waiver test" evaluates whether Defendants "knowing[ly] relinquish[ed]" the right to arbitrate. *Id.* (first alteration in original) (quoting *Morgan v. Sundance, Inc.*, 596 U.S. 411, 419 (2022)).  There must be a "clear manifestation of an intent . . . to relinquish [a] known right." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 585 (2d Cir. 2006) (citation omitted).  None of the relevant tests support any waiver of WTA's right to arbitration.

*First*, no significant time has elapsed in this case.  Cases from this Circuit confirm that the elapsed time from the commencement of litigation would not be considered "significant" according to this Circuit's standards. *See e.g.*, *PPG Indus. v. Webster Auto Parts*, 128 F.3d 103, 108 (2d Cir. 1997) ("[F]ive-month delay, by itself, is not enough to infer waiver of arbitration."); *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 122 (2d Cir. 1991) (no waiver after three years); *De Jesus v. Gregorys Coffee Mgmt., LLC*, No. 20-cv-6305, 2022 WL 3097883, at *8-9

(E.D.N.Y. Aug. 4, 2022) (no waiver after eight months); *In re Generali COVID-19 Travel Ins. Litig.*, 577 F. Supp. 3d 284, 294 (S.D.N.Y. 2021) (no waiver after one year).

*Second*, no significant litigation involving the WTA has occurred in this case.  To make this assessment, courts look to whether any motion practice or discovery has occurred yet. *LifeTree Trading Pte. Ltd. v. Washakie Renewable Energy, LLC*, 764 F. App'x 105, 107 (2d Cir. 2019).  Here, the WTA has not participated in discovery, and this is Defendants' first opportunity for a substantive motion.  *Id.*

*Third*, the WTA has never clearly manifested an intent to waive its right to arbitration.  To the contrary, the WTA has affirmatively sought to compel arbitration at the first chance it has had during these court proceedings.  The WTA has taken no action to indicate that it intends to litigate the merits of this case in federal court.

WTA's motion on the agreed-upon Court-ordered schedule is timely.

### C.    The Court Must Stay Proceedings

Under the FAA, a court must grant a motion to stay judicial proceedings once it has determined that the dispute is subject to a valid arbitration agreement.  9 U.S.C. § 3 ("If any suit or proceeding" has been brought in any court for "any issue referable to arbitration," the court shall "stay the trial of the action until such arbitration has been had."); *see also Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015) ("[T]he text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested.").  Because the parties formed a valid agreement to arbitrate, this Court should compel arbitration and grant the mandatory stay until any arbitration concludes.

### D.    The ATP Plaintiffs Cannot State A Claim Against The WTA

The ATP Plaintiffs' claims against the WTA fail for three independent reasons: failure to allege a plausible agreement, failure to allege any horizontal competition between the ATP and the

12

WTA, and failure to allege participation in the WTA's market.  For any of these three defects, the Court should dismiss the ATP Plaintiffs' claims against the WTA for failure to state a claim.

*First*, the Complaint includes no factual allegations supporting an unlawful agreement between the ATP and WTA.  This Circuit has instructed that conspiracy claims alleged in "entirely general terms without any specification of any particular activities" cannot survive a motion to dismiss.  *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (citation omitted).  As the Supreme Court noted in *Twombly*, dismissal is appropriate when the pleadings do not mention a "specific time, place, or person involved in the alleged conspiracies."  550 U.S. at 565 n.10.

Here, Plaintiffs' Complaint only provides a handful of conclusory allegations of a conspiracy between the WTA and ATP.  For example, in Count 1, Plaintiffs allege "upon information and belief" that the ATP and WTA "agreed with each other" not to end the price fixing restriction that each has with its own members.  Compl. ¶ 344.  The other Causes of Action contain similarly conclusive allegations, and the Complaint is entirely devoid of factual details of the conspiracy, such as time, place, or person involved.

Because this Circuit gives no effect to legal conclusions couched as factual allegations, Plaintiffs' conclusory allegations of an agreement do not supply facts adequate to show illegality and must fail.  *See Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338, 344 (2d Cir. 2006) ("bald assertions and conclusions of law will not suffice" (citation omitted)).  The ATP Plaintiffs have failed to plausibly allege a "meeting of the minds."  *Arista Recs. LLC v. Lime Grp., LLC*, 532 F. Supp. 2d 556, 579 (S.D.N.Y 2007) (citation omitted); *see also Jessup v. Am. Kennel Club*, 862 F. Supp. 1122, 1129 (S.D.N.Y. 1994) (noting that plaintiff did not "identify or refer to specific acts or activities suggesting any illegal agreement or concerted action" and thus "no concerted action is identified that would support a finding of illegal action").

