# Exhibit 3

# Parker-Grennan v Camelot UK Lotteries Ltd

Significant

 No Substantial Judicial Treatment

**Court**
Court of Appeal (Civil Division)

**Judgment Date**
1 March 2024

**Where Reported**
[2024] EWCA Civ 185
[2024] 3 WLUK 2
[2024] E.C.C. 11
[2024] C.L.Y. 477
Judgment

**Subject**
Contracts

**Other related subjects**
Hospitality and leisure; Consumer law

**Keywords**
Consumer contracts; E-commerce; Gambling; Incorporation; Prizes; Standard terms; Terms and conditions; Unfair contract terms; Websites

**Judge**
Green LJ;
Andrews LJ;
William Davis LJ

**Counsel**
For the appellant: James Couser.
For the respondent: Philip Hinks.

**Solicitor**
For the appellant: Coyle White Devine Ltd.
For the respondent: Browne Jacobson LLP.

## Case Digest

**Summary**
A player of an online gambling game had not won £1 million despite a software error causing the website to give some indication that she could have done so; the terms and conditions for the game provided that the prize to be awarded on any given play was predetermined by the operator's computer system, and the prize linked to the relevant play was £10, not £1 million. The operator had sufficiently drawn the terms and conditions to the player's attention and the terms were not rendered unenforceable as unfair contract terms. The court suggested that the time was ripe for the Law Commission to review the law concerning the accessibility of terms and conditions.

**Abstract**

The appellant appealed against a decision to refuse summary judgment on her claim against the respondent lottery operator.

In 2009, the appellant opened an account on the respondent's website. She ticked a box to confirm that she agreed to be bound by the respondent's terms and conditions, which were accessible via hyperlinks and drop-down menus on the website. In 2015, she played an online "instant win" game (IWG). The game screen contained the wording "match any of the winning numbers to any of your numbers to win prize"; the object was to match a number in the "your numbers" section of the screen with one in the "winning numbers" section to win the prize shown alongside that number. The claimant matched the number 15, which carried a £10 prize. Although the screen also showed the number 1 in both the "your numbers" and the "winning numbers" sections alongside a prize of £1 million, the final screen displayed after the appellant clicked a FINISH button showed that the appellant had won £10, not £1 million. She brought the instant claim seeking payment of the £1 million prize, relying on the matching numbers explanation on the game screen. The respondent refused to pay, asserting that the apparent match for the £1 million prize was the result of a coding error in the website's animation software; that its terms and conditions provided that the prize to be awarded on any given play was predetermined by its computer system; and the prize linked to the appellant's play was £10.

The relevant terms were in the respondent's rules for IWGs and the game procedures for the specific game. The hierarchy of the rules specified that game procedures had priority over the IWG rules if there was a conflict between them. The game procedures provided that the game would not be completed until FINISH was clicked and that the player could win only one prize per play. They stated that the outcome was computer-generated and the prize had to appear on the respondent's official list of winning plays.

The judge held that the relevant terms had been incorporated into the parties' contract, that they were not rendered unenforceable by the Unfair Terms in Consumer Contracts Regulations 1999, and that on the true construction of the contract, the appellant had won £10.

**Held**
Appeal dismissed.

**Incorporation** - The applicable test was whether the respondent had done what was reasonably sufficient to bring the terms and conditions to the notice of a player of the game. The trader was generally required to signpost onerous or unusual terms if it wished to incorporate them. There had been nothing on the screen which drew specific attention to particular terms, but there had been nothing onerous or unusual about the contractual provisions on which the respondent sought to rely. Anyone playing an IWG would expect there to be some rules governing how the particular game was played and what had to be done in order to win (see paras 31-33 of judgment).

As the terms had not been onerous, there had been no requirement for the respondent to specifically signpost any of them in order to incorporate them into the contract. Whether the respondent had done enough to draw the terms and conditions as a whole to the appellant's notice before she played the game was a question of fact. The appellant argued that there had been nothing on the website to force an account holder to look at the terms and conditions before accepting them. However, forcing a consumer to scroll through the terms, as the appellant suggested, would not make consumers any more likely to read them: they would simply scroll through to the point where they could accept the terms. In any event, the question was not whether the trader had done everything in its power to make the other party read the terms. The trader only had to take reasonable steps to bring the terms to their attention; that involved giving a sufficient opportunity to read them. The appellant would have seen when she opened her account that there were overarching terms relating to it, as well as specific terms relating to IWGs, and game procedures applicable to any game she wished to play. Enough had been done to incorporate the relevant terms into the contract (paras 41-51).

**Unfair terms** - The appellant argued that, in finding that the *contra proferentem* rule in reg.7(2) did not operate so as to elevate the explanation on the game screen to the top of the hierarchy of rules, the judge had failed to consider how reg.6(1), dealing with the assessment of unfairness, interacted with reg.7(2). She submitted that those regulations displaced hierarchy provisions within consumer contracts and replaced them with a rule that, where there was ambiguity, either on the words of a particular contractual clause or as between competing contractual clauses, the meaning most favourable to the consumer should prevail. However, reg.7(2) did not rewrite the hierarchy. Regulation 7(2) was concerned with the construction of individual clauses and not with the re-ordering or disapplication of contractual provisions, *R. (on the application of Donegan) v Financial Services Compensation Scheme Ltd [2021] EWHC 760 (Admin), [2021] 3 WLUK 473* applied. Regulation 6(1) added nothing: it was a separate provision and the two provisions did not operate together in the manner the appellant suggested. The hierarchy clause

did not conflict with any other rules. In any event, it was difficult to see how such a clause could create a significant imbalance in the parties' rights (paras 57-59).

**Construction -** The appellant's approach was to treat the matching numbers term as the only contractual term, when plainly it had not been. Had she read the game procedures, she would have known that it was not enough for the numbers to match; FINISH had to be clicked to complete the game. The game procedures spelt out that only one prize could be won per play; applying those procedures, the outcome of the play was that the appellant had won £10 and nothing else. Further, under the IWG rules, the appellant was bound by the outcome recorded on the respondent's official list of winning plays, namely a win of £10, which was not the result of any computer error (paras 63-67).

**Review of law -** A decade had passed since the last relevant report of the Law Commission; the time could be ripe for another review of the law concerning the accessibility of terms and conditions (para.68).