UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VASEK POSPISIL, NICHOLAS KYRGIOS, ANASTASIA RODIONOVA, NICOLE MELICHAR-MARTINEZ, SAISAI ZHENG, SORANA CÎRSTEA, JOHN-PATRICK SMITH, NOAH RUBIN, ALDILA SUTJIADI, VARVARA GRACHEVA, TENNYS SANDGREN, and REILLY OPELKA, on behalf of themselves and all others similarly situated,

-and-

THE PROFESSIONAL TENNIS PLAYERS ASSOCIATION,

     Plaintiffs,

    v.

ATP TOUR, INC., WTA TOUR, INC., INTERNATIONAL TENNIS FEDERATION LTD., and INTERNATIONAL TENNIS INTEGRITY AGENCY LTD.,

     Defendants.

Case No. 1:25-cv-02207-MMG

**ORAL ARGUMENT REQUESTED**

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE
<u>PROFESSIONAL TENNIS PLAYERS ASSOCIATION</u>**

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii
INTRODUCTION ................................................................................................................... 1
BACKGROUND .................................................................................................................... 1
STANDARD ........................................................................................................................... 4
ARGUMENT .......................................................................................................................... 4
I.    The PTPA Does Not Have Associational Standing. ........................................................ 5
    A.    The PTPA fails to allege it has a member who can sue on its own. ......................... 5
    B.    The PTPA's claims would require substantial individual participation, are duplicative of the Tennis Player Plaintiffs' claims, and threaten circumvention of the class-action treatment the Tennis Player Plaintiffs seek. ............................................................. 7
II.    The PTPA Does Not Have Antitrust Standing. ............................................................. 10
CONCLUSION ..................................................................................................................... 12

TABLE OF AUTHORITIES

Page(s)

CASES

*Access 4 All, Inc. v. G & T Consulting Co., LLC*,
  No. 06 CIV. 13736 (DF), 2008 WL 851918 (S.D.N.Y. Mar. 28, 2008) .................................. 10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .............................................................................................................. 4

*Assoc. Gen. Contractors of Calif., Inc. v. Calif. State Council of Carpenters (AGC)*,
  459 U.S. 519 (1983) ............................................................................................................ 12

*Bano v. Union Carbide Corp.*,
  361 F.3d 696 (2d Cir. 2004) ............................................................................................. 5, 9

*Blunt v. Lower Merion Sch. Dist.*,
  767 F.3d 247 (3d Cir. 2014) ................................................................................................. 9

*Carter v. HealthPort Techs., LLC*,
  822 F.3d 47 (2d Cir. 2016) ................................................................................................... 4

*Connecticut Citizens Def. League, Inc. v. Thody*,
  2024 WL 177707 (2d Cir. Jan. 17, 2024) ............................................................................. 6

*Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.a.r.l*,
  790 F.3d 411 (2d Cir. 2015) ............................................................................................. 3, 4

*Daniel v. Am. Bd. of Emergency Med.*,
  428 F.3d 408 (2d Cir. 1996) ............................................................................................... 11

*Disability Advocs., Inc. v. New York Coal. for Quality Assisted Living, Inc.*,
  675 F.3d 149 (2d Cir. 2012) ................................................................................................. 7

*Fac. v. New York Univ.*,
  11 F.4th 68 (2d Cir. 2021) .................................................................................................... 6

*Food & Drug Admin. v. All. for Hippocratic Med.*,
  602 U.S. 367 (2024) (Thomas, J., concurring) .................................................................. 10

*Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C.*,
  711 F.3d 68 (2d Cir. 2013) ............................................................................................ 4, 11

*Hunt v. Wash. St. Apple Advertising Comm'n*,
  432 U.S. 333 (1977) ............................................................................................. 5, 7, 8, 10

*In re Aluminum Warehousing Antitrust Litig.*,
   2023 WL 7180648 (2d Cir. Nov. 1, 2023) ................................................................... 11

