May 20, 2025

Hon. Margaret M. Garnett
United States District Judge
Southern District of New York
40 Foley Square, Room 2102
New York, NY 10007

Re:   *Pospisil et al. v. ATP Tour, Inc. et al.,* No. 1:25-cv-02207-MMG (S.D.N.Y.) – Joint Letter Regarding Initial Case Management Conference

Dear Judge Garnett,

The parties submit this joint letter pursuant to Your Honor's Individual Rule II(A)(5) in advance of the case management conference scheduled for May 27, 2025 in the above-captioned case. ECF Nos. 16, 68.

## I. Statement of the Case

***Plaintiffs' Statement***:  A group of professional tennis players (the "Player Plaintiffs"), along with the Professional Tennis Players Association (the "PTPA," and together with the Player Plaintiffs, "Plaintiffs"), filed this putative class action against Defendants ATP Tour, Inc. ("ATP"), WTA Tour, Inc. ("WTA"), International Tennis Federation Ltd. ("ITF"), and International Tennis Integrity Agency Ltd. ("ITIA"), asserting four counts alleging unlawful conspiracies in restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. §1 *et seq.*, and four counts alleging unlawful monopolization or conspiracy to monopolize the sport of professional tennis in violation of Section 2 of the Sherman Act. The Player Plaintiffs also assert a claim for unjust enrichment. The ATP, WTA and ITF are the global governing bodies of professional tennis and, together, organize, schedule, and regulate the tournaments in which the Player Plaintiffs and putative class members compete. The Complaint alleges, *inter alia*, that the ATP, WTA and ITF orchestrated and entered into agreements with tournaments and with each other to, among other things, (1) fix the prize money that each tournament may award to professional tennis players and limit endorsements and sponsorships for players, (3) impose a schedule that precludes other independent tournaments from entering the market, (4) restrict the output of professional tennis tournaments by enforcing illegal non-competes against former and current tournaments, and (5) impose illegal arbitration and waiver provisions on players who wish to compete in tournaments. Plaintiffs also allege that the ATP and the WTA have illegally acquired and maintained monopolies in the markets for the services of male and female professional tennis players, respectively.

The Player Plaintiffs seek, *inter alia*, treble damages for the compensation they have lost by virtue of Defendants' unlawful actions and the disgorgement of all profits earned at their expense. Plaintiffs seek orders enjoining ATP, WTA, and ITF from conspiring in restraint of trade and enjoining all Defendants from monopolizing and conspiring to monopolize the markets for the services of male and female tennis players.

***Defendants' Statement***:  This is not a viable antitrust dispute, but rather an attempt by Plaintiffs to use the antitrust laws to materially alter virtually all aspects of the ATP and WTA Tours' formats and operations, and for PTPA to gain a seat at the table where the Tours make decisions, taking over the responsibilities of the representatives elected by the Tours' player members.  The ATP and the WTA each provide for player membership, representation, and decision-making participation across all aspects of the Tours.  Through their

respective structures and formats, ATP and WTA have developed and grown a worldwide circuit of tournaments and players, serving fans across the globe, enhancing the number and quality of events, growing compensation for players, and creating a product that can compete with other sports in a highly competitive sports and entertainment marketplace.

ATP and WTA dispute virtually all of the Complaint's material allegations. Moreover, many of the underlying issues Plaintiffs raise, including with respect to schedules and earnings, are ones that ATP and WTA have worked for years, and continue to work, to address. That plaintiffs purport to be dissatisfied with the progress made to date, or would prefer a different model for the Tours, does not mean that Defendants have violated the antitrust laws. Plaintiffs' claims against the ITF and ITIA are likewise misplaced. ITF is the global governing body for Tennis, not a competitor or alleged party to any anticompetitive agreement. And Plaintiffs' claims against the ITIA – an independent organization tasked with implementing anti-doping and anti-corruption rules – concern alleged "abusive" or "harassing" investigations, not exclusionary or anticompetitive conduct that has harmed competition.

## II. Anticipated Motions

***Plaintiffs' Motions***: At the appropriate time, Plaintiffs anticipate filing a motion for class certification pursuant to Fed. R. Civ. P. 23. Plaintiffs also may file discovery motions, motions *in limine*, *Daubert* motions, and/or a motion for summary judgment.

***Defendants' Motions***: Each defendant intends to move to dismiss the complaint, transfer venue or compel arbitration, as applicable. If granted, these motions would be dispositive of the claims and/or move claims to another court or to arbitration. Defendants also anticipate filing a motion to stay discovery.

## III. Settlement

The parties believe settlement discussions would be premature at this time but are open to engaging a private mediator to conduct formal settlement discussions at the appropriate time.

## IV. Case Schedule

The parties were unable to reach an agreement on a case schedule. The parties have attached a version of the Court's Civil Case Management Plan that contains their competing proposals as Exhibit A and a chart illustrating their respective proposed schedules as Exhibit B.

