## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VASEK POSPISIL, NICHOLAS KYRGIOS, ANASTASIA RODIONOVA, NICOLE MELICHAR-MARTINEZ, SAISAI ZHENG, SORANA CÎRSTEA, JOHN-PATRICK SMITH, NOAH RUBIN, ALDILA SUTJIADI, VARVARA GRACHEVA, TENNYS SANDGREN, and REILLY OPELKA, on behalf of themselves and all others similarly situated, <br><br> -and- <br> THE PROFESSIONAL TENNIS PLAYERS ASSOCIATION, <br>            Plaintiffs, <br><br>      *v.* <br><br> ATP TOUR, INC., WTA TOUR, INC., INTERNATIONAL TENNIS FEDERATION LTD., and INTERNATIONAL TENNIS INTEGRITY AGENCY LTD., <br>           Defendants. | Case No. 1:24-cv-00207-MMG <br><br> **ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ATP TOUR INC.'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO SEVER CLAIMS AGAINST ATP UNDER F.R.C.P. 21, AND <u>TRANSFER PURSUANT TO 28 U.S.C. § 1404(A)</u>**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

FACTUAL BACKGROUND .............................................................................................. 2

ARGUMENT ....................................................................................................................... 5

I.      The Forum Selection Clause Requires Dismissal of All Claims Against ATP ................. 5

    A.      The ATP Forum Selection Clause Was Reasonably Communicated .................... 7

    B.      The ATP Forum Selection Clause Is Mandatory Rather Than Permissive ............ 9

    C.      The ATP Forum Selection Clause Encompasses The ATP Plaintiffs' Claims ....... 9

    D.      The ATP Forum Selection Clause Is Not Unreasonable, Unjust, or Invalid ........ 11

II.     In the Alternative, Claims Against ATP Should Be Severed and Transferred
    to Delaware .................................................................................................................. 17

III.    To The Extent Any Non-ATP Plaintiffs Purport To State Claims Against ATP, Those
    Claims Should Be Dismissed As Legally Insufficient ................................................... 22

CONCLUSION .................................................................................................................. 25

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aguas Lenders Recovery Grp. v. Suez, S.A.*,
    585 F.3d 696 (2d Cir. 2009)......................................................................................10

*Allianz Glob. Corp. & Specialty v. Chiswick Bridge*,
    2014 WL 6469027 (S.D.N.Y. Nov. 17, 2014)..........................................................15

*Amyndas Pharms., S.A. v. Zealand Pharma A/S*,
    48 F.4th 18 (1st Cir. 2022).......................................................................................15

*Anwar v. Fairfield Greenwich Ltd.*,
    742 F. Supp. 2d 367 (S.D.N.Y. 2010).........................................................................7

*Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Texas*,
    571 U.S. 49 (2013)........................................................................................... passim

*ATP Tour, Inc. v. Deutscher Tennis Bund*,
    91 A.3d 554 (Del. 2014)............................................................................................6

*Bahl v. N.Y. Coll. of Osteopathic Med. of N.Y. Inst. of Tech.*,
    2017 WL 5479655 (E.D.N.Y. Mar. 31, 2017)...........................................................8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................23, 24, 25

*Bense v. Interstate Battery Sys. of Am., Inc.*,
    683 F.2d 718 (2d Cir. 1982).....................................................................................10

*Boilermakers Loc. 154 Ret. Fund v. Chevron Corp.*,
    73 A.3d 934 (Del. Ch. 2013)....................................................................................13

*Brodsky v. Match.com LLC*,
    2009 WL 3490277 (S.D.N.Y. Oct. 28, 2009)..........................................................13

*Carnival Cruise Lines, Inc. v. Shute*,
    499 U.S. 585 (1991)..........................................................................................12, 14

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002)......................................................................................2

*Crede CG III, Ltd. v. 22nd Century Grp., Inc.*,
    2017 WL 280818 (S.D.N.Y. Jan. 20, 2017) ..................................................... passim

*Cuhadar v. Savoya, LLC*,
   2025 WL 510870 (E.D.N.Y. Feb. 17, 2025)..............................................................5, 6, 8, 9

*Deutscher Tennis Bund, et al. v. ATP, et al.*,
   No. 07-cv-00178-GMS (D. Del. Mar. 28, 2007), ECF No. 1 ....................................................14

*Fteja v. Facebook, Inc.*,
   841 F. Supp. 2d 829 (S.D.N.Y. 2012)......................................................................................7

*FuboTV Inc., et al., v. The Walt Disney Company, et al.*,
   No. 1:24-cv-01363-MMG (S.D.N.Y. January 14, 2025)..........................................................21

*Glasper v. St. James Wellness Rehab & Villas, LLC*,
   2023 WL 3864580 (N.D. Ill. June 7, 2023) .............................................................................18

*HC&D, LLC v. Precision NDT & Consulting, LLC*,
   698 F. Supp. 3d 180 (D. Mass. 2023) ....................................................................................18

*Hill Int'l, Inc. v. Opportunity Partners L.P.*,
   119 A.3d 30 (Del. 2015) ..........................................................................................................6

*In re Aluminum Warehousing Antitrust Litig.*,
   833 F.3d 151 (2d Cir. 2016).....................................................................................................23

*In re Elevator Antitrust Litig.*,
   502 F.3d 47 (2d Cir. 2007).......................................................................................................23

*In re Howmedica Osteonics Corp.*,
   867 F.3d 390 (3d Cir. 2017)........................................................................................16, 19, 22

*In re Rolls Royce Corp.*,
   775 F.3d 671 (5th Cir. 2014) ......................................................................................19, 21, 22

*Jones v. Ponant USA LLC*,
   2020 WL 2489076 (S.D.N.Y. May 14, 2020) ............................................................................9

*Long Island Anesthesiologists PLLC v. United Healthcare Ins. Co. of N.Y. Inc.*,
   2025 WL 1031093 (E.D.N.Y. Apr. 7, 2025) ...........................................................................25

*M/S Bremen v. Zapata Off-Shore Co.*,
   407 U.S. 1 (1972).................................................................................................................6, 12

*Magi XXI, Inc. v. Stato della Citta del Vaticano*,
   714 F.3d 714 (2d Cir. 2013)..................................................................................................6, 10

*Magi XXI, Inc. v. Stato Della Citta Del Vaticano*,
   818 F. Supp. 2d 597 (E.D.N.Y. 2011), *aff'd*, 714 F.3d 714 (2d Cir. 2013).............................8

*Martinez v. Bloomberg LP*,
   740 F.3d 211 (2d Cir. 2014)............................................................................9, 11

*Mayor of Baltimore v. Citigroup, Inc.*,
   709 F.3d 129 (2d Cir. 2013)..................................................................................23

*McDonald's Corp. v. Easterbrook*,
   2021 WL 351967 (Del. Ch. Feb. 2, 2021) ..............................................................9

*Midamines SPRL Ltd. v. KBC Bank NV*,
   2014 WL 1116875 (S.D.N.Y. Mar. 18, 2014), *aff'd*, 601 F. App'x 42 (2d Cir.
   2015) ........................................................................................................................7

*New Moon Shipping Co. v. MAN B & W Diesel AG*,
   121 F.3d 24 (2d Cir. 1997).....................................................................................7

*Ortho-Clinical Diagnostics, Inc. v. Mazuma Cap. Corp.*,
   2019 WL 1082987 (W.D.N.Y. Mar. 7, 2019).......................................................17

*Overseas Ventures, LLC v. ROW Mgmt., Ltd.*,
   2012 WL 5363782 (S.D.N.Y. Oct. 26, 2012) .......................................................10

*Paduano v. Express Scripts, Inc.*,
   55 F. Supp. 3d 400 (E.D.N.Y. 2014) ......................................................15, 18, 22

*Perma-liner Indus., LLC v. D'hulster*,
   2021 WL 951185 (D. Del. Mar. 12, 2021) ..............................................................9

*Person v. Google Inc.*,
   456 F. Supp. 2d 488 (S.D.N.Y. 2006)...............................................................8, 13

