# EXHIBIT A

As of January 1, 2023

<u>SECOND AMENDED AND RESTATED BYLAWS</u>

<u>OF</u>

<u>ATP TOUR, INC.</u>

<u>A Delaware Nonprofit Corporation</u>

**ARTICLE I. OFFICES** .................................................................................................7

**ARTICLE II. PURPOSES AND POWERS** ................................................................7

2.1   *Purposes*..........................................................................................................7

2.2   *Powers*............................................................................................................8

2.3   *Limitation of Powers* ....................................................................................8

2.4   *Organizational Structure* .............................................................................8

**ARTICLE III. MEMBERSHIP**...................................................................................8

3.1   *Classes of Membership* .................................................................................8

3.2   *Conditions of Membership*.............................................................................9

**ARTICLE IV. PLAYER CLASS MEMBERSHIP**...................................................12

4.1   *Divisions of Player Class Members* ............................................................12

4.2   *Division One Membership* ...........................................................................13

4.3   *Division Two Membership* ...........................................................................13

4.4   *Division Three Membership*.........................................................................14

4.5   *Honorary Division Membership* ..................................................................15

4.6   *Application Procedure* .................................................................................15

4.7   *Continuance of Membership* ........................................................................16

4.8   *Alumni Membership* .....................................................................................16

4.9   *Resignation of a Member* .............................................................................17

4.10  *Voting Rights*................................................................................................17

4.11  *Reinstatement of Resigned Member* ...........................................................18

4.12  *Good Standing* .............................................................................................18

**ARTICLE V. TOURNAMENT CLASS MEMBERSHIP** .......................................18

5.1   *Divisions of Tournament Class Members* ...................................................18

5.2   *Championship Division Membership*..........................................................19

5.3   *World Series Division Membership* .............................................................19



PLAINTIFF'S
EXHIBIT
**PX-002**

*5.4*   *Tournament Groups* ...........................................................................................*20*

*5.5*   *Application Procedure* .......................................................................................*20*

*5.6*   *Voting and Other Rights* ...................................................................................*20*

*5.7*   *Continuance of Membership* .............................................................................*20*

*5.8*   *Sale, Assignment or Transfer of Membership or Sanction* ..............................*21*

*5.9*   *Resignation of a Member* ..................................................................................*24*

*5.10*  *Designated Representatives* ..............................................................................*25*

*5.11*  *Good Standing* ...................................................................................................*26*

*5.12*  *Conditional Tournament Class Members* ..........................................................*26*

*5.13*  *Limitations on Ownership* .................................................................................*27*

*5.14*  *Limitations on Voting* ........................................................................................*29*

*5.15*  *Certifications* .....................................................................................................*30*

*5.16*  *Non-Compete* .....................................................................................................*30*

*5.17*  *Security* ..............................................................................................................*32*

**ARTICLE VI. COACHES DIVISION MEMBERSHIP** ..........................................................**33**

*6.1*   *Creation of Coaches Division/Special Provisions* ...........................................*33*

*6.2*   *Rights and Privileges of Coaches Division Members* .......................................*34*

*6.3*   *Eligibility for Coaches Division Membership* ...................................................*34*

*6.4*   *Qualifications for Coaches Division Membership* .............................................*35*

*6.5*   *Other Qualifications* ..........................................................................................*36*

*6.6*   *Continuance of Coaches Division Membership* ................................................*36*

*6.7*   *Resignation of a Coaches Division Member* ......................................................*36*

*6.8*   *Reinstatement of Resigned Coaches Division Member* ......................................*37*

*6.9*   *Coaches Division Dues* ......................................................................................*37*

*6.10*  *Default and Suspension* .....................................................................................*38*

**ARTICLE VII. DUES, ASSESSMENTS AND OTHER PAYMENTS** ...................................**38**

*7.1*   *Player Class Member Dues* ...............................................................................*38*

*7.2*   *Tournament Class Members Dues* ......................................................................*38*

*7.3*   *Assessments* ........................................................................................................*38*

*7.4*   *Notices* ...............................................................................................................*38*

*7.5*   *Default and Suspension* .....................................................................................*38*

*7.6*   *Treatment of Suspension* ....................................................................................*39*

**ARTICLE VIII. MEETINGS OF MEMBERS** .......................................................................**40**

| 8.1 | Annual Meeting | 40 |
|-----|----------------|----|
| 8.2 | Special Meetings of the League Members | 40 |
| 8.3 | Meetings of the Player Class Members | 41 |
| 8.4 | Meetings of the Tournament Class Members | 41 |
| 8.5 | Notice of Meetings | 42 |
| 8.6 | Quorum | 44 |
| 8.7 | Voting | 45 |
| 8.8 | Record Date | 45 |
| 8.9 | Organization | 46 |
| 8.10 | Action by Members Without a Meeting | 46 |

**ARTICLE IX. PLAYER ADVISORY COUNCIL .......47**

| 9.1 | Powers and Duties | 47 |
|-----|-------------------|----|
| 9.2 | Number and Qualification | 47 |
| 9.3 | Geographical Representation; Change in Status; Order of Selection | 50 |
| 9.4 | Player Advisory Council Delegates' Terms | 54 |
| 9.5 | Nomination of Candidates | 54 |
| 9.6 | Mailing Ballots | 55 |
| 9.7 | Election and Appointment of Player Advisory Council Delegates | 55 |
| 9.8 | Meetings of the Player Advisory Council | 57 |
| 9.9 | Notice of Meetings | 58 |
| 9.10 | Place of Meeting | 59 |
| 9.11 | Quorum | 59 |
| 9.12 | Voting | 59 |
| 9.13 | Expenses | 60 |
| 9.14 | Organization | 60 |
| 9.15 | Meeting by Communications Equipment | 60 |
| 9.16 | Action by Player Advisory Council Without a Meeting | 61 |
| 9.17 | Removal | 61 |
| 9.18 | Resignation | 61 |
| 9.19 | Vacancies | 61 |

**ARTICLE X. APPLICABLE TOURNAMENT GROUPS; VOTING RIGHTS AND PROCEDURES .......62**

| 10.1 | Powers and Duties | 62 |
|------|-------------------|----|
| 10.2 | Members of Applicable Tournament Group; Change in Status | 62 |

*10.3    Nomination of Candidates* .................................................................................62

*10.4    Mailing Ballots*.....................................................................................................63

*10.5    Election of Tournament Tour Board Representatives and Tournament Tour
            Board Representatives Elect*................................................................................63

*10.6    Organization of Each Applicable Tournament Group*........................................65

*10.7    Meeting by Communications Equipment* ...........................................................66

*10.8    Action by Applicable Tournament Group Without a Meeting* ...........................66

**ARTICLE XI. TOURNAMENT ADVISORY COUNCIL** ...............................................**66**

*11.1    Powers and Duties of Tournament Advisory Council* ........................................66

*11.2    Number and Qualification of Tournament Advisory Council Delegates*.........66

*11.3    Meetings of Tournament Advisory Council* .......................................................69

*11.4    Notice of Meetings* ..............................................................................................69

*11.5    Place of Meeting* .................................................................................................70

*11.6    Quorum* ...............................................................................................................70

*11.7    Voting*..................................................................................................................70

*11.8    Expenses* .............................................................................................................70

*11.9    Organization* .......................................................................................................71

*11.10  Meeting by Communication Equipment* .............................................................71

*11.11  Action by Tournament Advisory Council Without a Meeting* ...........................71

*11.12  Removal*...............................................................................................................72

*11.13  Resignation* .........................................................................................................72

*11.14  Vacancies* ............................................................................................................72

**ARTICLE XII. TOUR BOARD REPRESENTATIVES** .............................................**72**

*12.1    Powers and Duties* ..............................................................................................72

*12.2    Number, Term and Qualification*........................................................................73

*12.3    Nomination of Tour Board Representatives* .......................................................73

*12.4    Election* ...............................................................................................................74

*12.5    Meetings* ..............................................................................................................74

*12.6    Notice of Meetings* ..............................................................................................74

*12.7    Place of Meeting* .................................................................................................75

*12.8    Quorum* ...............................................................................................................75

*12.9    Voting*..................................................................................................................76

*12.10  Expenses*..............................................................................................................78

*12.11  Organization* .......................................................................................................79

*12.12  Meeting by Communications Equipment* ........................................................ 79

*12.13  Action by Representatives Without a Meeting* ............................................. 79

*12.14  Removal* ........................................................................................................ 79

*12.15  Resignation* ................................................................................................ 80

*12.16  Vacancies* .................................................................................................... 80

**ARTICLE XIII. COMMITTEES** .................................................................................. **81**

*13.1  Creation* ........................................................................................................ 81

*13.2  Organization* ................................................................................................ 82

*13.3  Prohibitions* .................................................................................................. 82

**ARTICLE XIV. OFFICERS** .......................................................................................... **83**

*14.1  Election and Qualification/Secretary* .......................................................... 83

*14.2  Holding More than One Office* .................................................................... 83

*14.3  Terms of Office* ............................................................................................ 83

*14.4  Compensation* .............................................................................................. 84

**ARTICLE XV. THE OFFICE OF THE CHAIRMAN AND CHIEF EXECUTIVE
OFFICER** .................................................................................................................... **84**

*15.1  Appointment and Qualifications* .................................................................. 84

*15.2  Term of Office* .............................................................................................. 84

*15.3  Compensation* .............................................................................................. 84

*15.4  Specific Powers* ............................................................................................ 85

*15.5  Removal* ........................................................................................................ 85

*15.6  Vacancies* ...................................................................................................... 85

*15.7  Appointment and Qualifications* .................................................................. 85

*15.8  Term of Office* .............................................................................................. 85

*15.9  Compensation* .............................................................................................. 85

*15.10  General Powers* .......................................................................................... 86

*15.11  Specific Powers* .......................................................................................... 86

*15.12  Removal* ...................................................................................................... 87

*15.13  Vacancies* .................................................................................................... 87

**ARTICLE XVI. INDEMNIFICATION** .......................................................................... **87**

*16.1  Right to Indemnification* .............................................................................. 87

*16.2  Right of Indemnitee to Bring Suit* ................................................................ 89

*16.3  Non Exclusivity of Rights* ............................................................................ 90

*16.4    Insurance* ..............................................................................................................*90*

*16.5    Indemnification of Employees and Agents of the League* ...........................................*90*

**ARTICLE XVII. BOOKS AND RECORDS** ...........................................................**91**

**ARTICLE XVIII. PROFESSIONAL ADVISERS** ...................................................**91**

**ARTICLE XIX. NOTICES** .........................................................................................**92**

**ARTICLE XX. FISCAL YEAR** ...................................................................................**93**

**ARTICLE XXI. CORPORATE SEAL** ........................................................................**93**

**ARTICLE XXII. AMENDMENT** .................................................................................**93**

**ARTICLE XXIII. LEGAL ACTION** ...........................................................................**93**

*23.1    Jurisdiction and Venue* .............................................................................................*93*

*23.2    Governing Law* .........................................................................................................*95*

*23.3    Litigation Costs* ........................................................................................................*95*

**ARTICLE XXIV. DOCUMENT FORM, SIGNATURE AND DELIVERY**..........................**96**

SECOND AMENDED AND RESTATED BYLAWS

OF

ATP TOUR, INC.

A Delaware Nonprofit Corporation

## ARTICLE I.  OFFICES

The registered office of ATP Tour, Inc. (the "League") shall be located in the State of Delaware at such place as shall be designated in the Certificate of Incorporation of the League (the "Certificate of Incorporation"). The League may from time to time maintain such other offices at such other places, within or without the State of Delaware, as shall be designated by the Board of Directors of the League (to be referred to hereinafter as the "Tour Board", and the directors to be referred to hereinafter as the "Tour Board Representatives").

## ARTICLE II.  PURPOSES AND POWERS

2.1    Purposes. The purposes of the League are to: (i) own, sanction, schedule, and administer one or more circuits of professional tennis tournaments, but not to own the assets of any individual member of the League; (ii) own one or more professional tennis tournaments which are not owned by any member of the League; (iii) sanction, schedule and operate one or more professional tennis tournaments; (iv) develop, promulgate and administer rules, regulations and grievance procedures to ensure the fair and orderly conduct of professional tennis tournaments, circuits thereof and the sport of professional tennis; (v) promote and further the interests of professional tennis players and professional tennis tournaments and circuits thereof throughout the world; (vi) promote the interests of one or more public charities; (vii) improve the conditions under which professional tennis players engage in their occupation; (viii) improve the status and public perception of professional tennis as a major world class international sport; (ix) promote and protect the future of the sport of professional tennis; and (x) encourage interest in the sport of

7

tennis. The League shall not be a guarantor of prize money or other debts or financial obligations of any Tournament Class member of the League or any other professional tennis tournament which receives a Sanction (as such term is defined below) from the League.

2.2     Powers. In furtherance of its corporate purposes and consistent with the provisions of its Certificate of Incorporation and these Bylaws (and, particularly, Section 2.3 hereof), the League shall be entitled to exercise all powers which a corporation organized under the Delaware General Corporation Law (as from time to time amended) may be authorized to exercise.

2.3     Limitation of Powers. The League has been established to engage only in such activities as are within the scope of Section 501(c)(6) of the Internal Revenue Code of 1986 as amended, or any successor provision thereto; and, therefore, the League is not empowered to directly or indirectly engage in any activity that would invalidate its status as a trade association or business league exempt from federal income taxation pursuant to the terms of the aforesaid statutory provision.

2.4     Organizational Structure. The organizational structure of the League's offices, including the right to open regional and other branch offices, shall be as set forth in these Bylaws, or in the Rules and Regulations of the League, including, without limitation, the ATP Official Rulebook constituting a part thereof (such Rules and Regulations hereinafter referred to as the "ATP Tour Rules") or as otherwise determined by the Tour Board from time to time.

ARTICLE III.  MEMBERSHIP

3.1     Classes of Membership. Except as otherwise set forth in the Certificate of Incorporation, the League shall be organized into the following two (2) classes of membership: the player class (the "Player Class") and the tournament class (the "Tournament Class"). The respective qualifications, rights, privileges, and responsibilities of the members of the Player Class and the Tournament Class shall be as provided for in the Certificate of Incorporation and Articles

IV, V and VI hereof and elsewhere in these Bylaws. References in these Bylaws to "members" without further designation as to class shall include both Player Class and Tournament Class members of the League.

      3.2   <u>Conditions of Membership</u>. Each member of the League, by accepting and maintaining his or its membership therein:

      (a)   agrees to abide by all decisions, rulings and actions of the membership of the League or any class therein with respect to all matters within its jurisdiction;

      (b)   agrees to abide by all decisions, rulings and actions of the Tour Board (or any committee of the League or the Tour Board authorized herein), in each case only with respect to all matters within the jurisdiction of the Tour Board and any such committees;

      (c)   agrees to abide by all decisions, rulings and actions of the chief executive officer of the League (the "<u>Chief Executive Officer</u>") with respect to all matters within his jurisdiction;

      (d)   waives any and all claims or demands, whether for damages or otherwise, which he or it might now or hereafter possess against the Chief Executive Officer (individually or in his official capacity) or against the League, the Player Advisory Council, the Tournament Advisory Council, or any Applicable Tournament Group, Tournament Category or Geographic Tournament Group (as each such term is defined below) of the Tournament Class of the League, or any director, officer or employee of the League or member thereof in connection with or by reason of any decision, ruling or action of the membership of the League, the Player Advisory Council, the Tournament Advisory Council, any Applicable Tournament Group, Tournament Category or Geographic Tournament Group of the Tournament Class of the League, the Tour Board (or any committee of the League or the Tour Board authorized herein) or the Chief

Executive Officer with respect to all matters within their respective jurisdictions pursuant to the League's Certificate of Incorporation, these Bylaws and the ATP Tour Rules;

(e)    grants to the League the authority to use his or its name, picture, logo, art work, or other identification, alone or in conjunction with the name, picture, logo, art work, or other identification of other League members for the League's publicity and promotional purposes of the League and of each Tournament Class member in newspapers, magazines, motion pictures, programs and player and tournament yearbooks, broadcasts and telecasts, and all other publicity and advertising materials and media, including publicity and promotion in connection with a commercial product, so long as (x) such publicity and promotion in connection with a commercial product does not constitute a direct or individual endorsement of such commercial product and (y) any Player Class member's name and/or picture so used in connection with publicity or promotion for a commercial product appears along with those of no fewer than five (5) other Player Class members; provided that, this subsection (e) shall apply only to Division One and Division Two members of the Player Class of the League and the Tournament Class members of the League;

(f)    agrees to abide by all of the terms and provisions of the Certificate of Incorporation of the League, the ATP Tour Rules and these Bylaws, as the same may be in effect from time to time;

(g)    in the case of Division One Player Class members, grants to the members of the Player Advisory Council (the "Player Advisory Council Delegates"), as the same may be constituted from time to time, an irrevocable proxy with a full right of substitution and resubstitution, which proxy is coupled with an interest, to vote for the election, and removal, with cause (as such term is defined in Section 12.14 of these Bylaws) or without cause, of Tour Board Representatives of Division One Player Class members as such Player Advisory Council Delegates

may determine, subject to the terms of these Bylaws, whether at an annual or special meeting of the Player Advisory Council or by means of a written consent;

(h)    in the case of Tournament Class members of the League belonging to the M1000 Group (as such term is defined below), grants to each M1000 Tournament Tour Board Representative Elect (as such term is defined below) an irrevocable proxy, with a full right of substitution and resubstitution, which proxy is coupled with an interest, to vote for such person's election (but not removal) as a Tour Board Representative at each applicable annual or special meeting of the League or of any members;

(i)    in the case of Tournament Class members of the League belonging to the 500 Group (as such term is defined below), grants to each 500 Tournament Tour Board Representative Elect (as such term is defined below) an irrevocable proxy, with a full right of substitution and resubstitution, which proxy is coupled with an interest, to vote for such person's election (but not removal) as a Tour Board Representative at each applicable annual or special meeting of the League or of any members;

(j)    in the case of Tournament Class members of the League belonging to the 250 Group (as such term is defined below), grants to each 250 Tournament Tour Board Representative Elect (as such term is defined below) an irrevocable proxy, with a full right of substitution and resubstitution, which proxy is coupled with an interest, to vote for such person's election (but not removal) as a Tour Board Representative at each applicable annual or special meeting of the League or of any members;

(k)    in the case of Tournament Class members of the League belonging to the EG (as such term is defined below), grants to each EG Tournament Tour Board Representative Elect (as such term is defined below) an irrevocable proxy, with a full right of substitution and

resubstitution, which proxy is coupled with an interest, to vote for such person's election (but not removal) as a Tour Board Representative at each applicable annual or special meeting of the League or of any members; and

(l)    in the case of Tournament Class members of the League belonging to the TA (as such term is defined below), grants to each TA Tournament Tour Board Representative Elect (as such term is defined below) an irrevocable proxy, with a full right of substitution and resubstitution, which proxy is coupled with an interest, to vote for such person's election (but not removal) as a Tour Board Representative at each applicable annual or special meeting of the League or of any members.

