# EXHIBIT D

State of Delaware
Secretary of State
Division of Corporations
Delivered 12:08 PM 10/01/2024
FILED 12:08 PM 10/01/2024
SR 20243832114 - File Number 2127898

EIGHTH AMENDED AND RESTATED

CERTIFICATE OF INCORPORATION

OF

ATP TOUR, INC.

ATP Tour, Inc., a corporation organized and existing under and by virtue of the General Corporation Law of the State of Delaware hereby certifies as follows:

1.      The name of the corporation is ATP Tour, Inc., formerly known as Association of Tennis Professionals, Inc.

2.      The date of filing of the original Certificate of Incorporation of the corporation with the Secretary of State was June 1, 1987.

3.      At a meeting of the corporation's board of directors held on May 21, 2024, the board of directors resolved to amend and restate the corporation's Certificate of Incorporation and annexes thereto to read as follows:

"FIRST:       The name of the corporation is ATP Tour, Inc. (the "Corporation").

SECOND:       The registered office of the Corporation in the State of Delaware is located at Corporation Trust Center, 1209 Orange Street, in the City of Wilmington 19801, County of New Castle.  The registered agent at that address is The Corporation Trust Company.

THIRD:       The purposes of the Corporation are (i) to own, sanction, schedule and administer one or more circuits of professional tennis tournaments, but not to own the assets of any individual member of the Corporation; (ii) to own one or more professional tennis tournaments which are not owned by any member; (iii) to sanction, schedule and operate one or more professional tennis tournaments; (iv) to develop, promulgate and administer rules, regulations and grievance procedures to ensure the fair and orderly conduct of professional tennis tournaments, circuits thereof and the sport of professional tennis; (v) to promote and further the

interests of professional tennis players and professional tennis tournaments and circuits thereof throughout the world; (vi) to promote the interests of one or more public charities; (vii) to improve the conditions under which professional tennis players engage in their occupation; (viii) to increase the status and public perception of professional tennis as a major world class international sport; (ix) to promote and to protect the future of the sport of professional tennis; and (x) to encourage interest in the sport of tennis.  Subject to the foregoing, the Corporation shall have the full power and authority to engage in any lawful act or activity for which a nonprofit organization may be organized under the laws of the State of Delaware; provided that, notwithstanding any other provision of this Certificate of Incorporation, the Corporation shall not carry on any activities not permitted to be carried on by a corporation exempt from Federal income tax under Section 501(c)(6) of the Internal Revenue Code of 1986, as amended (the "Code") (including, here and in all references to the Code hereinafter contained, the corresponding provision of any future United States internal revenue law).  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the by-laws of the Corporation (the "Bylaws").

FOURTH:    In furtherance of the general powers conferred by the laws of the State of Delaware and the purposes set forth in Article THIRD, the Corporation shall have power, acting through its board of directors (the "Board of Directors"), its chief executive officer and other officers, subject to the restrictions set forth in this Certificate of Incorporation, to do and perform all such acts and things as are necessary and convenient to the attainment of the purposes herein set forth.

FIFTH:    No part of the net earnings or assets of the Corporation shall inure to the benefit of, or be distributable to, its members, directors, officers, or other private persons, except that the Corporation shall be authorized and empowered to pay reasonable compensation

for services rendered and to make payments and distributions in furtherance of the purposes hereinabove set forth.

SIXTH:    In the event of the liquidation, dissolution, or winding up of the affairs of the Corporation, the Board of Directors shall, after paying or making provision for the payment of all of the liabilities of the Corporation, distribute all of the assets of the Corporation, including any income or other property which shall not theretofore have been distributed in furtherance of the Corporation's purposes, for purposes within those set out in Article THIRD hereof and within the intendment of Section 501(c)(6) of the Code, as the Board of Directors may determine to be best suited to the accomplishment of the purposes of the Corporation; provided, however, that in making any distribution pursuant to this Article SIXTH the Board of Directors shall use all reasonable efforts to distribute *pari passu* (i) assets of the Corporation having a fair market value at the time of distribution at least equal to the fair market value of the assets of the Corporation on December 31, 1988, to any entity organized to engage only in such activities as are within the scope of Section 501(c)(6) of the Code, the members of which consist substantially of persons who then are Group 1 Player Class members (the "Player Successor Entity") and (ii) assets of the Corporation having an aggregate fair market value at the time of distribution at least equal to the fair market value of the assets of the Men's Tennis Council contributed to the Corporation on the date or dates of such contribution (a) fifty percent (50%) to the Player Successor Entity and (b) fifty percent (50%) to any entity organized to engage only in such activities as are within the scope of Section 501(c)(6) of the Code, the members of which consist substantially of persons or entities which then are or were Tournament Class members of the Corporation.

