## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VASEK POSPISIL, NICHOLAS KYRGIOS, ANASTASIA RODIONOVA, NICOLE MELICHAR-MARTINEZ, SAISAI ZHENG, SORANA CÎRSTEA, JOHN-PATRICK SMITH, NOAH RUBIN, ALDILA SUTJIADI, VARVARA GRACHEVA, TENNYS SANDGREN, SACHIA VICKERY, NICOLAS ZANELLATO, and REILLY OPELKA, on behalf of themselves and all others similarly situated, -and- THE PROFESSIONAL TENNIS PLAYERS ASSOCIATION, Plaintiffs, v. ATP TOUR, INC. and WTA TOUR, INC., Defendants. | Case No. 1:25-cv-02207-MMG **ORAL ARGUMENT REQUESTED** |

## DEFENDANT WTA TOUR, INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION, MOTION TO DISMISS, AND MOTION TO STAY PROCEEDINGS

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION ...................................................................................................1

II.    THE OPPOSITION CONFIRMS WTA PLAINTIFFS' CLAIMS SHOULD BE ARBITRATED ...................................................................................................1

    A.    The parties' arbitration clause covers "any dispute." ...............................1

    B.    The delegation of arbitrability by the WTA Rulebook is clear and unmistakable. .........................................................................................5

    C.    Plaintiffs' conduct establishes the validity of the arbitration agreement. ...............6

    D.    Plaintiffs' attempts to avoid enforceability of the WTA Rulebook's arbitration clause fail. ..................................................................................7

    E.    The stay of Plaintiffs' claims is automatic. ..............................................9

III.   ATP PLAINTIFFS DO NOT STATE A PLAUSIBLE ANTITRUST CLAIM AGAINST WTA ...................................................................................................9

    A.    Plaintiffs have not alleged the necessary factual allegations supporting antitrust claims. .........................................................................................9

    B.    ATP Plaintiffs fail to allege antitrust standing. .....................................11

IV.   CONCLUSION ....................................................................................................12

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### CASES

*Alfa Laval U.S. Treasury Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*,
  857 F. Supp. 2d 404 (S.D.N.Y. 2012).........................................................................................4

*Am. Express Co. v. Italian Colors Rest.*,
  570 U.S. 228 (2013)..................................................................................................................8

*Anderson News, L.L.C. v. Am. Media, Inc.*,
  680 F.3d 162 (2d Cir. 2012)....................................................................................................10

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
  475 U.S. 643 (1986)..................................................................................................................5

*AXA Versicherung AG v. N.H. Ins. Co.*,
  708 F. Supp. 2d 423 (S.D.N.Y. 2010), *aff'd*, 391 F. App'x 25 (2d Cir. 2010)........................4

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..................................................................................................................9

*Bristol-Myers Squibb Co. v. SR Int'l Bus. Ins. Co.*,
  354 F. Supp. 2d 499 (S.D.N.Y. 2005).......................................................................................5

*Cedeno v. Sasson*,
  100 F.4th 386 (2d Cir. 2024) ....................................................................................................8

*Chang v. Lin*,
  824 F.2d 219 (2d Cir. 1987)......................................................................................................9

*City of Almaty, Kazakhstan v. Sater*,
  2019 WL 6681560 (S.D.N.Y. Dec. 6, 2019) ............................................................................6

*Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*,
  58 F.3d 16 (2d Cir. 1995)..........................................................................................................3

*Contec Corp. v. Remote Sol. Co.*,
  398 F.3d 205 (2d Cir. 2005)......................................................................................................6

*Davitashvili v. Grubhub Inc.*,
  131 F.4th 109 (2d Cir. 2025) ....................................................................................................4

*DDK Hotels, LLC v. Williams-Sonoma, Inc.*,
  6 F.4th 308 (2d Cir. 2021) ........................................................................................................6

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985)...........................................................................................9

*Dreyfuss v. Etelecare Glob. Sols.-US Inc.*,
  349 F. App'x 551 (2d Cir. 2009) ........................................................................6

*Duafala v. Globecomm Sys. Inc.*,
  91 F. Supp. 3d 330 (E.D.N.Y. 2015) ..................................................................5

