UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VASEK POSPISIL, NICHOLAS KYRGIOS, ANASTASIA RODIONOVA, NICOLE MELICHAR-MARTINEZ, SAISAI ZHENG, SORANA CÎRSTEA, JOHN-PATRICK SMITH, NOAH RUBIN, ALDILA SUTJIADI, VARVARA GRACHEVA, TENNYS SANDGREN, SACHIA VICKERY, NICOLAS ZANELLATO, and REILLY OPELKA, on behalf of themselves and all others similarly situated, <br><br> -and- <br><br> THE PROFESSIONAL TENNIS PLAYERS ASSOCIATION, <br><br>     Plaintiffs, <br><br>  v. <br><br> ATP TOUR, INC. and WTA TOUR, INC., <br><br>     Defendants. | Case No. 1:25-cv-00207-MMG <br><br> **ORAL ARGUMENT REQUESTED** |

**REPLY IN SUPPORT OF ATP TOUR, INC.'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO SEVER CLAIMS AGAINST ATP UNDER F.R.C.P. 21 AND TRANSFER PURSUANT TO 28 U.S.C. § 1404(A)**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................................ ii

INTRODUCTION .......................................................................................................................... 1

ARGUMENT .................................................................................................................................. 1

I. Claims Against ATP Should be Dismissed ........................................................................ 1

    A. The ATP Player Plaintiffs are ATP Members, Whose Claims Depend on the ATP Bylaws ................................................................................................ 2

    B. The ATP Forum-Selection Clause Applies to Antitrust Claims ............................ 3

II. If Not Dismissed, the Severance Factors Support Enforcing ATP's Valid Forum-Selection Clause ...................................................................................................... 5

III. The PTPA is Subject to the Forum-Selection Clause ......................................................... 8

IV. The WTA Player Plaintiffs' Claims Against ATP Still Fail ............................................... 8

    A. Plaintiffs' Market Allocation Theory Remains Implausible ................................. 8

    B. Any Agreement Between ATP and WTA Remains Implausible ........................... 9

CONCLUSION ............................................................................................................................. 12

# TABLE OF AUTHORITIES

Page(s)

CASES

*1-Stop Fin. Serv. Ctrs. of Am., LLC v. Astonish Results, LLC*,
    2014 WL 279669 (W.D. Tex. Jan. 23, 2014) ................................................................6

*Aleynikov v. Goldman Sachs Grp., Inc.*,
    765 F.3d 350 (3d Cir. 2014) ........................................................................................3

*Aquila v. Fleetwood, R.V., Inc.*,
    2014 WL 1379648 (E.D.N.Y. Mar. 27, 2014) (Opp. ) ............................................ 5-6

*Atl. Marine Const. Co. v. U.S. Dist Ct. for W. Dist. of Tex.*,
    571 U.S. 49 (2013) ................................................................................................1, 5, 6

*ATP Tour, Inc. v. Deutscher Tennis Bund*,
    91 A.3d 554 (Del. 2014) .............................................................................................4

*Bayway Refin. Co. v. Oxygenated Mktg. & Trading A.G.*,
    215 F.3d 219 (2d Cir. 2000) ........................................................................................5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ....................................................................................................9

*Boilermakers Loc. 154 Ret. Fund v. Chevron Corp.*,
    73 A.3d 934 (Del. Ch. 2013) .......................................................................................3

*Crede CG III, Ltd. v. 22nd Century Grp., Inc.*,
    2017 WL 280818 (S.D.N.Y. Jan. 20, 2017) ........................................................5, 6, 7

*Cuhadar v. Savoya, LLC*,
    766 F.Supp.3d 434 (E.D.N.Y. 2025) ....................................................................... 1-2

*Eastcott v. McGraw-Hill Glob. Educ. Holdings, LLC*,
    2016 WL 3959076 (E.D. Pa. July 22, 2016) ...............................................................7

