**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Vasek Pospisil, Nicholas Kyrgios, Anastasia Rodionova, Nicole Melichar-Martinez, Saisai Zheng, Sorana Cîrstea, John-Patrick Smith, Noah Rubin, Aldila Sutjiadi, Varvara Gracheva, Tennys Sandgren, Sachia Vickery, Nicolas Zanellato, and Reilly Opelka, on behalf of themselves and all others similarly situated, <br><br> -and- <br><br> The Professional Tennis Players Association, <br><br>         Plaintiffs, <br><br>    v. <br><br> ATP Tour, Inc., WTA Tour, Inc., Tennis Australia, Ltd., Federation Francaise de Tennis, All England Lawn Tennis Club (Championships) Ltd., United States Tennis Association Inc., <br><br>         Defendants. | Civil Action No. 1:25-cv-02207-MMG |

**DAMAGES CLASS PLAINTIFFS' MEMORANDUM OF LAW IN**
**SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF DAMAGES**
**<u>CLASS SETTLEMENT WITH TENNIS AUSTRALIA</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. 1

INTRODUCTION ............................................................................................... 1

BACKGROUND .................................................................................................. 2

    I.     Action Background ................................................................................ 2

    II.    Damages Class Plaintiffs' Settlement with Tennis Australia ................. 3

PROPOSED SETTLEMENT CLASS FOR CERTIFICATION .................................... 5

LEGAL STANDARD ........................................................................................... 6

ARGUMENT ...................................................................................................... 7

I.    The Court is Likely to Grant Final Approval to the Proposed Settlement ......................... 7

    A.    The Proposed Damages Settlement is Procedurally Fair. ........................... 8

    B.    The Proposed Damages Settlement is Substantively Fair ....................... 11

        1.    The Proposed Damages Settlement is Substantively Fair under the *Grinnell* Factors. ............................................ 11

        2.    The Proposed Damages Settlement is Substantively Fair under Rule 23(e)(2). .......................................................... 18

II.    The Court is Likely to Certify the Class. ............................................. 20

    A.    The Proposed Damages Class Likely Meets the Requirements of Rule 23(a) ....................................................................................... 21

    B.    The Proposed Damages Class Likely Meets the Requirements of Rule 23(b)(3) .................................................................................. 23

III.    Notice to the Settlement Class. ......................................................... 25

CONCLUSION ................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*In re Ampicillin Antitrust Litig.*,
 82 F.R.D. 652 (D.D.C. 1979)...................................................................................16

*Animal Sci. Prods., Inc. v. Hebei Welcome Pharm. Co. Ltd. (In re Vitamin C
 Antitrust Litig.)*,
 279 F.R.D. 90 (E.D.N.Y. 2012) ..............................................................................24

*In re AOL Time Warner, Inc.*,
 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)...............................................................13

*In re Austrian & German Bank Holocaust Litig.*,
 80 F. Supp. 3d 164 (S.D.N.Y. 2000)........................................................................13

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007)...............................................................................................12

*Belton v. GE Cap. Consumer Lending, Inc.*,
 2022 WL 407404 (S.D.N.Y. Feb. 10, 2022)..............................................................9

*Campbell v. Bukhari Grp. LLC*,
 2025 WL 1874485 (E.D.N.Y. July 8, 2025)........................................................9, 20

*Charron v. Wiener*,
 731 F.3d 241 (2d Cir. 2013)......................................................................................7

*Chhab v. Darden Rests., Inc.*,
 2016 WL 3004511 (S.D.N.Y. May 20, 2016) .........................................................25

*Consolidated Rail Corp. v. Town of Hyde Park*,
 47 F.3d 473 (2d Cir. 1995)......................................................................................21

*In re Currency Conversion Fee Antitrust Litig.*,
 264 F.R.D. 100 (S.D.N.Y. 2010) ........................................................................22, 23

*Detroit v. Grinnell Corp.*,
 495 F.2d 448 (2d Cir. 1974)..........................................................................7, 8, 11, 18

*Dial Corp. v. News Corp.*,
 314 F.R.D. 108 (S.D.N.Y. 2015) .............................................................................22

*In re Elec. Books Antitrust Litig.*,
 2014 WL 1282293 (S.D.N.Y. Mar. 28, 2014)...........................................22, 23, 24

*In re Glob. Crossing Sec. & ERISA Litig.*,
 225 F.R.D. 436 (S.D.N.Y. 2004) .......................................................................14, 21

*In re Google Digit. Advert. Antitrust Litig.*,
  2025 WL 3562687 (S.D.N.Y. Dec. 12, 2025) .................................................................21, 24

*In re GSE Bonds Antitrust Litig.*,
  414 F. Supp. 3d 686 (S.D.N.Y. 2019).............................................................................. *passim*

*Jackson v. Ampac Paper, LLC*,
  2025 WL 2346065 (S.D.N.Y. Aug. 13, 2025).........................................................................23

*Jander v. Ret. Plans Comm. of IBM*,
  2021 WL 3115709 (S.D.N.Y. July 22, 2021) .........................................................................12

*In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*,
  733 F. Supp. 2d 997 (E.D. Wis. Aug. 16, 2010).....................................................................17

*Laydon v. Mizuho Bank, Ltd.*,
  No. 12-3419, ECF No. 720 (S.D.N.Y. Nov. 10, 2016)...........................................................17

*Lee v. Springer Nature Am., Inc.*,
  2025 WL 3523134 (S.D.N.Y. Dec. 9, 2025) ............................................................................8

*In re Linerboard Antitrust Litig.*,
  292 F. Supp. 2d 631 (E.D. Pa. 2003) ...................................................................13, 15, 18, 19

*Maley v. Del Glob. Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002)................................................................................2, 14

*Maywalt v. Parker & Parsley Petroleum Co.*,
  67 F.3d 1072 (2d Cir. 1995)......................................................................................................6

*McBean v. City of New York*,
  233 F.R.D. 377 (S.D.N.Y. 2006) ............................................................................................13

*Mikhlin v. Oasmia Pharm. AB*,
  2021 WL 1259559 (E.D.N.Y. Jan. 6, 2021) ..........................................................................18

*Moses v. N.Y. Times Co.*,
  79 F.4th 235 (2d Cir. 2023) ......................................................................................................7

*In re NASDAQ Market-Makers Antitrust Litig.*,
  169 F.R.D. 493 (S.D.N.Y. 1996) ............................................................................................24

*In re NASDAQ Market-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) ............................................................................................15

*In re Nissan Radiator/Transmission Cooler Litig.*,
  2013 WL 4080946 (S.D.N.Y. May 30, 2013) ........................................................................14

*In re Packaged Ice Antitrust Litig.*,
2011 WL 717519 (E.D. Mich. Feb. 22, 2011) ...........................................................13, 15, 19

*In re Packaged Seafood Prods. Antitrust Litig.*,
2022 WL 228823 (S.D. Cal. Jan. 26, 2022)................................................................................16

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019) ...............................................................................6, 15, 22