13

*Second*, Plaintiffs allege that the WTA and ATP engaged in a horizontal conspiracy. Compl. ¶¶ 334, 357, 372, 388.  However, Plaintiffs' claim must fail because the WTA and the ATP operate in two distinct markets: "the market for the services of men's professional tennis players and the market for the services of women's professional tennis players." *Id.* ¶ 279.  By definition, the ATP and WTA are alleged to compete for different services: the services of male and female professional tennis players.  The Complaint does not allege whether or how the WTA competes with the ATP, even though competition in the relevant market is required for a horizontal conspiracy claim.  *In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d 151, 159-61 (2d Cir. 2016).  Without alleging WTA's participation in a restrained market, the ATP Plaintiffs cannot state a Sherman Act claim against the WTA.  *Prime Int'l Trading, Ltd. v. BP P.L.C.*, 784 F. App'x 4, 7 (2d Cir. 2019).

*Third*, the ATP Plaintiffs cannot state a claim against the WTA because the ATP Plaintiffs do not participate in the same market in which the WTA operates.  *See In re Aluminum*, 833 F.3d at 158 ("Generally, only those that are participants in the defendants' market can be said to have suffered antitrust injury."); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014) (holding that the Clayton Act covers only plaintiffs "whose injuries were proximately caused by a defendant's antitrust violations").  Parties whose injuries are experienced in a separate market do not suffer antitrust injury.  *In re Aluminum*, 833 F.3d at 158 (citing *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1057 (9th Cir. 1999)).  The Complaint explains that there are two relevant markets: one for the services of male tennis players and one for the services of female tennis players.  Compl. ¶ 279.  In the market for the services of male tennis players, the sellers are male athletes, and the buyers are "Defendant ATP and the Tournament and Grand Slam Co-Conspirators." *Id.* ¶ 280.  The Complaint does not include the WTA as a participant in the

market for male tennis services. *Id.* Further, Plaintiffs concede that male athletes do not participate in the market for women's professional tennis players "because the WTA only provides such opportunities to female tennis players." *Id.* ¶ 284.

Because the ATP Plaintiffs do not participate in the market in which the WTA operates, the ATP Plaintiffs cannot state that they suffer antitrust injury due to WTA's conduct. By failing to allege antitrust injury—which is a "threshold, pleading stage inquiry"—the ATP Plaintiffs should be dismissed from the case against WTA as a matter of law. *See Gatt Comm'ns, Inc.*, 711 F.3d at 75 (citation omitted).

For all three of these reasons, ATP Plaintiffs' claims against the WTA should be dismissed.

## V.      CONCLUSION

The WTA Plaintiffs and the WTA have agreed to arbitrate any disputes, including the claims at issue, and their claims should be compelled to arbitration.

The ATP Plaintiffs have not stated any claim against the WTA, nor can they without any unlawful agreement between the ATP and WTA. Their claims should be dismissed.

Dated: May 20, 2025                     Respectfully submitted,

                                        By:   /s/ Lawrence E. Buterman
                                              Lawrence E. Buterman
                                              **LATHAM & WATKINS LLP**
                                              1271 Avenue of the Americas
                                              New York, NY 10020
                                              Telephone: (212) 906-1200
                                              Facsimile: (212) 751-4864
                                              lawrence.buterman@lw.com

                                              Amanda P. Reeves (admitted *pro hac vice*)
                                              **LATHAM & WATKINS LLP**
                                              555 Eleventh Street, NW, Suite 1000
                                              Washington, D.C. 20004-1304
                                              Telephone: (202) 637-2200
                                              Facsimile: (202) 637-2201

amanda.reeves@lw.com

Christopher S. Yates (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
Facsimile: (415) 395-8157
chris.yates@lw.com

*Counsel for Defendant WTA Tour, Inc.*

## **<u>CERTIFICATE OF COMPLIANCE</u>**

I, Lawrence E. Buterman, certify that the foregoing memorandum of law contains 4,724 words, exclusive of captions, tables, certificates, and signature blocks, and including footnotes.

Dated: May 20, 2025

*/s/ Lawrence E. Buterman*
Lawrence E. Buterman