*In re Am. Express Anti-Steering Rules Antitrust Litig.*,
   19 F.4th 127 (2d Cir. 2021) ................................................................................... 11, 12

*In re Platinum & Palladium Antitrust Litig.*,
   2017 WL 1169626 (S.D.N.Y. Mar. 28, 2017) ............................................................. 12

*Lowell v. Lyft, Inc.*,
   352 F. Supp. 3d 248 (S.D.N.Y. 2018) ........................................................................... 9

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ...................................................................................................... 5

*Massone v. Washington*,
   2022 WL 2657168 (S.D.N.Y. July 8, 2022) .................................................................. 9

*Nat'l Collegiate Athletic Ass'n v. Alston*,
   594 U.S. 69 (2021) ........................................................................................................ 8

*Rent Stabilization Ass'n of City of New York v. Dinkins*,
   5 F.3d 591 (2d Cir. 1993) ............................................................................................. 4

*Sikhs for Justice, Inc. v. Gandhi*,
   614 Fed. Appx. 29 (2d Cir. 2015) .............................................................................. 6, 7

*Tanner-Brown v. Haaland*,
   105 F.4th 437 (D.C. Cir. 2024) ..................................................................................... 9

*United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*,
   517 U.S. 544 (1996) ................................................................................................. 7, 10

*Valley Forge Christian College v. Americans United for Separation of Church &
   State, Inc.*,
   454 U.S. 464 (1982) ...................................................................................................... 5

*Warth v. Seldin*,
   422 U.S. 490 (1975) ...................................................................................................... 7

OTHER AUTHORITIES

Fed. R. Civ. P. 12 ........................................................................................................... 1, 3, 4

U.S. Constituon, art. III, § 2 .................................................................................................. 5

Pursuant to Fed. R. Civ. P. 12(b)(1) and (6), Defendants WTA Tour, Inc., ATP Tour, Inc., International Tennis Federation Ltd., and International Tennis Integrity Agency Ltd. (collectively, "Defendants") respectfully submit this memorandum in support of their motion to dismiss from this lawsuit Plaintiff The Professional Tennis Players Association (the "PTPA").

## INTRODUCTION

The PTPA is a tennis-player advocacy group. It is not claiming to have been injured. It alleges, rather, that injury was suffered by the PTPA's "members." But nowhere in the Complaint does the PTPA actually identify or describe any of its members. That pleading failure is not accidental. Testimony from the PTPA's general counsel and the PTPA's own website contradict any suggestion that the PTPA even has members, much less any who themselves have standing. Without any injured members, the PTPA has no standing to sue.

Moreover, even if PTPA had members, it would still lack standing. The participation of individual tennis players (including those who are already named plaintiffs) is critical to this lawsuit, and tennis players are the ones who must prosecute it and seek to represent the putative classes on whose behalf the PTPA—redundantly, and in an improper effort to circumvent the class-action mechanism—is attempting to litigate.

Because it has no constitutional standing—and because it is not directly injured so as to make it an "efficient enforcer" under the antitrust laws—the PTPA must be dismissed as a plaintiff.

## BACKGROUND

Twelve individuals who play or have played professional tennis (the "Tennis Player Plaintiffs" and, together with the PTPA, "Plaintiffs") brought this action individually and as representatives of putative classes of other tennis players. (Compl. ¶¶ 310-12.) In each of their causes of action asserting antitrust violations, the Tennis Player Plaintiffs are joined by the PTPA (Compl. Causes of Action First through Eighth), which the Complaint describes as "an association

of men and women professional tennis players founded to advocate for all players" and "the leading advocate for professional tennis players worldwide[, which] works to support, protect, and advance players' well-being." (*Id.* ¶ 33.)