Notwithstanding the parties' disagreement on the overall case schedule, the parties do agree that, given (1) the nature of Plaintiffs' claims and (2) the necessity of obtaining discovery from various foreign defendants and third parties, discovery will require a longer period than the default schedule contemplated by Your Honor's model Civil Case Management Plan. The parties also agree that summary judgment and *Daubert* motions should be filed following the conclusion of—rather than before—expert discovery. Expert discovery and analysis with respect to the parties' proposed market definitions and other economic arguments will likely be relevant to issues for summary judgment. For these same reasons, the parties propose briefing *Daubert* motions simultaneously with summary judgment.

***Plaintiffs' Position***: Plaintiffs' proposed schedule provides dates certain for each of the deadlines required by the Court's Civil Case Management Plan. Plaintiffs respectfully submit that setting a date certain for each of the deadlines is critical to move this case forward. Given the scope of discovery that will be required—

including third party discovery and discovery from foreign defendants—an orderly process with firm deadlines is necessary for the Court to "establish[] early and continuing control so that the case will not be protracted because of lack of management." Fed. R. Civ. P. 16(a)(2).

Defendants' proposal to delay discovery until resolution of their forthcoming motions seeks a *de facto* stay of discovery. Plaintiffs expressly reserve the right to oppose any forthcoming motion to stay discovery. Further, Defendants' position assumes that they will be successful in challenging venue in this Court, but even if successful (which Plaintiffs dispute), Defendants' contemplated motions to compel arbitration or transfer venue would not entirely dispose of the case in this Court. And, contrary to Defendants' position, "fil[ing] an early dispositive motion does not in and of itself give rise to justification to warrant a stay." *Robbins v. Candy Digital Inc.*, 2024 WL 2221362, at *1 (S.D.N.Y. May 15, 2024). Thus, discovery should proceed during the pendency of Defendants' motions. *See In re Vitamin C Antitrust Litig.*, 237 F.R.D. 35, 38 (E.D.N.Y. 2006) (denying motion to stay discovery defendants argued was necessary to contain costs before they filed motions to dismiss); *Kwik Ticket Inc. by Shamah v. Spiewak*, 2020 WL 5658723, at *2 (E.D.N.Y. Sept. 23, 2020) ("[T]he mere existence of a motion to compel arbitration is an insufficient basis to stay discovery[.]")

Plaintiffs respectfully submit that setting a briefing schedule for class certification is premature given that no discovery has taken place. In light of Rule 23's mandate that the motion should be made at "an early practicable time," Plaintiffs propose the parties meet and confer during the course of discovery to discuss an appropriate briefing schedule for class certification, which briefing should occur before expert discovery ends.

***Defendants' Position:*** Defendants believe that discovery should be stayed pending resolution of Defendants' motions. If granted, Defendants' motions could result in significant portions of this matter being sent to arbitration, transferred, or dismissed altogether, narrowing the defendants and/or claims remaining in this matter, which could in turn eliminate the need for discovery (or at a minimum, narrow the scope of appropriate discovery). Under such circumstances, Defendants respectfully submit it would be inappropriate and inefficient to begin discovery in this Court. *See, e.g.*, *Intertec Contracting Turner v. Turner Steiner Int'l*, 2001 WL 812224, at *7 (S.D.N.Y. 2001) (describing a stay of discovery pending a motion to compel arbitration as "the general practice of district courts."); *see also Coinbase, Inc. v. Bielski*, 599 U.S. 736, 743 (2023) ("Absent a stay, parties could also be forced to settle to avoid the district court proceedings (including discovery and trial) that they contracted to avoid through arbitration.").

A stay of discovery is particularly warranted given the broad nature of Plaintiffs' allegations (which essentially challenge the very foundations of organized professional tennis) and the associated cost and burden of anticipated discovery to the parties. Fact discovery could involve dozens of tennis tournaments and dozens (if not more) of players (foreign and domestic), span many years, and cover a wide array of issues.

If this case proceeds beyond the motion-to-dismiss stage, Plaintiffs' proposed schedule does not afford the parties adequate time for each successive phase of the litigation. For example, Plaintiffs do not include deadlines for class certification briefing or otherwise account for the class certification process. Merits and damages expert discovery will essentially require a holistic evaluation of the procompetitive and market benefits of organized tennis, as well as an analysis of but-for players earnings in a radically re-organized tennis landscape. The parties need sufficient time to complete fact and expert discovery in this complex, putative class action, antitrust lawsuit.

We look forward to appearing before Your Honor for the initial pretrial conference next week.

Respectfully submitted,

*/s/ Andrew S. Tulumello*

Andrew S. Tulumello
*Counsel for Plaintiffs*
(admitted *pro hac vice*)

   cc:     all counsel of record (via ECF)