*Peterson v. Tiffin Motor Homes, Inc.*,
   2019 WL 6320341 (W.D.N.Y. Nov. 26, 2019) .....................................................13

*Phillips v. Audio Active Ltd.*,
   494 F.3d 378 (2d Cir. 2007)........................................................................ passim

*Press v. Primavera*,
   685 F.Supp.3d 216 (S.D.N.Y. 2023)......................................................................14

*Prime Int'l Trading, Ltd. v. BP P.L.C.*,
   784 F. App'x 4 (2d Cir. 2019) ...............................................................................23

*RedHawk Holdings Corp. v. Craig Invs., LLC*,
   2016 WL 6143355 (S.D.N.Y. Oct. 19, 2016) ..................................................10, 11

*Reed Int'l, Inc. v. Afg Int'l Bank*,
   657 F. Supp. 3d 287 (S.D.N.Y. 2023).....................................................................8

*Relevent Sports, LLC v. United States Soccer Fed'n, Inc.*,
   61 F.4th 299 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 1391 (2024)........................................24

*Rivera v. Centro Medico de Turabo, Inc.*,
   575 F.3d 10 (1st Cir. 2009) ...................................................................................................12

*Scherk v. Alberto-Culver Co.*,
   417 U.S. 506 (1974).............................................................................................................12

*Silva v. Encyclopedia Britannica Inc.*,
   239 F.3d 385 (1st Cir. 2001) ...........................................................................................13, 14

*SSAB Ala., Inc. v. Kem-bonds, Inc.*,
   2017 WL 6345809 (S.D. Ala. Dec. 12, 2017) .......................................................................7

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
   547 F.3d 406 (2d Cir. 2008)................................................................................................14

*Tianhai Lace USA Inc. v. Forever 21, Inc.*,
   2017 WL 4712632 (S.D.N.Y. Sept. 27, 2017)..................................................................3, 19

*TradeComet.com LLC v. Google, Inc.*,
   647 F.3d 472 (2d Cir. 2011)..........................................................................................5, 6, 17

*TradeComet.com LLC v. Google, Inc.*,
   693 F. Supp. 2d 370 (S.D.N.Y. 2010), *aff'd in part*, 647 F.3d 472 (2d Cir.
   2011) ....................................................................................................................................10

*United States ex rel. D.D.S. Indus., Inc. v. Nauset Constr. Corp.*,
   2018 WL 5303036 (D. Mass. Oct. 25, 2018).......................................................................18

*Valspar Corp. v. E.I. DuPont de Nemours and Co.*,
   15 F. Supp 3d 928 (D. Minn. 2014)..........................................................................18, 19, 22

*Weingard v. Telepathy, Inc.*,
   2005 WL 2990645 (S.D.N.Y. Nov. 7, 2005)........................................................................11

*Wyndham Assocs. v. Bintliff*,
   398 F.2d 614 (2d Cir. 1968)................................................................................................18

*Zurich Ins. Co. v. Prime, Inc.*,
   419 F. Supp. 2d 384 (S.D.N.Y. 2005)....................................................................................5

## STATUTES AND OTHER AUTHORITIES

28 U.S.C. § 1404................................................................................................... passim

Fed. R. Civ. P. 12(b)(6)......................................................................................... passim

Fed. R. Civ. P. 21 ...........................................................................................................1, 1, 17, 18

Fed. R. Civ. P. 23(d) .................................................................................................................21

Defendant ATP Tour, Inc. ("ATP") respectfully submits this memorandum in support of its motion dismiss pursuant to Fed. R. Civ. P. 12(b)(6), or, in the alternative, to sever pursuant to Fed. R. Civ. P. 21 and transfer to the District of Delaware pursuant to 28 U.S.C. § 1404(a), all claims against ATP, as required under the mandatory forum selection clause of the ATP Bylaws, and to dismiss any claims brought by plaintiffs who played only on the WTA Tour, pursuant to Fed. R. Civ. P. 12(b)(6).

## INTRODUCTION

The ATP Bylaws contain a forum selection clause designating Delaware Courts as the exclusive jurisdiction for "any dispute or controversy" between the ATP and its player and tournament members or anyone making a claim on their behalf.  There is a strong federal policy, repeatedly reaffirmed in the Second Circuit, of enforcing such forum selection clauses.  In contravention of this clause, six ATP player members (the "ATP Named Plaintiffs") and the Professional Tennis Players Association ("PTPA"), an organization purporting to represent the interests of ATP player members (together with ATP Named Plaintiffs and the putative "ATP Class," the "ATP Plaintiffs"), filed their claims against ATP in the wrong court.  They should not be permitted to maintain those claims in this jurisdiction.

The mandatory forum selection clause was reasonably communicated to the ATP Named Plaintiffs, it unambiguously covers their antitrust claims, and it is valid, enforceable, and binding on both the ATP Named Plaintiffs and on the PTPA, who claims to represent those same players. Moreover, Plaintiffs expressly reference and rely on the WTA Bylaws forum selection clause as a basis for jurisdiction and venue over the WTA in New York.  Compl. ¶¶ 42, 46.  Having recognized the enforceability and validity of that provision, the ATP Named Plaintiffs and PTPA cannot circumvent the materially indistinguishable exclusive forum provision agreed to by ATP and the

ATP Named Plaintiffs.  Those parties' claims against ATP should be dismissed and refiled in Delaware if those parties want to pursue them.

None of the remaining Plaintiffs could ever state a viable antitrust claim against ATP.  The Complaint fails to assert an antitrust injury suffered by women's professional tennis players as a result of ATP's purported conduct because they do not participate in ATP's market (as alleged in the Complaint).  Further, the Complaint fails to plausibly allege any conspiracy between the WTA and ATP, two entities which indisputably do not compete with one another for players' services.

In short, there is no valid reason to keep ATP in this forum, and doing so would be in contravention of the Supreme Court's mandate to enforce forum selection clauses except under only the most "exceptional" circumstances.  This is not an exceptional case, and any claims against ATP should not be litigated in this forum.

## FACTUAL BACKGROUND

ATP, which operates a men's professional tennis tour, is a Delaware non-profit corporation with two groups of members: men's professional tennis players ("Player Members") and organizers of men's professional tennis tournaments ("Tournament Members").  Ex. A[1], 2023 ATP Bylaws, § 3.1, Ex. B, 2024 ATP Bylaws, (same).[2]  ATP is governed by a Board of Directors

---

[1]    Exhibits A-D cited herein are the exhibits attached to the Declaration of Bradley I. Ruskin and Exhibits 1-2 cited herein are the exhibits attached to the Declaration of Mark V. Young filed in support of this motion.

[2]    On a motion to dismiss, the Court may consider any "statements or documents incorporated in [the complaint] by reference," and "[e]ven where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (internal citation omitted) (where complaint made repeated reference to contracts, and claims were grounded in the terms of those contracts, the contracts were properly considered on Rule 12(b) motion).  The January 1, 2023, ATP Bylaws ("2023 ATP Bylaws"), attached as Exhibit A, and the 2025 ATP Rulebook, attached as Exhibit C, are referenced and quoted throughout the Complaint (*see, e.g.*, Complaint at p. 23, nn. 3 and 4).  Indeed, the Complaint alleges that each cause of action for violation of Sections 1 and 2 of the

consisting of nine voting members—four are elected by Player Members, like the ATP Player Plaintiffs, four are elected by Tournament Members, and the ninth Board member is ATP's Chairman.  Ex. D, Certificate of Incorporation. EIGHTH, (a)-(d);[3]  Compl. ¶ 67.  Amending the ATP Bylaws requires agreement by the Player Members' elected representatives.  Ex. A, 2023 ATP Bylaws § 12.9(a)(vi); Ex. B, 2024 ATP Bylaws (same).