## ARTICLE IV.  PLAYER CLASS MEMBERSHIP

4.1    <u>Divisions of Player Class Members</u>. The Player Class of members shall be organized into the following five (5) divisions of membership: Division One, Division Two, Division Three, Honorary Division and Coaches Division; and, as regards Division One and Division Two, into active and inactive or alumni categories of membership. The qualifications, rights, privileges, and responsibilities of the members of Division One, Division Two, Division Three and the Honorary Division and, as regards Division One and Division Two, the active and alumni categories thereof, shall be as set forth in the Certificate of Incorporation and in this Article IV and elsewhere in these Bylaws and the rights, privileges and responsibilities of the members of the Coaches Division of the Player Class of the League shall be as set forth in the Certificate of Incorporation and in Article VI of these Bylaws. The terms "<u>Player Class members</u>", "<u>Player Class membership</u>", and words of like meanings, when used in these Bylaws without qualification, shall respectively mean members of or membership in Division One, Division Two, Division Three and

the Honorary Division of the Player Class, as applicable, and shall not mean or include members of the Coaches Division of the League and/or membership in the Coaches Division of the League.

      4.2   <u>Division One Membership</u>. The initial Division One members of the Player Class of the League shall be those individuals who are Division One members in good standing of the League under its former name, Association of Tennis Professionals, Inc. ("<u>ATP, Inc.</u>"), at the time and on the date of the effectiveness of the restatement of the Certificate of Incorporation which, among other matters, first changes the name of the League from "Association of Tennis Professionals, Inc." to "ATP Tour, Inc." (the "<u>Effective Date</u>"). In addition to those individuals who become Division One members of the League on the Effective Date pursuant to the immediately preceding sentence, Division One membership in the Player Class of the League shall be open to any other individual who, on and as of the date of his application for membership, shall be ranked among the first 200 players included in the League's computerized singles ranking system or among the first 100 players included in the League's computerized doubles ranking system. Any Division Two member who shall subsequently be ranked among the first 200 players included in the League's computerized singles ranking system or among the first 100 players included in the League's computerized doubles ranking system shall, upon achieving such ranking, be automatically upgraded to Division One membership, with all of the rights, privileges and responsibilities thereof. Any individual who at one time has become a Division One member shall, subject to the provisions of <u>Section 4.8</u> hereof, be permanently entitled to retain Division One membership, with all of the rights, privileges, and responsibilities thereof, provided that he shall pay the applicable dues and otherwise remain a member in good standing of the League.

      4.3   <u>Division Two Membership</u>. The initial Division Two members of the Player Class of the League shall be those individuals who are Division Two members in good standing of the

League on the Effective Date. In addition to those individuals who become Division Two members of the League on the Effective Date pursuant to the immediately preceding sentence, Division Two membership in the Player Class of the League shall be open to any individual who does not qualify for Division One membership and who, on and as of the date of his application for membership, shall be ranked among the top 500 players included in the League's computerized singles ranking system or among the top 250 players included in the League's computerized doubles ranking system. Any individual who at one time has become a Division Two member (and does not qualify for Division One membership) shall, subject to the provisions of <u>Section 4.8</u> hereof, be permanently entitled to retain Division Two membership, with all of the rights, privileges, and responsibilities thereof, provided that he shall pay the applicable dues and otherwise remain a member in good standing of the League. Division Two members of the Player Class of the League shall have no voting rights therein other than the right of Division Two Player Class members on the Record Date (as defined below) to elect two (2) Player Advisory Council Delegates pursuant to <u>Section 9.2(a)(iv)</u> hereof.

4.4     <u>Division Three Membership</u>. The initial Division Three members of the Player Class of the League shall be those individuals who are Division Three members in good standing of the League on the Effective Date. In addition to those individuals who become Division Three members of the League on the Effective Date pursuant to the immediately preceding sentence, Division Three membership in the Player Class of the League shall be open to any individual who supports the purposes of the League and satisfies criteria established from time to time by the Tour Board in respect of eligibility for Division Three membership. Division Three members of the Player Class of the League shall have no voting rights therein, shall be exempted from any financial obligations with respect to the League other than membership dues, and shall maintain their

membership in the League subject to such other terms and conditions as the Tour Board may from time to time prescribe.

4.5    <u>Honorary Division Membership</u>. The initial Honorary Division members of the League shall be those individuals who are Honorary Division members in good standing of the League on the Effective Date. In addition to those individuals who become Honorary Division members of the League on the Effective Date pursuant to the immediately preceding sentence, the Player Advisory Council, pursuant to the affirmative vote of not fewer than four (4) of its members, may from time to time select individuals for Honorary Division membership in the Player Class of the League. Honorary Division members of the Player Class of the League shall have no voting rights therein, shall be exempted from any financial obligations with respect to the League, and shall maintain their membership in the League subject to such other terms and conditions as the Tour Board may from time to time prescribe.

4.6    <u>Application Procedure</u>. Individuals wishing to apply for membership in the Player Class of the League (other than the Honorary Division thereof) shall submit a written application to the Chief Executive Officer, accompanied by a certified check made payable to the League in an amount equal to the then prevailing initiation fee for the applicable membership division of the Player Class of the League plus the annual dues payable pursuant to <u>Section 7.1</u> hereof. The form and content of the written application to be submitted shall be as prescribed from time to time by the Chief Executive Officer (provided, however, that in the case of the form of application to be submitted by Player Class members, it shall contain a specific reference to the irrevocable proxy set out in <u>Section 3.2</u> hereof), and the applicable initiation fee for each membership class and the annual dues shall be as determined from time to time by the Tour Board. Each qualified applicant

whose application is deemed complete by the Chief Executive Officer shall thereupon immediately become a member of the division of the Player Class of the League to which he has applied.

4.7    <u>Continuance of Membership</u>. In the event that the Tour Board determines that any Player Class member of the League has acted in a manner which is contrary to the best interests of the League and/or the sport of tennis, the Tour Board shall have the right to take any action which it deems appropriate, including, but not limited to, the termination of such Player Class member's membership in the League. Membership in the Player Class of the League and the rights, powers and privileges thereof:

(a)    shall immediately terminate with respect to a member upon his death or his resignation or expulsion from the League; and

(b)    may not be sold, assigned or otherwise transferred by a member in any manner whatsoever.

4.8    <u>Alumni Membership</u>. A Division One or Division Two member of the Player Class of the League who is not currently active as a professional tennis player may submit to the Chief Executive Officer a written request for membership within the alumni membership category of his membership division of the Player Class of the League. Upon acceptance of such written request by the Chief Executive Officer, such requesting member shall become an alumni member. A Division One or Division Two member of the Player Class of the League who according to the ATP Tour Rules does not have one or more computer points on the League's current ranking system shall automatically become an alumni member of his membership division of the Player Class of the League. All such alumni members shall pay reduced annual membership dues in such amounts as the Tour Board may from time to time determine. Alumni members of Division One or Division Two of the League on the Effective Date will become alumni members of Division

One or Division Two of the Player Class of the League on the Effective Date. An alumni member of the Player Class of the League who, at such time as he applies to reactivate his full membership, has, according to ATP Tour Rules, one or more computer points on the League's current ranking system, shall be entitled to reactivate full membership upon written notice to the Chief Executive Officer and the resumption of payment of the usual annual dues for his membership division. Alumni members of the League shall have no voting rights therein other than the right of the alumni members of the Player Class of the League to elect one Player Advisory Council Delegate pursuant to Section 9.2(b)(i) hereof. Alumni members of the League shall maintain membership within their alumni membership category in the League subject to such other terms and conditions as the Player Advisory Council may from time to time prescribe.

4.9     Resignation of a Member. Any member in good standing of the Player Class of the League may resign his membership in the Player Class by delivering a written notice of such resignation to the Chief Executive Officer or other officer of the League designated by the Tour Board. Such resignation shall be effective upon receipt by the Chief Executive Officer or such other designated officer. Notwithstanding any such resignation (a) any resigning member of the Player Class shall remain liable to the League for all accrued obligations to the League, including, without limitation, all amounts owing to the League in respect of any accrued and unpaid dues, assessments, fees or penalties, and (b) all rights and claims of the League against such resigning member accruing prior to the resignation of such member, shall survive such resignation. Effective upon such resignation, all rights, powers and privileges of such resigning member as a member of the Player Class of the League shall automatically and immediately be terminated.

4.10    Voting Rights. Each Division One and Division Two member shall have such voting rights as are set forth in the League's Certificate of Incorporation or in these Bylaws.

4.11 <u>Reinstatement of Resigned Member</u>. Any Player Class member who has resigned in good standing from the League or any predecessor thereof, who is otherwise eligible for Player Class membership in the League, and who has satisfied all of his obligations to the League and any predecessor thereof which accrued prior to such resignation, shall, upon (a) receipt by the Chief Executive Officer or other officer of the League designated by the Tour Board of a written request from such member for reinstatement and (b) payment to the League of the appropriate initiation fee, all dues and assessments that would have been payable to the League or any predecessor thereof by such member in respect of his membership division during the period commencing with such member's resignation from the League or any predecessor thereof until such member's reinstatement as a member of the League, and subject to such other terms and conditions as the Tour Board may from time to time prescribe, be entitled to be reinstated as a Player Class member of the League in the applicable membership division. The Tour Board may in exceptional cases waive the requirement that the resigned member pay to the League all or part of the initiation fee, dues and assessments that would have been payable to the League or any predecessor thereof by such member in respect of the applicable membership division during the period commencing with such member's resignation from the League or any predecessor thereof until such member's reinstatement as a member of the League, as a condition for reinstatement.

4.12 <u>Good Standing</u>. A Player Class member shall cease to be in good standing if such member fails to comply with any or all provisions of the Certificate of Incorporation, Bylaws or ATP Tour Rules until such member is again in compliance in all respects with the Certificate of Incorporation, Bylaws and ATP Tour Rules.

<u>ARTICLE V.  TOURNAMENT CLASS MEMBERSHIP</u>

5.1 <u>Divisions of Tournament Class Members</u>. The Tournament Class members of the League shall be organized into the following two (2) divisions of membership: the Championship

Division and the World Series Division. The respective qualifications, rights, privileges and responsibilities of the members of the Championship Division and the World Series Division of the Tournament Class of the League shall be as set forth in the Certificate of Incorporation, this Article V and elsewhere in these Bylaws. For purposes of these Bylaws, a Tournament Entity is any person, corporation or other entity which holds a sanction (a "Sanction") from the League as a Championship Series Tournament of any category or a World Series Tournament of any category pursuant to the ATP Tour Rules. Any Tournament Entity which holds a Sanction as a Championship Series Tournament of any category is eligible to become a Championship Division member of the Tournament Class of the League. Any Tournament Entity which holds a Sanction as a World Series Tournament of any category is eligible to become a World Series Division member of the Tournament Class of the League. Each Tournament Class member of the League shall be either a conditional or a full Tournament Class member. Conditional Tournament Class members shall be treated for all purposes and shall be entitled to the same rights and privileges as full Tournament Class members, except as provided in Sections 5.7 and 5.12 hereof, and subject to Section 5.11 hereof.

     5.2    Championship Division Membership.  Championship Division members of the Tournament Class of the League shall be those Tournament Class members which are Sanctioned within either the Masters 1000 category tournaments (the "M1000 Group") or the 500 category tournaments (the "500 Group").

     5.3    World Series Division Membership. World Series Division Members of the Tournament Class of the League shall be those Tournament Class members which are Sanctioned within the 250 category tournaments (the "250 Group").

5.4     <u>Tournament Groups</u>. Tournament Class members of the League shall be divided into three (3) groups: the M1000 Group, the 500 Group and the 250 Group (hereinafter each group may be referred to as the "<u>Applicable Tournament Group</u>"). The qualifications for each Applicable Tournament Group and the members of each Applicable Tournament Group shall be determined from time to time by the Tour Board pursuant to qualifications established by the Tour Board. Each Applicable Tournament Group shall be further divided into three (3) subgroups, based on geographic location, as provided in the Certificate of Incorporation. These groups shall be the Tennis America Group (the "<u>TA</u>"), the European Group (the "<u>EG</u>"), and the International Area Group (the "<u>IA</u>") (hereinafter each subgroup may be referred to as a "<u>Geographic Tournament Group</u>" and, collectively, the "<u>Geographic Tournament Groups</u>").

5.5     <u>Application Procedure</u>. The application procedures for membership in the Tournament Class of the League shall be as determined from time to time by the Tour Board.

5.6     <u>Voting and Other Rights</u>. Subject to <u>Section 5.14</u>, each Tournament Class member shall have such voting rights as are set forth in the League's Certificate of Incorporation. The Category A, Category B, Category C, Category D and Category E, Tournament Class members of the League (collectively, the "<u>Tournament Categories</u>") at any time shall be as established pursuant to the Certificate of Incorporation of the League.

5.7     <u>Continuance of Membership</u>. Subject to the provisions of this <u>Section 5.7</u> and of <u>Section 5.12</u> hereof, a full Tournament Class member of the League shall have its Sanction automatically renewed each year and such full Tournament Class member shall remain a member of the Tournament Class of the League, provided that such Tournament Class member complies with all of the applicable provisions of the Certificate of Incorporation of the League and these Bylaws and with all applicable ATP Tour Rules and Tour Board standing orders, and further

provided that there is no material adverse change in the circumstances that led to the granting of the Sanction to such Tournament Class member (such as a change in management, stadium or surface). In the event that the Tour Board determines that any Tournament Class member of the League has acted in a manner which is contrary to the best interests of the League and/or the sport of tennis, the Tour Board shall have the right to take any action which it deems appropriate, including, but not limited to, the revocation of a Sanction of such Tournament Class member of the League, the reclassification of such Tournament Class member as a conditional member of the League and/or the termination of such Tournament Class member's membership in the League. Membership in the Tournament Class of the League (both full and conditional) and the rights, powers and privileges thereof, including a Sanction:

(a)    shall immediately terminate with respect to any Tournament Class member upon (i) bankruptcy or the filing of a petition for relief from creditors by or against the Tournament Entity which is not discharged within ten (10) days from the date of such filing; or (ii) such Tournament Entity's dissolution or ceasing to exist; and

(b)    may not be sold, transferred, assigned, pledged, conveyed or otherwise disposed of by a Tournament Class member in any manner or to any extent whatsoever except as expressly permitted in Section 5.8 hereof.

5.8    Sale, Assignment or Transfer of Membership or Sanction. Notwithstanding anything contained in these Bylaws to the contrary, no Tournament Class member shall, directly or indirectly, in whole or in part, whether by operation of law or otherwise, sell, transfer, assign, pledge, convey or otherwise dispose of, or grant any voting or participation right, right of first refusal, right of first purchase, right of first offer, right of first negotiation or any similar right with respect to (each a "Transfer"), a proprietary interest (as defined in Section 5.13) in a Tournament

Class membership (whether full or conditional) or in the member holding such membership, except in accordance with and subject to the following provisions, and any attempted Transfer in violation of this Section 5.8 shall be void:

        (a)     The member wishing to make the Transfer shall submit a written application for approval of the Transfer to the Chief Executive Officer, who shall have the right to require the member making the application to furnish (and that member shall furnish) any information the Chief Executive Officer deems appropriate, including, but not limited to, the following:

        (i)     the name and address of each party to the Transfer and of each officer, director and beneficial owner of each of those parties;

        (ii)     a written statement certifying the material terms of the Transfer;

        (iii)     if the Transfer is a sale, transfer, assignment, conveyance or other disposition, a copy of the bona fide written offer that the member or the holder of the proprietary interest in the member proposes to accept (the "Offer"), a statement of the amount and the terms and conditions of the purchase price or other consideration offered for the proprietary interest in the member or membership, evidence of the proposed purchaser's ability (financial or otherwise), eligibility and experience to own and operate the member's tournament or to acquire the proprietary interest subject to the Transfer, and a binding offer (the "Right of First Refusal Offer") to sell the proprietary interest in that member or membership to the League for a purchase price equal to the amount to be paid in cash by the proposed purchaser solely for the proprietary interest in the member or membership (without regard to any employment, consulting or other arrangements and subject to the League's right to pay the purchase price as and when it would have been due from the proposed purchaser); and

        (iv)     copies of any other agreements relating to the Transfer.

(b)      Upon receipt of the information required under Section 5.8(a), the Chief Executive Officer shall conduct such investigation as he or she deems appropriate and shall submit the proposed Transfer and the Right of First Refusal Offer to the Tour Board for its approval or acceptance, except that if the proposed Transfer will not result in the transferee possessing, directly or indirectly, a proprietary interest in a membership or member of twenty-five percent (25%) or more, the Chief Executive Officer shall have the power to approve or disapprove the proposed Transfer or to accept the Right of First Refusal Offer without submitting it to the Tour Board for approval or acceptance. The Tour Board or the Chief Executive Officer, as the case may be, shall have the right to disapprove a Transfer in its or his sole discretion.

(c)      If the League elects to accept the Right of First Refusal Offer upon the terms set forth in Section 5.8(a)(iii), the League shall notify that Tournament Class member in writing of its acceptance within twenty (20) business days after the next regularly scheduled Tour Board meeting following the furnishing to the Chief Executive Officer of all information required under Section 5.8(a), provided that all such information was provided to the League at least ten (10) business days prior to such Tour Board meeting (the "Right of First Refusal Period"). If the League exercises its Right of First Refusal pursuant to this Section 5.8, the League and the seller shall thereafter fix a mutually acceptable date for the consummation of the transaction. If the Tour Board or the Chief Executive Officer (to the extent that this Section 5.8 authorizes the Chief Executive Officer to act unilaterally) approves a Transfer and the League does not notify the seller of its intention to exercise the Right of First Refusal during the Right of First Refusal Period, then during the period of ninety (90) days following the expiration of the Right of First Refusal Period (or such longer period as the Tour Board determines in its sole discretion) the seller may sell its proprietary interest in that Tournament Class member or membership in the League to the proposed purchaser

upon the terms of the Offer (subject to payment of the transfer fee provided for in Section 5.8(d) above below), but if the sale is not consummated with the proposed purchaser within that ninety (90) day period (or such longer period as the Tour Board determines in its sole discretion), then the provisions of this Section 5.8 shall apply again. For the avoidance of doubt, a member may not effect any Transfer without the approval of the Tour Board or the Chief Executive Officer (to the extent that this Section 5.8 authorizes the Chief Executive Officer unilaterally to approve such Transfer).

(d)     At any time that a Tournament Class member consummates an approved Transfer with respect to a proprietary interest in its membership or that any other person or entity consummates a Transfer with respect to a proprietary interest in a Tournament Class member, a reasonable transfer fee shall be imposed by the Tour Board unless the Transfer only constitutes a pledge or other contingent right to acquire or cause the transfer of the proprietary interest, in which event the transfer fee shall be imposed upon the actual disposition of the proprietary interest pursuant to the pledge or other contingent right, provided such pledge or other contingent right has been approved by the Tour Board or the Chief Executive Officer (to the extent that this Section 5.8 authorizes the Chief Executive Officer unilaterally to approve such Transfer). The amount of such fee shall be based on a percentage of the value of the consideration received by the seller, which percentage shall be set from time to time by the Tour Board.