SEVENTH:

(a)     Membership Corporation.   The Corporation shall be a membership corporation, is not organized for profit and shall not have authority to issue stock.  The authorization or consent of members of the Corporation shall not be necessary in order for the Corporation to mortgage or pledge any or all of its property or assets (but not the property or assets of any member).

(b)     Classes of Membership.  The membership shall be divided into two (2) classes of members:  Player Class members and Tournament Class members.  References in this Certificate of Incorporation to "members" without further designation as to class shall include both Player Class and Tournament Class members. The respective qualifications, rights, privileges and responsibilities of each class of membership shall be such as may be provided for in this Certificate of Incorporation and in the Bylaws.

(i)     Player Class.  Each Group 1 Player Class member who is in good standing and active member of the Player Class, as determined pursuant to the Bylaws, shall be entitled to one (1) vote on any matter submitted for the approval of (x) the members, (y) the Player Class members or (z) the Group 1 Player Class members.  Each alumni member of the Player Class who is in good standing, as determined pursuant to the Bylaws, shall be entitled to one (1) vote with respect to the election of certain Player Advisory Council Delegates, as set forth in the Bylaws.  Each Coaches Division member of the Player Class who is in good standing, as determined pursuant to the Bylaws, shall be entitled to one (1) vote with respect to the election of certain Player Advisory Council Delegates as set forth in the Bylaws.  Notwithstanding anything in this Certificate of Incorporation to the contrary, to the extent necessary to provide under the Delaware General Corporation Law (the "DGCL") that members of the Player Class, other than

Group 1 and inactive members thereof, are not entitled to vote as to any matters, then such divisions of the Player Class other than Group 1 and the inactive category shall each be considered a separate class of members under the DGCL.

(ii)    <u>Tournament Class</u>.  The Tournament Class shall be divided into five (5) categories (each, a "<u>Tournament Category</u>"):  Category A, Category B, Category C, Category D and Category E.  The members of each category of the Tournament Class shall be those Tournament Class members which meet the applicable requirements established for that category set forth on **<u>Annex A</u>** hereto.  Category A, Category B, Category C, Category D and Category E Tournament Class members shall vote together as a class on all matters except as provided herein, as provided in the Bylaws or to the extent required by applicable law.  Each Tournament Class member in good standing, as determined pursuant to the Bylaws, shall be entitled to the number of votes on any matter submitted to the members or the Tournament Class members or the members of each Applicable Tournament Group for their approval as follows:  Each Category A Tournament Class member shall be entitled to twelve (12) votes; each Category B Tournament Class member shall be entitled to eight (8) votes; each Category C Tournament Class member shall be entitled to six (6) votes; each Category D Tournament Class member shall be entitled to four (4) votes; and each Category E Tournament Class member shall be entitled to two (2) votes. Except as expressly set forth in this Certificate of Incorporation or the Bylaws or as required by applicable law, no other member shall be entitled to vote on any matter.  Notwithstanding the foregoing, subject to the limitations set forth in Section 5.14 of the Bylaws, each Tournament Class member shall only be entitled to one (1) vote when any vote is taken solely within an Applicable Tournament Group or Tournament Category.  Notwithstanding anything in this Certificate of Incorporation to the contrary, to the extent necessary to provide under the DGCL that members of

the Tournament Class have differing voting rights as to any matters, each division of the Tournament Class having differing voting rights shall be considered a separate class of members under the DGCL. Player Class and Tournament Class members of the Corporation must attend a meeting in order to vote or take any action thereat, except (a) as provided in the Bylaws with respect to voting by ballot (A) for the election of Player Advisory Council Delegates, (B) for the election of Tournament Advisory Council Delegates, (C) for the election of the respective Tournament Tour Board Representatives Elect, and (D) for the election of directors. A Player Class member may not authorize another person or persons to act for him by proxy, except for the proxy granted by each Player Class member to Player Advisory Council Delegates and voting by ballot, each as set forth in the Bylaws. Nothing contained herein shall limit the right of members of the Corporation entitled to vote on any matter to take action thereon by written consent in lieu of a meeting, pursuant to the DGCL.