*Flores v. Nat'l Football League*,
  658 F. Supp. 3d 198 (S.D.N.Y. 2023), *aff'd*, 2025 WL 2349199 (2d Cir. Aug.
  14, 2025) .............................................................................................................7

*Gelboim v. Bank of Am. Corp.*,
  823 F.3d 759 (2d Cir. 2016)..............................................................................11

*Gilbert v. Dell Techs., Inc.*,
  415 F. Supp. 3d 389 (S.D.N.Y. 2019).................................................................6

*Green Tree Fin. Corp.-Alabama v. Randolph*,
  531 U.S. 79 (2000).............................................................................................8

*Iowa Pub. Emps.' Ret. Sys. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
  *340 F. Supp. 3d 285, 317-198 (S.D.N.Y. 2018)* ............................................10

*In re Currency Conversion Fee Antitrust Litig.*,
  2005 WL 2364969 (S.D.N.Y. Sept. 27, 2005)....................................................8

*Ji Dong Cheng v. HSBC Bank USA, N.A.*,
  467 F. Supp. 3d 46 (E.D.N.Y. 2020) ...............................................................4, 5

*Katz v. Cellco P'ship*,
  794 F.3d 341 (2d Cir. 2015), *aff'd*, 756 F. App'x 103 (2d Cir. 2019)....................9

*Kristian v. Comcast Corp.*,
  446 F.3d 25 (1st Cir. 2006)................................................................................8

*LAVVAN, Inc. v. Amyris, Inc.*,
  2022 WL 4241192 (2d Cir. Sept. 15, 2022) ......................................................6

*LLM Bar Exam, LLC v. Barbri, Inc.*,
  271 F. Supp. 3d 547 (S.D.N.Y. 2017), *aff'd*, 922 F.3d 136 (2d Cir. 2019) ...........11

*Loc. Union 97, IBEW, AFL-CIO v. Niagara Mohawk Power Corp.*,
  67 F.4th 107 (2d Cir. 2023) ...............................................................................2

*Lohnn v. IBM*,
  2022 WL 36420 (S.D.N.Y. Jan. 4, 2022) ...........................................................8

iii

*Luzzi v. ATP Tour, Inc.*,
    2011 WL 2448918 (M.D. Fla. Mar. 1, 2011) ...............................................................4

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    723 F.2d 155 (1st Cir. 1983), *aff'd in part, rev'd in part*, 473 U.S. 614 (1985).......................4

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985)...............................................................................................3, 7

*NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*,
    770 F.3d 1010 (2d Cir. 2014)..................................................................................6

*Nat'l Football League v. Gruden*,
    2025 WL 2317407 (Nev. Aug. 11, 2025) ...................................................................7

*N.Y. ex rel. Spitzer v. Saint Francis Hosp.*,
    94 F. Supp. 2d 399 (S.D.N.Y. 2000)........................................................................10

*Newbridge Acquisition I, L.L.C. v. Grupo Corvi, S.A. de D.V.*,
    2003 WL 42007 (S.D.N.Y. Jan. 6, 2003) .................................................................3

*Paduano v. Express Scripts, Inc.*,
    55 F. Supp. 3d 400 (E.D.N.Y. 2014) .......................................................................8

*PaineWebber Inc. v. Bybyk*,
    81 F.3d 1193 (2d Cir. 1996)...................................................................................2

*Palmer v. BRG of Ga., Inc.*,
    498 U.S. 46 (1990)...............................................................................................10

*Paramount Famous Lasky Corp. v. United States*,
    282 U.S. 30 (1930)................................................................................................8

*Pictet Funds (Eur.) S.A. v. Emerging Managers Grp., L.P.*,
    2014 WL 6766011 (S.D.N.Y. Dec. 1, 2014) ............................................................5

*Ret. Sys. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
    340 F. Supp. 3d 285 (S.D.N.Y. 2018).....................................................................11

*Schwartz v. Interfaith Med. Ctr.*,
    715 F. Supp. 1190 (E.D.N.Y. 1989) .......................................................................4

*Shaw Grp. Inc. v. Triplefine Int'l Corp.*,
    322 F.3d 115 (2d Cir. 2003)...................................................................................6