*FuboTV Inc. v. The Walt Disney Co.*,
    No. 1:24-cv-01363-MMG (S.D.N.Y. Jan. 14, 2025), ECF No. 381 ...........................7

*Go N.Y. Tours, Inc. v. Gray Line N.Y. Tours, Inc.*
    831 Fed. Appx. 584 (2d Cir. 2020) ...........................................................................11

*In re Livent, Inc. Noteholders Sec. Litig.*,
    151 F.Supp.2d 371 (S.D.N.Y. 2001) ...........................................................................9

*In re Rolls Royce Corp.*,
    775 F.3d 671 (5th Cir. 2014) ...................................................................................5, 6

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   2014 WL 1477748 (N.D. Cal. Apr. 14, 2014) ............................................................... 8

*LLM Bar Exam, LLC v. Barbri, Inc.*,
   271 F.Supp.3d 547 (S.D.N.Y. 2017), *aff'd*, 922 F. 3d 136 (2d Cir. 2019) ............................. 10

*Long Island Anesthesiologists PLLC v. United Healthcare Ins. Co.*,
   2025 WL 1031093 (E.D.N.Y. Apr. 7, 2025) ................................................................. 10

*Mayor of Baltimore v. Citigroup., Inc.*,
   709 F.3d 129 (2d Cir. 2013) ............................................................................ 11

*New York ex rel. Spitzer v. Saint Francis Hosp.*,
   94 F.Supp.2d 399 (S.D.N.Y. 2000) ....................................................................... 9

*Palmer v. BRG of Georgia, Inc.*,
   498 U.S. 46 (1990) ..................................................................................... 9

*Phillips v. Audio Active Ltd.*,
   494 F.3d 378 (2d Cir. 2007) ......................................................................... 2, 5

*Salzberg v. Sciabacucchi*,
   227 A.3d 102 (Del. 2020) ............................................................................... 4

*Tera Grp., Inc. v. Citigroup, Inc.*,
   2024 WL 4501967 (2d Cir. Oct. 16, 2024) ............................................................... 11

*Tessema v. EPA*,
   2021 WL 2666855 (S.D.N.Y. June 29, 2021) .............................................................. 9

*Tianhai Lace USA Inc. v. Forever 21, Inc.*,
   2017 WL 4712632 (S.D.N.Y. Sept. 27, 2017) .......................................................... 3, 5

*Wave Studio, LLC v. Gen. Hotel Mgmt. Ltd.*,
   2017 WL 972117 (S.D.N.Y. Mar. 10, 2017), *aff'd*, 712 F. App'x 88 (2d Cir. 2018) ........................ 6

*Yorke v. TSE Grp. LLC*,
   2019 WL 3219384 (S.D.N.Y. July 17, 2019) .............................................................. 5

**STATUTES**

8 Del. Code Ann § 115(c) .................................................................................. 4

**OTHER AUTHORITIES**

A. Gilchrist Sparks, III, 1 Del. Corp. Law & Prac. § 9.03 (2024) .......................................... 4

Fed. R. Civ. P. 12(b)(6) .................................................................................. 1

**INTRODUCTION**

Unable to dispute the general validity and enforceability of ATP's forum-selection clause, Plaintiffs argue it should not apply to their antitrust claims because of burdens on them and judicial economy concerns if other claims stay here. Their arguments fail. ATP's broad forum-selection clause covers the ATP Plaintiffs' antitrust claims, and Plaintiffs have not established any "exceptional" circumstances that justify ignoring it.[1]

**ARGUMENT**

**I.    Claims Against ATP Should be Dismissed**

Plaintiffs attempt to bypass the 12(b)(6) dismissal analysis entirely, claiming in a footnote that under *Atlantic Marine*, "[t]ransfer pursuant to § 1404(a)—not dismissal—is the proper 'mechanism for enforcement of forum-selection clauses that point to' another federal forum." Opp. at 20 n.9. But Plaintiffs' selective quotation misstates *Atlantic Marine*. The part Plaintiffs cut clarifies that "Section 1404(a) therefore provides **a** mechanism for enforcement of forum-selection clauses that point to a particular federal district." *Atl. Marine Const. Co. v. U.S. Dist Ct. for W. Dist. of Tex.*, 571 U.S. 49, 59 (2013) (emphasis added). *Atlantic Marine* expressly "decline[d] to consider whether a defendant … could obtain dismissal under Rule 12(b)(6)[.]" *Id.* at 50 (holding only dismissal under Rule 12(b)**(3)** improper).