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
986 F. Supp. 2d 207 (E.D.N.Y. 2013) ...................................................................................12

*Piney v. City of New York*,
2025 WL 3089894 (S.D.N.Y. Nov. 5, 2025).............................................................................10

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
584 F. Supp. 2d 697 (M.D. Pa. 2008) ..............................................................................16, 18

*In re Processed Egg Prods. Antitrust Litig.*,
284 F.R.D. 278 (E.D. Pa. 2012)........................................................................................17, 19

*Sonterra Cap. Master Fund, Ltd. v. Barclays Bank PLC*,
2023 WL 3749996 (S.D.N.Y. June 1, 2023) ...........................................................1, 14, 16, 18

*In re Sumitomo Copper Litig.*,
182 F.R.D. 85 (S.D.N.Y. 1998) ............................................................................................22

*Tex. Indus., Inc. v. Radcliff Materials, Inc.*,
451 U.S. 630 (1981)................................................................................................. *passim*

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
2025 WL 2984717 (S.D.N.Y. Oct. 23, 2025) ........................................................................10

*Virgin Atl. Airways Ltd. v. British Airways PLC*,
257 F.3d 256 (2d Cir. 2001)..................................................................................................11

*In re Vitamin C Antitrust Litig.*,
2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) ........................................................................11

*In re Vitamins Antitrust Litig.*,
209 F.R.D. 251 (D.D.C. 2002)...............................................................................................24

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)..............................................................................................................21

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005).......................................................................................................6

*Wanechek Mink Ranch v. Alaska Brokerage Int'l Inc.*,
 No. C06-00089, ECF No. 43 (W.D. Wash. Sept. 22, 2006) ....................................17

*In re Warner Chilcott Ltd. Sec. Litig.*,
 2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) ........................................................12

**Statutes**

15 U.S.C. § 1 ....................................................................................................................3

15 U.S.C. § 2 ....................................................................................................................3

**Other Authorities**

ATP Players, https://www.atptour.com/en/players ...................................................21

Fed. R. Civ. P. 12 ............................................................................................................4

Fed. R. Civ. P. 23(a) ...........................................................................................20, 21, 23

Fed. R. Civ. P. 23(b) ...............................................................................................20, 23

Fed. R. Civ. P. 23(e) ..................................................................................................*passim*

Fed. R. Civ. P. 30(b)(6) ..................................................................................................4

Local Civil Rule 7.1(c) ....................................................................................................1

Manual for Complex Litigation § 21.632 .......................................................................6

Manual for Complex Litigation § 30 .............................................................................12

Newberg & Rubenstein on Class Actions § 13.10 ..........................................................6

Newberg & Rubenstein on Class Actions § 13.44 ..........................................................6

WTA Players, https://www.wtatennis.com/players (last visited Dec. 30, 2025) ........21

## INTRODUCTION

This lawsuit seeks to substantially reform the rigged system Defendants have imposed on professional tennis players around the globe.  Fourteen professional tennis player plaintiffs ("Player Plaintiffs") and The Professional Tennis Players Association ("PTPA" and, together, "Plaintiffs") have alleged that Defendants ATP Tour, Inc. ("ATP") and WTA Tour, Inc. ("WTA" and, together, the "Tour Defendants"), along with Tennis Australia, Ltd. ("Tennis Australia"), Fédération Française de Tennis, All England Lawn Tennis Club (Championships) Ltd., and United States Tennis Association Inc. (together, the "Grand Slam Defendants"), have colluded to, among other harms, artificially cap player earnings both on and off the court and impose grueling schedules on the players.

Professional tennis is in urgent need of fresh air from market forces and the growth and energy that will come from striking down the sport's anticompetitive restraints.  To that end, Player Plaintiffs have reached an ice-breaker settlement agreement for Tennis Australia to provide early—and extensive—cooperation that Plaintiffs will use to support their allegations against the remaining Defendants, Tennis Australia's alleged co-conspirators  (the "Damages Settlement" or "Damages Settlement Agreement").  "Ice-breaker" cooperation settlements, like the one here, provide significant value to a plaintiff because the settling defendant provides important information that helps a plaintiff pursue its claims, while also increasing the likelihood of future settlements.  *See Sonterra Cap. Master Fund, Ltd. v. Barclays Bank PLC*, 2023 WL 3749996, at *5 (S.D.N.Y. June 1, 2023).

As the operator of both a Defendant Grand Slam and alleged Tournament Co-Conspirators, including the United Cup, Brisbane International, Adelaide International, and Hobart International, Tennis Australia is in a unique position to provide Plaintiffs with valuable documents, data, and witness testimony to effectively and efficiently litigate the full spectrum of Plaintiffs' conspiracy

claims.  In exchange for Tennis Australia's early valuable cooperation, Plaintiffs have agreed to release Tennis Australia from liability for the Putative Damages Classes' damages claims.  The Damages Settlement does not impact any claims for injunctive relief held by members of the Putative Injunctive Relief Class, which are the subject of a separate concurrently filed motion to stay those proceedings against Tennis Australia.

Based on their experience and knowledge of the claims and defenses at issue in this case, Plaintiffs' counsel believes that the proposed Damages Settlement is in the best interests of the Damages Settlement Classes and respectfully submits the proposed Damages Settlement for this Court's preliminary approval.  *See Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 366 (S.D.N.Y. 2002) ("'great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation") (citation omitted).

## BACKGROUND

### I.    Action Background

On September 26, 2025, Plaintiffs filed a Second Amended Complaint against the Tour Defendants and Grand Slam Defendants, alleging that Defendants participated in an unlawful conspiracy to restrain trade and for ATP and WTA to acquire and maintain monopsonies over the services of professional tennis players.  *See* Dkt. 139 ("SAC").  The Second Amended Complaint alleged that Defendants conspired to, among other things, (1) fix the amount of prize money that professional tennis tournaments may award to professional tennis players, (2) restrict the amount and extent of the endorsements professional tennis players may sign, (3) restrict the number and types of companies that may sponsor professional tennis players, (4) require professional tennis players to work on restrictive terms, (5) compel professional tennis players to participate in specified professional tennis tournaments, (6) require players to refrain from playing in professional tennis tournaments other than those owned and operated by Defendants and their co-

conspirators, and (7) refrain from competing with each other for the services of professional tennis players, in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2. *See id.* ¶¶ 439–535. Plaintiffs have also alleged that Defendants ATP and WTA, respectively, have willfully and unlawfully acquired and maintained monopsonies in the markets for the services of male and female professional tennis players in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2. *See id.* ¶¶ 536–82.

The Player Plaintiffs have sought relief, including, but not limited to, actual damages, treble damages, and injunctive relief, as a result of the violations of law alleged in the Second Amended Complaint arising from Tennis Australia's and the other Defendants' conduct on their own behalf and on behalf of four putative litigation classes: the ATP Damages Class and WTA Damages Class (together, the "Putative Damages Classes") and the ATP Injunctive Relief Class and WTA Injunctive Relief Class (together, the "Putative Injunctive Relief Classes" and, together with the Putative Damages Classes, the "Putative Classes"). *See id.* ¶¶ 427–28, 452–605.