The Complaint alleges that in 2019 the PTPA "started as a grassroots movement helmed by" two professional men's tennis players (*id.* ¶ 94) who purported to believe that professional tennis players' interests were not sufficiently advanced by the structures of the women's and men's Tours (defendants WTA Tour, Inc. and ATP Tour, Inc.) that give players 50/50 equal governance with the tournaments that are part of the Tours. The PTPA describes itself as "an advocacy body" that also "offers a wide range of services" (*id.* ¶ 97-98) such as "help[ing] players generate incremental off-court revenue opportunities through the PTPA's various licensing and marketing programs" (*id.* ¶ 98), *i.e.*, to serve as a commercial agent for players looking to license their names. The PTPA does not allege it has any legal or formal status as a representative of players. Nor does it allege that it has any responsibilities within the operation of the Tours, of any Tour events, of any of the Grand Slams, or events operated by defendant International Tennis Federation Ltd., or of any other tennis events operated by anyone else.

The Complaint lists persons who are on the PTPA's executive committee (*id.* ¶ 33), but does not identify any person who is actually a member of the PTPA (*see id.* ¶¶ 20-33). The Complaint does not allege the PTPA is a bona fide trade association or has characteristics of a players' association (such as dues or collective-bargaining powers). Although the Complaint refers to the "PTPA's members," it does not name or describe any of them. (*See e.g.*, *id* ¶¶ 319-20, 323.) The Complaint alleges no injury to the PTPA proper but, rather, injury only to the unidentified "PTPA[] members". (*Id.* ¶¶ 351, 354, 369, 385, 401, 418, 428, 450, 465.)

At the April 11, 2025 hearing on Plaintiffs' Rule 23(d) motion, the PTPA's general counsel, Wajid Mir Syed, testified that the PTPA has no membership criteria and does not maintain a list of members[1]:

> Q. But does the PTPA actually know which individual players consider themselves to be PTPA members? Do you understand what I'm asking, sir?
> A. Yes. We don't have any membership criteria specifically.
> Q. You don't maintain a list of your members, do you?
> . . .
> A. No. We advocate on behalf of the top 250 men and women professional players singles and the top 100 men and women doubles. That's our player advocacy focus group.
> Q. The PTPA does not maintain a list of its members, does it?
> A. No, that's correct.

(Declaration of Lawrence E. Buterman ("Buterman Decl.") Ex. A. at 108:3-16.) Asked to clarify how a player actually "become[s] a member of the PTPA," Mr. Syed explained that by "mov[ing] up the [professional tennis] rankings . . . once you get to be ranked in the top 250 . . . you'll be eligible in terms of potentially some of our services and benefits that we have."[2] (Buterman Decl. Ex. A. at 108:17-21.) This testimony accords with the PTPA's website, which acknowledges "[w]e do not maintain a formal membership list or require membership dues,"[3] a point that has been repeated publicly by the PTPA's executive director.[4] And it is not evident that

---

[1] "In deciding a Rule 12(b)(1) motion, the court may also rely on evidence outside the complaint." *Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.a.r.l*, 790 F.3d 411, 416-17 (2d Cir. 2015) (motion to dismiss for lack of standing).

[2] That the PTPA only provides services to top players is in tension with the Complaint's statement that the PTPA was "founded to advocate for all players." (Compl. ¶ 33.)

[3] Buterman Decl. Ex. B.

[4] Inside the PTPA Lawsuit to Upend Tennis, https://www.benrothenberg.com/p/ptpa-lawsuit-tennis-atp-wta-itf-itia-novak-djokovic-class-action-jannik-sinner-ahmad-nassar-professional-tennis-players-association-bill-ackman (last visited May 19, 2025) (Quoting Nassar: "No, legally, that's not how it works, man . . . we have plaintiffs, we have the PTPA, we have 250-plus players whom we've briefed and spoken to—about this and more broadly about what we're trying to do with the PTPA overall. We have hundreds of players who have participated in our programs and services and benefits. That's all we need, man. It's not going be a defense for the tours to say, Oooh, well, there's no membership roll.").

there is any process by which individual players either affirmatively associate themselves with the PTPA, or for that matter may disclaim such an association. The Court observed that the PTPA is "not a membership organization in the traditional sense, but the mission of the organization is to advocate on behalf of that set of players." (Buterman Decl. Ex. A. at 109:1-9.)