**Players' Express Consent to ATP Rules**

Each year, male tennis players who wish to participate in ATP Tour Tournaments sign a Consent and Agreement Form, agreeing to "comply with and be bound by all of the provisions of [that year's] ATP OFFICIAL RULEBOOK, ATP Tour, Inc.'s ('ATP') By-Laws, resolutions and regulations (the 'ATP Rules')" and verifying that they "had an opportunity to review the ATP Rules[.]" Ex. C, 2025 ATP Rulebook, 1.07(A)(5) (Player Entry and Commitment to Rules); Ex. C, pp. 349-351 (Consent and Agreement Form), *see also* Compl. ¶¶ 73, 269 (player members "must pay ATP membership dues and must sign a Consent and Agreement Form, a contract that purports to bind players to the ATP's rules, Bylaws, resolutions, and regulations[.]").  For the 2022 season, ATP began facilitating the execution of the Consent and Agreement Form electronically, by requiring players to sign the form through PlayerZone before using that platform to enter ATP events.  *See* Decl. of Mark V. Young, ¶¶ 3-6, and Ex. 1.  Alternatively, players could still sign a

---

Sherman Act is, as to ATP, effectuated through and evidenced by the ATP Bylaws and Rulebook. *See, e.g.*, Compl. ¶ 361. Because the Complaint alleges continuing violations of the Sherman Act, it necessarily implicates the ATP Bylaws currently in effect, which are the September 24, 2024, ATP Bylaws ("2024 ATP Bylaws"), attached as Exhibit B.  Because the 2023 ATP Bylaws, 2024 ATP Bylaws, and 2025 ATP Rulebook are incorporated by reference and integral to the Complaint, they are properly considered in connection with this motion to dismiss.

[3]      On a "motion for transfer, the Court assumes allegations in the Complaint to be true, but may also look to evidence outside of the Complaint[.]" *Tianhai Lace USA Inc. v. Forever 21, Inc.*, 2017 WL 4712632, at *2 (S.D.N.Y. Sept. 27, 2017).

hard copy on-site, if they did not use PlayerZone to enter that event. *Id.*, ¶ 5. Each of the ATP Named Plaintiffs signed a hard copy Consent and Agreement Form for the last season where hard copies were required (2021), and thereafter signed either electronically or on-site for each of the years in which that player entered ATP events. *Id.*, ¶¶ 7-9, and Ex. 2.

As a Condition of Membership under the Bylaws, "[e]ach member of the League, by accepting and maintaining his, her or its membership therein: … (f) agrees to abide by all of the terms and provisions of the Certificate of Incorporation of the League, the ATP Tour Rules and these Bylaws, as the same may be in effect from time to time." Ex. B, 2024 ATP Bylaws, § 3.2(f); Ex. A, 2023 ATP Bylaws, (same). Additionally, the ATP Rulebook provides that "[a]ny player who is included in the PIF ATP Rankings for singles . . . or the PIF ATP Doubles Rankings and/or commits to enter or participates in any ATP Tour or ATP Challenger Tour tournament consents and agrees . . . [t]o comply with and be bound by all of the provisions of the 2025 ATP Official Rulebook and ATP By-Laws[.]" Ex. C, ATP Rulebook § 1.07.

**ATP Forum Selection Clause**

The ATP Bylaws include a straightforward forum selection clause, providing that "the Delaware Courts shall have exclusive jurisdiction over <u>any</u> dispute or controversy between any Claiming Party[4] and the League or any member[.]" Ex. B, 2024 ATP Bylaws, § 23.1(c) (emphasis added); Ex. A, 2023 ATP Bylaws, § 23.1(c) (identical).

**Plaintiffs' Claims**

The Complaint asserts claims on behalf of male and female professional tennis players. The ATP Named Plaintiffs are each "male professional tennis player[s]" who currently or formerly

---

[4]     "Claiming Party" is defined to include any "current or prior member or Owners or anyone on their behalf[.]" ATP Bylaws § 23.1(b).

played on the ATP Tour.  *See* Compl. ¶¶ 20-21, 26-27, 30-31.  The Complaint further defines a putative "ATP Class" to include "[a]ll current, former, and future tennis players who compete in, or competed in, any ATP-sanctioned tennis tournament between the date of this Complaint through the date of final judgment in this matter" (together with the ATP Named Plaintiffs, the "ATP Player Plaintiffs").  Compl. ¶ 311.

The WTA Named Plaintiffs are each "female professional tennis player[s]" who currently or formerly played on the WTA Tour, not the ATP Tour (Anastasia Rodionova, Nicole Melichar-Martinez, Saisai Zheng, Sorana Cirstea, Aldila Sutjiadi, and Varvara Gracheva).  *See* Compl. ¶¶ 22-25, 28-29.  The putative WTA Class includes "[a]ll current, former, and future tennis players who compete in, or competed in, any WTA-sanctioned tennis tournament between the date of this Complaint through the date of final judgment in this matter."  Compl. ¶ 312.

## ARGUMENT

## I.    The Forum Selection Clause Requires Dismissal of All Claims Against ATP

The Supreme Court has made clear that "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases."  *Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 63 (2013) (citation omitted).  Consistent with that pronouncement, courts in the Second Circuit have "construed *Atlantic Marine* to permit Rule 12(b)(6) to be used to seek dismissal based on a forum selection clause."  *Cuhadar v. Savoya, LLC*, 2025 WL 510870, at *4 (E.D.N.Y. Feb. 17, 2025) (citing cases); *see also TradeComet.com LLC v. Google, Inc.*, 647 F.3d 472, 475 (2d Cir. 2011) ("The enforcement of a forum selection clause through a Rule 12(b) motion to dismiss is a well-established practice, both in this Circuit and others.").  "[T]he Court of Appeals for the Second Circuit has developed a policy of honoring forum selection clauses."  *Zurich Ins. Co. v. Prime, Inc.*, 419 F. Supp. 2d 384, 387 (S.D.N.Y. 2005).

A forum selection clause within a contract is "*prima facie* valid and should be enforced[.]" *TradeComet.com*, 647 F.3d at 475 (*quoting M/S Bremen v. Zapata Off-Shore Co*., 407 U.S. 1, 10 (1972)). As a preliminary matter, the ATP Bylaws are binding on its members, and the forum selection clause is therefore within a valid and enforceable contract. Under Delaware law, bylaws "apply to all members of a non-stock corporation regardless of whether the bylaw was adopted before or after the member in question became a member." *ATP Tour, Inc. v. Deutscher Tennis Bund*, 91 A.3d 554, 555, 557 n.10 (Del. 2014); *Hill Int'l, Inc. v. Opportunity Partners L.P*., 119 A.3d 30, 38 (Del. 2015) ("The bylaws of a Delaware corporation constitute part of a binding broader contract among the directors, officers and stockholders[.]").

The Second Circuit employs a four-part test in determining whether to <u>dismiss</u> a claim based on a forum selection clause. *See Phillips v. Audio Active Ltd*., 494 F.3d 378, 383-84, 386-87 (2d Cir. 2007) (affirming dismissal pursuant to enforceable forum selection clause); *Cuhadar*, 2025 WL 510870 at *5 (granting 12(b)(6) motion to enforce forum selection clause). "To determine whether there is an enforceable forum selection clause, courts in this Circuit consider the following factors: (1) whether the clause was reasonably communicated to the party resisting enforcement; (2) whether the clause is mandatory or permissive, for example, whether the parties are required to bring any dispute to the designated forum or simply permitted to do so; and (3) whether the claims and parties involved in the suit are subject to the forum selection clause." *Id.* (citation omitted). "If these factors are satisfied, the forum selection clause is deemed 'presumptively enforceable' and can be overcome only by a 'sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Id.* (citation omitted); *accord Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 721 (2d Cir. 2013) (enforcing forum selection clause against sublicensee).