5.9     Resignation of a Member. Any member in good standing may resign his membership in the Tournament Class of the League by delivering a written notice of such resignation to the Chief Executive Officer or other officer of the League designated by the Tour Board. Such resignation shall be effective upon receipt by the Chief Executive Officer or such other designated officer of the League. Notwithstanding any such resignation (a) any resigning

member of the Tournament Class shall remain liable to the League for all accrued obligations to the League, including, without limitation, all amounts owing to the League in respect of any accrued and unpaid dues, Financial Commitment (as such term is defined in and in accordance with the ATP Tour Rules) assessments, fees or penalties or other amounts owing pursuant to the ATP Tour Rules, (b) all rights and claims of the League against such resigning member accruing prior to the resignation of such member, including, without limitation, the League's right to enforce the terms of Section 5.16, shall survive such resignation, and (c) the resigning member only shall be entitled to receive such benefits and entitlements as shall have accrued and been allocated to such resigning member as of the date of its resignation. Such benefits and entitlements shall only be paid and distributed at such times as corresponding benefits and entitlements are paid to other Tournament Class members of the League. Effective upon such resignation, all rights, powers and privileges of such resigning member as a member of the Tournament Class of the League shall automatically and immediately be terminated.

5.10    Designated Representatives. For purposes of (a) any votes to be taken by League members or by Tournament Class members pursuant to the Certificate of Incorporation, these Bylaws or other applicable law, (b) being present or participating at any meeting of the members of the League or of members of the Tournament Class or (c) eligibility for nomination as a Tour Board Representative or Tournament Advisory Council Delegate (as such terms are defined below), each Tournament Class member shall select a designated representative ("Designated Representative") by whatever method such Tournament Class member deems appropriate, provided, however, that each Tournament Class member shall notify the Tour Board of its Designated Representative by a written instrument delivered to the Chief Executive Officer or the Secretary and executed by an executive officer or person holding a comparable position with the

Tournament Class member, <u>provided</u> that, notwithstanding the foregoing, none of the M1000 Tour Board Representatives or the 500 Tour Board Representative shall be required to be a Designated Representative to be eligible to be a Tour Board Representative. A Tournament Class member may change its Designated Representative at any time upon providing notice to the Tour Board in the manner provided in the immediately preceding sentence. The Designated Representatives of each Tournament Class member shall have all requisite power and authority to legally bind the Tournament Class member on all matters related to the League and its tournament, and the League shall be entitled to rely upon any actions, directions and statements of such Designated Representative.

5.11    <u>Good Standing</u>. A Tournament Class member shall cease to be in good standing if it fails to comply with any or all provisions of the Certificate of Incorporation, Bylaws or ATP Tour Rules until it is again in compliance in all respects with the Certificate of Incorporation, Bylaws and ATP Tour Rules.

5.12    <u>Conditional Tournament Class Members</u>. Conditional Tournament Class members shall be those entities so classified by the Tour Board pursuant to this <u>Section 5.12</u>. The Tour Board shall have the right to classify any Tournament Class member as a conditional member of the Tournament Class of the League at the time that such Tournament Class member initially becomes a member of the League, or at any time thereafter, in accordance with such criteria as the Tour Board may establish from time to time; provided that, subject to the provisions of <u>Sections 5.7</u> and this <u>Section 5.12</u> and Articles SEVENTH and EIGHTH of the Certificate of Incorporation, each conditional Tournament Class member shall have all other rights and responsibilities of Tournament Class membership as set forth in these Bylaws, the Certificate of Incorporation and the ATP Tour Rules. A conditional Tournament Class member of the League shall remain a

conditional member until such time as the Tour Board determines that such Tournament Class member shall be deemed a full Tournament Class member, in accordance with such criteria as the Tour Board may establish from time to time, or until the Tour Board terminates the membership in the League of such conditional Tournament Class member in accordance with these Bylaws. In addition to the provisions of Section 5.7 hereof, the Tour Board may terminate the membership of a conditional Tournament Class member of the League which has never been a full Tournament Class member of the League for any reason. A full Tournament Class member of the League may be reclassified as a conditional Tournament Class member of the League and may have its Tournament Class membership in the League terminated upon a vote of the Tour Board which finds, after a hearing has been held or after an opportunity for a hearing has been offered, pursuant to which hearing or opportunity therefore such Tournament Class member has had or has been offered a reasonable opportunity to present evidence and witnesses and to be represented by legal counsel, that such Tournament Class member has failed to comply with the applicable provisions of the Certificate of Incorporation and the Bylaws of the League, with the ATP Tour Rules or with any other regulations or Tour Board decisions, or upon the finding by the Tour Board that there has been a material adverse change in the operation of the event or the circumstances that led to the granting of the Sanction for such Tournament Class member.

5.13    Limitations on Ownership.

(a)    Notwithstanding anything contained in these Bylaws to the contrary, no person or entity (or group of persons and/or entities acting in concert) shall, directly or indirectly, possess or control (by contract or otherwise) an "ownership interest" in more than two (2) Championship Division members or memberships or more than an aggregate of four (4) Tournament Class members or memberships (regardless of division).

(b)     For purposes of Article V of these Bylaws, the words "ownership interest" shall mean:

(i)     any direct or indirect proprietary interest in a Tournament Class member or membership, other than an interest of five percent (5%) or less in any class of the equity or debt securities of a member whose shares are traded on an internationally recognized securities exchange (a "proprietary interest"); or

(ii)     with respect to any Tournament Class member or membership in which the relevant person, entity or group does not have a proprietary interest, the right to:

(A)     exercise the member's voting rights;

(B)     apply to the Tour for a change in the venue or geographic location of the member's tournament;

(C)     serve as or appoint the member's Designated Representative; or

(D)     transfer any of the rights described in this clauses (b)(ii)(1)-(3), or to apply to the Tour for approval to Transfer any direct or indirect proprietary interest in the member or membership.

(c)     Without limiting the generality of Section 5.13(b)(i), a person or entity shall be deemed to have an ownership interest in a Tournament Class member or membership if it has a direct or indirect interest in the proceeds resulting from the sale of that member or membership or in the operating income or losses of that member's tournament, but a person or entity providing services or guaranteed payments to a Tournament Class member in consideration of an interest in the operating income or losses of that member's tournament during the period it is providing those services or payments shall not be deemed to have an ownership interest in that member or

membership, provided the Chief Executive Officer has approved the terms of any such agreement between any such person or entity or any member. Such agreement shall not be approved if it is found to be an attempt to circumvent Section 5.13(a) of the Bylaws.

5.14    Limitations on Voting. Notwithstanding anything contained in these Bylaws to the contrary, if any matter shall be brought for a vote (x) before the members of any Applicable Tournament Group of the League, (y) before the members of any Tournament Category or (z) before the members of any Geographic Tournament Group of the League, no single member or "group of affiliated members" (as defined below) shall be permitted to exercise more than fifteen percent (15%) of the aggregate number of votes otherwise exercisable by all members (including that member or group of affiliated members) of that Applicable Tournament Group, Tournament Category or Geographic Tournament Group, as applicable (the "Voting Limit"). If the votes otherwise exercisable by any single member or group of affiliated members exceeds the Voting Limit, the number of votes exercisable by that member or group of affiliated members shall be reduced to the Voting Limit and all matters relating to voting including, but not limited to, whether a quorum exists and whether a motion has carried, shall be based on that reduced number of votes. If the aggregate number of votes otherwise exercisable by a group of affiliated members is reduced pursuant to this Section 5.14, the reduced votes shall be allocated among the group of affiliated members in such percentages as those members shall agree (and, if they cannot agree, pro rata in accordance with their respective voting rights), except that no member shall be permitted to exercise more than the number of votes otherwise allocated to it under Section 5.6. Each reduction in votes pursuant to this Section 5.14 shall be to the highest whole number of votes equal to or less than the Voting Limit and no member shall be permitted to exercise a fractional vote. For purposes of this Section 5.14, the term "group of affiliated members" shall mean any two (2) or more

members or memberships of an Applicable Tournament Group, Tournament Category or Geographic Tournament Group, as applicable, in which, directly or indirectly, any single person or entity or group of persons or entities acting in concert has an ownership interest (as defined in Section 5.13).

5.15    Certifications. Whenever required by the Chief Executive Officer, each Tournament Class member shall certify to the League such facts concerning its ownership, employees, agents, operations, tournament and other matters as the Chief Executive Officer shall determine from time to time. The Chief Executive Officer may require such a certificate no more frequently than once per year from Tournament Class members generally, but is authorized to require such a certificate from a lesser number of Tournament Class members or any single Tournament Class member whenever the Chief Executive Officer deems it necessary or advisable. Tournament Class members shall report promptly to the Chief Executive Officer any material change in any information provided in any prior certificate. Any material representation or omission in a certificate delivered by a Tournament Class member under this Section 5.15, or any failure to notify the Chief Executive Officer promptly of any material change in the information set forth in such a certificate, shall be deemed an act contrary to the best interest of the League under Section 5.7.

5.16    Non-Compete.

(a)    In recognition of the substantial goodwill, expertise and access to commercial relationships with sponsors, telecasters and others collectively developed by the League and its Tournament Class members classified as M1000 Group members, and the harm that would result to the League and all of its members if any of its M1000 Group members (or their Owners) were to use any of that goodwill, expertise or access in competition with another

Tournament Class member, no M1000 Group member, and no owner of any such M1000 Group member, shall, directly or indirectly, engage or be interested in any business or entity that engages in the business of operating a Competing Men's Event in the Restricted Territory at any time during which such member is an M1000 Group member and for a period ending on December 31 of the second full calendar year following the year in which its membership is terminated, withdrawn or otherwise becomes inactive. Each M1000 Group member shall cause its Owners to comply with the provisions of this Section 5.16(a).

(b)    It is understood that the breach or threatened breach of the provisions of Section 5.16(a) will immediately cause irreparable harm to the League and all of its members and that any remedy at law for such breach will be inadequate. Accordingly, in addition to any other remedy the League may have, it shall be entitled to temporary, preliminary and permanent injunction or other equitable relief restraining any breach or threatened breach, without any bond or other security being required and without the necessity of showing actual damages. If, despite the harm that would be incurred by the League or its members, any court construes any of the covenants in Section 5.16(a) to be too broad, the court shall have the authority to reduce the duration, geographic area or scope of prohibited activities to the extent necessary so that the provision is enforceable (and the provision, as reduced, shall then be enforced).

(c)    Any judicial proceeding brought with respect to any dispute arising out of this Section 5.16 shall be brought exclusively in the courts of the Chancery Court in Delaware.

(d)    For purposes of this Section 5.16:

(i)    "Owner" shall mean each individual, corporation, partnership, limited liability company, trust (including both its trustees and beneficiaries), unincorporated association, sole proprietorship or other organization that, directly or indirectly (including, but not

limited to, through one or more intermediate entities), has an ownership interest (as defined in Section 5.13) in an M1000 Group member.

(ii)    A Member or Owner shall be deemed engaged or interested in a Competing Men's Event if the Member or Owner has any direct or indirect proprietary interest in that Competing Men's Event (other than an interest of five percent (5%) or less in any class of the equity or debt securities of an entity whose shares are traded on an internationally recognized securities exchange).

(iii)    "Restricted Territory" shall mean the country in which the M1000 Group member operated its event, plus, to the extent not otherwise included within the boundaries of that country, a radius of fifty (50) miles from the territorial limits of the locality for which the M1000 Group member was granted a Sanction; provided, however, that such Restricted Territory shall not in any event exceed a radius of more than 600 miles from the territorial limits of the locality for which the M1000 Group member was granted a Sanction.

(iv)    "Competing Men's Event" shall mean any men's professional tennis event in which at least five (5) male players who had a ranking between 1 and 50 at any time during the two (2) years prior to the commencement of such event are invited to compete, or that is being operated under a name that is in any way similar to the name under which the member operates (or operated) its event as an M1000 Group member; provided, however, that any event that is currently operated by an Owner is not included in this definition so long as such event continues to be operated in a manner substantially similar to its current operation.

5.17    Security. If, at any time, either the Tour Board or the Chief Executive Officer, in their sole discretion, believes that any Tournament Member is (or will be) unable or unwilling to fulfill any financial obligations arising out of its Membership or the operation of its Tournament,

whether such obligation is matured or unmatured or due to the Tour, its players or third-parties, (including, without limitation, the Member's Tournament fee obligations, prize money obligations and stadium rent), either the Tour Board or the Chief Executive Officer may require, by written notice to the Member, that the Member provide the Tour (or its designee) with security in such amount and form (including, but not limited to, a bond, irrevocable letter of credit, or cash deposit) as the Tour Board or Chief Executive Officer shall deem appropriate and specify in the notice. Such notice also shall specify the place and date on which the security shall be provided, which date shall be no sooner that fifteen (15) days after the date of the notice unless the applicable obligation is due and payable earlier (in which case the notice may specify a date not sooner than the earlier of five (5) days after the notice or the date the obligation is due). The failure to timely deliver such security shall subject a Tournament to fine of up to $50,000 and/or loss or change in membership status, and/or forfeiture of all sums, if any, previously paid to the Tour.

ARTICLE VI.  COACHES DIVISION MEMBERSHIP

6.1    <u>Creation of Coaches Division/Special Provisions</u>. The League has, as one of the divisions of Player Class membership specified in <u>Section 4.1</u> hereof, established a limited division of membership in the Player Class known as the Coaches Division. The eligibility, qualifications, rights, privileges, benefits and responsibilities of the Coaches Division members shall be solely as set forth in the Certificate of Incorporation and this Article VI. Except as expressly provided for in this Article VI, no Coaches Division member shall, solely by virtue of being a member of the Coaches Division of the Player Class of the League, be entitled to any right and/or privilege available to any Division One, Division Two, Division Three and/or Honorary Division members of the Player Class or the Tournament Class of the League. This Article VI shall only be applicable to Coaches Division members.

6.2    <u>Rights and Privileges of Coaches Division Members</u>. Members of the Coaches Division of the Player Class of the League shall be entitled to receive only such rights and/or privileges as may from time to time be established by the Tour Board as being applicable to members of the Coaches Division of the Player Class of the League. Notwithstanding the foregoing, no members of the Coaches Division shall, by virtue of being a member of the Coaches Division of the Player Class of the League, (a) have any voting rights whatsoever with respect to any matter other than the right of the Coaches Division members to elect one Player Advisory Council Delegate pursuant to <u>Section 9.2(b)(ii)</u> hereof, and/or (b) be eligible to participate in the League's Member Benefit Plan and/or any other pension, retirement, deferred compensation or other similar plan (if applicable).

6.3    <u>Eligibility for Coaches Division Membership</u>. The initial members of the Coaches Division of the Player Class of the League shall be those individuals who are Coaches Division members in good standing of ATP, Inc. on the Effective Date. In addition to those individuals who become Coaches Division members of the League on the Effective Date pursuant to the immediately preceding sentence, any individual who, on and as of the date of his application for membership in the Coaches Division of the Player Class of the League is actively engaged in coaching a Division One member or a Division Two member and who satisfies criteria established from time to time by the Tour Board in respect of eligibility for Coaches Division membership, shall be eligible for membership in the Coaches Division of the Player Class of the League. Any such individual desiring membership in the Coaches Division of the League must satisfy all of the qualifications referred to in <u>Section 6.4</u> hereof.

6.4    <u>Qualifications for Coaches Division Membership</u>. Any individual eligible for membership in the Coaches Division of the Player Class of the League must satisfy all of the following qualifications in addition to those set forth in <u>Section 3.2</u> hereof:

(a)    <u>Written Application</u>. Such individual must submit a written application to the Chief Executive Officer, accompanied by a certified check made payable to the League in the amount of the then prevailing initiation fee for membership in the Coaches Division. The form and content of the written application to be submitted shall be as prescribed from time to time by the Chief Executive Officer and the applicable initiation fee for such membership in the Coaches Division shall be as determined from time to time by the Tour Board.

(b)    <u>Written Nomination</u>. Such individual must submit a written nomination by an active Division One or Division Two member of the Player Class of the League supporting such individual's membership in the Coaches Division of the Player Class of the League. The form and content for the written nomination shall be as prescribed from time to time by the Chief Executive Officer.

(c)    <u>Coaching Credentials</u>. Such individual must satisfy the Chief Executive Officer (a) that such individual possesses the requisite skill, knowledge, and experience to qualify for membership in the Coaches Division of the Player Class of the League, and (b) that such individual is, and intends to continue to be, a bona fide coach and is not otherwise, and does not intend otherwise to be, engaged in the representation of professional tennis players, tournaments and/or events. No such individual shall be deemed to fail to qualify for membership in the Coaches Division solely as a result of his status as a professional tennis player, or member of, director of and/or officer of the League and/or the Player Advisory Council.

35

(d)    <u>Integrity</u>. Such individual must satisfy the Chief Executive Officer that such individual has not engaged in conduct contrary to the integrity of the sport of tennis. Any individual who is convicted of the violation of a criminal law of any country, the punishment for which includes possible imprisonment for more than one year, may be deemed, by virtue of such conviction, to have engaged in conduct contrary to the integrity of the sport of tennis. Any individual who has at any time behaved in a manner severely damaging to the reputation of the sport of tennis may be deemed, by virtue of such behavior, to have engaged in conduct contrary to the integrity of the sport of tennis.

6.5    <u>Other Qualifications</u>. Such individual must satisfy the Chief Executive Officer that such individual's admission to the Coaches Division of the Player Class of the League is in the best interests of the League.

6.6    <u>Continuance of Coaches Division Membership</u>. Membership in the Coaches Division of the Player Class of the League and the rights, powers and privileges thereof:

(a)    shall immediately terminate with respect to a member of the Coaches Division upon his death or his resignation or expulsion from the League; and

(b)    may not be sold, assigned or otherwise transferred by a member of the Coaches Division in any manner or to any extent whatsoever.

6.7    <u>Resignation of a Coaches Division Member</u>. Any member in good standing of the Coaches Division of the Player Class of the League may resign his membership in the Coaches Division by delivering a written notice of such resignation to the Chief Executive Officer or other officer of the League designated by the Tour Board. Such resignation shall be effective upon receipt by the Chief Executive Officer or such other designated officer. Notwithstanding any such resignation (i) any resigning member shall remain liable to the League for all accrued obligations

to the League, including, without limitation, all amounts owing to the League in respect of any accrued and unpaid dues, assessments, fees or penalties, and (ii) all rights and claims of the League against such resigning member of the Coaches Division accruing prior to the resignation of such member of the Coaches Division shall survive such resignation. Effective upon such resignation, all rights, powers and privileges of such resigning member as a member of the Coaches Division of the Player Class of the League shall automatically and immediately be terminated.