EIGHTH:   Management.

(a)    The business and affairs of the Corporation shall be managed by, or under the direction of, the Board of Directors, and the directors need not be elected by ballot unless required by the Bylaws. Without limiting the generality of the foregoing, all matters brought before a meeting of the Board of Directors of the Corporation for a vote shall be determined by the vote specified in the applicable provisions of the Bylaws (the "Bylaws Voting Provisions"). To the extent the director voting provisions of the DGCL are inconsistent with or differ from the Bylaws Voting Provisions, the Bylaws Voting Provisions, rather than the director voting provisions of the DGCL, shall apply to the Corporation. Other than in the case of the Chairman and directors elected to fill a vacancy on the Board of Directors, the term of each director shall commence on the January 1 as of or immediately following the dates upon which he or she is

elected as a director. The number of directors shall be nine (9), elected and having such terms, subject to the immediately preceding sentence, and voting powers as set forth below. The composition of the Board of Directors for the years 2023 through 2025 is set forth on **Annex B**.

(b)     Player Tour Board Representatives. The Group 1 Player Class members, voting as a separate class, shall have the right to elect four (4) directors to the Board of Directors, who shall serve for such terms and have such voting powers as shall be provided in this Certificate of Incorporation. Each such director shall be elected by the Player Advisory Council (on behalf of the Player Class members pursuant to the irrevocable proxy provided for in the Bylaws). The directors shall be designated as (i) the Americas Player Tour Board Representative, (ii) the International Player Tour Board Representative, (iii) the Europe Player Tour Board Representative and (iv) the At-Large Player Tour Board Representative (collectively, the "Player Tour Board Representatives"). Each such director shall meet the respective qualifications applicable to such director set forth in this Article EIGHTH and shall be elected as provided in this Certificate of Incorporation and in accordance with the procedures specified in the Bylaws. Each Player Tour Board Representative shall have one (1) vote on all matters considered by the Board of Directors.

(c)     Tournament Tour Board Representatives. Subject to irrevocable proxies given pursuant to the Bylaws by each member of the Tournament Class, the members of the Tournament Class, voting as such separate classes in the manner set forth in this Certificate of Incorporation, shall have the right to elect four (4) directors to the Board of Directors, who shall serve for such terms and have such powers as shall be provided in this Certificate of Incorporation and the Bylaws, as follows: (i) the members of the Tournament Class belonging to the M1000 Group, voting as a separate class and as otherwise provided in this Certificate of Incorporation, shall have the right to elect (x) one (1) director for the term beginning January 1, 2023, designated

as an M1000 Tournament Tour Board Representative and (y) one (1) director for the term beginning January 1, 2024, designated as an M1000 Tournament Tour Board Representative, (ii) the members of the Tournament Class belonging to the 500 Group, voting as a separate class and as otherwise provided in this Certificate of Incorporation, shall have the right to elect one (1) director for the term beginning January 1, 2025, designated as the 500 Tournament Tour Board Representative and (iii) the members of the Tournament Class belonging to the 250 Group, voting as a separate class and as otherwise provided in this Certificate of Incorporation, shall have the right to elect one (1) director for the term beginning January 1, 2023, designated as the 250 Tournament Tour Board Representative. The members of each such group shall constitute a separate group and which members of each such group and the definition of each such group shall be determined as set forth in the Bylaws.    Notwithstanding the foregoing, (A) the director appointed as the EG Tournament Board Representative prior to the date hereof shall continue to occupy his or her seat (and, in the event of a vacancy of such director seat, the EG members of the Tournament Group shall be entitled to fill such vacancy in the manner consistent with the provisions set forth in this Certificate of Incorporation) through December 31, 2024 (and following such time, the EG Tournament Board Representative position shall be eliminated and replaced with the 500 Tournament Board Representative position).    The M1000 Tour Board Representatives, the 500 Tour Board Representative, the 250 Tour Board Representative and the EG Tournament Tour Board Representative are collectively, but only with respect to the director positions that are active at such time, referred to as the "Tournament Tour Board Representatives". The Tournament Tour Board Representatives and the Player Tour Board Representatives shall be collectively referred to as the "Tour Board Representatives".  Each such director shall meet the respective qualifications applicable to such director set forth in this Article EIGHTH and shall be