*Sportvision, Inc. v. MLB Advanced Media, LP*,
    2020 WL 1957450 (S.D.N.Y. Apr. 23, 2020).........................................................5

*Starr v. Sony BMG Music Ent.*,
    592 F.3d 314 (2d Cir. 2010)..................................................................................11

*State Farm Mutual Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*,
    120 F.4th 59 (2d Cir. 2024) ...................................................................................8

*United States v. Apple, Inc.*,
    791 F.3d 290 (2d Cir. 2015)..................................................................................10

*Wernett v. Serv. Phx., LLC*,
    2009 WL 1955612 (D. Ariz. July 6, 2009) ...........................................................8

*White v. Cantor Fitzgerald, L.P.*,
    393 F. App'x 804 (2d Cir. 2010) ............................................................................9

*WorldCrisa Corp. v. Armstrong*,
    129 F.3d 71 (2d Cir. 1997).....................................................................................7

## I.    INTRODUCTION

Every single cause of action brought against WTA in Plaintiffs' Amended Complaint is premised on some form of claim that WTA "orchestrated and entered into an agreement with and among its Tournament Co-Conspirators, through the WTA Rulebook." *See, e.g.*, Dkt. No. 109 ("Am. Compl.") ¶¶ 446-448, 450, 469-470, 486, 509, 538, 570, 589.  Plaintiffs also repeatedly cite, quote, and rely on the WTA Rulebook to support each of their factual allegations.  *See, e.g.*, *id.* ¶¶ 149, 151, 153 (compensation and prize money); 172, 187 (name, image, and likeness rights); 190 (sponsorships); 192 (endorsements); 220-221 (ranking points); 243 (schedule); 256 (withdrawals); 274 (competition restrictions).

But, because the WTA Rulebook contains a provision requiring mandatory arbitration of "any dispute" between WTA and players, Plaintiffs now try to disclaim the binding effect of that foundational document.  Plaintiffs cannot have it both ways.  Because the Federal Arbitration Act requires enforcement of the parties' agreement as written, the Court should grant WTA's motion to compel arbitration of WTA Plaintiffs' claims.  Moreover, most of Plaintiffs' Opposition is irrelevant because it focuses on whether WTA Plaintiffs' claims are arbitrable, but that question was expressly delegated to the arbitrator.  Finally, because the Opposition confirms the alleged WTA conduct is limited to the WTA Tour, the Court should also dismiss ATP Plaintiffs' claims.

## II.    THE OPPOSITION CONFIRMS WTA PLAINTIFFS' CLAIMS SHOULD BE ARBITRATED

### A.    The parties' arbitration clause covers "any dispute."

The WTA Rulebook, in its entirety, binds WTA Plaintiffs.  *Id.* ¶¶ 81, 86.  This includes the WTA Rulebook's arbitration provision, a fact that Plaintiffs recognize in the Amended Complaint: "Section XIX.B.1. of the WTA Rulebook similarly *requires WTA players to submit any dispute*

1

between herself and the WTA or any Tournament Co-Conspirator that relates to the application of the WTA Rulebook to arbitration." *Id.* ¶ 368 (emphasis added).

The WTA Rulebook provides that "[a]ny dispute between or among the WTA, WTA Tournaments, or WTA Players . . . arising out of the application of any provision of this Rulebook" that "is not finally resolved by applicable provisions of this Rulebook, shall be submitted exclusively to the American Arbitration Association ("AAA") for final and binding arbitration . . . ." Dkt. No. 117-1 ("Rulebook") at 403. The WTA Rulebook only provides an exception for "any [d]ispute relating to or arising out of a change in Tournament Class Membership status." *Id.*

The wording is inclusive, categorical, and mandatory. Courts in this Circuit routinely find that such language is clear and unmistakable evidence of an agreement to arbitrate. *See PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1199 (2d Cir. 1996) ("The words 'any and all' are elastic enough to encompass disputes over whether a claim is timely and whether a claim is within the scope of arbitration."); *see also Loc. Union 97, IBEW, AFL-CIO v. Niagara Mohawk Power Corp.*, 67 F.4th 107, 118 (2d Cir. 2023).