Plaintiffs ignore that "[m]ultiple courts in this Circuit have similarly construed *Atlantic Marine* to permit Rule 12(b)(6) to be used to seek dismissal based on a forum selection clause[,]" even when the selected forum is another federal court. *Cuhadar v. Savoya, LLC*, 766 F.Supp.3d

---

[1] Plaintiffs improperly suggest "Defendants do not challenge the merits of Plaintiffs' claims." Opp. at 1. Plaintiffs' claims are meritless, and ATP will demonstrate that on an evidentiary record beyond what is permitted on this motion.

434, 442 (E.D.N.Y. 2025) (collecting cases (including an antitrust case), and enforcing clause designating a different federal forum).

Plaintiffs doubtless sought to avoid the 12(b)(6) analysis because the Second Circuit's four-factor test requires dismissal here. *See Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383-84 (2d Cir. 2007); Mot. at 5-13. Plaintiffs concede three of those factors. First, although Plaintiffs characterize the forum-selection clause as "obscure" and "buried" in the ATP Bylaws (Opp. at 12), they stop short of seriously claiming that the clause is not reasonably communicated. Second, Plaintiffs do not contest that the clause is mandatory. Third, Plaintiffs do not argue that the forum-selection clause is unreasonable, unjust, or invalid as the product of fraud or overreaching. Plaintiffs' lone argument is that the forum-selection clause does not apply to their antitrust claims. That argument is wrong.

    A.    <u>The ATP Player Plaintiffs are ATP Members, Whose Claims Depend on the ATP Bylaws</u>

Plaintiffs spend much of their opposition insisting, without explanation, that the ATP Player Plaintiffs "are not suing in their capacity as 'members' under the ATP Bylaws" (Opp. at 15, 18), and even suggest—falsely—they are not members of ATP. *See* Opp. at 17, 18. The Amended Complaint demonstrates otherwise. The central thrust of Plaintiffs' case is that ATP unlawfully restricts *its members* through application of the Bylaws and Rulebook. Am. Compl. ¶ 74 (alleging players sign a form "[a]s part of their membership" which "purports to bind players to the ATP's rules, bylaws, resolutions, and regulations"). And indeed, many of the alleged restraints in the Amended Complaint purportedly impact ATP Player Plaintiffs *in their capacity as members*. *See*, *e.g.*, Am. Compl. at ¶¶ 63-72 (balance between Player Members and Tournament Members in ATP governance); *id*. at ¶ 126 (Player Advisory Council membership, voting rights, pension eligibility,

and bonus pool—benefits available only to ATP Members); *id*. at ¶ 273 (retention of member benefits).[2]

Plaintiffs' claims <u>do</u> "'depend on the existence' of the agreement that contained the forum selection clause" (Opp. at 17)—the core of the Amended Complaint is ATP's purported anticompetitive conduct <u>effectuated through ATP's Bylaws</u>. *See, e.g.*, Am. Compl. ¶ 442. Without the ATP Bylaws and Rulebook, there would be no dispute.

B. <u>The ATP Forum-Selection Clause Applies to Antitrust Claims</u>

Plaintiffs next try to argue that the forum-selection clause does not extend to antitrust claims because it is within ATP's Bylaws. That is incorrect.