## II.    Damages Class Plaintiffs' Settlement with Tennis Australia

Shortly after the Second Amended Complaint was filed, Tennis Australia approached Plaintiffs about a possible ice-breaker settlement agreement. Decl. of Meagan K. Bellshaw ("Bellshaw Decl.") ¶ 21. The Player Plaintiffs and the Putative Damages Classes (together, the "Damages Class Plaintiffs") recognized that cooperation from a Grand Slam Defendant at such an early stage of the case would provide invaluable benefits for litigating their damages claims against the remaining Defendants. *Id.* ¶ 6. Accordingly, over the next few months, the parties engaged in arm's-length negotiations and eventually finalized a settlement that would entail substantial early cooperation in exchange for a release of liability from the Damages Class Plaintiffs for their claims

for monetary damages. *See id.* ¶¶ 22, 29–30; Damages Settlement Agreement.[1]

Damages Class Plaintiffs' settlement with Tennis Australia will materially benefit all members of the Putative Damages Classes. Tennis Australia will begin providing valuable discovery that it may or may not have been ultimately able to obtain from Tennis Australia, which Damages Class Plaintiffs can use in litigating their claims well in advance of Court-ordered discovery against ATP and WTA at a significantly lower cost to Damages Class Plaintiffs.[2] In exchange for a release of liability for monetary damages, Tennis Australia agrees to provide Damages Class Plaintiffs with materials, facts, and other information known to Tennis Australia relevant to Plaintiffs' claims against the Tour Defendants and Grand Slam Defendants, including information regarding: financial books and records; tournament prize money; player name, image and likeness ("NIL") rights and uses; player sponsorship and endorsement opportunities; tour scheduling requirements; player Ranking Points; player participation in non-Tour events; player claim enforcement mechanisms; and communications or agreements relating to the foregoing. Damages Settlement Agreement ¶¶ 14, 15. In addition to providing early access to highly relevant

---

[1] Plaintiffs, the Putative Injunctive Relief Classes (together, the "Injunctive Relief Class Plaintiffs") and Tennis Australia also reached an agreement in principle to settle Plaintiffs' separate claims for injunctive relief that is the subject of Plaintiffs' concurrently filed Motion to Stay Injunctive Relief Class Claims Against Tennis Australia. There is substantial overlap between the Damages Class Plaintiffs and the Injunctive Relief Class Plaintiffs such that the vast majority of Plaintiffs and putative class members in this Action will benefit from both settlements. However, the settlements were separated to ensure that there was adequate and fair relief among both classes.

[2] Tennis Australia has agreed to commence cooperation with respect to the Tour Defendants promptly following the conclusion of the Australian Open, in February 2026, regardless of whether this Motion has been granted. Damages Settlement Agreement ¶ 17(a). Tennis Australia will commence cooperation with respect to the defending Grand Slam Defendants promptly following the Court's resolution of each of the Grand Slams' pending Fed. R. Civ. P. 12 motions and/or motion to compel arbitration as Plaintiffs' case proceeds against that Defendant. *Id.* ¶ 17(b). The obligation to provide cooperation survives regardless of whether the action is prosecuted in this Court or in another forum. *Id.* ¶¶ 11(a), 19.

information, pursuant to the terms of the Damages Settlement, Tennis Australia will also produce documents and data from the Class Period; provide attorney proffers; appear for Fed. R. Civ. P. 30(b)(6) depositions; provide evidentiary declarations; and provide other further cooperation as agreed to by the parties. *Id*.

Early access to this highly relevant information will provide meaningful benefits to Damages Class Plaintiffs, including: (i) guiding Damages Class Plaintiffs' discovery approach; (ii) allowing Damages Class Plaintiffs to identify early appropriate witnesses, critical time periods, and key search terms to locate the best evidence not in Tennis Australia's possession; (iii) allowing Damages Class Plaintiffs to more meaningfully engage their expert(s) and develop more well-informed trial themes at an earlier stage of the case than typically available; and (iv) reducing the costs of litigating Damages Class Plaintiffs' claims. Bellshaw Decl. ¶ 36.  And although there is no monetary settlement associated with the Damages Settlement, the Damages Class Plaintiffs can still recover the full amount of monetary damages they are entitled to from the remaining Defendants because antitrust violations carry joint and several liability. *Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 634–46 (1981).  By narrowing the number of Defendants liable for damages in this case, Damages Class Plaintiffs believe that other of the remaining Defendants may be incentivized to engage in settlement negotiations as well.  Damages Class Plaintiffs are confident that the substantial cooperation provided by Tennis Australia will help Damages Class Plaintiffs litigate the antitrust claims to a successful jury verdict.

## PROPOSED SETTLEMENT CLASS FOR CERTIFICATION

The settlement classes that the Damages Class Plaintiffs seek certification of for this Motion are defined as follows:

> "ATP Damages Class" means all male tennis players who compete in, have competed in, or will compete in any ATP-sanctioned tennis tournament or any of the four Grand Slams between March 18, 2021, through the date of final judgment

in this Action.

"WTA Damages Class" means all female tennis players who compete in, have competed in, or will compete in any WTA-sanctioned tennis tournament or any of the four Grand Slams between March 18, 2021, through the date of final judgment in this Action.

Damages Settlement Agreement ¶ 28; *see* SAC ¶¶ 414 (ATP Damages Class), 415 (WTA Damages Class). For purposes of this Motion, the ATP Damages Class and the WTA Damages Class are referred to together as the "Damages Class."

## LEGAL STANDARD

"Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of the settlement and the judge makes a preliminary fairness evaluation." MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2025). At the second stage of the approval process, the court conducts a formal fairness hearing at which "the proponents of the settlement must show that the proposed settlement is 'fair, reasonable[,] and adequate.'" *Id.* § 21.634; Fed. R. Civ. P. 23(e)(2).

At the preliminary approval stage, the court's primary objective is to "establish whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a final fairness hearing." NEWBERG & RUBENSTEIN ON CLASS ACTIONS § 13.10 (6th ed. 2025). The preliminary approval process is governed by a "likelihood standard"—requiring the court to assess whether the parties have shown that "the court will *likely* be able to grant final approval and certify the class." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 28 n.21 (E.D.N.Y. 2019); Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment; *see also* Fed. R. Civ. P. 23(e)(1)(B).

There is a "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (quoting *In*

re *PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)); *see also* NEWBERG & RUBENSTEIN ON CLASS ACTIONS § 13.44 ("Settlement is generally favored because it . . . relieves [the parties], as well as the judicial system, of the costs and burdens of further litigation."). The approval of a proposed class action settlement is left to the discretion of the trial court. *See Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995).