## STANDARD

A motion to dismiss for lack of constitutional standing may be made under Rule 12(b)(6), to the extent based on the complaint alone, or under Rule 12(b)(1), to the extent based on facts outside the complaint. *See Rent Stabilization Ass'n of City of New York v. Dinkins*, 5 F.3d 591, 594 (2d Cir. 1993). To the extent the allegations of the complaint are facially sufficient but controverted by facts outside the complaint, "the plaintiffs will need to come forward with evidence of their own to controvert that presented by the defendant." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016). Such a motion is properly granted if the court determines it "lacks the statutory or constitutional power to adjudicate" the plaintiff's claims. *Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.a.r.l*, 790 F.3d 411, 416–17 (2d Cir. 2015).

A motion to dismiss for lack of antitrust standing is made under Rule 12(b)(6) and is properly granted where, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiffs' favor, the complaint lacks factual content sufficient for "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C.*, 711 F.3d 68, 74-75 (2d Cir. 2013) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).

## ARGUMENT

The PTPA, having not been injured, has neither associational standing that would permit it to prosecute a "Case[]" within the meaning of art. III, § 2 of the U.S. Constitution, nor standing under the antitrust laws to enforce the rights of those who it alleges are actually injured.

4

## I. The PTPA Does Not Have Associational Standing.

The PTPA alleges injury only to "the PTPA's members"; it does not allege it suffered any direct injury. (*See* Compl. ¶¶ 351, 354, 369, 385, 401, 418, 428, 450, 465.)  Bringing such claims requires "[a]ssociational standing[, which] carves only a narrow exception from the ordinary rule that a litigant 'must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Bano v. Union Carbide Corp.*, 361 F.3d 696, 715 (2d Cir. 2004) (quoting *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 474 (1982)).  The PTPA bears the burden of pleading it has standing, *Lujan v. Def. of Wildlife*, 504 U.S. 555, 561 (1992), and fails to carry this burden.

To have associational standing: (1) the PTPA must have at least one member who would have standing to sue in their own right; (2) the interests the PTPA seeks to protect must be germane to the PTPA's purpose; and (3) neither the PTPA's claims nor the relief requested can require the participation of individual members of the PTPA. *Hunt v. Wash. St. Apple Advert. Comm'n,* 432 U.S. 333, 343 (1977).  The PTPA fails the first and third elements of this test.  The PTPA fails to allege injury to any member, or even adequately allege that it *has* members.  And the PTPA's claims—which rely on unsupported speculation that individual players would earn more in the absence of the challenged conduct—would require the participation of individual PTPA members (assuming there were any).  Also, those claims are entirely duplicative of the Tennis Player Plaintiffs' claims and would unfairly circumvent Rule 23's requirements for the class-action treatment that the Tennis Player Plaintiffs seek.

### A. The PTPA fails to allege it has a member who can sue on its own.

The PTPA has not alleged that it has any member who has suffered an injury. *Fac. v. New York Univ.*, 11 F.4th 68, 75-76 (2d Cir. 2021) (affirming dismissal of association that failed to allege an injury to an actual member); *Sikhs for Justice, Inc. v. Gandhi*, 614 F. App'x 29, 31 (2d

5

Cir. 2015) (same). The PTPA claims to be "an association of men and women professional tennis players" (Compl. ¶ 33), but it does not actually allege that it has members who are professional tennis players—much less identify any of its members who were allegedly injured by Defendants' conduct, or what conduct specifically harmed any actual PTPA member. The Complaint does not claim, for example, that any of the Tennis Player Plaintiffs are members of the PTPA or otherwise point to a group of injured tennis players who are actually PTPA members. (*See* Compl. ¶¶ 20-33.) Although the Complaint claims, vaguely, injury to the "PTPA's members"—without identifying them—it "contains not a single factual allegation regarding those . . . members or their circumstances," which is "insufficient to confer standing on behalf of members." *Conn. Citizens Def. League, Inc. v. Thody*, 2024 WL 177707, at *3 (2d Cir. Jan. 17, 2024). The lack of allegations in the Complaint is sufficient to dismiss PTPA's claims without going any further.