Where there is a valid forum selection clause, "the plaintiff's choice of forum merits no weight." *Atl. Marine*, 571 U.S at 63–64. Indeed, courts "routinely [find] that *Atlantic Marine* calls for enforcement of the forum-selection clause, notwithstanding objections grounded in fears of duplicative litigation or judicial economy." *SSAB Ala., Inc. v. Kem-bonds, Inc*., 2017 WL 6345809, at *6 (S.D. Ala. Dec. 12, 2017) (collecting cases). The "burden [is] on the plaintiff[s], who brought suit in a forum other than the one designated by the forum selection clause, to make a 'strong showing' in order to overcome the presumption of enforceability." *New Moon Shipping Co. v. MAN B & W Diesel AG*, 121 F.3d 24, 28-29 (2d Cir. 1997) (explaining standard on motion to dismiss); *accord Atl. Marine*, 571 U.S at 63 ("[A]s the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted.").

That heavy burden has not been met.

### A.   The ATP Forum Selection Clause Was Reasonably Communicated

"A clause is reasonably communicated to a party where the party signs an agreement that explicitly directs the party to the clause." *Midamines SPRL Ltd. v. KBC Bank NV*, 2014 WL 1116875, at *3-4 (S.D.N.Y. Mar. 18, 2014), *aff'd*, 601 F. App'x 42 (2d Cir. 2015) (plaintiff bound by forum-selection clause in general terms and conditions by signing application that referenced them); *see also Fteja v. Facebook, Inc*., 841 F. Supp. 2d 829, 839-840 (S.D.N.Y. 2012) (plaintiff bound by forum-selection clause included in website's terms of use where terms of use were referenced on website's sign-up page); *Anwar v. Fairfield Greenwich Ltd*., 742 F. Supp. 2d 367, 372-73 (S.D.N.Y. 2010) (plaintiffs bound by forum-selection clause in banking agreement because they signed account applications specifically referring to agreement).

Here, that standard is met. By signing the Consent and Agreement Form, the ATP Player Plaintiffs expressly acknowledged that they had the opportunity to review the ATP Bylaws and

ATP Rulebook, and agreed to be bound by them.  Ex. C, ATP Rulebook, pp. 349-351; Compl. ¶ 73.  The forum selection clause is as prominent as all other sections in the ATP Bylaws, and the heading "Jurisdiction and Venue" is easily found in the Table of Contents.  Ex. A, 2023 ATP Bylaws, p. 6, Ex. B, 2024 ATP Bylaws (same).  *See Magi XXI, Inc. v. Stato Della Citta Del Vaticano*, 818 F. Supp. 2d 597, 605 (E.D.N.Y. 2011), *aff'd*, 714 F.3d 714 (2d Cir. 2013) (finding forum selection clauses in agreements reasonably communicated because they were "clearly and unambiguously phrased, and appear[ed] in standard font in the main body of each contact").  The ATP Rulebook separately provides that any player included in the ATP rankings agrees to be bound by the ATP Bylaws.  Ex. C, ATP Rulebook § 1.07.  Those manners of notice, coupled with members' express acknowledgement, exceed what the case law requires.  *See, e.g.*, *Bahl v. N.Y. Coll. of Osteopathic Med. of N.Y. Inst. of Tech.*, 2017 WL 5479655, at *5 (E.D.N.Y. Mar. 31, 2017) (holding that a clickwrap forum selection clause was reasonably communicated); *Person v. Google Inc.*, 456 F. Supp. 2d 488, 493 (S.D.N.Y. 2006) (same).

Having filed litigation specifically citing and challenging the ATP Bylaws,[5] the ATP Plaintiffs have no good grounds to claim that the forum selection clause, "contained in the main body of the agreement in standard font and in formatting conventions consistent with the rest of the contract," was not reasonably communicated to them.  *See Cuhadar*, 2025 WL 510870 at *6 (citing cases); *Reed Int'l, Inc. v. Afg Int'l Bank*, 657 F. Supp. 3d 287, 306-07 (S.D.N.Y. 2023) (forum selection clause was reasonably communicated to plaintiff because "pleadings acknowledge an awareness of the operative clauses and [plaintiff] relies on those documents in its complaint").

---

[5]    The Complaint's citations to specific sections of the ATP Bylaws eliminate any doubt that the ATP Plaintiffs received them.  *See*, *e.g.*, Compl. ¶ 142, n. 19 (citing 2023 ATP Bylaws, Art. III, § 3.2(e)), Compl. ¶ 228 (citing to and relaying content of ATP Bylaws § 5.16).

B.    The ATP Forum Selection Clause Is Mandatory Rather Than Permissive

Under Delaware law,[6] clauses plainly stating that Delaware shall have "exclusive jurisdiction" of a forum are mandatory.  *See, e.g.*, *McDonald's Corp. v. Easterbrook*, 2021 WL 351967, at *3 (Del. Ch. Feb. 2, 2021) (finding mandatory a clause stating that the parties "submit to and consent to the exclusive jurisdiction" of the forum state); *Perma-liner Indus., LLC v. D'hulster*, 2021 WL 951185, at *4 (D. Del. Mar. 12, 2021) (finding mandatory a clause providing for "the exclusive jurisdiction of the state and federal courts located in the State of Delaware for any dispute arising under or relating to this Agreement") (citation omitted).

The forum selection clause in the ATP Bylaws states, "the Delaware Courts *shall* have exclusive jurisdiction over any dispute or controversy between any Claiming Party and the League or any member."  Ex. A, 2023 ATP Bylaws, § 23.1 (emphasis added); Ex. B, 2024 ATP Bylaws, § 23.1 (same).  It is mandatory, not permissive.

C.    The ATP Forum Selection Clause Encompasses The ATP Plaintiffs' Claims

For this factor, "the Court must analyze 'the breadth and specificity' of the provision's language."  *Cuhadar*, 2025 WL 510870 at *7.  The forum selection clause here gives Delaware Courts "exclusive jurisdiction over any dispute or controversy between any Claiming Party and the League or any member."  Ex. A, 2023 ATP Bylaws, § 23.1, Ex. B, 2024 ATP Bylaws, § 23.1 (same).  There are no limitations as to the type of claim subject to the clause.  Accordingly, all claims brought by the ATP Named Plaintiffs against ATP are subject to the forum selection clause.  *See, e.g.*, *Jones v. Ponant USA LLC*, 2020 WL 2489076, at *1, 6-7 (S.D.N.Y. May 14, 2020)

---

[6]    "In answering the *interpretive* questions posed by parts two and three of the four-part framework," courts will typically "apply the body of law selected in an otherwise valid choice-of-law clause."  *Martinez v. Bloomberg LP*, 740 F.3d 211, 217–18 (2d Cir. 2014).  The laws of the state of Delaware therefore apply.  Ex. A, 2023 ATP Bylaws, § 23.2, Ex. B, 2024 ATP Bylaws (same).

(forum selection clause granting exclusive jurisdiction over "any proceedings initiated against [defendant]" was "not limited to proceedings based on specific types of claims," and therefore encompassed intentional and negligent misrepresentation claims). *See also Bense v. Interstate Battery Sys. of Am., Inc.*, 683 F.2d 718, 720 (2d Cir. 1982) (holding that a forum selection clause that applied to "causes of action arising directly or indirectly from [the agreement]" covered federal antitrust actions); *TradeComet.com LLC v. Google, Inc.*, 693 F. Supp. 2d 370, 380 (S.D.N.Y. 2010), *aff'd in part*, 647 F.3d 472 (2d Cir. 2011) (same); *Magi XXI*, 714 F.3d at 724 (forum selection clauses applying to "any 'disagreements' between [the parties]" encompassed unjust enrichment claims).

The forum selection clause also applies to PTPA's claims against ATP, even though the PTPA is not a signatory, because the PTPA purports to be bringing claims on behalf of ATP's player members. Under the ATP Bylaws, anyone purporting to bring a claim on behalf of a current or former member is also bound by the dispute resolution provisions, including the forum selection clause, in the ATP Bylaws. *See* Ex. A, 2023 ATP Bylaws at 23.1(b) (defining "Claiming Party" to include any "current or prior member or Owners or anyone on their behalf[.]"); Ex. B, 2024 ATP Bylaws (same). In the Second Circuit, "forum selection clauses may bind non-signatories; the argument that 'a party is a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause.'" *RedHawk Holdings Corp. v. Craig Invs., LLC*, 2016 WL 6143355, at *4 (S.D.N.Y. Oct. 19, 2016) (finding non-signatory defendant bound by forum selection clause), *citing Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 701 (2d Cir. 2009). "In determining whether a non-signatory is bound, courts look to whether the non-signatory is so 'closely related to the dispute . . . that it becomes foreseeable that it will be bound.'" *Id.*, *citing Overseas Ventures, LLC v. ROW Mgmt., Ltd.*, 2012 WL 5363782, at *5 (S.D.N.Y. Oct.