6.8    <u>Reinstatement of Resigned Coaches Division Member</u>. Any member of the Coaches Division of the Player Class of the League who has resigned in good standing from the League or any predecessor thereof, who is otherwise eligible on and as of the date of his written request for membership in the Coaches Division of the League, who on and as of the date of his written request for reinstatement meets all the qualifications for membership in the Coaches Division, and who has satisfied all of his obligations to the League and any predecessor thereof which accrued prior to such resignation, shall, upon (i) receipt by the Chief Executive Officer or other officer of the League designated by the Tour Board of a written request from such member for reinstatement and (ii) payment to the League of the appropriate initiation fee, all dues and assessments that would have been payable to the League or any predecessor thereof by such member in respect of his Coaches Division membership during the period commencing with such member's resignation until such member's reinstatement as a member of the League, and subject to such other terms and conditions as the Tour Board may from time to time prescribe, be entitled to be reinstated as a member of the Coaches Division of the Player Class of the League.

6.9    <u>Coaches Division Dues</u>. The provisions of <u>Sections 7.1</u>, <u>7.3</u> and <u>7.4</u> of these Bylaws shall be applicable to each member of the Coaches Division of the Player Class of the League.

6.10    Default and Suspension. The provisions of Sections 7.5 and 7.6 of these Bylaws shall be applicable to each member of the Coaches Division of the Player Class of the League.

ARTICLE VII.  DUES, ASSESSMENTS AND OTHER PAYMENTS

7.1     Player Class Member Dues. Player Class members of the League shall pay initiation fees and annual dues to the League in such amounts as the Tour Board may from time to time determine. Annual dues for each fiscal year shall be due and payable in full on the first day of January during such fiscal year or, in the case of new members, as provided in Section 4.6 hereof. A Player Class member whose membership in the League changes from one membership division to a higher ranked division within the Player Class during a given fiscal year shall have his dues obligation ratably increased with respect to such fiscal year.

7.2     Tournament Class Members Dues. Each Tournament Class member of the League shall pay its respective appropriate Tour Fee portion of its Financial Commitment to the League, as determined pursuant to the ATP Tour Rules.

7.3     Assessments. A general or special assessment may be levied against members of the League, or any class thereof, at such times and in such amounts as determined by the Tour Board from time to time. Any assessment levied shall be due and payable at such times and in accordance with the schedule of payment as shall be set forth in the Tour Board resolution pursuant to which such assessment is adopted and approved.

7.4     Notices. The Secretary of the League, or his or her designee, shall give prompt written notice of the fixing of the amount of annual dues pursuant to Section 7.1 hereof to each member of the League, and of the levying and terms of payment of any assessment pursuant to Section 7.3 hereof to each assessed member.

7.5     Default and Suspension. If any member of the League shall:

        (a)     fail to pay to the League:

38

(i)    any amount owing from such member in respect of dues or assessments for a period of thirty (30) days following the due date thereof;

(ii)    any amount owing from such member in respect of fines, penalties or any other matter for a period of ten (10) days following the date upon which written notice of the same shall have been duly given to such member; or

(iii)    with respect to any Tournament Class member, its Financial Commitment as and when due; or

(b)    lose its sanction as a Championship Division or World Series Division member of the Tournament Class of the League,

then, in addition to all other rights and remedies which the League may have, all rights, powers and privileges of such member as a member of the League shall be automatically and immediately suspended. Notwithstanding the continuance of such suspension, such member shall remain liable for the payment of all amounts in respect of dues, Financial Commitments, assessments or other sums otherwise accruing and unpaid and/or becoming payable by such member hereunder or under the ATP Tour Rules prior to and during such suspension period.

7.6    _Treatment of Suspension_. Any member of the Player Class of the League whose membership has been suspended in accordance with the provisions of Section 7.5(a)(i) or (ii) hereof shall have his membership in good standing reinstated if, within sixty (60) days of the date of the suspension of his membership, he makes payment in full of all amounts then due and owing from him to the League. Any suspended membership in the Player Class of the League which is not so reinstated within such sixty (60)-day period shall be deemed to have been forfeited, and the given Player Class member shall thereupon be automatically and immediately expelled from the League. Any Tournament Class member whose membership has been suspended in accordance

with <u>Section 7.5(a)(i)</u>, <u>(ii)</u> or <u>(iii)</u> hereof shall have its membership in good standing reinstated if, within any applicable cure period set forth in the ATP Tour Rules, it makes payment in full of all amounts then owing from such Tournament Class member to the League, including any unpaid Financial Commitment, interest, dues, assessments, fines or penalties of such Tournament. Any suspended membership in the Tournament Class of the League which is not so reinstated within the applicable cure period shall be deemed to be forfeited, and the given Tournament Class member shall thereupon have its Sanction automatically and immediately terminated. All obligations of an expelled member to the League, and all rights and claims of the League against such expelled member, accruing upon or prior to expulsion of such member shall survive such expulsion.

<u>ARTICLE VIII.  MEETINGS OF MEMBERS</u>

8.1    <u>Annual Meeting</u>. An annual meeting of the members of the League shall be held on the second Saturday in November in each year or on such other date as the Tour Board may determine, at such place within or without the State of Delaware and at such time as may be fixed by the Tour Board, for the purpose of (a) electing Tour Board Representatives to succeed those whose terms next expire (or, if the annual meeting is held on January 1 of any year, to succeed those whose terms then expire), and (b) for the transaction of such other business as properly may be brought before the meeting.

8.2    <u>Special Meetings of the League Members</u>. Special meetings of members of the League may be called by the Chief Executive Officer or by a majority of the Tour Board Representatives then in office, and shall be called by the Secretary of the League upon the written request of (a) at least a majority of the Division One members of the Player Class of the League or at least a majority of the Player Advisory Council Delegates then in office, plus (b) such number of the Tournament Class members of the League which collectively have at least a majority of the voting power of the Tournament Class of the League. Special meetings of the members of the

League shall be held at such place within or without the State of Delaware and at such time and on such date as shall be specified in the notice thereof. At any such special meeting, only such business may be transacted as is specified in the notice thereof.

8.3    <u>Meetings of the Player Class Members</u>. A regular meeting of the members of the Player Class shall be held annually on the third Saturday in June, at such time and place within or without the state of Delaware as set by the Chief Executive Officer, or at such time and place within or without the state of Delaware as set by the Chief Executive Officer, on such other date set by the Chief Executive Officer which shall be no later than the date on which the annual meeting of the members of the League is held in that year, for the purposes of (a) electing Player Advisory Council Delegates, and (b) the transaction of such other business as properly may be brought before the meeting. Special meetings of the members of the Player Class of the League may be called by the Chief Executive Officer or by at least a majority of the members of the Player Advisory Council then in office, and shall be called by the Secretary of the League upon the written request of at least a majority of the Division One members of the Player Class of the League. Special meetings of the Player Class members shall be held at such place within or without the State of Delaware and at such time and on such date as shall be specified in the notice thereof. At any such special meeting, only such business may be transacted as is specified in the notice thereof.

8.4    <u>Meetings of the Tournament Class Members</u>. A regular meeting of the members of the Applicable Tournament Groups and Geographic Tournament Groups, shall be held annually at such times and places within or without the state of Delaware and on such dates as set by the Chief Executive Officer, which dates shall be no later than the date on which the annual meeting of the members of the League is held in that year, for the purposes of (a) electing their respective Tournament Tour Board Representatives Elect (as such term is defined below) pursuant to <u>Section</u>

<u>10.5</u> hereof with regard to their respective Tour Board Representatives whose terms are to next expire after the next annual meeting of the members of the League (or, if the annual meeting is held on January 1 of any year, to succeed those whose terms then expire), (b) electing each Geographical Tournament Group's Tournament Advisory Council Delegates (as such term is defined below) pursuant to <u>Section 11.2</u> hereof, to succeed those whose terms expire, and (c) the transaction of such other business as properly may be brought before the meeting; <u>provided</u> that, for so long as the TA or the EG has the right to appoint a Tournament Tour Board Representative, the TA and/or EG, as applicable, shall also be permitted to meet to fill any vacancy that may occur with respect to their respective Tournament Tour Board Representative or vote upon any other matter for which such group has the right to vote hereunder or pursuant to the Certificate of Incorporation of the League. Special meetings of the members of the Tournament Class of the League or of any division or series or group thereof created pursuant to the Certificate of Incorporation of the League may be called by the Chief Executive Officer and shall be called by the Secretary of the League upon the written request of the Tournament Class members which collectively have at least a majority of the voting power of the Tournament Class of the League entitled to vote at such meeting. Special meetings of the Tournament Class members or any such division or series or group thereof shall be held at such place within or without the State of Delaware and at such time and on such date as shall be specified in the notice thereof. At any such special meeting, only such business may be transacted as is specified in the notice thereof.

8.5    <u>Notice of Meetings</u>. Written notice of each annual, regular or special meeting of members of the League or of either class thereof or any division or series or group thereof stating the place, date and time of such meeting and, if pertaining to a special meeting, the purpose or purposes for which such special meeting is being called and the person or persons issuing or

directing the call therefor, shall be delivered personally or shall be mailed, not less than ten (10) nor more than sixty (60) days before the date of such meeting, to each member entitled to vote at such meeting, except as otherwise provided herein or required by law or the Certificate of Incorporation of the League. Notice of each annual, regular or special meeting of members of the League or of either class thereof or any division or series or group thereof shall be directed to members of the League not entitled to vote at such meeting in such manner as the Tour Board may from time to time prescribe. Any notice, if mailed, shall be directed to the given member at his address as it appears on the books of the League. Whenever all members of the League or of either class of the League or any division or series or group thereof entitled to vote at any meeting of members or either class or any division or series or group of members shall have waived notice of such meeting either before or after such meeting, such meeting shall be valid for all purposes. A member who shall be present at any meeting shall be deemed to have waived notice of such meeting except if such member is present solely for the purpose of contesting the validity of the meeting and does not otherwise take part in the meeting. At any annual or regular meeting of members of the League or of either class thereof or of any division or series or group thereof, except as otherwise required by applicable law, any business whatsoever that shall be brought before the meeting may be transacted whether or not referred to in the notice of the meeting. If the notice of a special meeting of members of the League or of a class thereof or of any division or series or group thereof shall state as a purpose of the meeting the transaction of any business whatsoever, then, except as otherwise provided by applicable law, any action may validly be taken at such meeting. If any meeting of members of the League or of a class thereof or of any division or series or group thereof is adjourned to another time or place, notice need not be given of the adjourned meeting if the time and place to which the meeting is adjourned are announced at the

meeting at which the adjournment is taken, and at the adjourned meeting any business may be transacted that might have been transacted at the adjourned meeting. However, if such adjournment is for more than thirty (30) days or if after such adjournment the Tour Board shall fix a new record date for the adjourned meeting, a notice of the adjourned meeting shall be given to each League member of record on the new record date entitled to vote at such meeting.

      8.6    <u>Quorum</u>. At any meeting of members of the League, a quorum for the transaction of any business shall consist of (a) one-fifth ($1/5^{th}$) of the Player Class members entitled to vote at such meeting of the League, plus (b) either (i) for an annual meeting (including any adjournment or continuance thereof) of members of the League, Tournament Class members which collectively have at least twenty percent (20%) of the voting power of the Tournament Class of the League, or (ii) for any other meeting of members of the League, Tournament Class members which collectively have at least fifty percent (50%) of the voting power of the Tournament Class of the League, except as otherwise required by applicable law or as set forth in these Bylaws. At any meeting of members of the Player Class of the League, a quorum for the transaction of any business shall consist of one-fifth ($1/5^{th}$) of the Player Class members entitled to vote at such meeting, except as otherwise provided by law or as set forth in these Bylaws. At any regular meeting (including any adjournment or continuance thereof) of the members of the Tournament Class of the League or any division or series or group thereof, a quorum for the transaction of any business shall consist of Tournament Class members which collectively have at least twenty percent (20%) of the voting power of the Tournament Class of the League entitled to vote thereat. At any other meeting of members of the Tournament Class of the League or any division or series thereof, a quorum for the transaction of any business shall consist of Tournament Class members which collectively have at least fifty percent (50%) of the voting power of the Tournament Class of the

League entitled to vote thereat, except as otherwise provided by law. If there shall not be a quorum at any meeting of League members or any class thereof or any division or series thereof, a majority of the Division One members of the Player Class and Tournament Class members which collectively have a majority of the voting power of the Tournament Class of the League, present at such meeting and entitled to vote may adjourn such meeting from time to time, without notice other than announcement at such meeting, until the number of League members required to constitute a quorum shall be present.

      8.7    <u>Voting</u>. Except as otherwise required by applicable law or as set forth in the Certificate of Incorporation or in these Bylaws, all matters brought before a duly constituted meeting of (i) League members for a vote shall be decided by the vote of (a) a majority of those Player Class members entitled to vote and voting thereon and who, except as otherwise provided in <u>Sections 9.7</u> and <u>9.8</u> hereof, are present at such meeting; plus (b) Tournament Class members which collectively have a majority of the voting power of the Tournament Class members of the League entitled to vote and voting thereon and who, except as otherwise provided in <u>Section 10.5</u> hereof, are present at such meeting; (ii) Player Class members for a vote shall be decided by the vote of a majority of those Player Class members entitled to vote and voting thereon and who, except as otherwise provided in <u>Sections 9.7</u> and <u>9.8</u> hereof, are present at such meeting; and (iii) Tournament Class members or any division or series or group thereof for a vote shall be decided by the vote of Tournament Class members which collectively have a majority of the voting power of the Tournament Class members of the League entitled to vote and voting thereon and who, except as otherwise provided in <u>Sections 10.5</u> and <u>11.2</u> hereof, are present at such meeting.

      8.8    <u>Record Date</u>. The Tour Board may prescribe a date, which date shall not be more than sixty (60) nor less than ten (10) days before the date of such meeting, as the record date for

the purpose of determining the members of the League entitled to notice of or to vote at any meeting of League members or either class of League members or any division or series or group thereof or any adjournment thereof. The Tour Board may also prescribe a date, which date shall not precede the date upon which the resolution fixing the record date is adopted by the Tour Board, nor be more than ten (10) days after the date of such action, as the record date for the purpose of determining the members of the League entitled to express consent to any proposal brought before the members or any class of members of the League or any division or series or group thereof without a meeting.

8.9    Organization. At every meeting of members of the League or of either class of members of the League or any series thereof, (a) the Chairman and, in the absence of the Chairman, the Chief Executive Officer shall serve as chairman of the meeting and (b) the Secretary shall serve as secretary of the meeting. If the Chairman and Chief Executive Officer shall be absent from such meeting, a chairman of such meeting shall be chosen by the vote of those members present at such meeting pursuant to Section 8.7 hereof.

8.10    Action by Members Without a Meeting. Whenever members of the League or of either class of the League or any division or series or group thereof are required or permitted to take any action by vote, such action may be taken without a meeting pursuant to a written consent, setting forth the action so taken, signed by such number of the members of the League or the class of members of the League or any division or series or group thereof entitled to vote thereon as would be required to take such action at a meeting of the members or class of members or division or series or group thereof at which all of the members entitled to vote thereon were present and voted.

ARTICLE IX.  PLAYER ADVISORY COUNCIL

9.1     Powers and Duties. The Player Advisory Council shall elect four (4) Tour Board Representatives by electing four (4) Player Tour Board Representatives Elect (as defined below) pursuant to Section 9.8 hereof and shall have such other powers and duties as may be assigned to them by the Tour Board, subject to the Certificate of Incorporation and these Bylaws.

9.2     Number and Qualification.

(a)     The Player Advisory Council shall, subject to Sections 9.3 and 9.4 hereof, consist of ten (10) voting members, which shall be elected in staggered terms in accordance with, and at such times as set forth in, Section 9.4 hereof at the regular meeting (including any adjournment or continuance thereof) of the members of the Player Class of the League for the election of the applicable Player Advisory Council Delegates by the Division One and Division Two members of the Player Class of the League in good standing as of the day which is ninety (90) days prior to the day on which such regular meeting is originally scheduled to be held (the "Record Date") as follows:

(i)     Top Fifty Singles Players: Division One members of the Player Class of the League who hold the fifty (50) highest rankings, inclusive, of the Player Class members of the League on the League's computerized singles ranking system on the Record Date shall elect, subject to the geographic limitations set forth in Section 9.3 below, four (4) individuals from among themselves to serve on the Player Advisory Council (the "Top 50 Singles PAC Delegates"), for staggered two (2)-year terms, subject to the election of two (2) individuals to serve for a one (1) year term in 2023 in accordance with Section 9.4. Three (3) of the four (4) individuals serving on the Player Advisory Council at any one time must be ranked within the top twenty-five (25) singles players, unless fewer than three (3) top twenty-five (25) singles players are nominated in any two consecutive elections, in which event the top twenty-five (25) singles player nominees

must be elected and the remainder of the four (4) Player Advisory Council Delegates in this category may be elected from other top fifty (50) singles player nominees.

        (ii)    <u>Singles Players Ranked Numbers Fifty-One through One Hundred</u>: Division One members of the Player Class of the League who hold the fifty-first through one hundredth ($51^{st} – 100^{th}$) highest rankings, inclusive, of the Player Class members of the League on the League's computerized singles ranking system on the Record Date shall elect, subject to the geographic limitations set forth in <u>Section 9.3</u> below, two (2) individuals from among themselves to serve on the Player Advisory Council (the "<u>Top 100 Singles PAC Delegates</u>"), for staggered two (2)-year terms, subject to the election of one (1) individual to serve for a one (1) year term in 2023, in accordance with <u>Section 9.4</u>.

        (iii)    <u>Doubles Players Ranked Numbers One through Twenty-Five</u>: Division One members of the Player Class of the League who hold the twenty-five (25) highest rankings, inclusive, of the Player Class members of the League in doubles on the League's computerized doubles ranking system on the Record Date shall elect, subject to the geographic limitations set forth in <u>Section 9.3</u> below, one (1) individual from among themselves to serve on the Player Advisory Council (the "<u>Top 25 Doubles PAC Delegate</u>") for a two (2)-year term.

        (iv)    <u>Doubles Players Ranked Numbers One through Seventy-Five</u>: Division One members of the Player Class of the League who hold the seventy-five (75) highest rankings, inclusive, of the Player Class members of the League in doubles on the League's computerized doubles ranking system on the Record Date shall elect, subject to the geographic limitations set forth in <u>Section 9.3</u> below, one (1) individual from among themselves to serve on the Player Advisory Council (the "<u>Top 75 Doubles PAC Delegate</u>") for a two (2)-year term, subject

to the election of such individual to serve for an initial one (1) year term in 2023, in accordance with Section 9.4.

(v)    At Large: Division One and Division Two members, excluding retired and alumni members, of the Player Class of the League shall elect, subject to the geographic limitations set forth in Section 9.3 below, two (2) individuals from among themselves to serve on the Player Advisory Council (the "At Large PAC Delegates"), for staggered two (2)-year terms, subject to the election of one (1) individual to serve for a one (1) year term in 2023, in accordance with Section 9.4.