elected as provided in this Certificate of Incorporation and in accordance with the procedures specified in the Bylaws. Each Tournament Tour Board Representative shall have one (1) vote on all matters considered by the Board of Directors.

(d)    <u>Chairman</u>.    One (1) director who is neither a Player Tour Board Representative nor a Tournament Tour Board Representative shall hold the position of Chairman and shall serve a term as director until the earlier of (i) the expiration of his or her written agreement with the Corporation, or (ii) until his or her death or he or she shall have resigned or been removed as Chairman in accordance with the provisions of the Bylaws, and shall be elected and qualified in accordance with the provisions of the Bylaws. The director who is the Chairman shall have the right to one (1) vote as a director in accordance with the Bylaws.

(e)    <u>Staggered Board</u>.    The Tour Board Representatives shall be divided into three (3) classes: Class I, Class II and Class III (each, a "<u>Class</u>" and each Class as defined below), each serving three (3)-year staggered terms as follows:

(i)    <u>Class I</u>.    Class I shall consist of the Americas Player Tour Board Representative, the initial M1000 Tournament Tour Board Representative and the 250 Tour Board Representative. The directors in Class I shall be elected in accordance with the provisions of the Bylaws for director terms beginning January 1, 2023 and expiring on December 31, 2025.

(ii)    <u>Class II</u>.    Class II shall consist of the International Player Tour Board Representative and the second M1000 Tournament Tour Board Representative. The directors in Class II shall be elected in accordance with the provisions of the Bylaws for the director term beginning January 1, 2024 and expiring on December 31, 2026.

(iii)    Class III. Class III shall consist of the Europe Player Tour Board Representative, the At-Large Player Tour Board Representative and the 500 Tour Board Representative. The directors in Class III shall be elected in accordance with the provisions of the Bylaws for the director term beginning January 1, 2025 and expiring on December 31, 2027.

(iv)    Notwithstanding the foregoing, the initial At-Large Player Tour Board Representative shall be elected in accordance with the provisions of the Bylaws for a term beginning January 1, 2023 and expiring on December 31, 2025, with a subsequent term beginning on January 1, 2026 and expiring on December 31, 2027, in order to align all further terms of the At-Large Player Tour Board Representative with the other Class III directors.

Each year the successors of the members of the Class of directors whose term expires at the end of that year shall be elected to hold office for a term of three (3) years commencing on January 1, with each director to hold office until his or her successor shall have been duly elected and qualified, subject to prior death, resignation or removal from office consistent with Section 8.1 of the Bylaws.

(f)    Tour Board Representative Qualifications.

(i)    Player Tour Board Representative Qualifications. Each Player Tour Board Representative shall meet the qualifications that, on the date of becoming a director and thereafter during his or her term, (A) he or she is not an employee of the Corporation, (B) he or she does not possess or control an ownership interest in a Tournament Class member or membership, as determined pursuant to the Bylaws, nor does he or she perform services for or is employed by an entity, or affiliate of an entity, that possesses or controls an ownership interest in