Every one of Plaintiffs' eight counts against WTA is premised on the allegation that WTA entered into an anticompetitive agreement through the WTA Rulebook. Am. Compl. ¶¶ 446-448, 450 (Count I), 469-470 (Count II), 486 (Count III), 509 (Count IV), 538 (Count VI), 557 (Count VII)[1], 570 (Count VIII), 589 (Count IX). Plaintiffs nonetheless argue that their claims do not "arise out of the application of any term included in the WTA Rulebook." Dkt. No. 128 ("Opp.") at 30. No reasonable interpretation of the arbitration provision nor Plaintiffs' own allegations

---

[1] Count VII is Plaintiffs' implausible claim that Defendants conspired to monopolize the alleged professional men's tennis market. That claim focuses on men's tennis and so does not explicitly reference the WTA Rulebook, but to the extent the WTA supposedly engaged in the alleged anticompetitive activities noted in that count, there is no basis to claim they were divorced from the WTA Rulebook.

support this conclusion.  A clause "submitting to arbitration any claim or controversy arising out of or relating to the agreement, is the paradigm of a broad clause." *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) (cleaned up); *see also Newbridge Acquisition I, L.L.C. v. Grupo Corvi, S.A. de D.V.*, 2003 WL 42007, at *3 (S.D.N.Y. Jan. 6, 2003).

Plaintiffs also provide no support for their argument that the WTA Rulebook's arbitration provision is only "intended to cover ordinary course business matters, such as appealing fines or challenging player eligibility."  Opp. at 28.  The Rulebook's arbitration provision does not contain any such qualifying language.  Instead, the 563-page Rulebook addresses all topics that affect female tennis players, including participation in WTA tournaments, prizes, rankings, player conduct, WTA membership, eligibility, tournament structure, and more—all of which are at the heart of Plaintiffs' claims.

Plaintiffs' argument that "the WTA Rulebook does not include any rules against . . . the wide-ranging anticompetitive conduct that Plaintiffs challenge" also fails.  Opp. at 7.  There is no such requirement.  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.* involved a similar arbitration provision, requiring that "[a]ll disputes, controversies or differences which may arise" between the parties "out of or in relation to Articles I–B through V of [the] Agreement" be arbitrated.  473 U.S. 614, 617 (1985).  The Supreme Court agreed with the First Circuit that plaintiffs' antitrust claims were arbitrable.  *Id.* at 628.  As the First Circuit explained, the arbitration clause "extends to '*all* disputes, controversies or differences' arising 'out of' or 'in relation to' [the agreement] . . . .  The question, therefore, is not whether the arbitration clause mentions antitrust or any other particular cause of action, but whether the factual allegations . . . are within the scope of the arbitration clause."  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,

3

723 F.2d 155, 159 (1st Cir. 1983), *aff'd in part, rev'd in part*, 473 U.S. 614 (1985).  Here, the factual allegations are plainly within the scope of the arbitration clause.

Plaintiffs' cases only confirm the broad scope of WTA's arbitration clause.  *Luzzi v. ATP Tour, Inc.* involves the arbitration of an ATP dispute with a similar arbitration provision to WTA. 2011 WL 2448918, at *4 (M.D. Fla. Mar. 1, 2011) (recognizing that "the Rulebook *unambiguously* commits all disputes 'arising out of [the ATP] Rulebook' to arbitration" (emphasis added)).  The *Luzzi* court concluded that plaintiffs were bound to the preceding arbitration decisions, after the parties had "adjudicate[ed] their cases through the arbitration process established by the ATP Rulebook." *Id.* at 10.  Similarly here, the WTA Rulebook establishes that arbitration is the proper process for disputes arising out of that Rulebook.

Several of Plaintiffs' other cases analyze narrower arbitration provisions.  The *Ji Dong Cheng* arbitration provision has qualifying language that narrows the "broad prefatory phraseology" of "any dispute or disagreement." *Ji Dong Cheng v. HSBC Bank USA, N.A.*, 467 F. Supp. 3d 46, 51 (E.D.N.Y. 2020).  *Davitashvili v. Grubhub Inc*. involves arbitration of claims related to plaintiffs' "access and use of the [Grubhub] Platform." 131 F.4th 109, 114, 119-20 (2d Cir. 2025).  WTA's arbitration clause is not so limited.