First, Plaintiffs falsely assert that "[n]one of the cases ATP relies on in support of its claim that Plaintiffs are bound by the ATP Bylaws analyze whether a forum selection clause contained in a bylaw under Delaware law was enforceable[.]" Opp. at 15 n.5. Not so. In *Boilermakers* (Mot. at 11), the court enforced a forum-selection clause contained in corporate bylaws. *Boilermakers Loc. 154 Ret. Fund v. Chevron Corp.*, 73 A.3d 934, 940 (Del. Ch. 2013). And because a Delaware corporation's bylaws constitute an enforceable contract between its members, *id.* ("a forum selection clause [in corporate] bylaws is valid and enforceable under Delaware law to the same extent as other contractual forum selection clauses"); *Aleynikov v. Goldman Sachs Grp., Inc.*, 765 F.3d 350, 366 (3d Cir. 2014) ("bylaws of a Delaware corporation constitute part of a binding broader contract") (citation modified), Delaware contract law provides overwhelming applicable precedent for enforcing forum selection clauses, which Plaintiffs do not otherwise distinguish.

---

[2] Plaintiffs request an evidentiary hearing (Opp. at 15 n.6), but fail to submit evidence disputing any material fact, though they could have done so in opposing transfer. *See Tianhai Lace USA Inc. v. Forever 21, Inc.*, 2017 WL 4712632, at *2 (S.D.N.Y. Sept. 27, 2017). Plaintiffs should not be granted a hearing to present evidence they could have included with their opposition.

3

Second, Plaintiffs argue that antitrust claims are "external claims" beyond the reach of what corporate bylaws may regulate. Opp. at 16-17. The Delaware Code instructs otherwise, permitting forum-selection bylaws to govern "claims that are not internal corporate claims" so long as they "relate to the business of the corporation, [or] the conduct of its affairs…" 8 Del. Code Ann § 115(c). Plaintiffs' claims—challenging ATP's structure and every aspect of how it conducts its business—clearly fall within that section.

Instead of engaging with Section 115(c), Plaintiffs primarily rely on *Salzberg v. Sciabacucchi*, 227 A.3d 102, 131 (Del. 2020). But *Salzberg* does not hold (as Plaintiffs suggest) that antitrust matters are "external claims." Rather, there, in finding federal forum provisions in bylaws *valid*, the Delaware Supreme Court rejected a similar attempt to limit the matters bylaws may regulate. *Id*. at 122 (rejecting Chancery Court's reasoning that *ATP Tour, Inc. v. Deutscher Tennis Bund*, 91 A.3d 554 (Del. 2014) "did not suggest that the corporate contract can be used to regulate … claims [other than breach of fiduciary duty]"). The Supreme Court held that "[a]t a minimum, this Court [in *Deutscher*] did not distinguish between the validity of the bylaw's application to the state law fiduciary claims and the federal antitrust claims." *Id*. at 123. *Salzberg* therefore reinforces—not undermines—the proposition that corporate bylaws can govern antitrust claims.[3]

ATP's forum-selection clause is valid, enforceable, and covers the claims in this case.

---

[3] Plaintiffs' reliance on the Delaware Corporation Law & Practice treatise fares no better. Opp. at 16. The misleadingly cited section stands only for the uncontroversial proposition that forum-selection bylaws "*generally* are drafted to apply to" corporate governance-related actions. A. Gilchrist Sparks, III, 1 Del. Corp. Law & Prac. § 9.03 (2024) (emphasis added).

4

## II. If Not Dismissed, the Severance Factors Support Enforcing ATP's Valid Forum-Selection Clause

Plaintiffs ignore the line of cases in which courts have held that where the *Phillips* factors favor transfer, severance is appropriate without further analysis. Mot. at 16. But even if the Court analyzes additional severance factors (Mot. at 15-18), the outcome is the same.[4]

***First***, because the Court may consider evidence outside the Amended Complaint on a motion to transfer (*Tianhai Lace*, 2017 WL 4712632 at *2), Plaintiffs' misleading assertion that the ATP Named Plaintiffs are not ATP members collapses. Each of the ATP Named Plaintiffs were ATP members and paid membership dues during the class period. Declaration of Mark Young, ¶ 2.[5] The ATP Bylaws govern claims made by ATP members and those bringing claims on their behalf—if not dismissed, the ATP Plaintiffs' claims should therefore be severed and transferred.