## ARGUMENT

### I.    The Court is Likely to Grant Final Approval to the Proposed Settlement.

A court may approve a class action settlement "on finding that [the proposed settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The "fair, reasonable, and adequate" standard requires a court to consider whether the proposed settlement is both procedurally and substantively fair. *Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013). A proposed settlement is procedurally fair if "the class representatives and class counsel have adequately represented the class" and "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(A), (B); Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment; *Charron*, 731 F.3d at 247. A proposed settlement is substantively fair if "the proposal treats class members equitably relative to each other" and "the relief provided to the class is adequate," taking into consideration "the costs, risks, and delay of trial and appeal," "the effectiveness of any proposed method of distributing relief to the class," "the terms of any proposed award of attorney's fees," and "any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(2)(C), (D); 23(e)(3). In the Second Circuit, courts also consider whether the proposed settlement is substantively fair under the *Grinnell* factors:

> (1) the complexity, expense and likely duration of the litigation;
> (2) the reaction of the class to the settlement;
> (3) the stage of the proceedings and the amount of discovery completed;
> (4) the risks of establishing liability;
> (5) the risks of establishing damages;

(6) the risks of maintaining the class action through the trial;
(7) the ability of the defendants to withstand a greater judgment;
(8) the range of reasonableness of the settlement fund in light of the best possible recovery;
(9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); *Moses v. N.Y. Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023) (confirming that the revisions to Fed. R. Civ. P. 23(e) did not displace the *Grinnell* factors, "which remain a useful framework for considering the substantive fairness of a settlement").

### A.  The Proposed Damages Settlement is Procedurally Fair.

To determine whether a proposed Damages Settlement is procedurally fair, a court considers whether the class representatives and counsel have adequately represented the class and whether the proposal was negotiated at arm's length.  Fed. R. Civ. P. 23(e)(2)(A), (B).  "In assessing adequacy of representation, courts focus on whether '1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'"  *Lee v. Springer Nature Am., Inc.*, 2025 WL 3523134, at *5 (S.D.N.Y. Dec. 9, 2025) (quoting *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007)).  In determining whether the proposed settlement is procedurally fair, a court may also consider "the actual performance of counsel acting on behalf of the class," "whether counsel negotiating on behalf of the class had an adequate information base," the "conduct of the negotiations," and "any award of attorney's fees."  Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment.

### 1.  Damages Class Plaintiffs have been Adequately Represented by Counsel.

The Player Plaintiffs' interests are aligned with, and thus not antagonistic to, the interests of the other class members because they "suffered the same injuries."  *In re GSE Bonds Antitrust*

*Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019).  As detailed in the Second Amended Complaint, the alleged antitrust violations harmed all class members by "suppressing player compensation," "restrict[ing] prize money awards," and "limit[ing] endorsement opportunities," all of which resulted in "artificially suppressed pay" and a reduction in competition for players' services.  SAC ¶¶ 399–401, 408–12.  Because the Player Plaintiffs and the Putative Damages Class members share the same injuries, the Player Plaintiffs "have an 'interest in vigorously pursuing the claims of the class.'"  *In re GSE Bonds*, 414 F. Supp. 3d at 692 (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)).

Damages Class Counsel[3] have adequately represented the Damages Classes Plaintiffs and are capable, qualified, and experienced.  Damages Class Counsel have negotiated a settlement that provides the Damages Class Plaintiffs immediate access to facts and data relevant to their allegations without the time and expense of lengthy discovery negotiations or disputes.  *See* Damages Settlement Agreement ¶¶ 14–17, 19.  Damages Class Plaintiffs will be able to utilize this invaluable informational advantage to shape their discovery strategy against the remaining Defendants, allowing them to identify early appropriate witnesses, critical time periods, and key search terms, all of which will enable Plaintiffs to locate the best evidence in support of their claims.  In addition, Damages Class Counsel have substantial experience in antitrust law, sports law, and class actions.  *See* Bellshaw Decl., ¶¶ 40–45 & Exs. 2–8.  Counsel for both parties are "experienced and knowledgeable," and the parties reached an agreement after "engag[ing] in extensive negotiations."  *Belton v. GE Cap. Consumer Lending, Inc.*, 2022 WL 407404, at *4 (S.D.N.Y. Feb. 10, 2022).  All of these factors support finding that Damages Class Counsel

---

[3] The Damages Class Plaintiffs are represented by attorneys from Weil, Gotshal & Manges LLP and James W. Quinn of JW Quinn ADR LLC (together, "Damages Class Counsel").  Bellshaw Decl. ¶ 1.

adequately represented the Putative Damages Classes.

### 2. The Damages Settlement was Negotiated at Arm's Length.

Furthermore, the proposed Damages Settlement was negotiated at arm's length.  Here, the parties negotiated settlement terms over the course of several months through "experienced, capable counsel knowledgeable in complex class litigation."  *Campbell v. Bukhari Grp. LLC*, 2025 WL 1874485, at *6 (E.D.N.Y. July 8, 2025) (*quoting in re GSE Bonds*, 414 F. Supp. 3d at 693)). Both parties made "numerous demands and offers during direct settlement negotiations."  *Piney v. City of New York*, 2025 WL 3089894, at *8 (S.D.N.Y. Nov. 5, 2025).  And absent from the Damages Settlement is "any indication of collusion."  *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 2025 WL 2984717, at *7 (S.D.N.Y. Oct. 23, 2025) (citation omitted).  Before any demand or counteroffer was ever made, Damages Class Counsel were well-informed about the legal risks, factual uncertainties, potential damages, and other aspects of the strengths and weaknesses of Damages Class Plaintiffs' claims against Defendants.  All of these factors weigh in favor of finding that the proposed Damages Settlement was negotiated at arm's length.

### 3. Other Factors Show that the Damages Settlement is Procedurally Fair.

Finally, the actual performance of counsel, the adequacy of counsel's information base, and the conduct of the negotiations, and the lack of attorney's fees suggest that the proposed settlement is procedurally fair.  Damages Class Counsel performed adequately in negotiating a settlement that gives the Damages Class Plaintiffs early access to facts and data that will help prove their antitrust claims without sacrificing their ability to recover damages.  *See* Damages Settlement Agreement ¶¶ 14–17.  Although there is no monetary settlement associated with the Damages Settlement, the Damages Class Plaintiffs can still recover the full amount of damages they are entitled to from the remaining Defendants because antitrust violations carry joint and several

liability.  *Tex. Indus.*, 451 U.S. at 634–46.  The Damages Class Plaintiffs have not forgone any monetary award in exchange for the invaluable cooperation provided in this Damages Settlement; instead, responsibility for the entirety of Plaintiffs' damages will remain with the non-settling Defendants.  By narrowing the number of Defendants liable for damages in this case, Damages Class Plaintiffs are optimistic that other of the remaining Defendants may be incentivized to engage in settlement negotiations as well.