To the extent additional assurance is required, however, testimony of the PTPA's general counsel directly contradicts any allegation that the PTPA has members. The testimony made clear the PTPA has no actual membership criteria; does not maintain a list of members; and that it unilaterally deems a player eligible for certain services and benefits when they achieve a rank within the top 250. (Buterman Decl. Ex A at 108:3-21.) This testimony accords with the PTPA's website statement that "[w]e do not maintain a formal membership list" (Buterman Decl. Ex B), a point that has been repeated publicly by the PTPA's executive director. (*See* n. 4, above.)

Nor does the PTPA allege any sufficient "indicia of membership," such as would explain how any (evidently non-member) "constituents" direct, control or influence the organization. *See, e.g., Hunt,* 432 U.S. at 343-45; *Disability Advocs., Inc. v. New York Coal. for Quality Assisted Living, Inc.*, 675 F.3d 149, 158–59 (2d Cir. 2012). "It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the

6

dispute and the exercise of the court's remedial powers." *Warth v. Seldin*, 422 U.S. 490, 518 (1975). The PTPA has not made this demonstration.[5] *Sikhs for Justice*, 614 F. App'x at 31 ("the District Court correctly held that plaintiff . . . does not have associational standing because it failed to adequately allege that it has any members who are eligible to bring a . . . . claim or that it possesses sufficient 'indicia of membership' to sue on behalf of such persons." (citation omitted)).

The PTPA is improperly conflating its "membership" with the population of top players on whose behalf the PTPA purportedly advocates, some of whom have already publicly disagreed with the PTPA's advocacy. (Buterman Decl. Ex. A at 71:19-72:1; 72:19-73:11; 73:12-19.) Because the PTPA has failed to plead that these players are actually its members, and in the absence of an alleged injury to any actual PTPA member, the PTPA has no standing.

      **B.    The PTPA's claims would require substantial individual participation, are duplicative of the Tennis Player Plaintiffs' claims, and threaten circumvention of the class-action treatment the Tennis Player Plaintiffs seek.**

The PTPA also lacks standing to sue on behalf of its "members"—or those it claims to represent—for prudential reasons "focus[ed] on . . . matters of administrative convenience and efficiency." *United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 557 (1996).

*First*, the PTPA's claims would require the substantial participation of the PTPA's individual "members." *Hunt*, 432 U.S. at 343. Consider how the parties' competing claims of anti- and procompetitive conduct will be litigated in practice. *See Nat'l Collegiate Athletic Ass'n v. Alston*, 594 U.S. 69, 96-97 (2021) (describing rule of reason framework). Plaintiffs contend

---

[5] Nor, seemingly, could it. The PTPA does not appear to impose any obligations on the players it claims to represent. (*See* Buterman Decl. Ex B ("Will I have any required obligations if I engage with the PTPA? No. We encourage you to take advantage of our services, benefits and resources, but there are no required obligations.")).

Defendants' alleged conduct "has harmed the market for the services of male [and female] professional tennis players" by depressing player compensation, depressing competition among tournaments that buy (or might buy) players' services and reducing the tournaments' output. (Compl. ¶¶ 303, 309.) Beyond disputing the allegation that there are in fact anticompetitive effects, Defendants will counter with, among other things, procompetitive benefits of the challenged conduct. To that end, the rule of reason analysis will likely require detailed analysis of what individual players actually earn (from, *e.g.*, sanctioned tournaments' purses; appearance fees; non-sanctioned tournaments; exhibition events; sponsorships and endorsements; and pension distributions from the Tours), the benefits to players and increases in compensation that players have earned as a result of the Tour formats, and what those players would earn in Plaintiffs' but-for world.