26, 2012). "[A] non-signatory is 'closely related' to a dispute if his 'interests are completely derivative of and directly related to, if not predicated upon the signatory party's interests or conduct.'" *Id.*, *citing Weingard v. Telepathy, Inc.*, 2005 WL 2990645, at *5 (S.D.N.Y. Nov. 7, 2005).

Here, PTPA purports to bring this suit solely on behalf of the players it allegedly advocates for (who are signatories to the agreement), and the PTPA's claims are entirely derivative of the players' claims, which arise under the ATP Rulebook and ATP Bylaws. *See, e.g.*, Compl. ¶ 324 ("Defendants' imposition of illegal restraints, web of anticompetitive agreements, and exercise of monopsony power have inflicted irreparable harm on Player Plaintiffs . . . the PTPA's members, and members of the Classes.") (each of which is allegedly effectuated through and evidenced by the ATP Rulebook and Bylaws). *See also* ECF Nos. 82-83, Defendants' Motion to Dismiss the Professional Tennis Players Association (for the reasons therein, PTPA does not have any viable claims against ATP). It is entirely foreseeable that the PTPA would be bound by the forum selection clause for claims purportedly brought on behalf of the men's players. Including the PTPA as a separate plaintiff therefore cannot defeat the valid forum selection clause that binds the ATP Player Plaintiffs.

> D.   The ATP Forum Selection Clause Is Not Unreasonable, Unjust, or Invalid

In the Second Circuit, courts decline to enforce a forum selection clause only where: "'(1) its incorporation was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy of the forum' in which suit is brought; 'or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court.'" *Martinez*, 740 F.3d. at 227-228 (internal citation omitted). "[T]he Supreme Court has made clear that a plaintiff's burden at this step is a heavy one." *Crede CG III, Ltd. v. 22nd Century Grp., Inc.*, 2017 WL 280818, at *10

(S.D.N.Y. Jan. 20, 2017) (granting motion to sever and transfer based on forum selection clause), *citing Bremen*, 407 U.S. at 19. "In all but the most unusual cases … 'the interest of justice' is served by holding parties to their bargain." *Atl. Marine*, 571 U.S. at 66.

First, there is no allegation that the forum selection clause itself was the product of fraud or overreaching, which is fatal for this exception. *See Crede*, 2017 WL 280818 at *9, 13 n.12 (finding that while some allegations could be construed as fraudulent misrepresentations, because the forum selection clause itself was not alleged to be the product of fraud, this prong was not met); *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n.14 (1974) ("This qualification does not mean that any time a dispute arising out of a transaction is based upon an allegation of fraud … the clause is unenforceable[;] [r]ather, it means that an arbitration or forum-selection clause in a contract is not enforceable if the inclusion of that clause in the contract was the product of fraud or coercion."). Tellingly, as noted above, Plaintiffs allege that the forum selection clause contained in the *WTA* Bylaws—which provides that disputes with its members shall be brought in New York—is valid, enforceable, and forms a basis for exclusive jurisdiction and venue over the WTA. Compl. ¶¶ 42, 46. Having relied on *that* forum selection clause to bring suit in this district, Plaintiffs can hardly claim that a substantially similar clause in ATP's Bylaws requiring disputes to be heard in the Delaware Courts is fundamentally unfair or should not be enforced. Moreover, the Supreme Court has rejected the argument that a "nonnegotiated forum-selection clause[,]" even in a form contract, "is never enforceable simply because it is not the subject of bargaining." *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593 (1991).

Courts regularly enforce forum selection clauses where the term was not negotiated, there is a "relative disparity in the bargaining positions of the parties," and even where one party is required to sign the agreement in order to gain employment. *See, e.g.*, *Rivera v. Centro Medico*

*de Turabo, Inc*., 575 F.3d 10, 21-22 (1st Cir. 2009) (enforcing forum selection clause and finding no overreaching where clause was in a non-negotiated consent form issued by a hospital in connection with plaintiff's surgery for a "grave medical condition"); *Brodsky v. Match.com LLC*, 2009 WL 3490277, at *3 (S.D.N.Y. Oct. 28, 2009) ("[A] forum selection clause is not unenforceable even if it appears in a contract of adhesion") (internal citation omitted); *Person*, 456 F. Supp. 2d at 492-6 (in antitrust matter, a forum selection clause in Terms and Conditions was "fundamental[l]y fair[]" and enforceable); *Silva v. Encyclopedia Britannica Inc*., 239 F.3d 385, 389 (1st Cir. 2001) (enforcing forum selection clause in employment agreement, holding that employer's "bargaining power is not relevant" as it "used its bargaining power to do nothing more than offer an appealing employment opportunity to appellant, and no evidence suggests that he was coerced into entering the agreement"). And here, amendments to the ATP Bylaws are the result of negotiations between ATP Board members representing the interests of the tournaments and those representing the interests of the players. *See* Ex. B, 2024 ATP Bylaws § 12.9(a)(vi) (requiring votes of at least two player representatives to amend the Bylaws).

Nor is the forum selection clause fundamentally unfair. "[A] forum selection clause adopted by a board with the authority to adopt bylaws is valid and enforceable under Delaware law to the same extent as other contractual forum selection clauses." *Boilermakers Loc. 154 Ret. Fund v. Chevron Corp*., 73 A.3d 934, 940 (Del. Ch. 2013). ATP, an international organization with both tournament and player members spanning the globe, and its membership have a valid interest in limiting any suits brought against it to a single, convenient forum. *See Person* , 456 F. Supp. 2d at 496 (crediting defendant's interest in forum selection clause "in order to locate the myriad suits inevitably brought against a such a sizeable company in a single, convenient forum"); *Peterson v. Tiffin Motor Homes, Inc*., 2019 WL 6320341, at *13 (W.D.N.Y. Nov. 26, 2019) ("the

forum selection clause . . . is merely intended to protect Defendant . . . from being haled into court nationwide."); *Carnival Cruise Lines*, 499 U.S. at 593-94 (crediting defendant's "special interest in limiting the fora in which it potentially could be subject to suit").[7]  Indeed, members benefit from the fact that other members cannot force their organization to face litigation in myriad fora. To that point, a foreign tournament class member recognized the validity of the ATP forum selection clause and initiated suit against ATP in Delaware.  *See* Complaint and Jury Demand, *Deutscher Tennis Bund, et al. v. ATP, et al*., No. 07-cv-00178-GMS (D. Del. Mar. 28, 2007), ECF No. 1 at ¶ 11 (alleging venue in D. Del. was proper because the ATP Bylaws provide for exclusive jurisdiction in that forum).[8]

As to the second and third factors, there can be no claim that a federal court in Delaware would be fundamentally unfair, or that enforcement of the forum selection clause contravenes any public policy of this court.  Federal law applies in both forums.

---

[7]    ATP membership confers on ATP Player Members eligibility for other forms of compensation and benefits from ATP, such as Platinum Benefits, which include retirement programs, financial security plans, and bonus pools, and the opportunity to participate in ATP governance through voting.  Ex. C, ATP Rulebook §§ 1.07(G)-(H), 1.21(B).  Thus, as in *Silva*, even if ATP is in a position of unequal bargaining power in that ATP offers substantial benefits only to its members, who must agree to be bound by ATP Bylaws to obtain those benefits, that does not make the forum selection clause in the ATP Bylaws unenforceable.  *See Silva*, 239 F.3d at 389.