(b)    The Player Advisory Council shall also include two (2) non-voting members, which shall be elected to staggered two (2)-year terms as follows:

(i)    Alumni Division. Division One and Division Two alumni members of the Player Class of the League as of the Record Date shall elect one individual from among themselves to serve on the Player Advisory Council (the "Alumni PAC Delegate") for a two (2)-year term, subject to the election of such individual to serve for an initial one (1) year term in 2023, in accordance with Section 9.4.

(ii)    Coaches Division. Members of the Coaches Division of the Player Class of the League as of the Record Date shall elect one (1) individual from among themselves to serve on the Player Advisory Council (the "Coaches PAC Delegate") for a two (2)-year term.

(c)    No voting or non-voting member of the Player Advisory Council shall, on the date of becoming a member of the Player Advisory Council and thereafter during his term, (i) be an employee of the League or (ii) have any Affiliation (as such term is defined in the Certificate of Incorporation) with any Restricted Entity (as such term is defined in the Certificate of Incorporation). In the event that a Player Advisory Council Delegate acquires an Affiliation with

a Restricted Entity after he was elected to the Player Advisory Council, then he shall no longer be eligible to serve as a Player Advisory Council Delegate and shall automatically be deemed to be removed pursuant to Section 9.17. All current and prospective Player Advisory Council Delegates that have or acquire an Affiliation with a Restricted Entity must provide written notice thereof to the Player Advisory Council and the Chief Executive Officer.

    9.3    Geographical Representation; Change in Status; Order of Selection.

    (a)    The ten (10) voting members elected to the Player Advisory Council must meet the following criteria at all times:

    (i)    At least four (4), but not more than five (5), of the Player Advisory Council Delegates to be elected pursuant to Section 9.2(a) hereof shall originate from Europe.

    (ii)    At least one (1), but not more than three (3), of the Player Advisory Council Delegates to be elected pursuant to Section 9.2(a) hereof shall originate from North America, Central America or the Caribbean (collectively, "North America").

    (iii)    At least one (1), but not more than three (3), of the Player Advisory Council Delegates to be elected pursuant to Section 9.2(a) hereof shall originate from South America.

    (iv)    At least two (2), but not more than four (4), of the Player Advisory Council Delegates to be elected pursuant to Section 9.2(a) hereof shall originate from a region other than Europe, North America or South America (the "International Group"), Europe, North America, South America and the International Group each constituting a separate geographic region for purposes of these Bylaws.

(b)    For purposes of applying the limitations set forth in <u>Section 9.3(a)</u> hereof, the elections for Player Advisory Council Delegates from the categories specified in <u>Section 9.2(a)</u> shall be held in the following order:

(i)    For elections for Player Advisory Council Delegates for 2023:

(A)    First, a total of four (4) Player Advisory Council Delegates shall be elected pursuant to <u>Section 9.2(a)(i)</u>;

(B)    Second, two (2) additional Player Advisory Council Delegates shall be elected pursuant to <u>Section 9.2(a)(ii)</u> hereof;

(C)    Third, one (1) additional Player Advisory Council Delegate shall be elected pursuant to <u>Section 9.2(a)(iii)</u> hereof;

(D)    Fourth, one (1) additional Player Advisory Council Delegate shall be elected pursuant to <u>Section 9.2(a)(iv)</u> hereof; and

(E)    Fifth, two (2) additional Player Advisory Council Delegates shall be elected pursuant to <u>Section 9.2(a)(v)</u> hereof.

In each case until a total of ten (10) Player Advisory Council Delegates shall be elected pursuant to this <u>Section 9.3(b)(i)</u>, the nominees with the greatest number of votes in descending order shall be elected to the Player Advisory Council in such order, subject to limitations contained in <u>Sections 9.2(a)</u> and <u>9.7</u>; provided, however, that no nominee shall be elected if his election would cause an Impermissible Constitution of the Player Advisory Council (as defined below) taking into account the election of individuals elected prior to such nominee pursuant to this <u>Section 9.3(b)(i)</u>. If one or more nominees in any category under <u>Section 9.2(a)</u> hereof is not elected because his or their election would cause an Impermissible Constitution of the Player Advisory Council, a vacancy or vacancies shall be declared and shall be filled by the Alternate (as defined below), or, if the

Alternate would also cause an Impermissible Constitution of the Player Advisory Council or is otherwise unavailable, a majority vote of the newly elected Player Advisory Council Delegates, as soon as reasonably practicable, provided that the member or members appointed to fill such vacancy or vacancies must meet as of the date of appointment the category eligibility criteria and his or their election shall not cause as of such date an Impermissible Constitution of the Player Advisory Council.

(ii)    For all elections for Player Advisory Council Delegates after the 2023 term:

(A)    First, a total of two (2) Player Advisory Council Delegates shall be elected pursuant to Section 9.2(a)(i);

(B)    Second, one (1) additional Player Advisory Council Delegate shall be elected pursuant to Section 9.2(a)(ii);

(C)    Third, one (1) additional Player Advisory Council Delegate shall be elected pursuant to Section 9.2(a)(iii) or Section 9.2(a)(iv) hereof, as applicable; and

(D)    Fourth, one (1) additional Player Advisory Council Delegate shall be elected pursuant to Section 9.2(a)(v) hereof.

In each case until a total of five (5) Player Advisory Council Delegates shall be elected pursuant to this Section 9.3(b)(ii), the nominees with the greatest number of votes in descending order shall be elected to the Player Advisory Council in such order, subject to limitations contained in Sections 9.2(a) and 9.7; provided, however, that no nominee shall be elected if his election would cause an Impermissible Constitution of the Player Advisory Council (as defined below) taking into account the election of individuals elected prior to such nominee pursuant to this

Section 9.3(b)(ii). If one or more nominees in any category under Section 9.2(a) hereof is not elected because his or their election would cause an Impermissible Constitution of the Player Advisory Council, a vacancy or vacancies shall be declared and shall be filled by the Alternate (as defined below), or, if the Alternate would also cause an Impermissible Constitution of the Player Advisory Council or is otherwise unavailable, a majority vote of the newly elected Player Advisory Council Delegates, as soon as reasonably practicable, provided that the member or members appointed to fill such vacancy or vacancies must meet as of the date of appointment the category eligibility criteria and his or their election shall not cause as of such date an Impermissible Constitution of the Player Advisory Council.

For purposes of these Bylaws, "Impermissible Constitution of the Player Advisory Council" shall mean that the members of the Player Advisory Council, as a group, would not meet the criteria set forth in Section 9.3(a) hereof.

(c)    For purposes of Section 9.3 hereof, Europe shall consist of Albania, Andorra, Armenia, Austria, Azerbaijan, Belarus, Belgium, Bosnia-Herzegovina, Bulgaria, Croatia, Czech Republic, Denmark, Estonia, Finland, France, Georgia, Germany, Greece, Hungary, Iceland, Israel, Italy, Kazakhstan, Latvia, Liechtenstein, Lithuania, Luxembourg, Former Yugoslav Republic of Macedonia, Malta, Moldova, Monaco, Netherlands, Norway, Poland, Portugal, Republic of Ireland, Romania, Russia, San Marino, Serbia and Montenegro, Slovakia, Slovenia, Spain, Sweden, Switzerland, Turkey, Ukraine, United Kingdom, and Vatican State. Decisions as to which members of the Player Class of the League originate from North America, South America and Europe for purposes of determining who may be elected to a particular position as a Player Advisory Council Delegate, shall be determined in good faith by the Player Advisory Council no later than the Nominations Closing Date as of the Record Date. Any change in

residence, citizenship or ranking of a Player Advisory Council Delegate or Player Class member occurring after the Record Date for any election shall not affect the right of such Player Advisory Council Delegate to be elected or to complete his term in office or the right of such Player Class member to vote pursuant to Section 9.2 hereof.

9.4    Player Advisory Council Delegates' Terms. The Player Advisory Council Delegates shall be divided into two (2) classes: PAC Class A and PAC Class B (each, a "PAC Class" and each PAC Class as defined below), each serving two (2)-year staggered terms (subject to PAC Class A serving an initial one (1)-year term in 2023) as follows:

(i)    PAC Class A. PAC Class A shall consist of two (2) Top 50 Singles PAC Delegates, one (1) Top 100 Singles PAC Delegate, the Top 75 Doubles PAC Delegate, one (1) At Large PAC Delegate and the Alumni PAC Delegate. The Player Advisory Council Delegates in PAC Class A shall be elected in accordance with the provisions of this Article IX for an initial one (1) year term beginning January 1, 2023 and expiring on December 31, 2023. Thereafter, the Player Advisory Council Delegates in PAC Class A shall be elected in accordance with the provisions of this Article IX for a two (2) year term beginning January 1, 2024 and expiring on December 31, 2025.

(ii)    PAC Class B. PAC Class B shall consist of the two (2) Top 50 Singles PAC Delegates, one (1) Top 100 Singles PAC Delegate, the Top 25 Doubles PAC Delegate, one (1) At Large PAC Delegate and the Coaches PAC Delegate. The Player Advisory Council Delegates in PAC Class B shall be elected in accordance with the provisions of this Article IX for a two (2) year term beginning January 1, 2023 and expiring on December 31, 2024.

9.5    Nomination of Candidates. No later than forty-two (42) days before the regular meeting of the members of the Player Class of the League for the election of Player Advisory

Council Delegates (the "Nomination Closing Date"), the Player Advisory Council shall release a list of nominated candidates for positions on the Player Advisory Council with respect to which elections are to be held at such regular meeting. Only members of the Player Class of the League who are in good standing and who meet the respective eligibility criteria of Sections 9.2(a), 9.2(b), and 9.2(c) shall be eligible for nomination. Nominees must be nominated and seconded by either another member of the Player Class or a League employee. A nominee must accept a nomination in one of the categories listed in Section 9.2 hereof for which he is eligible prior to the election, and must specify as part of such acceptance which such category he has selected, in order to be elected. Such nominee only may be elected to serve on the Player Advisory Council as a representative of the one category listed in Section 9.2 hereof which he has so specified. The Player Advisory Council shall notify the Chief Executive Officer in writing, at least forty-two (42) days prior to the date of such regular meeting, of the names of its nominated candidates.

9.6    Mailing Ballots. Ballots shall be delivered or mailed to each member of the Player Class of the League entitled to vote pursuant to Sections 9.2(a), or 9.2(b) hereof, as applicable, simultaneously with the delivery or mailing of notice of the regular meeting of the members of the Player Class of the League for the election of Player Advisory Council Delegates.

9.7    Election and Appointment of Player Advisory Council Delegates. Player Advisory Council Delegates shall be elected in the following manner. Ballots for the election of Player Advisory Council Delegates shall be mailed as provided in Section 9.6 hereof to all members of the Player Class of the League entitled to vote pursuant to Sections 9.2(a), or 9.2(b) hereof in good standing as of the Record Date established pursuant to Section 9.2 hereof. Each member of the Player Class of the League entitled to vote may vote only for Player Advisory Council candidates in the category or categories listed in Sections 9.2(a) and 9.2(b) hereof for which he is entitled to

vote, as determined under such Section 9.2 hereof. Members entitled to vote for Player Advisory Council Delegates may vote by returning the ballots by mail to the League's headquarters or by depositing them with the Player Advisory Council at any special meeting of members of the Player Class of the League held after the ballots have been mailed to the members and before the regular meeting of the members of the Player Class of the League for the election of Player Advisory Council Delegates. Each ballot must be personally signed by the voting Player Class member and include the printed or typed name of the member. The vote of any Player Class member by returning a ballot by mail or depositing it at a special meeting of the members of the Player Class of the League shall be final except that a Player Class member may vote in person at the regular meeting of the members of the Player Class of the League for the election of Player Advisory Council Delegates if he executes a rescission of his previous ballot. Ballots returned by mail or deposited at a special meeting of the Player Class of the League shall be counted at the regular meeting of the members of the Player Class of the League for the election of Player Advisory Council Delegates and added to the vote of members voting at such meeting. In the event of a tie vote among electable nominees to be voting members of the Player Advisory Council under Section 9.2(a) hereof, taking into account the geographic limitations set forth in Section 9.3(a) hereof, a runoff election shall be held at the regular meeting of the members of the Player Class of the League at which the election tie occurs. If, in the initial round of voting for each of the categories listed in Section 9.2(a), fewer than a majority of the members of the Player Class of the League entitled to vote in such category cast a ballot with respect to such category, then such voting round for such category shall be deemed invalid (an "Invalid Voting Round"). If an Invalid Voting Round occurs with respect to any of the categories listed in Section 9.2(a), then no nominee in any such category shall be elected as a result of such Invalid Voting Round and a second round

of voting for the nominees in the impacted category or categories (a "Second Voting Round") shall be held promptly thereafter at such time and place set by the Chief Executive Officer, but in no event later than thirty (30) days after the date on which the Invalid Voting Round occurred. If a Second Voting Round for any of the categories listed in Section 9.2(a) is required, the results of any such Second Voting Round shall be valid regardless of the number of ballots cast by the members of the Player Class of the League entitled to vote in the applicable category or categories. For clarity, (x) no new nominations may be submitted for any Second Voting Round and (y) no Second Voting Round shall take place for any of the categories listed in Section 9.2(a) unless an Invalid Voting Round occurs with respect to such category. No votes shall be counted and tabulated for the election of Player Advisory Council Delegates pursuant to Section 9.3(b) until the election for each of the categories listed in Section 9.2(a) is complete (i.e., all initial voting rounds and Second Voting Rounds, if any, for the categories listed in Section 9.2(a), must occur prior to the official election of Player Advisory Council Delegates).

9.8    Meetings of the Player Advisory Council. A regular meeting of the Player Advisory Council shall be held annually at such time and place as set by the Player Advisory Council or the Chief Executive Officer, but in any event no later than the date on which the annual meeting of the members of the League is held in that year, for the purposes of the election of a Player Tour Board Representative Elect (as such term is defined below) with regard to each Player Tour Board Representative whose term is next to expire after the next annual meeting of the members of the League (or, if the annual meeting is held on January 1 of any year, to succeed those whose terms then expire), and the transaction of any other business. Other regular meetings of the Player Advisory Council may be held at such times and places as the Player Advisory Council may from time to time determine. Special meetings of the Player Advisory Council may be called at any time

by the Chief Executive Officer or by a majority of the Player Advisory Council Delegates then in office. The persons elected at each regular meeting (or any adjournment or continuance thereof or special meeting held for such purpose) as Player Tour Board Representatives Elect (collectively, "Player Tour Board Representatives Elect") shall by virtue of such election and without any further action each be deemed to have been granted by the members of the Player Advisory Council the irrevocable proxy referred to in Section 3.2(g) hereof to vote for such person's (but no one else's) election on behalf of the Division One members of the Player Class as a Tour Board Representative at the next annual meeting (or any adjournment or continuance thereof or at any special meeting held for such purpose) of the League or of any members (but not as to any other matter). Each Player Advisory Council shall, prior to the end of the term of office of the then current Player Advisory Council Delegates during a calendar year, hold such calendar year's regular meeting of the Player Advisory Council contemplated by the first sentence of this Section 9.8.

      9.9    Notice of Meetings. No notice need be given of any regular meeting of the Player Advisory Council. Notice of the first meeting and any special meetings of the Player Advisory Council shall be given by service upon each Player Advisory Council Delegate in person or by mail, telegraph, telex, facsimile, email or other electronic transmission to him at his address as it appears upon the books of the League at least three (3) days, if given in person or by telegraph, telex, facsimile, email or other electronic transmission, or at least seven (7) days, if given by mail, before the date designated for such meeting, specifying the place, date and hour of such meeting and the contact information if the meeting is to be held by means of conference telephone or similar communication equipment. Whenever all of the Player Advisory Council Delegates shall have received notice or waived notice of any meeting either before or after such meeting, such meeting shall be validly constituted for all purposes. A Player Advisory Council Delegate who shall be

present at any meeting shall be deemed to have waived notice of such meeting. In any case, any acts or proceedings taken at a Player Advisory Council meeting not validly called or constituted may be made valid and fully effective by ratification at a subsequent meeting of the Player Advisory Council that is validly called and constituted. Except as otherwise provided herein, notice of any meeting of the Player Advisory Council or any waiver thereof need not state the purpose of such meeting, and, at any such meeting duly held as provided in these Bylaws, any business within the general jurisdiction and authority of the Player Advisory Council may be transacted. If any meeting of the Player Advisory Council is adjourned to another time or place, notice need not be given of the adjourned meeting if the time and place to which the meeting is adjourned are announced at the meeting at which the adjournment is taken.

9.10    Place of Meeting. The Player Advisory Council may hold its meetings either within or without the State of Delaware, as it may from time to time determine.

9.11    Quorum. At any meeting of the Player Advisory Council, a majority of the Player Advisory Council Delegates then in office (excluding the Alumni PAC Delegate and the Coach PAC Delegate) shall be necessary to constitute a quorum for the transaction of business, except as otherwise required by applicable law or as set forth in these Bylaws. However, should a quorum not be present, a majority of the Player Advisory Council Delegates present may adjourn such meeting from time to time to another time and place, without notice other than announcement at such meeting, until a quorum shall be present.

9.12    Voting. At all meetings of the Player Advisory Council, each Player Advisory Council Delegate, other than the Alumni PAC Delegate and the Coach PAC Delegate, shall have one vote. Each Player Advisory Council Delegate must vote for the election of the Player Tour Board Representatives Elect. Player Advisory Council Delegates may vote in advance of each duly

constituted meeting of the Player Advisory Council by written instrument, electronic transmission, or any other tangible medium allowed by Article XXIV. No Player Advisory Council Delegate may vote by proxy. Except as otherwise required by applicable law or as set forth in these Bylaws, all matters brought before a duly constituted meeting of the Player Advisory Council for a vote shall be decided by the vote of a majority of Player Advisory Council Delegates eligible to vote on such matter.

9.13    Expenses. The League shall pay all reasonable traveling, lodging, meal and other expenses of Player Advisory Council Delegates incident to their attendance at meetings of the Player Advisory Council and of the members of the League or the Player Class of the League. Nothing contained in this Section 9.13 shall preclude any Player Advisory Council Delegate from serving the League in any other capacity and receiving proper compensation therefor or for acting as a Player Advisory Council Delegate.

9.14    Organization. The Player Advisory Council shall elect a President and a Vice President from among its members on such terms as are established by the Player Advisory Council subject to these Bylaws. At each meeting of the Player Advisory Council, the President or in his absence the Vice President shall serve as chairman of the meeting. A secretary of the meeting shall be chosen by the vote of a majority of the Player Advisory Council Delegates present and voting thereat.

9.15    Meeting by Communications Equipment. Any meeting of the Player Advisory Council may be held by means of conference telephone or similar communications equipment through the use of which all persons participating in such meeting can speak to and hear each other. Such participation shall constitute presence in person at such meeting.