a Tournament Class member or membership, as determined pursuant to the Bylaws; provided, however, that nothing in the foregoing clause (B) shall prevent an active Player Class member from being eligible to serve as a Player Tour Board Representative, (C) in the preceding fifteen (15) years he or she has not been convicted of a felony or other criminal offense that could be subject to a sentence of prison time of one year or more, have served a prison sentence in respect of such offense, has not entered a plea that admits having committed such a crime, or has not entered a plea that admits the underlying facts of such a crime, and (D) he or she does not have any Affiliation (as defined below) with any Restricted Entity (as defined below). In the event that a Player Tour Board Representative acquires an Affiliation with a Restricted Entity after he or she was elected to the Board of Directors, then he or she shall no longer be eligible to serve as a director of the Corporation and shall automatically be deemed to be removed for cause pursuant to the following provisions of this Article EIGHTH. All current and prospective Player Tour Board Representatives that have or acquire an Affiliation with a Restricted Entity must provide written notice thereof to the Chairman. In addition, except to the extent that the following geographic origin qualifications are inapplicable to a particular director pursuant to the provisions of the Bylaws, (X) each Americas Player Tour Board Representative must hold a passport from a country situated in the Americas, (Y) each Europe Player Tour Board Representative must hold a passport from a country situated in Europe and (Z) each International Player Tour Board Representative must hold a passport from a country situated in a geographic area other than the Americas or Europe. For purposes of the provisions related to the election of Player Tour Board Representatives pursuant to this Article EIGHTH, the "Americas" shall include North America, South America, Central America and the Caribbean and the definitions of North America, South

America, Central America, the Caribbean and Europe shall be determined in good faith by the Chairman.

(ii)    <u>Tournament Tour Board Representative Qualifications</u>.    Each Tournament Tour Board Representative shall meet the qualifications that, on the date of becoming a director and thereafter during his or her term: (A) in the preceding fifteen (15) years he or she has not been convicted of a felony or other criminal offense that could be subject to a sentence of prison time of one year or more, have served a prison sentence in respect of such offense, has not entered a plea that admits having committed such a crime, or has not entered a plea that admits the underlying facts of such a crime and (B) he or she does not have any Affiliation with any Restricted Entity. In the event that a Tournament Tour Board Representative acquires an Affiliation with a Restricted Entity after he or she was elected to the Board of Directors, then he or she shall no longer be eligible to serve as a director of the Corporation and shall automatically be deemed to be removed for cause pursuant to the following provisions of this Article EIGHTH. All current and prospective Tournament Tour Board Representatives that have or acquire an Affiliation with a Restricted Entity must provide written notice thereof to the Chairman. In addition, the M1000 Tournament Tour Board Representatives may not both be nominated by members of the M1000 Group of the Tournament Class from one of the following areas: (X) the Americas, (Y) Europe or (Z) a geographic area other than the Americas or Europe. For example, if one M1000 Tournament Tour Board Representative is nominated by a Tournament Class member from the Americas, the other M1000 Tournament Tour Board Representative may be nominated by a Tournament Class member from the Americas. For purposes of the provisions related to the election of Tournament Tour Board Representatives pursuant to this Article EIGHTH, the "Americas" shall include North America, South America, Central America and the Caribbean and the definitions of North

America, South America, Central America, the Caribbean and Europe shall be determined in good faith by the Chairman.

(iii)     A person shall be deemed to have an "Affiliation" with a Restricted Entity if he or she or any of his or her immediate family members: (a) owns, or solely with respect to clauses (w) and (x) of the definition of Restricted Entity has owned within the immediately preceding six (6) months, directly or indirectly, any equity or other ownership interest in such Restricted Entity (except for less than five percent (5%) of any outstanding class of securities that are publicly traded on any generally recognized securities exchange) or (b) is, or solely with respect to clauses (w) and (x) of the definition of Restricted Entity has been within the immediately preceding six (6) months, an employee, contractor, member, officer, director or manager of such Restricted Entity; provided, however, that a person who solely provides services to such Restricted Entity as a broadcast commentator, journalist, play by play announcer or other on-air broadcast talent shall not be deemed to have an Affiliation with such Restricted Entity; provided further, clause (y) and (z) of the definition of Restricted Entity shall not apply to eligibility to serve as a member of the Tournament Advisory Council or Player Advisory Council. The term "Restricted Entity" means any business, corporation, partnership, association, limited liability company, organization, person or other entity and each of their respective direct and indirect parents and subsidiaries that directly or indirectly (w) undertakes, or purports to undertake, any function that is then performed by the board of directors, the Player Advisory Council Delegates, or the Tournament Advisory Council Delegates in their regular course, (x) has a purpose or objective which is contrary to the best interests of the Corporation and/or the sport of tennis, (y) with respect to any director elected after August 28, 2023 is engaged in an active business negotiation, a transaction and/or other business arrangement with (i) the Corporation which has an actual or