Other cases cited by Plaintiffs involve the "interpretation" of agreement terms.  These clauses are "expressly limited to disputes arising out of the interpretation of the [Agreement]" and "lack the 'very expansive language' typical of broad arbitration agreements." *Alfa Laval U.S. Treasury Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 857 F. Supp. 2d 404, 409 (S.D.N.Y. 2012); *see also Schwartz v. Interfaith Med. Ctr.*, 715 F. Supp. 1190, 1192 (E.D.N.Y. 1989).

Plaintiffs' remaining cases are far afield.  *Bristol-Myers* and *AXA Versicherung AG* involve fraudulent inducement.  *See AXA Versicherung AG v. N.H. Ins. Co.*, 708 F. Supp. 2d 423, 428-29

(S.D.N.Y. 2010), *aff'd*, 391 F. App'x 25 (2d Cir. 2010); *Bristol-Myers Squibb Co. v. SR Int'l Bus. Ins. Co.*, 354 F. Supp. 2d 499, 504 (S.D.N.Y. 2005).  Plaintiffs have not alleged WTA's arbitration agreement was induced by fraud.

Plaintiffs also cite WTA's Bylaws as support for a narrow interpretation of the WTA Rulebook's arbitration clause.  But WTA's Rulebook and Bylaws are consistent: disputes arising under the WTA Rulebook are resolved by arbitration.  The WTA Bylaws state that New York Courts do not have jurisdiction "in the event any provision of the . . . WTA Tour Rules . . . provides that any decision or determination of the arbitrator . . . shall be final, binding[,] or otherwise non-appealable."  Dkt. No. 117-2 ("Bylaws") at 43.  Because Plaintiffs' claims arise out of and relate to the WTA Rulebook, its arbitration provision is binding, and the Bylaws are inapplicable.

The WTA Rulebook does not establish a "dual structure" to resolve disputes arising out of it.  Plaintiffs' cases all involve broad dispute resolution provisions *and* narrow, qualified arbitration clauses *within the same agreement*.  *See, e.g.*, *Ji Dong Cheng*, 467 F. Supp. 3d at 51 (citing *Duafala v. Globecomm Sys. Inc.*, 91 F. Supp. 3d 330, 335 (E.D.N.Y. 2015)); *Sportvision, Inc. v. MLB Advanced Media, LP*, 2020 WL 1957450, at *10 (S.D.N.Y. Apr. 23, 2020); *Pictet Funds (Eur.) S.A. v. Emerging Managers Grp., L.P.*, 2014 WL 6766011, at *2 (S.D.N.Y. Dec. 1, 2014).  The WTA Rulebook does not have this structure.

### B.    The delegation of arbitrability by the WTA Rulebook is clear and unmistakable.

Even if the issue of arbitrability were ambiguous, the parties delegated that question to the arbitrator.  Courts may not decide "whether the parties agreed to arbitrate" when the agreement "clearly and unmistakably" submits it to arbitration.  *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986).  The WTA Rulebook clearly defines "[a]ny dispute" to include "matters concerning the arbitrability of disputes," and sends all disputes "exclusively" to the AAA

under its Commercial Rules.  Rulebook at 403.  AAA Rule 7(a) empowers the arbitrator to decide jurisdiction and "the arbitrability of any claim."  Dkt. No. 117-31 at 3.

In this Circuit, incorporation of rules that authorize arbitrators to decide arbitrability, combined with a broad arbitration clause, is clear and unmistakable evidence of delegation.  *See, e.g.*, *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 318-19 (2d Cir. 2021); *Contec Corp. v. Remote Sol. Co.*, 398 F.3d 205, 210 (2d Cir. 2005); *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 120-22 (2d Cir. 2003).

Plaintiffs' cases are distinguishable; the clauses in those cases were narrowed by carveouts or subject-matter limits.  *See LAVVAN, Inc. v. Amyris, Inc.*, 2022 WL 4241192, at *1 (2d Cir. Sept. 15, 2022); *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1031-32 (2d Cir. 2014); *DDK Hotels*, 6 F.4th at 318-19; *Gilbert v. Dell Techs., Inc.*, 415 F. Supp. 3d 389, 399 (S.D.N.Y. 2019).