***Second***, Plaintiffs assert that "[r]equiring plaintiffs 'to litigate the same issues in a different jurisdiction'" is "inconvenient and burdensome" (Opp. at 22), but consideration of Plaintiffs' private interest is not allowed in <u>any</u> line of cases considering a forum-selection clause—even those that limit *Atlantic Marine*'s reach. *See In re Rolls Royce Corp.*, 775 F.3d 671, 681 (5th Cir. 2014); *see also Crede*, 2017 WL 280818 at *15 ("[P]rivate unfairness must be presumed to have been accounted for in the parties' bargain.").

---

[4] Plaintiffs also bear a heavy burden to avoid a valid forum-selection clause in a severance and transfer analysis. *See Crede CG III, Ltd. v. 22nd Century Grp., Inc.*, 2017 WL 280818, at *13 (S.D.N.Y. Jan. 20, 2017). Plaintiffs attempt to sidestep their burden by citing standards from cases that do not address application of a forum-selection clause. Opp. at 19.

[5] Plaintiffs cannot defeat the operation of a valid forum-selection clause by making a demonstrably false statement in their Opposition. *Yorke v. TSE Grp. LLC*, 2019 WL 3219384, at *2 (S.D.N.Y. July 17, 2019) ("To the extent that the new evidence submitted in reply. . . respond directly to [plaintiff's] argument [made in opposition], it is entirely appropriate to consider them."); *Bayway Refin. Co. v. Oxygenated Mktg. & Trading A.G.*, 215 F.3d 219, 226–27 (2d Cir. 2000) (same).

***Third***, Plaintiffs assume the WTA players' claims against ATP will necessarily remain in this Court. Opp. at 23. Plaintiffs cannot defeat a valid forum-selection clause by alleging an implausible conspiracy, *see infra*, Section III. And even if those claims survive dismissal, any inefficiency would result from keeping those limited claims in New York,[6] not from transferring the core claims to Delaware.

***Fourth***, any gains in judicial economy would not outweigh the interest in enforcing a valid forum-selection clause. "This Court has broad discretion to sever Plaintiff's claims … even if there exist some common questions of law and fact with Plaintiff's claims against other Defendants." *Wave Studio, LLC v. Gen. Hotel Mgmt. Ltd.*, 2017 WL 972117, at *10 (S.D.N.Y. Mar. 10, 2017), *aff'd*, 712 F. App'x 88 (2d Cir. 2018) (citation modified). "On the whole, courts have been loath to act contrary to the *Atlantic Marine* mandate" in response to judicial economy concerns. *Crede*, 2017 WL 280818, at *15; *1-Stop Fin. Serv. Ctrs. of Am., LLC v. Astonish Results, LLC*, 2014 WL 279669, at *6 (W.D. Tex. Jan. 23, 2014) (finding potential "egregious waste of judicial resources" insufficient to deny transfer).

Plaintiffs' concerns regarding judicial economy and inconsistent rulings can be managed "with such devices as common discovery. . .and sequencing of any dispositive motions or trials"—especially given that the gravamen of the claims against ATP (its alleged monopsony) would not overlap with proceedings in this Court. *Rolls Royce*, 775 F.3d at 683 (finding "public interest factors will seldom impede enforcement [of a forum-selection clause]"); *cf. Aquila v. Fleetwood,*

---

[6] Should the court dismiss or transfer the ATP Player Plaintiffs' claims, but other claims against ATP remain here, ATP intends to file a *forum non conveniens* motion. Mot. at 19 n.14.