Moreover, the negotiations, which took place over several weeks and involved exchanges of carefully crafted proposals, demonstrate that both counsel's information base and the conduct of the negotiations were fair.  *See* Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment.  Finally, the proposed Damages Settlement, which does not include damages (but does include a fee shifting provision under which Tennis Australia will cover or significantly contribute to the costs of administering notice to the Putative Damages Classes, up to $50,000), does not include any award of attorney's fees.  *See* Damages Settlement Agreement ¶ 12 (providing for a complete release of liability to Tennis Australia as to damages in exchange for cooperation), ¶ 33 (providing that Tennis Australia will provide funding for the costs of disseminating Settlement Class Notice).  All of these factors support finding that the proposed Damages Settlement is procedurally fair.

### B.  The Proposed Damages Settlement is Substantively Fair.

The proposed Damages Settlement is substantively fair under the Rule 23(e)(2) standard and the *Grinnell* factors.

#### 1.  The Proposed Damages Settlement is Substantively Fair under the *Grinnell* Factors.

***The complexity, expense and likely duration of the litigation.***  Federal antitrust cases are notoriously "complicated, lengthy, and bitterly fought."  *In re Vitamin C Antitrust Litig.*, 2012 WL

5289514, at *4 (E.D.N.Y. Oct. 23, 2012) (citation omitted); *see also Virgin Atl. Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 263 (2d Cir. 2001) (noting the "factual complexities of antitrust cases").  This case already involves numerous complicated motions, including the six pending motions seeking to dismiss, transfer, and/or compel arbitration of Plaintiffs' claims (Dkt. Nos. 115, 118, 120, 183, 186, 189); and will likely involve additional complicated motions, including motions for class certification and summary judgment, as well as *Daubert* motions to exclude the parties' experts.  *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 222 (E.D.N.Y. 2013), *reversed and vacated on other grounds*, 827 F.3d 223 (2d Cir. 2016).  Complex commercial litigation such as this can take time.  *See id.*  The proposed Damages Settlement will help the Damages Class Plaintiffs more expeditiously (and in a more well-informed manner) litigate their claims and may encourage other Defendants to similar early resolution.

Antitrust cases like this case are known for requiring complex and extensive discovery, including engagement of expert economists, which can be expensive.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007); MANUAL FOR COMPLEX LITIGATION § 30.  The proposed Damages Settlement ensures that Damages Class Plaintiffs have early access to valuable discovery materials while lowering the cost of discovery for both sides.  *See* Damages Settlement Agreement ¶¶ 14–17.  By cooperating rather than engaging in adversarial discovery, Damages Class Plaintiffs will have better access (at significantly lower cost) to Tennis Australia's most relevant documents, data, and witness testimony.  This factor weighs in favor of finding the proposed Damages Settlement substantially fair.

**The reaction of the class to the settlement.**  Consideration of this factor is generally premature prior to disseminating notice. *In re Warner Chilcott Ltd. Sec. Litig.*, 2008 WL 5110904,

at *2 (S.D.N.Y. Nov. 20, 2008).  The reaction of the class can be more fully evaluated at the final fairness hearing.  *See Jander v. Ret. Plans Comm. of IBM*, 2021 WL 3115709, at *3 (S.D.N.Y. July 22, 2021).  That said, Damages Class Counsel anticipates a positive reaction from the Putative Damages Class, as the settlement gives Damages Class Plaintiffs early access to documents and data relevant to Damages Class Plaintiffs' claims, as well as attorney proffers, witness testimony, evidentiary declarations and other cooperation that the parties agree to that will enable Damages Class Plaintiffs to litigate their claims  without having to go through full adversarial discovery with Tennis Australia.  *See* Bellshaw Decl. ¶ 35; Damages Settlement Agreement ¶¶ 14–15. Furthermore, early access to this information will inform Damages Class Plaintiffs' strategy in discovery with the remaining Defendants, which is currently stayed until after this Court decides the pending motions to dismiss, transfer, and compel arbitration.  *See* Dkt. Nos. 115, 118, 120, 183, 186, 189.

   ***The stage of the proceedings and the amount of discovery completed.***  This factor is aimed at determining "whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement."  *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006).  "Courts have approved settlements at all stages of the proceedings," *id.*, and to approve a proposed settlement, "the Court need not find that the parties have engaged in extensive discovery," *in re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000).  The "amount of discovery" is not important, as long as "the parties have 'a thorough understanding of their case.'"  *McBean v. City of New York*, 233 F.R.D. 377, 386 (S.D.N.Y. 2006) (*quoting Wal-Mart*, 396 F.3d at 118).

   "[T]he absence of extensive discovery" does not weigh against approval of the proposed settlement where, as here, "there is the potential for a significant benefit to the Settlement Class in

the form of cooperation on the part of the settling Defendant." *In re Packaged Ice Antitrust Litig.*, 2011 WL 717519, at \*12 (E.D. Mich. Feb. 22, 2011).  This "ice breaker" settlement strategy, which is often used in multi-defendant cases to "'break the ice' and bring other defendants to the point of serious negotiations," *in re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003), often occurs "before the initiation of discovery in earnest," *in re Packaged Ice*, 2011 WL 717519, at \*11.

The Damages Settlement Agreement allows Damages Class Plaintiffs to seek and obtain the full scope of alleged damages from the remaining Defendants, *see Tex. Indus.*, 451 U.S. at 634–46, while securing the valuable cooperation from Tennis Australia that will help Damages Class Plaintiffs prove their claims, *see* Damages Settlement Agreement at ¶¶ 14–15.  Having access to Tennis Australia's documents and witnesses at such an early stage will give Damages Class Plaintiffs an immense strategic advantage—one Damages Class Plaintiffs would never have been able to obtain absent their cooperation with Tennis Australia.  In addition, "Plaintiffs' counsel extensively investigated the relevant facts even before they filed their Complaints."  *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004).  As the existing record sufficed to permit Damages Class Counsel to negotiate the settlement secured here, this factor weighs in favor of preliminarily finding the proposed Damages Settlement substantively fair.  *See Maley*, 186 F. Supp. 2d at 364.

**The risks of establishing liability, establishing damages, and maintaining the class action through trial.**  These factors, which are often considered together, require the court to "balance the benefits afforded to members of the Class and the immediacy and certainty of a substantial recovery for them against the continuing risks of litigation."  *In re Nissan Radiator/Transmission Cooler Litig.*, 2013 WL 4080946, at \*7 (S.D.N.Y. May 30, 2013) (citation

omitted). "Ice-breaker" settlements, like the one here, provide significant value because the settling defendant provides important cooperation and potentially facilitates future settlements, which lowers the risks of establishing liability, establishing damages, and maintaining the class action through trial. *See Sonterra*, 2023 WL 3749996, at *5; *In re GSE Bonds*, 414 F. Supp. 3d at 697. Tennis Australia's early cooperation reduces the risks related to establishing liability and damages, and maintaining the class action through trial, because Damages Class Plaintiffs will be able to use the materials provided by Tennis Australia to accurately assess those risks and to help guide discovery with the remaining Defendants.