Particularly because each professional tennis player has a highly individualized earning capacity and market value—dependent on, among other things, the player's tennis ability, events played, and nationality—individual players will need to substantially participate in this lawsuit to give evidence on what they earn and what they could earn.[6] Thus, notwithstanding that the PTPA seeks equitable relief only, its claims turn on what are essentially damages questions, including whether players would be better paid in plaintiffs' but-for world. Answering these questions requires a degree of individual participation that forecloses associational standing. *Bano*, 361 F.3d at 714 (no associational standing where claim for injunctive relief required inquiry into individual members' injuries); *see also, e.g.*, *Massone v. Washington*, 2022 WL 2657168, at *7 (S.D.N.Y.

---

[6] For example, the earnings potential for a top-10 ranked women's singles player from a major European market is very different from a low-ranked men's doubles player from a small country—and each of these players' pay would be very differently affected by the restructuring (or dismantling) of organized professional tennis that Plaintiffs seek.

July 8, 2022) (no associational standing where "Plaintiff raises claims for injunctive relief that fundamentally concern individual Union members' health, medical conditions, and medical records"); *Lowell v. Lyft, Inc.*, 352 F. Supp. 3d 248, 256-57 (S.D.N.Y. 2018) (no associational standing for organization seeking declaratory relief that requires individual participation).[7]

*Second*, the PTPA serves no independent function in this lawsuit. In addition to the PTPA, there are twelve Tennis Player Plaintiffs. For both of Plaintiffs' alleged markets, each of the claims asserted by the PTPA is also asserted, identically, by a set of Tennis Player Plaintiffs. To the extent the PTPA "does not purport to represent the interests of any member not already party to the suit"—or any person in the would-be class that such party seeks to represent—"participation in the suit would be redundant." *Tanner-Brown v. Haaland*, 105 F.4th 437, 447 (D.C. Cir. 2024) (no associational standing because standing would not further "administrative convenience and efficiency"); *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 290 (3d Cir. 2014) (citation omitted) (no associational standing because "[p]ermitting the [association] to litigate this case on behalf of its members, when those members are already parties to the lawsuit in their own right, does not fulfill the Supreme Court's guidance to focus on 'administrative convenience and efficiency'" [under *Hunt*].); *see also, e.g.*, *Access 4 All, Inc. v. G & T Consulting Co., LLC*, 2008 WL 851918, at *9 (S.D.N.Y. Mar. 28, 2008) ("where [association's] claims are identical to those of the

---

[7]    Indeed, in addition to the damages questions, the complaint is rife with allegations that, to be proved or defended against, require participation by individual players. These include allegations that: players who do not advance to the quarterfinals of a tournament "typically face a net financial loss from their participation" (Compl. ¶ 139); players have been "forced . . . to reject offers for endorsement deals" (*id*. ¶ 153); players have been given fines that are "excessive and disproportionate" relative to their on-court conduct (*id*. ¶184 n. 28); investigators have "harass[ed] players . . . and threaten[ed] additional punishments for failing to 'cooperate' with investigative requests" (*id*. ¶ 245); players "have faced numerous obstacles when attempting to access their own match data" (*id*. ¶ 264).

9

individual plaintiffs in the case . . . dismissal of [its] claims for prudential reasons is appropriate."). Associational standing is an exception that gives "absent third parties" the ability to participate in a suit. *United Food & Com. Workers Union Local 751 v. Brown Grp.*, 517 U.S. 544, 556-57 (1996); *see also Hunt*, 432 U.S. at 343 (associational standing premised on claims members "*would otherwise*" be entitled to bring)(emphasis added). But associational standing serves no purpose here, where the PTPA's claimed interests are already represented by the allegedly *actually* injured parties, the Tennis Player Plaintiffs.