[8]    ATP respectfully requests that the Court take judicial notice of the Complaint in *Deutscher Tennis Bund, et al., v. ATP.  See* Complaint and Jury Demand, *Deutscher Tennis Bund, et al. v. ATP, et al*., No. 07-cv-00178-GMS (D. Del. Mar. 28, 2007), ECF No. 1. "The Second Circuit has made clear that a court may take judicial notice of publicly filed documents, not 'offered for the truth of the matter asserted,' but instead offered for other relevant reasons, such as 'to show that certain things were said in the press, and that assertions were made in lawsuits and regulatory filings[.]'" *Press v. Primavera*, 685 F.Supp.3d 216, 224 (S.D.N.Y. 2023), *citing Staehr v. Hartford Fin. Servs. Grp., Inc*., 547 F.3d 406, 425 (2d Cir. 2008).  "Courts in this District routinely take judicial notice, on a motion to dismiss, of public filings . . . including filings made on court dockets." *Id*.

Finally, even if enforcing the forum selection clause through dismissal of ATP from the instant proceeding would result in related claims against different parties proceeding simultaneously in different forums,[9] courts have specifically held that "[t]hese circumstances, . . . do not rise to the level of those contemplated by *Phillips—i.e.* that trial in the selected forum would be 'so difficult and inconvenient' that [plaintiffs] would 'effectively be denied [their] day in court.'" *Allianz Glob. Corp. & Specialty v. Chiswick Bridge*, 2014 WL 6469027, at *3 (S.D.N.Y. Nov. 17, 2014), *citing Phillips*, 494. F.3d at 392; *see also Amyndas Pharms., S.A. v. Zealand Pharma A/S,* 48 F.4th 18, 33-36 (1st Cir. 2022) (despite claims against some defendants continuing in the District of Massachusetts, forum selection clause required claims against another defendant be dismissed and litigated in Denmark).

In *Allianz*, the plaintiff argued that dismissal of its claims against one defendant pursuant to a forum selection clause would be "unreasonable and unfair" because "[s]plitting its litigation efforts between New York and Tokyo . . . would be 'unduly costly and prejudicial' to its interests given that its claims against the various Defendants were 'closely intertwined' and rel[ied] on similar facts and legal theories." *Allianz*, 2014 WL 6469027 at *3. The court rejected the argument and ordered dismissal, reasoning that such a consideration of convenience to plaintiffs is exactly "of the sort expressly rejected in *Atlantic Marine*[.]" *Id*.; *see also Paduano v. Express Scripts, Inc.*, 55 F. Supp. 3d 400, 434–35 (E.D.N.Y. 2014) ("the efficiency and economy that could be

---

[9]    The only potential for related claims proceeding in multiple forums lies in the possibility that ATP Plaintiffs' claims against ITF and ITIA, alleging a horizontal conspiracy between ITF, ITIA, and ATP, remain before this Court, while ATP Plaintiffs' claims against ATP, alleging the same conspiracy, proceed in Delaware. Claims by the plaintiffs who are women's professional tennis players against ATP (to the extent they exist) and claims alleging a conspiracy between ATP and WTA should be dismissed on plausibility grounds (*see infra*, Section III), and PTPA's claims against ATP should be dismissed for lack of standing (*see generally* ECF Nos. 82-83, Defendants' Motion to Dismiss the Professional Tennis Players Association). No claims against ATP should remain in this forum.

achieved by a single trial would largely inure to [Plaintiffs'] benefit—precisely what the Supreme Court has counseled is not a relevant consideration"[;] "such 'private interests' play no role in determining whether to transfer a case based on a forum selection clause"), *citing Atl. Marine*, 571 U.S. at 64.

In fact, the Supreme Court dictates that "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Atl. Marine*, 571 U.S. at 64.[10] This Court "accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum" and "may consider arguments about public-interest factors only." *Id.* Permissible "public interest factors" include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* at 62 n.6 (citation omitted). None of these factors trump the interest in enforcing a valid forum selection clause here.

First, there is no indication that courts in the District of Delaware are meaningfully more congested than this Court. Second, this is not a case where the current forum represents an interest in having localized controversies decided at home—to the contrary, ATP is at home in Delaware. Compl. ¶ 34. The ATP Bylaws and ATP Rulebook, the mechanisms by which Plaintiffs allege ATP effectuates its purported "monopsony," have no connection to New York. It is thus Delaware, not this Court, which has an interest in overseeing claims arising under the Bylaws and Rulebook.

---

[10]    Even if it were to be considered, any potential hindrance to judicial economy could easily be alleviated through pretrial management and coordination. *See In re Howmedica Osteonics Corp.*, 867 F.3d 390, 409-10 (3d Cir. 2017) ("risk of duplicative litigation" resulting from severance could "be reduced or eliminated with procedural mechanisms"); *see also Crede*, 2017 WL 280818 at *15 (noting that any hindrance to judicial economy "could be lessened by . . . careful pretrial management" including coordination of discovery and motions practice).

And finally, any "interest in having the trial of a diversity case in a forum that is at home with the law" leans *against* this Court's retention of the claims against ATP, as the applicable law under the ATP Bylaws is Delaware law.  Ex. A, 2023 ATP Bylaws, § 23.2, Ex. B, 2024 ATP Bylaws (same).  Any risk of duplicative litigation is thus outweighed by the strong federal policy favoring enforcement of forum selection clauses, particularly where, as here, the ATP—an international organization with members spanning the globe—and its membership have a valid interest in resolving conflicts between members and the Tour in a single forum (Delaware).

Because the forum selection clause is enforceable, encompasses Plaintiffs' claims, and its operation would not be unreasonable or unjust, this action may be brought as to ATP *only* in the designated forum.  It was not.  The ATP Plaintiffs' claims against ATP should be dismissed.

## II.    In the Alternative, Claims Against ATP Should Be Severed and Transferred to Delaware

Although ATP "is not required to move, pursuant to 28 U.S.C. § 1404, to have the action transferred to the forum specified in the forum-selection clause, but may instead seek dismissal of the action," *Ortho-Clinical Diagnostics, Inc. v. Mazuma Cap. Corp.*, 2019 WL 1082987, at *4, (W.D.N.Y. Mar. 7, 2019), *citing TradeComet.com*, 647 F.3d at 475, a valid forum-section clause may also "be enforced by a motion to transfer under § 1404(a)," which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  *Atl. Marine*, 571 U.S. at 59 quoting 28 U.S.C.A. § 1404(a).  Courts enforcing a forum selection clause pursuant to § 1404(a) conduct the same analysis as under a Rule 12(b) motion to dismiss.  *See, e.g.*, *Crede*, 2017 WL 280818 at *9, 13-14 (applying four-factor test articulated in *Phillips* to motion to transfer).  Thus, for the same reasons that dismissal is appropriate under Rule 12(b)(6), transfer is also appropriate.

To enforce the forum selection clause through § 1404(a), the Court would first need to sever the claims against ATP under Fed. R. Civ. P. 21. "[W]here the administration of justice would be materially advanced by severance and transfer, a district court may properly sever the claims against one or more defendants for the purpose of permitting the transfer of the action against the other defendants[.]" *Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 618 (2d Cir. 1968); Fed. R. Civ. P. 21 (courts may "sever any claim against a party"). Courts considering the impact of *Atlantic Marine* "in matters where some, but not all, parties have entered into an agreement governed by a forum selection clause[,]" have engaged in slightly differing inquiries. *HC&D, LLC v. Precision NDT & Consulting*, *LLC*, 698 F. Supp. 3d 180, 200–01 (D. Mass. 2023) (collecting cases). Either approach would favor severance and transfer here.