9.16    <u>Action by Player Advisory Council Without a Meeting</u>. Whenever the Player Advisory Council is required or permitted to take any action by vote, such action may be taken without a meeting pursuant to a written consent, setting forth the action so taken, signed by all of the Player Advisory Council Delegates.

9.17    <u>Removal</u>. Any Player Advisory Council Delegate may be removed at any time, with or without cause, by the vote of a majority of the members of the Player Class of the League in good standing entitled at the time of such vote to vote for the category of Player Advisory Council Delegate being removed (as set forth in <u>Section 9.2</u> hereof) or by the vote of at least a majority of the Player Advisory Council Delegates then in office.

9.18    <u>Resignation</u>. Any Player Advisory Council Delegate may resign his office at any time, such resignation to be made in writing and to take effect immediately upon receipt thereof by the Chief Executive Officer or the Secretary of the League.

9.19    <u>Vacancies</u>. Any vacancy occurring in the Player Advisory Council, whether because of death, resignation, removal or any other reason, shall be filled as promptly as reasonably possible by the next highest unelected vote-getter in the most recent election for the now-vacant Player Advisory Council Delegate position (each, an "<u>Alternate</u>"). If, for any reason, an Alternate is not available, then any vacancy shall be filled pursuant to the vote at any meeting of the Player Advisory Council of a majority of the Player Advisory Council Delegates then in office. An Alternate or a Player Advisory Council Delegate appointed by the Player Advisory Council to fill a vacancy in the Player Advisory Council shall hold office until the end of the term for the vacant Player Advisory Council Delegate position being filled. Whenever a Player Advisory Council Delegate position is vacated prior to the end of its term, such Player Advisory Council Delegate position shall be filled only by a person who, as of the date he is elected or appointed to fill such

position, qualifies under the same category under <u>Section 9.2</u> hereof as the person whose position is being filled, and whose election or appointment would not constitute an Impermissible Constitution of the Player Advisory Council.

ARTICLE X.  APPLICABLE TOURNAMENT GROUPS;<br>VOTING RIGHTS AND PROCEDURES

10.1    <u>Powers and Duties</u>. As provided elsewhere in these Bylaws, (a) at such times as set forth in the Certificate of Incorporation, (i) the M1000 Group shall be entitled to elect two (2) Tournament Tour Board Representatives and (ii) each of the 500 and 250 Groups shall be entitled to elect one (1) Tournament Tour Board Representative and (b) each such Applicable Tournament Group of the Tournament Class of the League shall have such other powers and duties as may be assigned to each such Applicable Tournament Group by the Tour Board, subject to the Certificate of Incorporation and these Bylaws.

10.2    <u>Members of Applicable Tournament Group; Change in Status</u>. The members of each Applicable Tournament Group shall be as determined in <u>Section 5.4</u> hereof and in the Certificate of Incorporation. Any change in Applicable Tournament Group of a Tournament Class member occurring after the record date (as determined by the Tour Board pursuant to Section 8.8) for any election shall not affect the right of such Tournament Class member to vote pursuant to the Certificate of Incorporation.

10.3    <u>Nomination of Candidates</u>. No later than the record date (as determined by the Tour Board pursuant to Section 8.8) for each respective regular meeting of the M1000, 500 and 250 Groups for the election of their respective Tournament Tour Board Representatives Elect, the M1000, 500 and 250 Groups shall each release a list of candidates who have been nominated pursuant to, and meet the eligibility requirements of, <u>Section 12.3</u> hereof for positions on the Tour Board with respect to which elections are to be held at such regular meeting. Except as provided

in this <u>Section 10.3</u> and <u>Section 12.3</u> hereof, all procedures for the nomination of candidates for positions as Tournament Tour Board Representatives Elect shall be determined by the members of the Applicable Tournament Group voting for such Tournament Tour Board Representative Elect; <u>provided</u>, <u>however</u>, that all such procedures shall be in accordance with and consistent with these Bylaws, the Certificate of Incorporation and Delaware law.

10.4    <u>Mailing Ballots</u>. Ballots for the election of Tournament Tour Board Representatives Elect shall be delivered or mailed to each of the Tournament Class members of the League belonging to the M1000, 500 and 250 Groups by such Applicable Tournament Group at least thirty (30) days prior to the date of each regular meeting at which such elections for such Tournament Tour Board Representatives Elect are to be held.

10.5    <u>Election of Tournament Tour Board Representatives and Tournament Tour Board Representatives Elect</u>.

(a)    Each Tournament Class member of the M1000, 500 and 250 Groups shall have one (1) vote for the election of the Tournament Tour Board Representative Elect and Tournament Tour Board Representative representing such Tournament Class member's Applicable Tournament Group, subject to the limitation on voting set forth in Section 5.14 hereof.

(b)    Each Tournament Tour Board Representative and Tournament Tour Board Representative Elect must receive a majority of the votes cast by the Tournament Class members of the Applicable Tournament Group entitled to elect such Tournament Tour Board Representative and Tournament Tour Board Representative Elect.  If none of the candidates for election as Tournament Tour Board Representatives Elect of an Applicable Tournament Group receive a majority of the votes cast by the Tournament Class members of the relevant Applicable Tournament Group pursuant to the mechanics set forth in Section 10.5(c) below, then the two (2)

candidates receiving the most votes shall be subject to a run-off election to determine the Tournament Tour Board Representative Elect.  Each Tournament Class member of the Applicable Tournament Group entitled to elect the applicable Tournament Tour Board Representative and Tournament Tour Board Representative Elect shall be entitled to vote in such run-off election, the procedures and rules of which shall be established by the relevant Applicable Tournament Group.

(c)    Tournament Tour Board Representatives and Tournament Tour Board Representatives Elect shall be elected in the following manner. Ballots for the election of the Tournament Tour Board Representatives Elect of the M1000, 500 and 250 Groups shall be delivered or mailed as provided in Section 10.4 hereof to all Tournament Class members of the League in good standing belonging to the M1000, 500 and 250 Groups as of the respective record dates established pursuant to Section 8.8 hereof. Tournament Class members of the League belonging to either of the M1000, 500 and 250 Groups may vote by returning the ballots by mail to the main office of the League or any designated regional office of the League or to an appropriately designated official, or by depositing them with the Tour Board at any meeting of the Tour Board, of the members of the League, or of the Tournament Class of the League or any division, series or group thereof held after the ballots have been mailed to the Tournament Class members of the League belonging to the M1000, 500 and 250 Groups and before the respective regular meetings of the M1000, 500 and 250 Groups held pursuant to Section 8.4 hereof for the election of Tournament Tour Board Representatives Elect, or by depositing them at the respective regular meetings of the M1000, 500 and 250 Groups held pursuant to Section 8.4 hereof for the election of Tournament Tour Board Representatives Elect, or under any other procedures and rules established by the Applicable Tournament Group of which such Tournament Class member is a member. Each ballot must be personally signed on behalf of a Tournament Class member by its

Designated Representative. Ballots which are returned by mail or are deposited at a meeting shall be counted and the votes reflected on such ballots shall be declared final in accordance with the procedures and rules set forth by each Applicable Tournament Group.

(d)     The respective person elected at each respective regular meeting (or any adjournment or continuance thereof or any special meeting held for such purpose) of the M1000 Group (each, an "M1000 Tournament Tour Board Representative Elect"), the 500 Group (the "500 Tournament Tour Board Representative Elect") and the 250 Group (the "250 Tournament Tour Board Representative Elect") shall by virtue of such election and without any further action be deemed to be granted an irrevocable proxy pursuant to Section 3.2(h), (i) or (j) hereof, as applicable, to vote for such person's (but no one else's) election on behalf of the members of such person's Applicable Tournament Group as a Tournament Tour Board Representative at the next annual meeting (or any adjournment or continuance thereof or any special meeting held for such purpose) of the League or of any members (but not as to any other matter). The persons elected as an M1000 Tournament Tour Board Representative Elect, the 500 Tournament Tour Board Representative Elect, and the 250 Tournament Tour Board Representative Elect, shall be referred to collectively as the "Tournament Tour Board Representatives Elect" and the Tournament Tour Board Representatives Elect and the Player Tour Board Representatives Elect shall be referred to collectively as the "Tour Board Representatives Elect".

10.6    Organization of Each Applicable Tournament Group. Each Applicable Tournament Group shall elect a President from among its members on such terms as are established by such Applicable Tournament Group subject to the provisions of these Bylaws and the Certificate of Incorporation. At each meeting of each Applicable Tournament Group, the President shall serve as chairman of the meeting. A secretary of the meeting (and, in the absence of the President, a

chairman of the meeting) shall be chosen by such Applicable Tournament Group in accordance with the procedures established by such Applicable Tournament Group.

10.7    <u>Meeting by Communications Equipment</u>. Any meeting of each Applicable Tournament Group of the Tournament Class of the League may be held by means of conference telephone or similar communications equipment through the use of which all persons participating in such meeting can speak to and hear each other. Such participation shall constitute presence in person at such meeting.

10.8    <u>Action by Applicable Tournament Group Without a Meeting</u>. Whenever an Applicable Tournament Group is required or permitted to take any action by vote, such action may be taken without a meeting pursuant to a written consent setting forth the actions so taken, signed by all of the Applicable Tournament Group members.

ARTICLE XI.  TOURNAMENT ADVISORY COUNCIL

11.1    <u>Powers and Duties of Tournament Advisory Council</u>. The Tournament Advisory Council shall have such powers and duties as may be assigned to them by the Tour Board, subject to the Certificate of Incorporation and these Bylaws.

11.2    <u>Number and Qualification of Tournament Advisory Council Delegates</u>.

(a)    The Tournament Advisory Council shall consist of nine (9) delegates (the "<u>Tournament Advisory Council Delegates</u>"), comprised of three (3) delegates from each of the Geographic Tournament Groups, who will each serve a three (3)-year staggered term commencing on the date of such delegate's selection or election as a Tournament Advisory Council Delegate, as provided below. The election of Tournament Advisory Council Delegates shall take place at the same annual meeting of the members of the Tournament Class at which Tournament Tour Board Representatives are elected.  The three (3) delegates appointed by each of the Geographic Tournament Groups shall consist of one (1) delegate who is a member of the M1000 Group, one

(1) delegate who is a member of the 500 Group and one (1) delegate who is a member of the 250 Group.  Each Tournament Tour Board Representative shall attend each meeting of the Tournament Advisory Council as a non-voting observer, but shall not be permitted to concurrently serve as a Tournament Advisory Council Delegate and shall be removed from their seat on the Tournament Advisory Council as of January 1, 2023.  Notwithstanding anything to the contrary herein, each Geographic Tournament Group may rotate its Tournament Advisory Council Delegates through December 31, 2023, so long as each Tournament Advisory Council Delegate in rotation meets all necessary qualifications to serve as a Tournament Advisory Council Delegate in such seat.

(b)      Each Tournament Advisory Council Delegate, who is, as of the record date determined pursuant to Section 8.8 hereof, (x) the Designated Representative of a member in good standing of the Tournament Class of the League and Geographic Tournament Group for which such Designated Representative is selected as a Tournament Advisory Council Delegate or (y) a designee of such Designated Representative specified in clause (x) above, shall be elected or selected in the following manner: (i) Tournament Advisory Council Delegates for EG shall be elected or selected by weighted vote by all members of the EG in good standing in accordance with Section 5.6, (ii) Tournament Advisory Council Delegates for IA shall be elected or selected by weighted vote by all members of the IA in good standing in accordance with Section 5.6, and (iii) Tournament Advisory Council Delegates for TA shall be elected or selected by majority vote by all members of the TA who are also members of the Applicable Tournament Group in good standing; provided that no Tournament Advisory Council Delegates may be from the same member of the Tournament Class or group of affiliated members.  Except as provided in this Section 11.2, all procedures for the nomination and election of Tournament Advisory Council Delegates shall be determined by the members of the Geographic Tournament Groups voting for

such Tournament Advisory Council Delegates; provided, however, that all such procedures shall be in accordance with and consistent with these Bylaws, the Certificate of Incorporation and Delaware law.

(c)     The Tournament Advisory Council Delegates from (i) IA shall serve for the term beginning in 2023 and expiring December 31, 2025, (ii) the Tournament Advisory Council Delegates serving as of January 1, 2023 for the TA shall continue to serve until December 31, 2023, after which time new Tournament Advisory Council Delegates for TA shall be elected to serve for the term beginning 2024 and expiring December 31, 2026, and (iii) the Tournament Advisory Council Delegates serving as of January 1, 2023 for the EG shall continue to serve until December 31, 2024, after which time new Tournament Advisory Council Delegates for EG shall be elected to serve for the term beginning 2025 and expiring December 31, 2027.  At each annual meeting of the members of the League, the successors of the Tournament Advisory Council Delegates whose term expires at that meeting shall be elected to hold office for a term expiring at the third (3rd) succeeding annual meeting of the members of the League, with each Tournament Advisory Council Delegate to hold office until his successor shall have been duly elected and qualified unless earlier removed.

(d)     No member of the Tournament Advisory Council shall, on the date of becoming a member of the Tournament Advisory Council and thereafter during his term, have any Affiliation (as such term is defined in the Certificate of Incorporation) with any Restricted Entity (as such term is defined in the Certificate of Incorporation). In the event that a Tournament Advisory Council Delegate acquires an Affiliation with a Restricted Entity after he or she was elected to the Tournament Advisory Council, then he or she shall no longer be eligible to serve as a Tournament Advisory Council Delegate and shall automatically be deemed to be removed

pursuant to <u>Section 11.12</u>. All current and prospective Tournament Advisory Council Delegates that have or acquire an Affiliation with a Restricted Entity must provide written notice thereof to the Tournament Advisory Council and the Chief Executive Officer.

11.3    <u>Meetings of Tournament Advisory Council</u>. The Tournament Advisory Council shall meet annually for the transaction of business on a date and at a place set by the Tournament Advisory Council. Other regular meetings of the Tournament Advisory Council may be held at such times and places as the Tournament Advisory Council may from time to time determine. Special meetings of the Tournament Advisory Council may be called at any time by the Chief Executive Officer or by a majority of the Tournament Advisory Council Delegates then in office.

11.4    <u>Notice of Meetings</u>. No notice need be given of any regular meeting of the Tournament Advisory Council. Notice of any special meetings of the Tournament Advisory Council shall be given by service upon each Tournament Advisory Council Delegate in person or by mail, telegraph, telex, facsimile, email or other electronic transmission to him or her at his or her address as it appears upon the books of the League at least three (3) days, if given in person or by telegraph, telex, facsimile, email or other electronic transmission, or at least seven (7) days, if given by mail, before the date designated for such meeting, specifying the place, date and hour of such meeting and the contact information if the meeting is to be held by means of conference telephone or similar communication equipment. Whenever all of the Tournament Advisory Council Delegates shall have received notice or waived notice of any meeting either before or after such meeting, such meeting shall be validly constituted for all purposes. A Tournament Advisory Council Delegate who shall be present at any meeting shall be deemed to have waived notice of such meeting. In any case, any acts or proceedings taken at a Tournament Advisory Council meeting not validly called or constituted may be made valid and fully effective by ratification at a

69

subsequent meeting of the Tournament Advisory Council that is validly called and constituted. Except as otherwise provided herein, notice of any meeting of the Tournament Advisory Council or any waiver thereof need not state the purpose of such meeting, and, at any such meeting duly held as provided in these Bylaws, any business within the general jurisdiction and authority of the Tournament Advisory Council may be transacted. If any meeting of the Tournament Advisory Council is adjourned to another time or place, notice need not be given of the adjourned meeting if the time and place to which the meeting is adjourned are announced at the meeting at which the adjournment is taken.

11.5    Place of Meeting. The Tournament Advisory Council may hold its meetings either within or without the State of Delaware, as it may from time to time determine.

11.6    Quorum. At any meeting of the Tournament Advisory Council, a majority of the Tournament Advisory Council Delegates then in office shall be necessary to constitute a quorum for the transaction of business, except as otherwise required by applicable law or as set forth in these Bylaws. However, should a quorum not be present, a majority of the Tournament Advisory Council Delegates present may adjourn such meeting from time to time to another time and place, without notice other than announcement at such meeting, until a quorum shall be present.

11.7    Voting. At all meetings of the Tournament Advisory Council, each Tournament Advisory Council Delegate shall have one vote. Except as otherwise required by applicable law or as set forth in these Bylaws, all matters brought before a duly constituted meeting of the Tournament Advisory Council for a vote shall be decided by the vote of a majority of those Tournament Advisory Council Delegates present and voting thereon.

11.8    Expenses. The League shall pay all reasonable traveling, lodging, meal and other expenses of Tournament Advisory Council Delegates incident to their attendance at meetings of

the Tournament Advisory Council and of the members of the League or the Tournament Class of the League. Nothing contained in this <u>Section 11.8</u> shall preclude any Tournament Advisory Council Delegate from serving the League in any other capacity and receiving proper compensation therefor or for acting as a Tournament Advisory Council Delegate.

11.9    <u>Organization</u>. Each year on a rotating basis, beginning with the EG in 2023, the IA in 2024 and the TA in 2025, a Geographical Tournament Group shall be entitled to elect the Chairman of the Tournament Advisory Council (the "<u>Tournament Advisory Council Chairman</u>") from such appointing Geographic Tournament Group's Tournament Advisory Council Delegates, which Tournament Advisory Council Chairman shall serve for a one (1)-year term. At each meeting of the Tournament Advisory Council, the Tournament Advisory Council Chairman shall serve as chairman of the meeting. A secretary of the meeting (and, in the absence of the Tournament Advisory Council Chairman, a chairman of the meeting) shall be chosen by the vote of a majority of the Tournament Advisory Council Delegates of the Geographical Tournament entitled to elect the Chairman for such year present and voting thereat.

11.10    <u>Meeting by Communication Equipment</u>. Any meeting of the Tournament Advisory Council may be held by means of conference telephone or similar communications equipment through the use of which all persons participating in such meeting can speak to and hear each other. Such participation shall constitute presence in person at such meeting.

11.11    <u>Action by Tournament Advisory Council Without a Meeting</u>. Whenever the Tournament Advisory Council is required or permitted to take any action by vote, such action may be taken without a meeting pursuant to a written consent, setting forth the action so taken, signed by all of the Tournament Advisory Council Delegates.

11.12   Removal. Any Tournament Advisory Council Delegate may be removed at any time, with or without cause, by the vote of a majority of the members of the IA in good standing (in the case of Tournament Advisory Council Delegates elected by IA members) or the EG in good standing (in the case of Tournament Advisory Council Delegates elected by EG members) or the TA in good standing (in the case of Tournament Advisory Council Delegates elected by TA members).

11.13   Resignation. Any Tournament Advisory Council Delegate may resign his office at any time, such resignation to be made in writing and to take effect immediately upon receipt thereof by the Chief Executive Officer or the Secretary of the League.