13

contemplated value (in the aggregate if there is more than one such transaction or arrangement) of more than US $1,000,000 per year, or (ii) any entity in which the Corporation has an ownership interest greater than 50%, which has an actual or contemplated value (in the aggregate if there is more than one such transaction or arrangement) of more than US $3,000,000 per year, or (z) employs, Contracts with or controls or is controlled by (whether as a member of the board of directors, board of managers, general partner, shareholder, officer or otherwise) a Player Tour Board Representative or Tournament Board Representative. Notwithstanding the foregoing, a Player Class or Tournament Class member of ATP shall not be deemed to be a "Restricted Entity" as a result of clause (y) of the preceding sentence solely on account of such member being engaged in any business that is directly related to its membership in the Corporation (e.g. with respect to any Tournament Class member, the ownership and operation of its tournament). For purposes of this Section "Contracts with" shall mean a material contract to provide services or an endorsement.

(iii) Term Limits. Each Player Tour Board Representative and Tournament Tour Board Representative may only serve a maximum of four consecutive full terms on the Corporation's Board of Directors. Notwithstanding the immediately preceding sentence, any Player Tour Board Representative or Tournament Tour Board Representative who has been elected to serve on the corporation's board of directors prior to August 28, 2023 and who is currently serving in his or her fourth (or more) full term on the Board of Directors as of August 28, 2023, may be entitled to serve one additional consecutive three-year term on the Board of Directors after the conclusion of such individual's current term.

(f)    Removal.

Each vote held on the removal of directors shall consider the removal of not more than one director.

14

(i)    Any director elected by the Player Class (each, a "Player Class Director") may be removed at any time for cause (as such term may be defined in the Bylaws) by the vote of a majority of the members of the Player Advisory Council pursuant to the irrevocable proxy provided for in the Bylaws. Furthermore, any Player Class Director may be removed at any time without cause by the vote of no less than sixty-six percent (66%) of the members of the Player Advisory Council eligible to vote thereon pursuant to the irrevocable proxy provided for in the Bylaws; provided, however, if a Player Class Director has been removed without cause at any time on such day or during the preceding 180 days, the removal of another Player Class Director without cause shall require the vote of no less than eighty percent (80%) of the members of the Player Advisory Council eligible to vote thereon pursuant to the irrevocable proxy provided for in the Bylaws; and provided further, if two (2) or more Player Class Directors have been removed without cause at any time on such day or during the preceding 180 days, the removal of another Player Class Director without cause shall require the unanimous vote of the members of the Player Advisory Council eligible to vote thereon (excluding the Player Class Director being removed) pursuant to the irrevocable proxy provided for in the Bylaws.

(ii)    Any director elected by the EG, M1000, 500 or 250 Group of the Tournament Class (each, a "Tournament Director") may be removed at any time for cause (as such term may be defined in the Bylaws) by the vote of Tournament Class members of the Tournament Director's group which collectively have at least a majority of the voting power of the Tournament Class members of such group at any regular meeting of the Tournament Class members of such group or at any special meeting of the Tournament Class members of such group called for that purpose. Furthermore, any Tournament Director may be removed at any time without cause by the vote of Tournament Class members of the Tournament Director's group which collectively

15

have at least sixty-six percent (66%) of the voting power of the Tournament Class members of such group at any regular meeting of the Tournament Class members of such group or at any special meeting of the Tournament Class members of such group called for that purpose.

(iii)    Any director, excluding the Chairman, may be removed at any time, for cause (as such term is defined in the Bylaws), by the vote of seven (7) directors, to remove such director at any special meeting of the Board of Directors called for that purpose.    In furtherance and not in limitation of the powers conferred by the laws of the State of Delaware, the Board of Directors is expressly authorized to make, amend and repeal the Bylaws; provided, however, that the Board of Directors shall have no power to make, amend or repeal Bylaws in a manner which is inconsistent with action taken by the membership of the Corporation within twelve (12) months prior to such making, amendment or repeal.