### C.    Plaintiffs' conduct establishes the validity of the arbitration agreement.

The Amended Complaint concedes that WTA Plaintiffs agreed to arbitrate their claims. Moreover, WTA has provided evidence that all named WTA Plaintiffs signed the Annual Player Form and participated in WTA events.  This evidence amply demonstrates the existence of a valid arbitration agreement between the parties.  *See* Dkt. No. 116 at 8-9.  Plaintiffs' reliance on cases where there was insufficient evidence of an agreement is misplaced.  For example, in *City of Almaty, Kazakhstan v. Sater*, the defendant was a non-signatory, and there was no evidence of an agreement.  2019 WL 6681560, at *10-11 (S.D.N.Y. Dec. 6, 2019).  Similarly, in *Dreyfuss v. Etelecare Global Solutions-US Inc.*, the defendant failed to produce a "single standard document containing an arbitration clause."  349 F. App'x 551, 553-55 (2d Cir. 2009).  WTA has produced evidence of signed agreements containing a clear arbitration provision, agreed to by each WTA Plaintiff.  Dkt. Nos. 117-4-30.

6

The unenforceability cases that Plaintiffs cited are inapposite. In *Flores v. National Football League*, the contract required compliance with the NFL Constitution as amended in the future, creating uncertainty. 658 F. Supp. 3d 198, 215 (S.D.N.Y. 2023), *aff'd*, 2025 WL 2349199 (2d Cir. Aug. 14, 2025). And in *National Football League v. Gruden*, the Commissioner was permitted to arbitrate disputes involving his own conduct, which was "exactly what [was] at issue" in the case. 2025 WL 2317407, at *3 (Nev. Aug. 11, 2025). The WTA Rulebook does not implicate similar issues.

Plaintiffs' reliance on *WorldCrisa Corp. v. Armstrong* is misplaced and in fact supports WTA's position. Opp. at 36. In *WorldCrisa*, the Second Circuit held that an arbitration clause covering "any dispute between the Parties over the terms of this Agreement, or any claim of breach by either of the Parties" was sufficiently broad to create a presumption of arbitrability. 129 F.3d 71, 73-75 (2d Cir. 1997). WTA's arbitration provision is at least as broad, requiring that "[a]ny dispute" be submitted exclusively to the AAA for final and binding arbitration. Rulebook at 403.

### D. Plaintiffs' attempts to avoid enforceability of the WTA Rulebook's arbitration clause fail.

Plaintiffs also argue that an arbitration provision cannot apply to antitrust claims. But, the Supreme Court long ago held that antitrust claims are arbitrable. *See Mitsubishi Motors Corp.*, 473 U.S. at 632 ("the mere appearance of an antitrust dispute" does not invalidate arbitration). Plaintiffs' position contradicts controlling precedent.

Plaintiffs' position is also internally inconsistent: they say their claims fall outside the WTA arbitration clause because the Rulebook lacks the challenged antitrust rules (Opp. at 28-29), yet also claim the clause furthers the alleged scheme by depriving players of court access. *See* Am. Compl. ¶¶ 366, 368, 373, 576. Plaintiffs cannot use the Rulebook as both a sword and a shield.

Plaintiffs' "part and parcel" cases are inapposite. *In re Currency Conversion Fee Antitrust Litigation* involved evidence that the arbitration clauses arose from a conspiracy. 2005 WL 2364969, at *7-10 (S.D.N.Y. Sept. 27, 2005). Plaintiffs allege no similar genesis here, only conclusory assertions of a WTA–ATP conspiracy effectuated "through the WTA Rulebook." *See, e.g.*, Am. Compl. ¶¶ 149, 446-448, 570. *Paramount Famous Lasky Corp. v. United States* struck clauses embedded in a compulsory joint-action scheme; the WTA clause is not comparable. 282 U.S. 30, 37-42 (1930).

Plaintiffs' "prospective waiver" theory also fails. *Green Tree Financial Corp.-Alabama v. Randolph* rejects suspicion that arbitration weakens substantive rights; claims are arbitrable so long as they can be effectively vindicated. 531 U.S. 79, 89-90 (2000). *Cedeno v. Sasson* involved an ERISA bar on representative claims. 100 F.4th 386, 397-400 (2d Cir. 2024); *see also Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 236-38 (2013). *State Farm Mutual Automobile Insurance Co. v. Tri-Borough NY Medical Practice P.C.* turned on "unique" facts of routine baseless arbitrations that thwarted RICO claims. 120 F.4th 59, 89-91 (2d Cir. 2024). Plaintiffs allege nothing comparable.