6

*R.V., Inc.*, 2014 WL 1379648, at *4–5 (E.D.N.Y. Mar. 27, 2014) (Opp. at 22) (denying severance where parallel proceedings would be near-identical, and selected forum was state court).[7]

Plaintiffs' attempt to distinguish this district's decision in *Crede*, granting a motion to sever and transfer pursuant to a forum-selection clause even though some related claims against that defendant remained, fails. *Crede*, 2017 WL 280818, at *14-15; Opp. at 23 n.12. Contrary to Plaintiffs' suggestion that the claims were "susceptible to slicing and dicing," the court found that the "claims could present common questions of law and fact," that "severance … clearly … w[ould] hinder judicial economy[,]" and *still* found severance proper. *Id.* at *14-16. The result should be no different here.

Nor does *FuboTV* direct a different outcome. *See* Mot. at 17 n.12. First, in *FuboTV*, unlike here, the limited language of the forum-selection clause did not encompass plaintiffs' claims. *FuboTV Inc. v. The Walt Disney Co.*, No. 1:24-cv-01363-MMG (S.D.N.Y. Jan. 14, 2025), ECF No. 381, at 132-40. Second, "significant judicial resources ha[d] already been expended on th[e] case"—the Court had held multiple proceedings "and ha[d] reviewed and considered many thousands of pages" of documents. *Id.* at 141. Here, the parties have not yet submitted any materials going to the merits. And critically, in contrast to Fox (*id*. at 144), and as recognized by the Court, ATP consistently communicated its intent to move at the first available opportunity. *See* ECF No. 24, p. 1, and Apr. 11, 2025 Rule 23(d) Motion Hearing Tr. 12:21-13:7.

Judicial economy concerns should not override ATP's valid forum-selection clause.

---

[7] In both *Eastcott* and *TFT-LCD*, the claims that were severed and transferred were a "tiny subset" of the claims in the action—here, the central claim against ATP is subject to the forum-selection clause. *See Eastcott v. McGraw-Hill Glob. Educ. Holdings, LLC*, 2016 WL 3959076, at *1 (E.D. Pa. July 22, 2016) (forum-selection clause only implicated "19 of the [case's] 274 total claims"); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2014 WL 1477748, at *1 (N.D. Cal. Apr. 14, 2014) ("vast majority of the alleged wrongdoing" not governed by the agreement).

**III.     The PTPA is Subject to the Forum-Selection Clause**

As explained *supra*, Sections I(A) & 2, the ATP Named Plaintiffs are members of ATP, and ample allegations in the Amended Complaint demonstrate that the ATP Player Plaintiffs sued in that capacity. Plaintiffs thus cannot avoid application of the clause to PTPA on the basis that ATP Player Plaintiffs are not ATP Members. And despite Plaintiffs' assertion that PTPA suffered its own injury, PTPA fails to allege a separate *antitrust* injury. ECF No. 131. Because PTPA brings its antitrust claims only on behalf of ATP members, it is bound by the ATP forum-selection clause. Mot., Ex. A, ATP Bylaws, § 23.1(b). And regardless, PTPA is bound because it is so closely related to the dispute between the players and ATP that the application of the clause was foreseeable. Mot. at 10.

**IV.     The WTA Player Plaintiffs' Claims Against ATP Still Fail**

Plaintiffs' conclusory and internally inconsistent assertions of a horizontal conspiracy, included to try to keep PTPA's public dispute here, fail as a matter of law and should be dismissed.

A.     Plaintiffs' Market Allocation Theory Remains Implausible

Plaintiffs' conclusory allegations of a purported decades-long agreement between ATP and WTA to "stay on their respective turfs" are legally insufficient because (i) Plaintiffs failed to allege the who, when, where, or how (Mot. at 20); (ii) there are "obvious alternative explanation[s]" for the separateness of men's and women's tennis (*id.* at 21); and (iii) those claims are time-barred because ATP and WTA have openly operated solely with men's and women's players, respectively, without any prior suggestion that doing so was the result of an illegal agreement (*id.* at 20 n.15). Plaintiffs fail to meaningfully address these defects.