Tennis Australia's cooperation, particularly at an early stage in the litigation, is especially valuable in a complex antitrust class action. "Experience proves that, no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict, particularly in complex antitrust litigation." *In re Packaged Ice*, 2011 WL 717519, at *10 (*quoting in re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 523 (E.D. Mich. 2003)). Liability and damages in antitrust class actions are often hotly contested and can boil down to a "'battle of the experts,'" and the early cooperation provided by the Damages Settlement will allow Damages Class Plaintiffs to develop these arguments early based on well-informed discovery that would not otherwise be available. *See In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 476 (S.D.N.Y. 1998) (*quoting in re Warner Commc'ns Secs. Litig.*, 618 F. Supp. 735, 744 (S.D.N.Y. 1985)). Moreover, indications that Defendants would oppose class certification, as is reasonable to assume here, weighs in favor of approving settlements. *In re Payment Card Interchange Fee*, 330 F.R.D. at 40.

Although it is inappropriate "to outline in detail any risks perceived in establishing liability and damages" and maintaining class certification, all of the risks inherent in antitrust class actions

are present here.  *See in re Linerboard*, 292 F. Supp. 2d at 641.  Importantly, the Damages Settlement helps mitigate those risks by acting as an "ice-breaker" settlement that may facilitate efficient resolution of the claims in this case.  *See in re GSE Bonds*, 414 F. Supp. 3d at 697.  These factors weigh in favor of finding that the proposed settlement is substantively fair.

> ***The ability of the defendants to withstand a greater judgment.***  The fact that Tennis Australia "could potentially withstand a greater judgement . . . 'does not, standing alone, indicate that the settlement is unreasonable or inadequate.'"  *Sonterra*, 2023 WL 3749996, at *5 (*quoting in re Glob. Crossing*, 225 F.R.D. at 460).  Here, the Damages Settlement is valuable not because of any monetary payout, but because cooperation from Tennis Australia will provide value that will help Plaintiffs prove their claims against the remaining Defendants and by "potentially facilitat[ing] future settlements."  *Id.* (*citing in re GSE Bonds*, 414 F. Supp. 3d at 697).  The cooperation from Tennis Australia also will allow Damages Class Plaintiffs to pursue their antitrust claims more expeditiously.  Furthermore, because Defendants are subject to joint and several liability, the proposed settlement does not diminish Damages Class Plaintiffs' entitlement to a full damages award from the remaining defendants.  *Tex. Indus.*, 451 U.S. at 634–46.

> ***The range of reasonableness of the settlement fund in light of the best possible recovery and to a possible recovery in light of all the attendant risks of litigation.***  Courts often approve settlements that give the first settling party a discount "due to 'the significant value in and of itself as an icebreaker settlement,' particularly when, as here, the settling defendant[] ha[s] agreed to cooperate in the remaining litigation."  *In re Packaged Seafood Prods. Antitrust Litig.*, 2022 WL 228823, at *5 (S.D. Cal. Jan. 26, 2022) (*quoting In re Domestic Airline Travel Antitrust Litig.*, 378 F. Supp. 3d 10, 19 (D.D.C. 2019)); *see also in re Ampicillin Antitrust Litig.*, 82 F.R.D. 652, 654 (D.D.C. 1979) (finding that "assistance in the case" will "prove invaluable to the plaintiffs").  In

such a settlement, a defendant's ability to withstand a greater judgment is offset by the value of the cooperation it has agreed to provide in the proposed settlement. *See in re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008); *in re GSE Bonds*, 414 F. Supp. 3d at 697.

That is the case here. Tennis Australia has agreed to substantial early cooperation, including the production of materials and information relevant to Damages Class Plaintiffs' claims, *see* Damages Settlement Agreement ¶¶ 14–15; and Tennis Australia's cooperation obligations extend throughout the duration of this litigation, *see id.* ¶ 19. While Plaintiffs have or intend to vigorously oppose each of the six pending motions to dismiss, transfer, and/or compel arbitration filed by the remaining Defendants, should any portion of Plaintiffs' claims be transferred to an alternative venue or proceed in arbitration, Tennis Australia's cooperation obligations continue regardless of forum. *Id.* ¶¶ 11(a), 19. Moreover, any cooperation Tennis Australia provides to the Damages Class Plaintiffs will also benefit Plaintiffs' litigation of their claims for injunctive relief (all of which survive this settlement, even for overlapping members of both the Damages and Injunctive Relief Classes). *Id.* ¶¶ 22–23.

Because of the value associated with substantial early cooperation, courts have previously approved cooperation-only settlements under similar circumstances. *See, e.g.*, *In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 278, 303–04 (E.D. Pa. 2012) (granting final approval to pre-discovery cooperation-only settlement in multi-defendant action where court found cooperation "confers real and substantial benefits upon the Class"); Order at 8, *Wanechek Mink Ranch v. Alaska Brokerage Int'l Inc.*, No. C06-00089 (W.D. Wash. Sept. 22, 2006), Dkt. No. 43 (granting preliminary approval to pre-discovery cooperation-only settlement in multi-defendant action); *In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*, 733 F. Supp. 2d

997, 1009 (E.D. Wis. Aug. 16, 2010) (approving pre-discovery cooperation-only settlement in multi-defendant action which "provided plaintiffs with quite a bit of information about the operation of the alleged conspiracy"); Order at 4–5, *Laydon v. Mizuho Bank, Ltd.*, No. 12-3419 (S.D.N.Y. Nov. 10, 2016), Dkt. No. 720 (approving pre-discovery cooperation-only settlement in multi-defendant action).  The Court should find no different here.

Because Tennis Australia's cooperation will provide "an immediate and valuable benefit to the Class that will aid in ongoing litigation against the non-settling Defendants," *In re Pressure Sensitive Labelstock*, 584 F. Supp. 2d at 702 (citation omitted), and releasing Tennis Australia from all potential claims for damages does not diminish the recovery available to the class or impact any claims for injunctive relief, *Tex. Indus.*, 451 U.S. at 634–46, these factors weigh in favor of finding that the proposed settlement is substantively fair.

### 2. The Proposed Damages Settlement is Substantively Fair under Rule 23(e)(2).

Rule 23(e)(2)(C) asks whether "the relief provided for the class is adequate," considering: (1) "the costs, risks, and delay of trial and appeal;" (2) "the effectiveness of any proposed method of distributing relief to the class;" (3) "the terms of any proposed award of attorney's fees;" and (4) "any agreement made in connection with the proposal."  Fed. R. Civ. P. 23(e)(2)(C); 23(e)(3).  Rule 23(e)(2)(D) asks if "the proposal treats class members equitably relative to each other."

The first Rule 23(e)(2)(C) factor—"the costs, risks, and delay of trial and appeal"— "subsumes several *Grinnell* factors, including the complexity, expense and likely duration of litigation, the risks of establishing liability, the risks of establishing damages, and the risks of maintaining the class through trial." *Mikhlin v. Oasmia Pharm. AB*, 2021 WL 1259559, at *5 (E.D.N.Y. Jan. 6, 2021) (citation omitted); *see also in re GSE Bonds*, 414 F. Supp. 3d at 693.  As noted above, the substantial cooperation Tennis Australia will provide under the Damages

Settlement dramatically lowers these risks, particularly in light of the complexity inherent in all antitrust class actions. *See Sonterra*, 2023 WL 3749996, at *5; *in re Linerboard*, 292 F. Supp. 2d at 643.