*Third*, the participation of the PTPA as a plaintiff would threaten unfair circumvention of Rule 23's requirements, particularly where, as here, the Tennis Player Plaintiffs are seeking to proceed as classes and do not claim to need the PTPA to represent its "members." "[A]ssociational standing subverts the class-action mechanism" because it "allows a party to effectively bring a class action without satisfying any of the ordinary requirements" of Rule 23. *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 402 (2024) (Thomas, J., concurring). Plaintiffs blur the distinction between the PTPA's would-be "members" and those that the PTPA merely aspires to represent. If Plaintiffs wish to broadly represent professional tennis players, they should be required to do so in accordance with the proper class-action mechanism, not via an organization that purports to, but does not, speak for the putative classes.[8]

## II. The PTPA Does Not Have Antitrust Standing.

The PTPA must also be dismissed for the additional reason that it does not adequately allege "it is a suitable plaintiff to pursue the alleged antitrust violations . . . [as] an 'efficient enforcer' of the antitrust laws," *Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C.*, 711 F.3d 68, 76 (2d

---

[8] Circumvention of the class-action mechanism would also raise serious issues about preclusion. PTPA "members" could strategically choose not to join this suit; assuming an adverse judgment against the PTPA would not bind such non-joining "members," they might then be able to sue in their own names, even after such an adverse judgment.

Cir. 2013), particularly because more direct and less speculative potential plaintiffs have already been identified. Antitrust standing, which includes the efficient-enforcer requirement, "is a threshold, pleading-stage inquiry" such that "when a complaint by its terms fails to establish this requirement [it] must [be] dismiss[ed] . . . as a matter of law." *Id*. at 75.

Whether a plaintiff is an efficient enforcer is determined by four factors, each of whose importance "will necessarily vary with the circumstances of particular cases"; and not all factors are necessary to find that a plaintiff is not an efficient enforcer. *In re Aluminum Warehousing Antitrust Litig.*, 2023 WL 7180648, at *2-3 (2d Cir. Nov. 1, 2023) (citation omitted) (finding two factors dispositive). The factors are: (1) "the directness or indirectness of the asserted injury"; (2) "the existence of more direct victims" or the "existence of an identifiable class of persons whose self-interest would normally motivate them to vindicate the public interest in antitrust enforcement"; (3) the extent to which the claim is "highly speculative"; and (4) "the importance of avoiding either the risk of duplicate recoveries on the one hand, or the danger of complex apportionment of damages on the other." *Id*. at *2; *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 443-445 (2d Cir. 1996) (affirming dismissal where plaintiff was not efficient enforcer). These factors favor dismissal.

*First*, directness is based on "familiar principles of proximate causation." *In re Am. Express Anti-Steering Rules Antitrust Litig.*, 19 F.4th 127, 139 (2d Cir. 2021) (quotation omitted). "[P]roximate cause generally follows the first-step rule," where injuries that happen "at the first step following the harmful behavior are considered proximately caused by that behavior." *Id.* at 139-40. Here, there is no *direct* relationship between Defendants' alleged conduct and the PTPA. The PTPA allegedly "provides protection and support" for players and "advocat[es] on behalf of" players, but it is tennis players themselves who *directly* engage with Defendants and who have

11

allegedly been injured. (Compl. ¶¶ 95, 97.) The PTPA's claims, derivative of players' claims, are not direct and are one step removed from the players' claims.

*Second*, there are more direct alleged "victims" than the PTPA (which does not even allege it was injured). These direct "victims" include players, as well as operators of professional tennis events, exhibitions, and unsanctioned tournaments who are allegedly being kept out of the market. (*See* Compl. ¶¶ 160, 176, 206-08.) These parties would have a more direct injury than the PTPA and their "self-interest would normally motivate them to vindicate the public interest in antitrust enforcement." *See Assoc. Gen. Contractors of Calif., Inc. v. Calif. State Council of Carpenters (AGC)*, 459 U.S. 519, 542 (1983) (quotation omitted).

*Third*, the PTPA's injuries are speculative, to the extent they even exist. It is simply not clear how the PTPA is injured at all or how it would prove injury.