Across the country, including in the Second Circuit, "[i]n exercising [the discretion to sever a case], courts typically consider the same general factors elucidating the § 1404(a) analysis" and find, so long as transfer is appropriate, "then severance, too, would be proper." *See Paduano*, 55 F. Supp. 3d at 431-32, *citing Valspar Corp. v. E.I. DuPont de Nemours and Co.*, 15 F. Supp 3d 928, 931-32 (D. Minn. 2014) ("Rule 21 is essentially irrelevant to the Court's analysis"—"[i]f the Court were to conclude the pertinent factors render transfer appropriate under § 1404(a), then severance, too, would be proper"); *see also Glasper v. St. James Wellness Rehab & Villas, LLC*, 2023 WL 3864580, at *2 n.1 (N.D. Ill. June 7, 2023) ("courts regularly conclude that severance is appropriate where the section 1404(a) analysis tips in favor of transfer"); *United States ex rel. D.D.S. Indus., Inc. v. Nauset Constr. Corp.*, 2018 WL 5303036, at *4 (D. Mass. Oct. 25, 2018) ("where, as here, a motion to transfer under § 1404(a) is warranted, there is no need for a separate severance analysis"). Using this framework, *i.e.* the four-factor test outlined in *Phillips*, courts regularly sever claims against one of multiple defendants to give effect to a valid and enforceable

forum selection clause.  *See, e.g.*, *Paduano*, 55 F. Supp. 3d at 435 (severing claims against one defendant and transferring those claims pursuant to the forum selection clause between plaintiff and that defendant); *Valspar*, 15 F. Supp. 3d at 935 (severing claims against one defendant to transfer to proper forum, as required by the enforceable forum selection clause).  That result is only further supported by consideration of evidence outside the Complaint, as is permitted on a motion to transfer.  *See Tianhai Lace USA*, 2017 WL 4712632 at *2.  Each of the ATP Named Plaintiffs has agreed, year after year in which they were active, to be bound by the ATP Bylaws, including its forum selection clause.  M. Young Decl., ¶¶ 8-9; Ex. 2.

Some courts, even following *Atlantic Marine*, have required an additional step for severance and transfer.  *See, e.g.*, *Crede*, 2017 WL 280818 at *11 (analyzing counts of the complaint using the *Phillips* factors and severance factors).[11]  These courts suggest that parties moving for severance and transfer must also "overcome" the "strong policy favoring the litigation of related claims in the same tribunal" by showing "that 'severance is required to avoid prejudice or confusion and to promote the ends of justice.'"  *Id.* (citation omitted).[12]  Though even these courts acknowledge that, consistent with *Atlantic Marine*, judicial economy "is not the sole consideration[.]" *Id.*

Even with this additional step, courts regularly sever claims against one defendant even where claims against other defendants, or even some claims against the same defendant, would

---

[11]    The traditional severance factors include "[i] whether the claims arise out of the same transaction or occurrence; [ii] whether the claims present some common questions of law or fact; [iii] whether settlement of the claims or judicial economy would be facilitated; [iv] whether prejudice would be avoided if severance were granted; and [v] whether different witnesses and documentary proof are required for the separate claims." *Crede*, 2017 WL 280818 at *11 (citation omitted).

[12]    These courts do, however, modify the analysis of "private interest factor[s]" where there is a forum selection clause because "private unfairness must be presumed to have been accounted for in the parties' bargain." *Id.* at *15.

then proceed in multiple fora. *See Howmedica*, 867 F.3d at 411; *In re Rolls Royce Corp.*, 775 F.3d 671, 681, 683 (5th Cir. 2014); *Crede*, 2017 WL 280818 at *14-15.

In *Crede*, the defendant sought severance and transfer of only some claims against it under a forum selection clause. *Crede*, 2017 WL 280818 at *10. Applying a severance-and-transfer balancing analysis, the Court found that those factors neither favored nor disfavored severance. *Id.* at *14-15. Nevertheless, the Court determined that severance and transfer was still appropriate because even a "neutral conclusion" under Section 1404 balancing "cannot trump the impropriety of venue in this District and the Supreme Court's mandate that forum selection clauses be enforced in all but the most 'exceptional' circumstances." *Id.* at *15. ("On the whole, courts have been loath to act contrary to the *Atlantic Marine* mandate.").

The same is true here. First, the claims which are properly pled against ATP do not necessarily arise out of the same transaction or occurrence as the claims against the other defendants. The crux of Plaintiffs' claims against ATP are that ATP has restrained competition in the market for the services of male professional tennis players through agreement with its own Tournament Co-Conspirators, and effectuates that agreement through its own rules and bylaws. *See, e.g.*, Compl. ¶ 336 ("Defendant ATP has orchestrated and entered into an agreement with and among its Tournament Co-Conspirators, through the ATP Rulebook"). Claims that ATP's rules and bylaws are anticompetitive can be adjudicated in isolation, as they do not involve the same transaction or occurrence as, for example, the operation of WTA's rules and bylaws in a separate player market. And given the separate rulebooks and bylaws, there will be critical differences in documentary proof and witnesses. For the same reasons, the gravamen of Plaintiffs' claims does not present common questions. As in *Crede*, the "strong public interest in the enforceability of contracts" must trump the consideration of limited judicial economy considerations, even when

the result of severance and transfer may be duplicative or related litigations proceeding in multiple fora. *Crede*, 2017 WL 280818 at *15.[13]

Indeed, to allow consideration of private interests to supersede the players' agreement to a forum selection clause because Plaintiffs included vague, conclusory claims of conspiracy with other defendants is precisely the type of gamesmanship multiple courts have warned against—such a "view sacrifices the clarity of *Atlantic Marine* to easy manipulation, because, if it is correct, any clever party to a lawsuit can readily join another party or individual in an attempt to avoid the forum selection clause." *Rolls Royce*, 775 F.3d at 685 (concurring opinion); *id*. at 683 (majority opinion) ("Nor do we suggest that merely joining a party to the suit will defeat a severance motion pursuant to a valid forum contract—certainly not when joined in a transparent effort to defeat the transfer"); *see also Crede*, 2017 WL 280818 at *16 ("the Court is concerned that limiting *Atlantic Marine* to its precise facts, to govern only in two-party cases to which only one forum selection clause applies, would allow 'any clever party to a lawsuit' to plead around a valid forum selection clause"). That is precisely what Plaintiffs would be doing here. And even in *Rolls Royce*, where the Fifth Circuit required, in a case with multiple defendants, a three-step severance analysis, (where it first recognized that "pursuant to *Atlantic Marine,* the private factors of the parties who have signed a forum agreement must, as matter of law, cut in favor of severance and transfer to

---

[13]    The Court's ruling on Fox Corp.'s Motion to Sever and Transfer in *FuboTV Inc., et al., v. The Walt Disney Company, et al*., No. 1:24-cv-01363-MMG (S.D.N.Y. January 14, 2025), ECF. 381, does not detract from this analysis because (1) the language of the forum selection clause in the ATP Bylaws is far broader than in *FuboTV* and encompasses all claims against ATP, (2) no claims against ATP should persist in this Court, and (3) unlike Fox, ATP has consistently reserved its right to challenge venue, both in its response to Plaintiffs' letter motion and at the April 11, 2025 evidentiary hearing, and now moves at the first available opportunity. *See* ECF 24, p. 1, and 4/11/2025 Rule 23(d) Motion Hearing Tr. 12:21-13:7. As a result, greater weight should be given to enforcing the forum selection clause than in *FuboTV*, and any risk of judicial inefficiency is much lower.

the contracted for forum[,]" second considered "the private factors of the parties who have not signed a forum selection agreement" and third weighed the "judicial economy considerations of having all claims determined in a single lawsuit"), the court determined that severance and transfer of all claims against the signatory defendant was appropriate. *Rolls Royce*, 775 F.3d at 681, 683. *See also Howmedica*, 867 F.3d at 405 (applying a similar framework to *Rolls Royce* and explaining that at the step of weighing judicial economy considerations, a court can decline to enforce a valid forum-selection clause "[o]nly if [the court] determines that the strong public interest in upholding the contracting parties' settled expectations is 'overwhelmingly' outweighed by the countervailing interests[.]").