11.14   Vacancies. Any vacancy occurring in the Tournament Advisory Council whether because of death, resignation, removal or any other reason, shall be filled as promptly as reasonably possible according to the applicable voting provisions in Section 11.2(b), as may be modified by the relevant Geographic Tournament Group to account for such vote occurring at a time other than the annual meeting of the members of the Tournament Class. A Tournament Advisory Council Delegate appointed to fill a vacancy in the Tournament Advisory Council shall hold office until the election of such Delegate's successor by the Geographic Tournament Group pursuant to Section 11.2 hereof. Whenever a Tournament Advisory Council Delegate position is vacated prior to the end of its term, such Tournament Advisory Council Delegate position shall be filled only by a person who, as of the date he or she is elected or appointed to fill such position, is a representative of a member of the Applicable Tournament Group in the Geographic Tournament Group as the person whose position is being filled.

## ARTICLE XII.  TOUR BOARD REPRESENTATIVES

12.1   Powers and Duties. Subject to applicable provisions of law, of the Certificate of Incorporation of the League and of these Bylaws, but in furtherance and not by way of limitation

of any rights and powers thereby conferred, the business and affairs of the League shall be controlled and managed by the Tour Board.

      12.2    <u>Number, Term and Qualification</u>. The number, term and qualifications of the Tour Board Representatives of the League shall be as set forth in the Certificate of Incorporation of the League.

      12.3    <u>Nomination of Tour Board Representatives</u>.

      (a)    Nomination of any candidate for election as a M1000, 500 or 250 Tournament Tour Board Representative, by nominating such person as a M1000, 500 or 250 Tournament Tour Board Representative Elect, respectively, shall occur by petition endorsed by at least one Tournament Class member belonging to that group of the Tournament Class of the League and seconded by at least one other member of that group. Notwithstanding the foregoing, no candidate shall be eligible to be a 250 Tournament Tour Board Representative Elect unless such candidate is a Designated Representative of a member of the 250 Group. No individual candidates may be eligible to be a Tournament Tour Board Representative Elect for more than one Tournament Tour Board Representative Elect position in any given election. For the avoidance of doubt, the M1000s Tour Board Representatives and 500s Board Representative are not required to be a Designated Representative to be eligible for nomination as a Tour Board Representative Elect.

      (b)    The process for nominating candidates for Player Tour Board Representatives Elect shall be determined by the Player Advisory Council. The deadline for such nominations shall be set by the Chief Executive Officer or if not set by the Chief Executive Officer shall be fifteen (15) days before the meeting of the Player Advisory Council at which the election of one or more Player Tour Board Representatives Elect will take place. All nominees for Player Tour Board Representative Elect must meet the qualifications for Player Tour Board

Representatives set forth in Article EIGHTH of the Certificate of Incorporation, except that if by the deadline for nominations of candidates for a particular Player Tour Board Representative Elect position no nominations of candidates meeting the applicable geographic origin requirement contained in the Certificate of Incorporation have been received, the Chief Executive Officer may reopen nominations for candidates for such position and nominees for such position (including the nominee elected as a Player Tour Board Representative Elect) need not satisfy such geographic origin requirement.

12.4    Election. Tour Board Representatives to be elected by Player Class members and Tournament Class members shall be elected at the annual meeting of the members of the League pursuant to the irrevocable proxies granted pursuant to Sections 9.8 and 10.5 hereof.

12.5    Meetings. The Tour Board shall meet for the election of officers and for the transaction of any other business on the same date and at the same place as, and as soon as practicable after, the annual meeting of the members of the League. Other regular meetings of the Tour Board may be held at such times and places as the Tour Board may from time to time determine. Special meetings of the Tour Board may be called at any time by the Chairman or by a majority of the Tour Board Representatives then in office.

12.6    Notice of Meetings. No notice need be given of the first meeting of the Tour Board after each annual meeting of the members of the League or of any regular meeting of the Tour Board. Notice of any special meeting of the Tour Board shall be given by service upon each Tour Board Representative in person or by mail, telegraph, telex, facsimile, email or other electronic transmission to him or her at his or her address as it appears upon the books of the League at least three (3) days, if given in person or by telegraph, telex, facsimile, email or other electronic transmission, or at least seven (7) days, if given by mail, before the date designated for such

meeting, specifying the place, date and hour of such meeting and the contact information if the meeting if to be held by means of conference telephone or similar communication equipment except as otherwise required by applicable law. Whenever all of the Tour Board Representatives shall have received notice or waived notice of any meeting either before or after such meeting, such meeting shall be validly constituted for all purposes. A Tour Board Representative who shall be present at any meeting shall be deemed to have waived notice of such meeting except as otherwise required by applicable law. In any case, any acts or proceedings taken at a Tour Board meeting not validly called or constituted may be made valid and fully effective by ratification at a subsequent meeting of the Tour Board that is validly called and constituted. Except as otherwise provided herein, notice of any meeting of the Tour Board or any waiver thereof need not state the purpose of such meeting, and, at any such meeting duly held as provided in these Bylaws, any business within the general jurisdiction and authority of the Tour Board may be transacted. If any meeting of the Tour Board is adjourned to another time or place, notice need not be given of the adjourned meeting if the time and place to which the meeting is adjourned are announced at the meeting at which the adjournment is taken.

12.7    Place of Meeting. The Tour Board may hold its meetings either within or without the State of Delaware, as it may from time to time determine.

12.8    Quorum. At any meeting of the Tour Board, a majority of the Tour Board Representatives then in office shall be necessary to constitute a quorum for the transaction of business, except as otherwise required by applicable law or as set forth in these Bylaws. However, should a quorum not be present, a majority of the Tour Board Representatives present may adjourn such meeting from time to time to another time and place, without notice other than announcement at such meeting, until a quorum shall be present.

12.9    <u>Voting</u>. At all meetings of the Tour Board, each Tour Board Representative shall have one (1) vote. Except as otherwise required by applicable law or as set forth in the Certificate of Incorporation or these Bylaws, all matters brought before a duly constituted meeting of the Tour Board for a vote shall be decided by the vote of a majority of those Tour Board Representatives (including the Chairman) present and voting thereon. Notwithstanding the foregoing, a minimum of:

(a)    five (5) affirmative votes by the Tour Board Representatives, which in all instances must include the affirmative vote of two (2) Tournament Tour Board Representatives (one of whom must be an M1000 Tour Board Representative and one of whom must be either the 500 Tour Board Representative or the 250 Tour Board Representative) and two (2) Player Tour Board Representatives shall be required in order to:

(i)    create or add a tournament by a contract or license with the League;

(ii)    approve a change in the operator of a tournament owned by a Tournament Class member of the League or a Transfer of a Tournament Class membership in the League;

(iii)    levy an assessment against League members or against any class, category, or other sub-division of League members;

(iv)    change the status of a Championship Series member of the Tournament Class of the League from a Masters 1000 category tournament to a 500 category tournament or from a 500 category tournament to a Masters 1000 category tournament;

(v)    approve any reduction or increase in the number of Championship Division Tournament Class members of the League;

(vi)    amend the Bylaws or the Certificate of Incorporation of the League;

(vii)    amend or otherwise modify the ATP Tour Rules so as to change the number of applicable tournaments (including a change in the number of tournaments which a Player Class member is committed to play in any category) that a Player Class member of the League must commit to play in order to fulfill the applicable Player Commitment in each player ranking category; and

(viii)    amend the ATP Tour Rules in a manner that changes the commercial rights of either Tournament or Player members or, as determined by the Chairman in his or her sole discretion, that are materially and disproportionately adverse to the financial condition of a member, except as otherwise provided in this Section 12.9.

(b)    five (5) affirmative votes by the Tour Board Representatives (excluding the Chairman), which in all instances must include the affirmative vote of two (2) Tournament Tour Board Representatives (one of whom must be an M1000 Tour Board Representative and one of whom must be either an 500 Tour Board Representative or 250 Tour Board Representative) and two (2) Player Tour Board Representatives shall be required in order to appoint, remove for cause or fill a vacancy in the position of Chairman or limit, amend or modify the rights, powers or duties, or the compensation, including the amount and time of payment of salary and benefits, of the Chairman.

(c)    seven (7) affirmative votes by the Tour Board Representatives (excluding the Chairman) shall be required in order to remove the Chairman without cause, in accordance with the provisions of these Bylaws.

(d)    seven (7) affirmative votes by the Tour Board Representatives (which may but is not required to include the Chairman) shall be required in order to remove a Tour Board

Representative (excluding the Chairman) for cause in accordance with the provisions of these Bylaws.

(e)    six (6) affirmative votes by the Tour Board Representatives (which may but is not required to include the Chairman) shall be required in order to:

(i)    reclassify a full Tournament Class member of the League as a conditional Tournament Class member of the League or terminate the Tournament Class membership of a conditional Tournament Class member of the League which was, at any time, a full Tournament Class member of the League in accordance with the provisions of these Bylaws; or

(ii)    establish or modify the initiation fees, and dues of members.

(f)    six (6) affirmative votes by the Tour Board Representatives (which must include the Chairman) shall be required in order to appoint, remove with or without cause or fill a vacancy in the position of Chief Executive Officer or limit, amend or modify the rights, powers or duties, or the compensation, including the amount and time of payment of salary and benefits, of the Chief Executive Officer.

(g)    five (5) affirmative votes by the Tour Board Representatives (which may but is not required to include the Chairman) shall be required in order to select an independent certified public accountant to perform the annual audit of the League (the "League Accountant").

12.10    Expenses. The League shall pay all reasonable traveling, lodging, meal and other expenses of Tour Board Representatives incident to their attendance at meetings of the Tour Board. Nothing contained in this Section 12.10 shall preclude any Tour Board Representative from serving the League in any other capacity and receiving proper compensation therefor or for acting as a Tour Board Representative.

12.11   <u>Organization</u>. At each meeting of the Tour Board, the Chairman or, in the absence of the Chairman, the Chief Executive Officer shall serve as chairman of the meeting, but the Chief Executive Officer shall have no power or authority to vote at such meeting. At each meeting of the Tour Board, the Secretary of the League shall serve as secretary of the meeting. In the absence of the Chairman and/or the Chief Executive Officer and/or the Secretary, a chairman and secretary, as the case may be, of the meeting shall be chosen by the vote of a majority of the Tour Board Representatives present and voting thereat.

12.12   <u>Meeting by Communications Equipment</u>. Any special meeting of the Tour Board may be held by means of conference telephone or similar communications equipment through the use of which all persons participating in such special meeting can speak to and hear each other. Such participation shall constitute presence in person at such special meeting. Regular meetings of the Tour Board may not be held by means of conference telephone or similar communications equipment.

12.13   <u>Action by Representatives Without a Meeting</u>. Whenever the Tour Board is required or permitted to take any action by vote, such action may be taken without a meeting pursuant to a written consent, setting forth the action so taken, signed by all members of the Tour Board.

12.14   <u>Removal</u>. Any Tour Board Representative may be removed as provided in the Certificate of Incorporation of the League. For purposes of removing a Tour Board Representative for cause, as provided in the Certificate of Incorporation, the term "cause" shall mean, with regard to any Tour Board Representative:

(a)   breach of the Tour Board Representative's fiduciary duties as a Tour Board Representative;

(b)    negligence or willful misconduct in the performance of the Tour Board Representative's duties as a Tour Board Representative, even though the Tour Board Representative's conduct may not rise to the level of breach of fiduciary duty;

(c)    any breach or violation (or aiding or abetting of any breach of violation) of the Bylaws of the Corporation or any Tour Rule by the Tour Board Representative;

(d)    breach of any confidentiality, non-competition or other obligations owed by the Tour Board Representative to the League;

(e)    commission, or formal charge by any governmental or regulatory authority of competent jurisdiction of the commission, of any crime or act of moral turpitude; any act contrary to the best interests of the League and/or the sport of tennis; or

(f)    any other act determined to constitute "cause" under applicable Delaware law (including, without limitation, pursuant to judicial interpretation of Delaware law. The term "cause" shall not mean, with regard to any Tour Board Representative:

(i)    merely advocating or expressing any position contrary to or in conflict with any Tour Board decision or position or any position of a majority of the Tour Board Representatives; or

(ii)    voting contrary to a position of a majority of the Tour Board Representatives or abstaining from voting in any matter.

12.15    <u>Resignation</u>. Any Tour Board Representative may resign his office at any time, such resignation to be made in writing and to take effect immediately upon receipt thereof by the Chairman or the Secretary of the League.

12.16    <u>Vacancies</u>. Any vacancy occurring in a Tour Board Representative position (other than the Chairman's position), whether because of death, resignation, removal or any other reason,

shall be filled as promptly as reasonably possible (i) with respect to a vacancy occurring in a Player Tour Board Representative position, pursuant to the vote at any meeting of the Tour Board of a majority of the Player Tour Board Representatives then in office; and (ii) with respect to a vacancy occurring in a Tournament Tour Board Representative, pursuant to a vote of the Tournament Advisory Council Delegates of the Applicable Tournament Group which elected the Tournament Board Representative whose Tournament Board Representative position has such a vacancy. Except as provided below, a Tour Board Representative appointed by the Player Tour Board Representatives or by Tournament Advisory Council Delegates to fill a vacancy in a Tour Board Representative position shall hold office until the election, qualification and commencement of the term of such person's successor. If the term of the Tour Board Representative position filled by appointment does not expire on the January 1 following the annual meeting next following his appointment (or on the date of such annual meeting in the case of an annual meeting held on January 1 of any year), a special election shall be held at such annual meeting to fill the remainder of such unexpired term. Any vacancy occurring in the position of Chairman shall be filled as promptly as reasonably possible pursuant to Section 12.9 hereof.

<u>ARTICLE XIII.  COMMITTEES</u>

13.1    <u>Creation</u>. The Tour Board, by resolution adopted by a majority of the Tour Board Representatives then in office, may create an executive committee, a marketing committee and/or one or more other standing or special committees consisting of such number of Tour Board Representatives and, in the case of any committee other than the executive committee, such other individuals as the Tour Board may determine. To the extent permitted by applicable law, any such committee shall have and may exercise, between meetings of the Tour Board, such of the powers of the Tour Board pertaining to the management of the business and affairs of the League as may be provided for in such resolution and delegated to such committee by the Tour Board (which

delegation of authority may, in the case of an executive committee, comprise all such powers of the Tour Board, except as expressly set forth in <u>Section 13.3</u> hereof or as otherwise required by applicable law). The Tour Board, by resolution adopted by a majority of the Tour Board Representatives then in office, may also create advisory committees consisting of members of the League. To the extent permitted by applicable law, any such committee shall advise the Tour Board on particular matters as authorized by resolution. The Tour Board shall retain the power at all times to discharge or change the mandate of any such committee, to remove any member thereof and to fill any vacancy therein, in any such case either with or without cause.

13.2   <u>Organization</u>. Except as otherwise provided in the resolution of the Tour Board creating a committee, a majority of all members of such committee entitled to vote shall constitute a quorum for the transaction of its business, and the act of a majority entitled to vote at which a quorum is present shall constitute the act of such committee. Unless the Tour Board shall have otherwise provided in such resolution, such committee shall in all other respects fix its own rules of procedure and manner of acting. Such committee shall submit detailed reports of its activities to and at each meeting of the Tour Board.

13.3   <u>Prohibitions.</u> Notwithstanding anything to the contrary contained in this Article XIII, no committee created pursuant to the terms hereof shall have authority as to:

(a)    the submission to members of the League or any class thereof of any action requiring their approval;

(b)    the filling of vacancies on the Tour Board or any committee thereof or created thereby;

(c)    the fixing of compensation of Tour Board Representatives in respect of service on the Tour Board or any committee thereof or created thereby;

(d)    the amendment or repeal of these Bylaws or the adoption of new Bylaws;

(e)    the amendment or repeal of any resolution of the Tour Board which resolution, by its terms, is not so amendable or repealable; or

(f)    the removal of the Chairman or Chief Executive Officer or the filling of any vacancy in that position, or the limitation, amendment or modification of his rights, powers, or duties, or the compensation, including the amount and timing of payment of salary and benefits, of the Chairman or Chief Executive Officer.

For the avoidance of doubt, the Tour Board shall be permitted to create a Rules Committee, Tournament Standards Committee or such similar committees, with such powers and authority as may be prescribed by the Tour Board from time to time; provided that no such committee shall have the right to amend or otherwise modify the ATP Tour Rules with respect to matters exclusively reserved for the Tour Board under Section 12.9.

## ARTICLE XIV.  OFFICERS

14.1    Election and Qualification/Secretary. At the first meeting of the Tour Board following each annual meeting of members of the League, the Tour Board shall elect or appoint a Secretary of the League. From time to time, the Tour Board may elect or appoint such other officers of the League having such powers and duties as it shall deem advisable.

14.2    Holding More than One Office. The same person may (but need not) simultaneously hold more than one office or a Tour Board Representative position and one or more offices.

14.3    Terms of Office. The term of office of the Secretary and any other officers of the League elected or appointed by the Tour Board shall be determined by the Tour Board.

14.4    <u>Compensation</u>. Salaries and other compensation of officers shall be as fixed from time to time by the Tour Board. The election or appointment of an officer shall not in and of itself vest him or her with compensation or contract rights; and the death, resignation, removal or other termination of any such officer shall not in and of itself prejudice any such compensation or contract rights as he or she may, on an independent basis, possess.

<u>ARTICLE XV.  THE OFFICE OF THE CHAIRMAN AND CHIEF EXECUTIVE OFFICER</u>

15.1    <u>Appointment and Qualifications</u>. At any meeting of the Tour Board at which the term of the Chairman is to expire pursuant to clause (x) or (y) of <u>Section 15.2</u> hereof, the members of the Tour Board shall appoint a Chairman pursuant to <u>Section 12.9</u> hereof. By virtue of and for the period of his incumbency in such office, pursuant to <u>Section 12.2</u> hereof, the Chairman shall automatically become a Tour Board Representative, entitled to attend and participate in proceedings of the Tour Board of the League, but not to vote (except as provided in <u>Section 12.9</u> hereof) or be counted as a director for quorum purposes.

15.2    <u>Term of Office</u>. The Chairman shall hold the position of Chairman until the earlier of (x) the expiration of his written agreement with ATP Tour Inc., or (y) until his or her death or he or she shall have resigned or been removed as Chairman in accordance with the provisions of these Bylaws.

15.3    <u>Compensation</u>. Salaries and other compensation of the Chairman shall be as fixed from time to time by the Tour Board pursuant to <u>Section 12.9</u> hereof. The appointment of a Chairman shall not in and of itself vest him or her with compensation or contract rights; and the death, resignation, removal or other termination of any such Chairman shall not in and of itself prejudice any such compensation or contract rights as he or she may, on an independent basis, possess.

15.4    <u>Specific Powers</u>. The Chairman shall, inter alia, be empowered to chair each annual, regular and special meeting of the Player Class members, Tournament Class members and Tour Board.

15.5    <u>Removal</u>. The Chairman may be removed from office at any time with or without cause by the vote specified in <u>Section 12.9</u> hereof.

15.6    <u>Vacancies</u>. Any vacancy occurring in the office of Chairman, whether because of death, resignation, removal or any other reason, shall be filled by the Tour Board in accordance with Section 12.16 hereof.