NINTH:    A director of the Corporation shall not be personally liable to the Corporation or its members for monetary damages for breach of fiduciary duty as a director, except for liability, to the extent provided by applicable law, (i) for any breach of the director's duty of loyalty to the Corporation or its members, (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law or (iii) for any transaction from which the director derived an improper personal benefit.    If the DGCL is hereafter amended to authorize corporate action further eliminating or limiting the personal liability of directors, then the liability of a director of the Corporation shall be eliminated or limited to the fullest extent permitted by the DGCL, as so amended.

Any repeal or modification of the foregoing paragraph shall not adversely affect any right or protection of a director of the Corporation existing at the time of such repeal or modification.

TENTH:    The Corporation reserves the right to amend or repeal any provision contained in this Certificate of Incorporation in the manner from time to time prescribed by the laws of the State of Delaware and all rights herein conferred are granted subject to this reservation."

4.    This Eighth Amended and Restated Certificate of Incorporation was duly adopted in accordance with the applicable provisions of Sections 242 and 245 of the General Corporation Law of the State of Delaware.

5.    This Eighth Amended and Restated Certificate of Incorporation shall be effective as of May 21, 2024, for accounting purposes only.

IN WITNESS WHEREOF, ATP Tour, Inc. has caused this Second Amended and Restated

Certificate of Incorporation to be executed by Jeffrey T. Reel, its Secretary, and attested by Mark

V. Young, its Chief Legal & Administrative Officer, on this 1st day of October, 2024.


ATP TOUR, INC.

By  /s/ Jeffrey T. Reel
      Name: Jeffrey T. Reel
      Title: Secretary

ATTEST:

By  /s/ Mark V. Young
    Name: Mark V. Young
    Title: Chief Legal & Administrative Officer

<u>**Annex A**</u>
**Tournament Categories**

<u>Category A</u> – M1000 Group Tournament Class members in good standing with full membership status

<u>Category B</u> – 500 Group Tournament Class members in good standing with full membership status

<u>Category C</u> – M1000 Group Tournament Class members in good standing with conditional membership status

<u>Category D</u> – 500 Group Tournament Class members in good standing with conditional membership status and 250 Group Tournament Class members in good standing with full membership status

<u>Category E</u> – 250 Group Tournament Class members in good standing with conditional membership status

## Annex B
## Board Composition (2024 through 2025)



**2**

# Delaware Division of Corporations

# Division of Corporations Survey
401 Federal Street, Suite 4
Dover, DE  19901
**Fax:  302-739-7219**

*On a scale of 1 (unacceptable) to 10 (outstanding), please rate the following questions.*

1. How would you rate the **overall quality** of service provided by the Division of Corporations?
   1  2  3  4  5  6  7  8  9  10   NA

2. How would you rate the **convenience** of our services?
   1  2  3  4  5  6  7  8  9  10   NA

3. How would you rate the **promptness** of service provided?
   1  2  3  4  5  6  7  8  9  10   NA

4. How would you rate the **accessibility** of the Division of Corporations staff?
   1  2  3  4  5  6  7  8  9  10   NA

5. How would you rate the **training** you received from the Division of Corporations staff?
   1  2  3  4  5  6  7  8  9  10   NA

6. How would you rate the **written materials** received from the Division of Corporations? (Were they easy to read and helpful?  i.e., guidelines, forms, DCIS Manual.)
   1  2  3  4  5  6  7  8  9  10   NA

7. Were Division of Corporations **staff attentive and helpful** relative to your comments and concerns?
   1  2  3  4  5  6  7  8  9  10   NA

8. Did Division of Corporations staff display **professionalism & courtesy**?
   1  2  3  4  5  6  7  8  9  10   NA

9. Are Division of Corporations staff **knowledgeable**?
   1  2  3  4  5  6  7  8  9  10   NA

Please let us know about experiences and incidents with the Division of Corporations (i.e., staff, equipment, connectivity, customer service) that impressed or disappointed you.

Comments: _____

_____

Company name and contact information: _____

**If you would prefer, you may take this survey online at**
**https://surveymonkey.com/r/corporationssurvey**