Plaintiffs' argument based on discovery limits under the AAA's Expedited Procedures also does not invalidate the Rulebook's arbitration clause. *Paduano v. Express Scripts, Inc.* voided a clause that eliminated discovery entirely. 55 F. Supp. 3d 400, 418-19 (E.D.N.Y. 2014); *see also Wernett v. Serv. Phx., LLC*, 2009 WL 1955612, at *5-6 (D. Ariz. July 6, 2009); *Lohnn v. IBM*, 2022 WL 36420, at *11-12 (S.D.N.Y. Jan. 4, 2022).

Plaintiffs' complaints as to fees and costs do not save their claim. Any fee and cost provision is severable. *Kristian v. Comcast Corp.*, 446 F.3d 25, 53 (1st Cir. 2006). The WTA

Rulebook contains a severability clause: if any provision is invalid, the rest remains. Rulebook at 404. Even if fee allocation were unenforceable, the remaining arbitration terms stand.

### E.    The stay of Plaintiffs' claims is automatic.

A stay of proceedings is necessary when there is a valid arbitration agreement covering the dispute and a stay is requested. *Katz v. Cellco P'ship*, 794 F.3d 341, 346-47 (2d Cir. 2015), *aff'd*, 756 F. App'x 103 (2d Cir. 2019). Unlike Plaintiffs' cases, the arbitration agreement between WTA and WTA Plaintiffs involves "any dispute[]." Rulebook at 403. Plaintiffs' cases are manifestly different. *White v. Cantor Fitzgerald, L.P.*, 393 F. App'x 804, 806 (2d Cir. 2010) (calling for arbitration only of disputes arising under the employment agreement); *Chang v. Lin*, 824 F.2d 219, 223 (2d Cir. 1987) (holding that arbitration and litigation should proceed simultaneously absent compelling reasons to stay the litigation "where '33 Act claims are concerned"); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 222 (1985).

## III.    ATP PLAINTIFFS DO NOT STATE A PLAUSIBLE ANTITRUST CLAIM AGAINST WTA

For the male Plaintiffs to state an antitrust conspiracy claim against WTA, they must allege details of a conspiracy, such as who, when, where, how, and why. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 565 n.10 (2007). The Opposition identifies no such evidence.

### A.    Plaintiffs have not alleged the necessary factual allegations supporting antitrust claims.

In attempting to counter the lack of any facts supporting a market allocation agreement between ATP and WTA, Plaintiffs argue in opposition that both men and women compete in the United Cup. Opp. at 43. This position concedes the lack of any market allocation agreement between ATP and WTA. It also contradicts a market allocation agreement, as Plaintiffs allege that ATP and WTA "*voluntarily* chose to enter one another's markets through co-ownership of a

mixed-gender event." *Id*. at 43.  Regardless, Plaintiffs fail to identify any factual allegations supporting any conspiracy between ATP and WTA.

Plaintiffs' allocation cases are distinguishable; they both involve two parties that previously competed, then agreed to stop.  *Palmer v. BRG of Ga., Inc.*, 498 U.S. 46, 47 (1990); *N.Y. ex rel. Spitzer v. Saint Francis Hosp.*, 94 F. Supp. 2d 399, 415 (S.D.N.Y. 2000).  ATP and WTA have never competed with one another.  As Plaintiffs allege, ATP operates in the market for men's tennis players, and WTA operates in the market for women's tennis players.  Am. Compl. ¶¶ 394, 404.

As to co-ownership of the United Cup, Plaintiffs fundamentally misunderstand the implications.  WTA's tournament class is limited to owners of "a tournament of any category" on the WTA Tour.  Bylaws at 2.  The United Cup is not included in any "WTA tournament category" and therefore falls outside the scope of WTA's definition of its "Tournament Class."  Rulebook at 388-89.  The United Cup's separate rules reiterate that the "country vs country mixed team competition" is distinct from all other WTA tournaments.  *Id*. at 489-504.  Finally, Plaintiffs offer no evidence that WTA has taken any of the required steps to become an ATP tournament member, or vice versa.