In an attempt to counter an argument ATP never made (that the WTA players' claims fail because *ATP* does not participate in the *women's* market (Opp. at 2, 32)), Plaintiffs now insist that "WTA and ATP do each already participate in both the men's and women's markets" and

8

"voluntarily chose to enter one another's markets through co-ownership of a mixed-gender event." Opp. at 43, 45. Contradicting the allegation that ATP and WTA agreed to allocate markets (Am. Compl. ¶ 481), what remains is not "market allocation" at all, but an amorphous gripe that ATP and WTA entered each other's market less aggressively than Plaintiffs would prefer (which is not an antitrust violation).

Plaintiffs' cases do not save their market allocation theory. Pre-dating *Twombly*, those cases are inapposite because they involved undisputed, written agreements between firms that competed *in the same market* but then agreed to stop. *Palmer v. BRG of Georgia, Inc.*, 498 U.S. 46, 49 (1990) (bar review courses that "previously competed in the Georgia market" agreed to stay out of the other's markets); *New York ex rel. Spitzer v. Saint Francis Hosp.,* 94 F.Supp.2d 399, 413-15 (S.D.N.Y. 2000) ("the only hospitals in Poughkeepsie" agreed to allocate certain services to one hospital).

B. Any Agreement Between ATP and WTA Remains Implausible

Plaintiffs also fail to plausibly allege any other agreement between ATP and WTA, whether through "direct" or "indirect" evidence.

The only allegation Plaintiffs assert constitutes "direct evidence" of a conspiracy is that ATP and WTA are "members" of each other—and thus bound by each other's bylaws and rulebooks—because they co-own the United Cup. Opp. at 46. But courts need not accept "clearly baseless" allegations, nor allegations that contradict the pleadings and documents incorporated therein, even on motion to dismiss. *Tessema v. EPA*, 2021 WL 2666855, at *4 (S.D.N.Y. June 29, 2021); *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F.Supp.2d 371, 405-06 (S.D.N.Y. 2001). The bylaws confirm ATP and WTA are not members of each other. Mot. at 25; ECF No. 116 at 14-15. Nor do the bylaws' non-compete provisions extend the bylaws to all tournaments' *owners*

(Opp. at 48)—those provisions apply to owners *of Tournament Class Members*, which <u>excludes</u> the United Cup. Mot., Ex. A, ATP Bylaws, §§ 5.1-5.3, Ex. B, ATP Rulebook, § 1.01.

As to indirect evidence, Plaintiffs lean on the theory of "parallel conduct," but fail to address the fatal flaw in their argument: "an inference of conspiracy will not arise when the conspirators' parallel conduct made perfect business sense, there are obvious alternative explanations for the facts alleged, or the alleged facts suggest competition at least as plausibly as they suggest anticompetitive conspiracy." *LLM Bar Exam, LLC v. Barbri, Inc.*, 271 F.Supp.3d 547, 578 (S.D.N.Y. 2017), *aff'd*, 922 F. 3d 136 (2d Cir. 2019) (citation modified).

Plaintiffs have not established "parallel conduct" evidencing a horizontal conspiracy because they do not allege WTA and ATP are horizontal competitors. *Long Island Anesthesiologists PLLC v. United Healthcare Ins. Co.*, 2025 WL 1031093, at *10 (E.D.N.Y. Apr. 7, 2025) ("Plaintiffs claim to have alleged a horizontal conspiracy but they do not allege that defendants are horizontal competitors. In the absence of the latter, the former cannot be correct.") (citation modified).[8] Plaintiffs admit that ATP and WTA operate in separate markets and do not compete for the services of professional tennis players. Am. Compl. at ¶¶ 377-78, 386.

Plaintiffs also fail to plausibly allege "plus factors." **First,** neither of Plaintiffs' alleged "common motives" survives even minimal scrutiny. Their first theory—that ATP and WTA suppress player compensation to keep "certain Tournaments" most profitable—fails to plausibly explain why ATP or WTA would prioritize the profitability of certain tournaments over other tournament members, or over the players, who are equal members in each organization.