Furthermore, Tennis Australia's cooperation pursuant to the Damages Settlement Agreement "reduces costs and time associated with formal discovery," enables Damages Class Plaintiffs to have "more focused depositions on subjects relevant to the claims' merits," and gives Damages Class Plaintiffs "a clear tactical advantage in obtaining [] information through non-traditional discovery mechanisms, including . . . the advantage of having this information to formulate strategy in taking discovery from the remaining Defendants." *In re Processed Egg Prods.*, 284 F.R.D. at 303–04. This early access to Tennis Australia's materials at such an early stage will provide greater efficiency in this litigation. *See id*. at 303 (finding that "the [] Settlement likely has short-circuited at least some of the expense and delay of future discovery by securing [settling defendant's] cooperation and removing the [settling defendant] forces from those who would contest or complicate Plaintiffs' discovery efforts.")

Finally, the Damages Settlement has added value as an "ice-breaker" settlement in a multi-party antitrust case. *In re Packaged Ice*, 2011 WL 717519, at *10. Such settlements add value because they can "'break the ice' and bring other defendants to the point of serious negotiations." *In re Linerboard*, 292 F. Supp. 2d at 643. The Damages Settlement Agreement confers substantial benefits while eliminating many of the risks attendant to continued litigation against Tennis Australia and the other Defendants. This factor weighs in favor of finding the proposed settlement substantively fair.

The next two Rule 23(e)(2)(C) factors—"the effectiveness of any proposed method of distributing relief to the class" and "the terms of any proposed award of attorney's fees"—do not

apply here.  Because the Damages Settlement is a cooperation-only settlement, no damage awards will be distributed to the class.  *See generally* Damages Settlement Agreement.  Likewise, no attorney's fees will be awarded under the Damages Settlement.  *See id*.

Regarding the last Rule 23(e)(2)(C) factor, Plaintiffs have provided for the Court the Damages Settlement Agreement reached between the parties in this case.  *See* Fed. R. Civ. P. 23(e)(2)(C)(iv); 23(e)(3).  The terms of the Damages Settlement Agreement have also been explained throughout this Motion.  For the reasons stated above, the terms of the Damages Settlement Agreement are substantively fair and weigh in favor of granting preliminary approval.

Finally, the proposal treats class members equitably relative to each other.  *See* Fed. R. Civ. P. 23(e)(2)(D).  This factor asks "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief."  Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment.  Here, all Damages Class members are subject to the same scope of release and will equally benefit from Tennis Australia's cooperation. No class member will be treated differently from any other.  In addition, the Damages Settlement with Tennis Australia does not foreclose Plaintiffs' ability to recover the full scope of damages available to them.  See *Tex. Indus.*, 451 U.S. at 634–46.  For those Damages Class members who are also members of the Injunctive Relief Class, this Damages Settlement has no impact on their ability to pursue claims for injunctive relief in this action.  Thus, this factor weighs in favor of finding the proposed Damages Settlement substantively fair.

## II.    The Court is Likely to Certify the Class.

In order to preliminarily approve the proposed Damages Settlement, the Court must also find that the proposed settlement class—the Damages Class—likely meets the requirements of Federal Rules of Civil Procedure 23(a) and one of the subsections of Rule 23(b).  *In re GSE Bonds*,

414 F. Supp. 3d at 699–700.  However, "[t]he ultimate decision to certify the class for purposes of settlement cannot be made until the hearing on final approval of the proposed settlement." *Campbell*, 2025 WL 1874485, at *10 (*quoting* Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment).  And a district court "[c]onfronted with a request for settlement-only class certification, . . . need not inquire whether the case, if tried, would present intractable management problems."  *In re Glob. Crossing*, 225 F.R.D. at 451 (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).

### A.  The Proposed Damages Class Likely Meets the Requirements of Rule 23(a).

Under Rule 23(a), class certification is appropriate if "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims [] of the representative parties are typical of the claims [] of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(1)–(4).  The proposed Damages Class here meet these requirements.

*Numerosity.*  Where a putative class has forty or more members, numerosity is presumed. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *In re Google Digit. Advert. Antitrust Litig.*, 2025 WL 3562687, at *4 (S.D.N.Y. Dec. 12, 2025).  While the exact size of the proposed classes is not yet known, Damages Class Counsel believe the number may be in the thousands.  *See* SAC ¶ 419; *see also* WTA PLAYERS, https://www.wtatennis.com/players (last visited Dec. 30, 2025) (showing over 500 players); ATP PLAYERS, https://www.atptour.com/en/players (showing top 100 players).  Thus, numerosity is satisfied.

*Commonality.*  The commonality factor asks whether the claims of the class members "depend upon a common contention."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The common questions of law or fact must be "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one

of the claims in one stroke." *Id.*  Here, the Damages Class members have suffered the same injuries—including artificially suppressed pay and sponsorship opportunities, among other injuries, *see* SAC ¶¶ 401, 411—as a result of the same allegedly anticompetitive conduct by the same defendants, which is sufficient to demonstrate commonality.  *In re GSE Bonds*, 414 F. Supp. 3d at 700.  In addition, "allegations concerning the existence, scope, and efficacy of an alleged antitrust conspiracy present important common questions sufficient to satisfy the commonality requirement."  *In re Payment Card Interchange Fee*, 330 F.R.D. at 52 (quoting *In re Platinum & Palladium Commodities Litig.*, 2014 WL 3500655, at *9 (S.D.N.Y. July 15, 2014)).  For these reasons and others, *see* SAC ¶ 420, commonality is satisfied.

   ***Typicality.***  The typicality factor is satisfied when "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *In re Elec. Books Antitrust Litig.*, 2014 WL 1282293, at *12 (S.D.N.Y. Mar. 28, 2014) (*quoting Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010)).  Commonality and typicality "tend to merge into one another."  *Id.* (*quoting Brown*, 609 F.3d at 475).  Unsurprisingly, antitrust claims that seek to prove "a conspiracy, its effectuation, and damages therefrom— precisely what the absent class members must prove to recover"—satisfy the typicality requirement.  *In re Currency Conversion Fee Antitrust Litig.*, 264 F.R.D. 100, 111 (S.D.N.Y. 2010). "Factual differences in the amount of damages, date, size or manner of purchase, the type of purchaser . . . and other such concerns will not defeat class certification when plaintiffs allege that the same unlawful course of conduct affected all members of the proposed class."  *In re Sumitomo Copper Litig.*, 182 F.R.D. 85, 92 (S.D.N.Y. 1998).  The standard is "not highly demanding," *Dial Corp. v. News Corp.*, 314 F.R.D. 108, 113 (S.D.N.Y. 2015), and is readily satisfied in price-fixing claims which aim to prove "a conspiracy, its effectuation, and damages

therefrom." *In re Currency Conversion Fee Antitrust Litig.*, 264 F.R.D. at 111 (collecting cases). Here, each of Damages Class Plaintiffs sustained damages arising out of Defendants' common course of conduct, in violation of the antitrust laws. *See* SAC ¶ 421. And, accordingly, each of the Damages Class members would make similar arguments regarding liability and damages. *See in re Electronic Books Antitrust Litig.*, 2014 WL 1282293, at *12. Thus, typicality is satisfied here.