*Fourth*, courts seek to avoid the risk of duplicate recovery and "complex apportionment" of damages. Here, as the PTPA is not seeking damages, this factor is neutral. But the presence of multiple parties exacerbates a broader concern about which party was injured by the alleged conduct, a concern that courts "may well dissipate—at least to some extent—if the plaintiff group is limited to those who transacted directly with Defendants." *In re Platinum & Palladium Antitrust Litig.*, 2017 WL 1169626, at *25 (S.D.N.Y. Mar. 28, 2017). Here, the Tennis Player Plaintiffs (and the putative classes) directly engaged with Defendants. There is no reason to have the PTPA serve as an enforcer of the antitrust laws, when other, *actually* allegedly injured plaintiffs are parties to this suit or can become parties via the class-action mechanism.

## CONCLUSION

The PTPA is not a proper plaintiff in this lawsuit. The PTPA lacks associational standing and antitrust standing, and the PTPA's presence in this lawsuit is not only redundant, but also an

improper attempt to circumvent class-action requirements. The PTPA should be dismissed as a plaintiff.

Dated: May 20, 2025

Respectfully Submitted,

/s/ Lawrence E. Buterman
Lawrence E. Buterman
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
lawrence.buterman@lw.com

Amanda P. Reeves (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
amanda.reeves@lw.com

Christopher S. Yates (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
Facsimile: (415) 395-8157
chris.yates@lw.com

*Counsel for Defendant WTA Tour, Inc.*

/s/ Bradley I. Ruskin*
Bradley I. Ruskin
Lee M. Popkin
Jordan B. Leader
**Proskauer Rose LLP**
11 Times Square
New York, NY 10036
Telephone: (212) 969-3000
bruskin@proskauer.com
lpopkin@proskauer.com
jleader@proskauer.com

Kyle A. Casazza
**Proskauer Rose LLP**
2029 Century Park East
Suite 2400
Los Angeles, CA 90067
Telephone: (310) 284-5677
kcasazza@proskauer.com

*Counsel for Defendant ATP Tour, Inc.*

/s/ Heather S. Nyong'o*
Heather S. Nyong'o (admitted *pro hac vice*)
**Cleary Gottlieb Steen & Hamilton LLP**
650 California Street Suite 2400
San Francisco, CA 94108
(415) 796-4480
hnyongo@cgsh.com

Joon H. Kim
**Cleary Gottlieb Steen & Hamilton LLP**

/s/ Heather P. Lamberg*
**FRESHFIELDS US LLP**
Heather P. Lamberg (*pro hac vice*)
Jan Rybnicek
Constance Forkner
700 13th Street NW, 10th Floor
Washington, DC 20005
Telephone: (202) 777-4797
Fax: (202) 777-4555
Email: heather.lamberg@freshfields.com

13

One Liberty Plaza  
New York, New York 10006  
(212) 225-2000  
jkim@cgsh.com  

Nowell D. Bamberger  
(*pro hac vice* forthcoming)  
**Cleary Gottlieb Steen & Hamilton LLP**  
2112 Pennsylvania Avenue, NW  
Washington, D.C. 20037  
(202) 974-1752  
nbamberger@cgsh.com  

*Counsel for Defendant International Tennis Federation Ltd.*

\* /s/ signature used with consent in accordance with ECF Rule 8.5(b)

CC: All Counsel of Record (via ECF)

Email: jan.rybnicek@freshfields.com  
Email: constance.forkner@freshfields.com  

*Counsel for Defendant International Tennis Integrity Agency Ltd.*

## CERTIFICATE OF COMPLIANCE

    I, Lawrence E. Buterman, certify that the foregoing memorandum of law contains 4,128 words, exclusive of captions, tables, certificates, and signature blocks, and including footnotes.

Dated: May 20, 2025

                                                        */s/ Lawrence E. Buterman*
                                                        Lawrence E. Buterman