In short, under the severance-and-transfer framework, the potential overlap of a narrow subset of the ATP Plaintiffs' claims against different defendants, and "the efficiency and economy achieved by trying interrelated claims in one forum[,] should not trump the forum-selection clauses agreed to by [the parties]." *Paduano*, 55 F. Supp. 3d at 434–35; *Crede*, 2017 WL 280818 at *15 (while there "is a strong public interest in judicial economy, one that this Court takes seriously … there is also a strong public interest in the enforceability of contracts and the protection of the parties' expectations."). "It is always more expeditious to try related claims in one forum rather than several, but allowing efficiency and economy to rule the day would effectively swallow *Atlantic Marine*'s holding in every case with multiple defendants." *Valspar*, 15 F. Supp. 3d at 934–35.

## III. To The Extent Any Non-ATP Plaintiffs Purport To State Claims Against ATP, Those Claims Should Be Dismissed As Legally Insufficient

The Complaint defines two separate relevant markets—"the market for the services of *men's* professional tennis players" and "the market for the services of *women's* professional tennis players" (Compl. ¶ 279) (emphasis added)—and as to ATP, Plaintiffs allege only that it "harmed

the market for the services of *male* professional tennis players" (*id*. ¶¶ 298-303) (emphasis added). The section of Plaintiffs' complaint entitled "Harm To the Market for the Services of Women's Professional Tennis Players," does not even mention ATP. *Id*. ¶¶ 304-309. The women's professional tennis players do not—and cannot—state a claim against ATP. *See In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d 151, 158-61 (2d Cir. 2016) ("[O]nly those that are participants in the defendants' market can be said to have suffered antitrust injury," and "the putative plaintiff must be a participant in the very market that is directly restrained."); *Prime Int'l Trading, Ltd. v. BP P.L.C.*, 784 F. App'x 4, 7 (2d Cir. 2019).

Plaintiffs also fail to plausibly allege any unlawful agreement between ATP and WTA. "To survive a motion to dismiss under *Twombly*, it is not enough to make allegations of an antitrust conspiracy that are consistent with an unlawful agreement[.]" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007). Instead, a complaint must contain "enough factual matter (taken as true) to suggest that *an agreement* was made." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57, 564 (2007) (emphasis added) (an antitrust plaintiff cannot rely on "naked assertion[s]" or "legal conclusions"). To satisfy this burden, Plaintiffs must either assert "direct evidence that the defendants entered into an agreement in violation of the antitrust laws" or, "alternatively, present circumstantial facts supporting the inference that a conspiracy existed"—"parallel conduct" with little more, not even a "common motive to conspire," is not enough. *Mayor of Baltimore v. Citigroup, Inc.*, 709 F.3d 129, 136-39 (2d Cir. 2013). An antitrust plaintiff cannot satisfy its burden by repeating in conclusory *ipse dixit* that parties agreed with each other. *Id.* at 135-136. But that is all Plaintiffs have done.

The bulk of the Complaint is focused on two separate purported conspiracies: one between the WTA and *its own* Tournament Co-Conspirators and Grand Slam Co-Conspirators, and a

second between the ATP and *its* own Tournament Co-Conspirators and Grand Slam Co-Conspirators. *E.g.*, Compl. ¶ 299 ("By conspiring with *its* Tournament Co-Conspirators, *its* Grand Slam Co-Conspirators, and the ITF . . . the ATP has artificially suppressed male professional tennis players' compensation below competitive levels.") (emphases added).[14]  The Complaint includes only a handful of naked assertions and legal conclusions made "on information and belief" that the ATP and WTA conspired *with each other*.  For example, in the First Cause of Action, Plaintiffs allege "[u]pon information and belief" that ATP and WTA "agreed with each other" not to end the price fixing restrictions that each has with its own members.  Compl. ¶ 344.[15]  In the Second Cause of Action, Plaintiffs allege—again, in conclusory terms—that ATP and WTA conspired with ITF to "coerce any professional tennis player to accept their restrictive terms of participation on the Tours."  Compl. ¶ 363.  And in the Third and Fourth Causes of Action, Plaintiffs do not allege that ATP and WTA conspired with each other at all, but rather that ATP and WTA "compelled the support of the Tournament Co-Conspirators and the Grand Slam Co-Conspirators to agree among themselves and with the WTA, the ATP, and the ITF to carry out the WTA's, the ATP's, and the ITF's conduct described above."  Compl. ¶¶ 379, 390.  The Complaint is otherwise devoid of any factual matter suggesting ATP and WTA entered into an "unlawful agreement" or had a "meeting of the minds" with each other.  These bare assertions are not sufficient to state a claim. *Twombly*, 550 U.S. 544 at 556-57; *Relevent Sports, LLC v. United States Soccer Fed'n, Inc.*, 61 F.4th 299, 306 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 1391 (2024).

---

[14]    The Complaint similarly claims that ATP uses *its own* rules and Bylaws to subject men's players to ITIA oversight. *See, e.g.*, *id.* ¶ 269.

[15]    *See also, e.g.*, Compl. ¶ 133 ("[U]pon information and belief, Defendants ATP and WTA have agreed with each other, their Grand Slam Co-Conspirators, and Defendant ITF to limit prize money for their respective tournaments."); *id.* ¶ 135 ("Upon information and belief, Defendants ATP and WTA agree to ensure that their Tournament Co-Conspirators keep their prize money awards at an artificially low rate . . . .").

And indeed, the Complaint cannot and does not articulate any "common motive to conspire" that may begin to suggest a tacit agreement—WTA and ATP are two organizations that, according to Plaintiffs, operate in separate markets and by definition cannot compete for professional tennis players (ATP competes for men's players, Compl. ¶ 34, and WTA competes for women's players, ¶ 35). Plaintiffs' claim that WTA and ATP conspired so that they "need not and do not compete with each other, for the services of the Player Plaintiffs" (Compl. ¶ 397), makes no sense. *Long Island Anesthesiologists PLLC v. United Healthcare Ins. Co. of N.Y. Inc.*, 2025 WL 1031093, at *9 (E.D.N.Y. Apr. 7, 2025) ("[Defendants] are not competitors in Plaintiff's alleged relevant antitrust market and therefore cannot have plausibly engaged in a 'horizontal conspiracy.'"). In the absence of "factual matter" suggesting ATP and WTA entered into an unlawful agreement, any claim that there is a conspiracy between ATP and WTA is simply not plausible and should be dismissed. *Twombly*, 550 U.S. at 556.

## CONCLUSION

The ATP Bylaws' mandatory forum selection clause is clear, was reasonably communicated, encompasses all claims in this action, and is not unreasonable or unfair. There are no "exceptional" circumstances which outweigh the strong federal policy favoring its enforcement. And because any claims brought by women's professional tennis players against ATP should be dismissed for failing to plead antitrust injury or a plausible conspiracy between WTA and ATP, there are no claims against ATP which are properly brought in this forum. This is the wrong venue for Plaintiffs' claims against ATP. Those claims should accordingly be dismissed or, in the alternative, severed and transferred to Delaware.

Dated: May 20, 2025

Respectfully submitted,

By: */s/ Bradley I. Ruskin*

Bradley I. Ruskin
Lee M. Popkin
Jordan B. Leader
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
Telephone: (212) 969-3465
Facsimile: (212) 969-2900
bruskin@proskauer.com
lpopkin@proskauer.com
jleader@proskauer.com

Kyle A. Casazza
PROSKAUER ROSE LLP
2029 Century Park East, Suite 2400
Los Angeles, CA 90067
Telephone: (310) 284-5677
Facsimile: (310) 557-2193
kcasazza@proskauer.com

*Counsel for Defendant ATP Tour, Inc.*

**Certificate of Compliance**

I, Bradley I. Ruskin, certify that the foregoing memorandum of law complies with the word-count limitations set forth in Local Civil Rule 7.1(c) and Rule (II)(B)(2) of the Honorable Margaret M. Garnett's Individual Rules & Practices. According to the word count of the word processing program used to prepare the memorandum, and exclusive of the portions of it that are excluded by the rules, there are 8,728 words in the document.

Dated: May 20, 2025                              Respectfully submitted,

                                                 /s/ *Bradley I. Ruskin*