<u>CHIEF EXECUTIVE OFFICER</u>

15.7    <u>Appointment and Qualifications</u>. At any meeting of the Tour Board at which the term of the Chief Executive Officer is to expire pursuant to clause (x) or (y) of <u>Section 15.8</u> hereof, the members of the Tour Board shall appoint a Chief Executive Officer pursuant to <u>Section 12.9</u> hereof. The Chief Executive Officer may (but need not) be a member of the League and may (but need not) simultaneously hold one or more other offices.

15.8    <u>Term of Office</u>. The Chief Executive Officer shall hold office as Chief Executive Officer until the later of (x) the first meeting of the Tour Board following the next annual meeting of members of the League after his election as Chief Executive Officer, or (y) the first meeting of the Tour Board following the expiration of the term provided in his written employment agreement, if any, with the League, and until his successor shall have been appointed, unless he or she shall have theretofore resigned or been removed as provided elsewhere in this Article XV.

15.9    <u>Compensation</u>. Salaries and other compensation of the Chief Executive Officer shall be as fixed from time to time by the Tour Board pursuant to <u>Section 12.9</u> hereof. The appointment of a Chief Executive Officer shall not in and of itself vest him or her with

compensation or contract rights; and the death, resignation, removal or other termination of any such Chief Executive Officer shall not in and of itself prejudice any such compensation or contract rights as he or she may, on an independent basis, possess.

15.10    <u>General Powers</u>. The Chief Executive Officer shall be the chief executive officer of the League and shall, subject to the advice and consent of the Tour Board, have general charge, supervision, direction and control of and over the business, affairs and operations of the League. He or she shall also have such other powers and duties of the Chief Executive Officer as are provided in these Bylaws and in the ATP Tour Rules.

15.11    <u>Specific Powers</u>.  The Chief Executive Officer shall, inter alia, be empowered to:

(a)    interpret, and establish policy and procedure with respect to, the provisions of the ATP Tour Rules and the enforcement of any thereof;

(b)    interpret in accordance with the Certificate of Incorporation, these Bylaws and any applicable Tour Board resolution, and establish policy and procedure with respect to, the provisions of the Certificate of Incorporation and these Bylaws and the enforcement of any thereof;

(c)    execute and deliver, for and on behalf of the League and in its name, contracts, instruments, notes, bonds, mortgages, deeds and any other documents;

(d)    order and authorize the payment of all monetary obligations of the League as and when the same shall become due and payable;

(e)    appoint or employ such persons, in such capacities and subject to such terms and conditions, as he or she shall deem appropriate for the proper staffing of the League and its offices;

(f)    appoint and retain, subject to such terms and conditions as he or she shall deem appropriate, legal counsel (including in house general counsel but excluding outside general

counsel of the League, which outside general counsel shall be appointed by the Tour Board), independent public accountants (other than the League Accountant to be appointed by the Tour Board) and other professional or special consultants for the League, all as may, in his discretion, be in furtherance of the proper operation of the League;

(g)    cause the League to take legal action and such other steps as he or she may deem in the best interests of the League and/or professional tennis against any officer, employee, agent or other representative of the League or any other party not affiliated with the League who or which, in his judgment, has engaged or may engage in conduct detrimental to the welfare of the League and/or professional tennis; and

(h)    review and control all publicity proposed to be used by or on behalf of the League.

15.12    Removal. The Chief Executive Officer may be removed from office at any time, with or without cause, by the vote of the Tour Board specified in Section 12.9 hereof

15.13    Vacancies. Any vacancy occurring in the office of Chief Executive Officer, whether because of death, resignation, removal or any other reason, shall be filled by the Tour Board in accordance with Section 12.9 hereof.

## ARTICLE XVI. INDEMNIFICATION

16.1    Right to Indemnification. Each person who was or is made a party or is threatened to be made a party to or is otherwise involved in any action, suit or proceeding, whether civil, criminal, administrative or investigative (hereinafter a "proceeding"), by reason of the fact that he or she is or was a Tour Board Representative or officer of the League or a Player Advisory Council Delegate or Tournament Advisory Council Delegate or member of the audit committee of the League or is or was serving at the request of the League as a director or officer of another corporation or of a partnership, joint venture, trust or other enterprise, including service with

respect to an employee benefit plan or is or was serving as legal counsel or accountant for any of the foregoing at the request of the League (hereinafter an "indemnitee"), whether the basis of such proceeding is alleged action in an official capacity as a Tour Board Representative, director or officer or Player Advisory Council Delegate or Tournament Advisory Council Delegate or the audit committee member or in any other capacity while serving as a Tour Board Representative or director or officer of the League or as a Player Advisory Council Delegate or a Tournament Advisory Council Delegate shall be indemnified and held harmless by the League to the fullest extent authorized by the Delaware General Corporation Law, as the same exists or may hereafter be amended (but, in the case of any such amendment, only to the extent that such amendment permits the League to provide broader indemnification rights than permitted prior thereto), against all expenses, liability and loss (including attorneys' fees, judgments, fines, ERISA excise taxes or penalties and amounts paid in settlement) reasonably incurred or suffered by such indemnitee in connection therewith and such indemnification shall continue as to an indemnitee who has ceased to be a Tour Board Representative or officer of the League or Player Advisory Council Delegate or Tournament Advisory Council Delegate or audit committee member or legal counsel or accountant to the League or to any of the foregoing, and shall inure to the benefit of the indemnitee's heirs, executors and administrators; provided, however, that, except as provided in Section 16.2 hereof with respect to proceedings to enforce rights to indemnification, the League shall indemnify any such indemnitee in connection with a proceeding (or part thereof) initiated by such indemnitee only if such proceeding (or part thereof) was authorized by the Tour Board of the League. The right to indemnification conferred in this Section 16.1 hereof shall be a contract right and shall include the right to be paid by the League the expenses incurred in defending any such proceeding in advance of its final disposition (hereinafter an "advancement of expenses");

provided, however, that, if the Delaware General Corporation Law requires, an advancement of expenses incurred by an indemnitee in his capacity as a Tour Board Representative or officer or Player Advisory Council Delegate or Tournament Advisory Council Delegate (and not in any other capacity in which service was or is rendered by such indemnitee, including, without limitation, service to an employee benefit plan) shall be made only upon delivery to the League of an undertaking (hereinafter an "undertaking"), by or on behalf of such indemnitee, to repay all amounts so advanced if it shall ultimately be determined by final judicial decision from which there is no further right to appeal (hereinafter a "final adjudication") that such indemnitee is not entitled to be indemnified for such expenses under this Section 16.1 or otherwise.

    16.2    Right of Indemnitee to Bring Suit. If a claim under Section 16.1 hereof is not paid in full by the League within sixty (60) days after a written claim has been received by the League, except in the case of a claim for an advancement of expenses, in which case the applicable period shall be twenty (20) days, the indemnitee may at any time thereafter bring suit against the League to recover the unpaid amount of the claim. If successful in whole or in part in any such suit, or in a suit brought by the League to recover an advancement of expenses pursuant to the terms of an undertaking, the indemnitee shall be entitled to be paid also the expense of prosecuting or defending such suit. In (a) any suit brought by the indemnitee to enforce a right to indemnification hereunder (but not in a suit brought by the indemnitee to enforce a right to an advancement of expenses) it shall be a defense that, and (b) in any suit by the League to recover an advancement of expenses pursuant to the terms of an undertaking the League shall be entitled to recover such expenses upon a final adjudication that, the indemnitee has not met the applicable standard of conduct set forth in the Delaware General Corporation Law. Neither the failure of the League (including its Tour Board, independent legal counsel, or its members) to have made a

determination prior to the commencement of such suit that indemnification of the indemnitee is proper in the circumstances because the indemnitee has met the applicable standard of conduct set forth in the Delaware General Corporation Law, nor an actual determination by the League (including its Tour Board, independent legal counsel, or its members) that the indemnitee has not met such applicable standard of conduct, shall create a presumption that the indemnitee has not met the applicable standard of conduct or, in the case of such a suit brought by the indemnitee, be a defense to such suit. In any suit brought by the indemnitee to enforce a right to indemnification or to an advancement of expenses hereunder, or by the League to recover an advancement of expenses pursuant to the terms of an undertaking, the burden of proving that the indemnitee is not entitled to be indemnified, or to such advancement of expenses, under this Article XVI or otherwise shall be on the League.

16.3    Non Exclusivity of Rights. The rights to indemnification and to the advancement of expenses conferred in this Article XVI shall not be exclusive of any other right which any person may have or hereafter acquire under any statute, the League's Certificate of Incorporation or Bylaws, agreement, vote of members or disinterested Tour Board Representatives or otherwise.

16.4    Insurance. The League may maintain insurance, at its expense, to protect itself and any Tour Board Representative, director, officer, Player Advisory Council Delegate, Tournament Advisory Council Delegate, audit committee member, employee or agent of the League or another corporation, partnership, joint venture, trust or other enterprise against any expense, liability or loss, whether or not the League would have the power to indemnify such person against such expense, liability or loss under the Delaware General Corporation Law.

16.5    Indemnification of Employees and Agents of the League. The League may, to the extent authorized from time to time by the Tour Board, grant rights to indemnification, and to the

advancement of expenses to any employee or agent of the League to the fullest extent of the provisions of this Article XVI with respect to the indemnification and advancement of expenses of Tour Board Representatives and officers of the League and Player Advisory Council Delegates and Tournament Advisory Council Delegates and audit committee members.

## ARTICLE XVII.  BOOKS AND RECORDS

The League shall keep, at such of its offices as the Chief Executive Officer may from time to time specify, correct and complete original or photostatic copies of its Certificate of Incorporation, Bylaws, the ATP Tour Rules, books and records of financial account and minutes of the proceedings of its members and Tour Board Representatives and the Player Advisory Council Delegates and the Tournament Advisory Council Delegates. The Tour Board Representatives, the Chairman, the Chief Executive Officer, the Player Advisory Council Delegates, the Tournament Advisory Council Delegates, the Secretary and any other officers elected or appointed by the Tour Board shall at all times be afforded ready access to all such materials (other than, with respect to the Player Advisory Council Delegates, minutes of special meetings of the Tour Board and minutes of meetings of the Tournament Class members of the League and, with respect to the Tournament Advisory Council Delegates, minutes of special meetings of the Tour Board and minutes of meetings of the Player Class Members of the League) for purposes of inspection or extraction or for any other purpose in furtherance of the conduct of the League business and affairs. Except as otherwise provided by law, the Tour Board shall determine from time to time whether or not access to any such materials is to be afforded to any other parties and, if so, for what purposes and pursuant to what terms and conditions.

## ARTICLE XVIII.  PROFESSIONAL ADVISERS

Commencing at the first meeting of the Tour Board following each annual meeting of the members of the League, the Tour Board, by a minimum of five (5) votes, shall be empowered to

appoint a League Accountant to serve as independent outside accountants for the League. From time to time the Chairman or Chief Executive Officer may appoint such other professional individuals or organizations to serve as professional advisers to the League as the Tour Board, in its sole discretion, deems necessary and appropriate for the purposes of the League. Any and all such accountants, counsel and other professional advisers shall serve at the pleasure of the Tour Board and shall report to the Tour Board and to such officers of the League or other individuals as the Tour Board may from time to time direct.

ARTICLE XIX.  NOTICES

Except as otherwise expressly provided herein or required by law, any notice referred to in these Bylaws shall be in writing and may in every instance be effectively given if delivered by hand to the recipient thereof, or by depositing such notice in the mail, postage paid, or by sending such notice by prepaid telegram, mailgram or telex or by sending such notice by facsimile, email or other electronic transmission to the recipient at his or its address as the same appears on the books of the League. Notices so given personally shall be deemed to be effectively given immediately; and notices so given by telegram, mailgram, telex, facsimile, email or other electronic transmission shall be deemed to be effectively given at the time such notice is dispatched; notices so given by mail shall be deemed to be effectively given (a) one day after posting if between addresses within the United States or within any other country, or (b) three (3) days after posting if between addresses in different countries. Notices may be given hereunder other than as provided by this Article XIX or as expressly provided elsewhere in these Bylaws, but any such notice which is provided shall not be deemed to have been given and effective unless and until received.

## ARTICLE XX.  FISCAL YEAR

The fiscal year of the League shall commence on the first day of January and conclude on the last day of December during each calendar year.

## ARTICLE XXI. CORPORATE SEAL

The corporate seal of the League shall be in the form of a circle, which seal shall have inscribed thereon the words "ATP Tour, Inc." and the jurisdiction and date of the incorporation of the League.

## ARTICLE XXII.  AMENDMENT

These Bylaws may be amended, modified or repealed at any time or from time to time:

(a)    pursuant to the vote of (i) a majority of the Division One Player Class members of the League entitled to vote thereon plus (ii) a majority of the Tournament Class members of the League entitled to vote thereon (x) at any annual meeting of members of the League and (y) at any special meeting of Player Class members or Tournament Class members called for that purpose; or

(b)    pursuant to the vote of the Tour Board as set forth in Section 12.9 hereof.

## ARTICLE XXIII.  LEGAL ACTION

23.1    Jurisdiction and Venue.

(a)    Each member, for himself, herself or itself and on behalf of its owners and affiliates (collectively, "Owners") (i) submits to the jurisdiction of the Chancery Court of the State of Delaware and the United States District Court for the District of Delaware, (collectively, "Delaware Courts"), (ii) consents to service of process by mail (in accordance with Article XIX or any other manner permitted by the rules and procedures established by the applicable Delaware Court or any applicable law), and (iii) irrevocably agrees to be bound by any final judgment of any Delaware Court. The foregoing submission to personal jurisdiction is self- operative and no further

instrument or action, other than service of process in the manner permitted by the rules and procedures established by the applicable Delaware Court or any applicable law, shall be necessary in order to confer such personal jurisdiction over any member or any of its Owners, affiliates or representatives.

(b)     No current or prior member or Owners or anyone on their behalf (each a "Claiming Party"), may commence, assert or cause any claim or counterclaim (each a "Claim") against (i) the League, (ii) any affiliated League entity, (iii) any officer, director, employee or representative of the League or any affiliated League entity, including, without limitation, any Tour Board Representative, Player Advisory Council Delegate or Tournament Advisory Council Delegate, or (iv) any other member or Owners, (collectively, "League Parties"), without first exhausting (x) any and all available appeals and other remedies internal to the League (including, without limitation, any appeal to the Tour Board, the Chief Executive Officer, any other officer of the League or any internal committee or review board) provided for under the Certificate of Incorporation, these Bylaws, the ATP Tour Rules or any applicable agreement, and (y) any and all available appeals to the Court of Arbitration for Sport ("CAS") expressly provided for in the ATP Tour Rules (collectively, "Internal Dispute Resolution Procedures").

(c)     Following exhaustion of any and all available appeals and remedies under Internal Dispute Resolution Procedures, the Delaware Courts shall have exclusive jurisdiction over any dispute or controversy between any Claiming Party and the League or any member ; provided, however, that (i) the foregoing shall not limit or affect in any way the applicability or enforceability of any Internal Dispute Resolution Procedures (including, without limitation, any right or obligation that any person or entity may have under the ATP Tour Rules to appeal to the CAS), (ii) in the event of any conflict or inconsistency between this Section 24.1(c) and any other

agreement between any Claiming Party and the League or any member or Owners that, by its express terms, provides for a specific forum that will have exclusive jurisdiction over such dispute or controversy, such other provision shall control, and (iii) in the event any provision of the Certificate of Incorporation, these Bylaws, the ATP Tour Rules or any applicable agreement provides that any decision or determination of the CAS, the Tour Board, any officer of the League or any other person or persons designated by the Tour Board or any officer of the League (including any internal committee or review board) shall be final, binding or otherwise non-appealable, no person or entity may challenge or appeal such decision or determination to any Delaware Court or any other court, arbitrator or other authority.

23.2    <u>Governing Law</u>. Any dispute or controversy between any Claiming Party and any League Party (including, but not limited to, matters concerning the arbitrability of disputes) shall be governed by the laws of the State of Delaware without reference to Delaware conflict of laws principles; provided, that any dispute or controversy arising from any separate agreement between any League Party and any Claiming Party that provides for a specific governing law shall be governed by such law.

23.3    <u>Litigation Costs</u>.

(a)    In the event that (i) any Claiming Party initiates or asserts any Claim or joins, offers substantial assistance to or has a direct financial interest in any Claim against the League or any member or Owners (including any Claim purportedly filed on behalf of the League or any member), and (ii) the Claiming Party (or the third party that received substantial assistance from the Claiming Party or in whose Claim the Claiming Party had a direct financial interest) does not obtain a judgment on the merits that substantially achieves, in substance and amount, the full remedy sought, then each Claiming Party shall be obligated jointly and severally to reimburse the

League and any such member or Owners for all fees, costs and expenses of every kind and description (including, but not limited to, all reasonable attorneys' fees and other litigation expenses) (collectively, "Litigation Costs") that the parties may incur in connection with such Claim.

(b)     In the event that (i) the League initiates, asserts any Claim or joins, offers substantial assistance to or has a direct financial interest in any Claim against any Claiming Party, other than a Claim for declaratory relief, and (ii) the League (or the third party that received substantial assistance from the League or in whose Claim the League had a direct financial interest) does not obtain a judgment on the merits that substantially achieves, in substance and amount, the full remedy sought, then the League shall be obligated to reimburse such Claiming Party for all Litigation Costs that such Claiming Party may incur in connection with such Claim.

## ARTICLE XXIV. DOCUMENT FORM, SIGNATURE AND DELIVERY

(a)     Any consent, notice or delivery contemplated or governed by these Bylaws, including but not limited to Sections 5.10, 5.15, 8.5, 9.6, 9.7, 10.4, 10.5, and Article XIX, may be provided for in a document, and an electronic transmission shall be deemed the equivalent of a written document. "Document" means:

(i)     Any tangible medium on which information is inscribed, and includes handwritten, typed, printed or similar instruments, and copies of such instruments; and

(ii)    An electronic transmission.

(b)     Whenever these Bylaws require or permit a signature, including but not limited to Sections 8.10, 9.7, 9.16, 10.5, 10.8, 11.11 and 12.13, the signature may be a manual, facsimile, conformed or electronic signature. "Electronic signature" means an electronic symbol or process that is attached to, or logically associated with, a document and executed or adopted by

a person with an intent to execute, authenticate or adopt the document. A person may execute a document with such person's signature.

(c)     An electronic transmission shall be deemed delivered to the League for any purpose(s) of these Bylaws, including but not limited to Sections 4.9, 5.9, 5.10, 5.15, 6.7, and 16.1, when delivered to any email address designated by the League for such purpose(s).

(d)     Any ballot or other document required by these Bylaws to be "mailed", including but not limited to Sections 9.6, 9.7, 10.4, and 10.5, may be sent in paper form or by electronic transmission (or both) to the postal address or email address (or both) of the recipient as it appears upon the books of the League.

(e)     To the extent this Article conflicts with any other Article or Section of these Bylaws, this Article controls.