Plaintiffs rely on cases that are materially different, as they either were post-trial or included detailed conspiracy allegations.  *See United States v. Apple, Inc.*, 791 F.3d 290, 316, 319 (2d Cir. 2015) (evidence was "ample" and "overwhelming," consisting of emails and phone records beyond exchanging information within the normal course of business); *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 187-88 (2d Cir. 2012) (providing specific dates, names, and positions); *Iowa Pub. Emps.' Ret. Sys. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 340 F.

Supp. 3d 285, 317-19 (S.D.N.Y. 2018) (providing meeting dates and participants). Plaintiffs provide no direct evidence of an unlawful agreement.

Plaintiffs' conclusory "indirect evidence" allegations do not transform parallel conduct into a conspiracy. An inference of conspiracy "will not arise when the conspirators' parallel conduct made perfect business sense, there are obvious alternative explanations for the facts alleged, or the alleged facts suggest competition at least as plausibly as they suggest anticompetitive conspiracy." *LLM Bar Exam, LLC v. Barbri, Inc.*, 271 F. Supp. 3d 547, 578 (S.D.N.Y. 2017), *aff'd*, 922 F.3d 136 (2d Cir. 2019) (cleaned up). Plaintiffs have provided no factual allegations supporting their conclusory "plus factor" allegations. Plaintiffs claim without support that ATP and WTA had a "common motive" to suppress players' wages and enforce a ranking points system and schedule, and that ATP and WTA acted against their economic self-interest by not entering into each other's markets. These conclusory allegations of "plus factors" are nothing like those in the cases Plaintiffs cite. *See, e.g.*, *Gelboim v. Bank of Am. Corp.*, 823 F.3d 759, 781-82 (2d Cir. 2016) (noting "numerous allegations" of plus factors); *Starr v. Sony BMG Music Ent.*, 592 F.3d 314, 322-23 (2d Cir. 2010) (noting seven separate factual allegations).

### B.    ATP Plaintiffs fail to allege antitrust standing.

Antitrust standing requires plaintiffs suffered antitrust injury, and that they are efficient enforcers of the antitrust laws. *Gelboim*, 823 F.3d at 772. ATP Plaintiffs have not alleged antitrust injury caused by WTA. Plaintiffs specifically explain that the "WTA Bylaws, the WTA Rulebook, player consent forms, and other written . . . and non-written agreements" establish "the rules by which *female professional tennis players* on the Tour are bound." Am. Compl. ¶ 81 (emphasis added). Accordingly, "ATP, its Tournament Co-Conspirators, and the Grand Slam Co-

Conspirators control the market for the services of men's professional tennis players." *Id.* ¶ 394.

WTA does not affect men's tennis competition.

## IV.    CONCLUSION

WTA Plaintiffs and WTA have a valid and enforceable agreement to arbitrate any disputes, including the claims at issue, and the Court should enforce the arbitration agreement and compel arbitration of WTA Plaintiffs' claims.

ATP Plaintiffs cannot plausibly allege any claims against WTA and their claims should be dismissed with prejudice.

Dated: September 18, 2025                Respectfully submitted,

By:    /s/ *Lawrence E. Buterman*
Lawrence E. Buterman
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
lawrence.buterman@lw.com

Amanda P. Reeves (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
amanda.reeves@lw.com

Christopher S. Yates (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
Facsimile: (415) 395-8157
chris.yates@lw.com

*Counsel for Defendant WTA Tour, Inc.*

**<u>CERTIFICATE OF COMPLIANCE</u>**

I, Lawrence E. Buterman, certify that the foregoing Reply in Support of Defendant WTA Tour Inc.'s Motion to Compel Arbitration, Motion to Dismiss, and Motion to Stay Proceedings complies with the word-count limitation in Section II.B.2 of Judge Garnett's Individual Rules and Practices. According to the word processing software used to prepare this document, the memorandum contains 3,470 words, excluding the parts of the document exempted in Section II.B.2.

Dated: September 18, 2025

*/s/ Lawrence E. Buterman*
Lawrence E. Buterman