---

[8] Nowhere did ATP concede Plaintiffs adequately alleged parallel conduct. Opp. at 49. Because ATP and WTA are not horizontal competitors, ATP did not anticipate refuting a "parallel conduct" theory. It does so now.

10

Am. Compl. ¶¶ 40, 41, 59, 77, 63, 80.  And their second—that ATP and WTA share a "common motive" to enforce ranking points rules and a "nearly yearlong" schedule—is a hollow effort to transform common, necessary hallmarks of operating a sport into "common motives" and "parallel conduct," akin to claiming the NFL and NBA must be conspiring because both have a regular season, divisional standings, and playoffs.  "[A]cts [which] would have been objectively rational even if done independently of one another" cannot support a conspiracy claim.  *Go N.Y. Tours, Inc. v. Gray Line N.Y. Tours, Inc*. 831 Fed. Appx. 584, 586-87 (2d Cir. 2020) (citation omitted).

**Second**, Plaintiffs fail to allege conduct against "economic self-interest."  Their claim that ATP and WTA forego generating "revenue by hosting additional tournaments" (Opp. at 50-51) rests on an unsubstantiated (and unpled) premise that "hosting additional tournaments" in each other's markets—expanding into costly, speculative, new markets—would increase each organization's profits.  Courts routinely reject such conclusory premises.  *Tera Grp., Inc. v. Citigroup, Inc.*, 2024 WL 4501967, at *3 (2d Cir. Oct. 16, 2024); *see also* Mot. at 22-23.

**Third**, Plaintiffs fail to allege a "high degree of interfirm communications."  Plaintiffs identify no actual communication—much less the sustained, detailed, or "high level" of communications suggestive of collusion.  *Mayor of Baltimore v. Citigroup., Inc.*, 709 F.3d 129, 139 (2d Cir. 2013).  At most, their allegations (Opp. at 51) amount to the classic "mere opportunity to conspire" speculation that courts routinely reject.  *Tera Grp.*, 2024 WL 4501967 at *4.

At bottom, Plaintiffs do not describe collusion at all but conduct "just as much in line with a wide swath of rational and competitive business strategy."  *Citigroup*, 709 F.3d at 137.  That is plainly inadequate.

## **CONCLUSION**

Plaintiffs failed to carry their heavy burden to defeat an unexceptional forum-selection clause. Plaintiffs also failed, even after amending their complaint, to plead the basic who, when, where, or how of an invented conspiracy claim meant to keep this public dispute in New York City. All claims against ATP should be dismissed or, in the alternative, the ATP Plaintiffs' claims should be severed and transferred.

Dated: September 18, 2025

Respectfully submitted,

By: /s/ Bradley I. Ruskin

Bradley I. Ruskin
Lee M. Popkin
Jordan B. Leader
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, New York 10036
Telephone: (212) 969-3465
Facsimile: (212) 969-2900
bruskin@proskauer.com
lpopkin@proskauer.com
jleader@proskauer.com

Kyle A. Casazza
**PROSKAUER ROSE LLP**
2029 Century Park East, Suite 2400
Los Angeles, CA 90067
Telephone: (310) 284-5677
Facsimile: (310) 557-2193
kcasazza@proskauer.com

*Counsel for Defendant ATP Tour, Inc.*

## Certificate of Compliance

I, Bradley I. Ruskin, certify that the foregoing Reply complies with the word-count limitations set forth in Local Civil Rule 7.1(c) and Rule (II)(B)(2) of the Honorable Margaret M. Garnett's Individual Rules & Practices. According to the word count of the word processing program used to prepare the memorandum, and exclusive of the portions of it that are excluded by the rules, there are 3,498 words in the document.

Dated: September 18, 2025  Respectfully submitted,

  /s/ *Bradley I. Ruskin*