*Adequacy of Representation.* "Adequacy entails inquiry as to whether: 1) plaintiff[s'] interests are antagonistic to the interest of other members of the class and 2) plaintiff[s'] attorneys are qualified, experienced, and able to conduct this litigation." *In re Currency Conversion Fee*, 264 F.R.D. at 111–12 (citation omitted). As discussed above, *see supra* I.A., the Player Plaintiffs' interests are aligned with, and thus not antagonistic to, the interests of the Putative Damages Class members, and Damages Class Counsel have adequately represented the class and are capable, qualified, and experienced. Thus, all of the Rule 23(a) factors are satisfied.

### B. The Proposed Damages Class Likely Meets the Requirements of Rule 23(b)(3).

Once the threshold requirements of Rule 23(a) are met, the proposed settlement class must also satisfy one of the subsections under Rule 23(b). *See Jackson v. Ampac Paper, LLC*, 2025 WL 2346065, at *9–10 (S.D.N.Y. Aug. 13, 2025). To certify a class under Rule 23(b)(3), as the parties seek to do here, a court must also find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Predominance is satisfied if "the plaintiff can establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *In re Currency Conversion Fee*,

264 F.R.D. at 113 (q*uoting Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 107–08 (2d Cir. 2007)).  The essential question is whether the proposed class is "sufficiently cohesive to warrant adjudication by representation."  *In re Electronic Books*, 2014 WL 1282293, at *13 (*quoting Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 469 (2013)).

This test is "readily met" in cases alleging "violations of the antitrust laws."  *In re Google Dig. Advert.*, 2025 WL 3562687, at *6 (quoting *Amchem*, 521 U.S. at 625).  "Courts repeatedly have held that the existence of a conspiracy is the predominant issue in price fixing cases, warranting certification of the class even where significant individual issues are present."  *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493, 518 (S.D.N.Y. 1996).  Thus, proof of the conspiracy "will focus on the actions of the defendants, and, as such, proof for these issues will not vary among class members."  *In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 264 (D.D.C. 2002).  In addition, class-wide impact, causation, and damages can be demonstrated using common evidence, including through expert testimony and modeling using Defendants' financial data, which is common to all class members.  Thus, the key elements of the Damages Class Plaintiffs' antitrust claims—collusion, causation and impact, and damages—would be proven through common evidence.  *See Animal Sci. Prods., Inc. v. Hebei Welcome Pharm. Co. Ltd. (In re Vitamin C Antitrust Litig.)*, 279 F.R.D. 90, 109 (E.D.N.Y. 2012).  Because these core issues predominate, and any potential individual issues "are insubstantial," the predominance requirement is met here.  *See id.*

Furthermore, a class action is superior to other methods for adjudicating the Damages Class Plaintiffs' claims.  Where, as here, "plaintiffs were allegedly aggrieved by a single policy of the defendant[ ], and there is a strong commonality of the violation and the harm, this is precisely the type of situation for which the class action device is suited."  *In re Electronic Books*, 2014 WL

-24-

1282293, at *13 (*quoting Brown v. Kelly*, 609 F.3d 467, 484 (2d Cir. 2010)).  Where, as here, potentially thousands of plaintiffs suffered the same type of harm due to the same course of action by Defendants, adjudicating those claims as part of a class action "will achieve economies of scale, conserve judicial resources, preserve public confidence in the integrity of the judicial system by avoiding the waste and delay of repetitive proceedings, and prevent inconsistent adjudications of similar claims."  *Chhab v. Darden Rests., Inc.*, 2016 WL 3004511, at *3 (S.D.N.Y. May 20, 2016) (*citing Gonqueh v. Leros Point to Point, Inc.*, 2015 WL 9256932, at *3 (S.D.N.Y. Sept. 2, 2015)). For these reasons and others, *see* SAC ¶ 424, a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

### III.    Notice to the Damages Settlement Class.

Plaintiffs and Tennis Australia propose to provide notice to the Damages Settlement Class no earlier than 180 days following preliminary approval by the Court, unless otherwise agreed to by the parties or ordered by the Court.  Damages Settlement Agreement ¶ 32.  To the greatest extent possible, the parties wish to combine the notice of settlement with notice(s) of other settlements, should they materialize.

Player Plaintiffs also believe that Tennis Australia's cooperation may facilitate substantial efficiencies in effectuating direct notice to a large portion of the Damages Settlement Class, and this may inform the proposed Notice Plan to be implemented by the Notice Administrator.  Prior to issuing notice, Player Plaintiffs will submit a motion for the Court to approve the form and manner of notice.

### CONCLUSION

For the foregoing reasons, Damages Class Plaintiffs respectfully request that this Court enter an order preliminarily approving Damages Class Plaintiffs' Damages Settlement with Tennis Australia.

DATED: January 16, 2026                    Respectfully submitted,
        New York, New York


                                           By:    /s/ Andrew S. Tulumello
                                                   Andrew S. Tulumello

                                           Andrew S. Tulumello (admitted *pro hac vice*)
                                           Meagan Bellshaw (admitted *pro hac vice*)
                                           **WEIL, GOTSHAL & MANGES LLP**
                                           2001 M Street NW, Suite 600
                                           Washington, D.C. 20036
                                           Tel: (202) 682-7100
                                           Fax: (202) 857-0940
                                           drew.tulumello@weil.com
                                           meagan.bellshaw@weil.com

                                           Luna N. Barrington
                                           Nicholas J. Reade
                                           **WEIL, GOTSHAL & MANGES LLP**
                                           767 Fifth Avenue
                                           New York, NY 10153
                                           Tel: (212) 310-8000
                                           Fax: (212) 310-8007
                                           luna.barrington@weil.com
                                           nick.reade@weil.com

                                           James W. Quinn
                                           **JW QUINN ADR LLC**
                                           767 Fifth Avenue
                                           Suite RP4
                                           New York, NY 10153
                                           Tel: (646) 465-3607
                                           Fax: (646) 219-1977
                                           quinn@jwquinnlaw.com

                                           *Counsel for Plaintiffs*

**Certificate of Compliance**

I, Andrew S. Tulumello, certify that the foregoing memorandum of law complies with the word-count limitations set forth in Local Civil Rule 7.1(c). According to the word count of the word processing program used to prepare the memorandum, and exclusive of the portions of it that are excluded by the rules, there are 7,977 words in the document.

Dated: January 16, 2026

Respectfully submitted,

*/s/ Andrew S. Tulumello*
Andrew S. Tulumello