# Weil, Gotshal & Manges LLP

2001 M Street, NW, Suite 600
Washington, DC 20036
Phone: +1 202 682 7000
Fax: +1 202 857 0940

**Andrew S. Tulumello**
Direct: +1 202 682 7100
Drew.Tulumello@weil.com

BY ECF

May 13, 2026

Hon. Margaret M. Garnett
United States District Judge
Southern District of New York
40 Foley Square, Room 2102
New York, NY 10007

Re: *Pospisil et al. v. ATP Tour, Inc. et al.,* No. 1:25-cv-02207-MMG (S.D.N.Y.) – Emergency Motion
to Preserve Status Quo and Enjoin Retaliation Against Plaintiff PTPA

Dear Judge Garnett:

We represent the Plaintiffs in the above-captioned antitrust class action (the "Action") and write to seek the Court's immediate intervention regarding retaliation by Defendants Fédération Française de Tennis ("FFT") and All England Lawn Tennis Club (Championships) Limited ("AELTC") against plaintiff the Professional Tennis Players Association ("PTPA") by denying PTPA credentials to access players at the 2026 French Open and the 2026 Wimbledon Championships.

The retaliatory conduct here is brazen and crude. FFT and AELTC have expressly admitted, in writing, that they are denying PTPA access to players at the French Open and Wimbledon as a punishment for filing this Action. Pursuant to the Court's inherent authority to administer justice and to safeguard the rights of the named plaintiffs and putative class members, we ask the Court to issue an order preserving the status quo by allowing PTPA to have credentials to player areas and to stop these two Grand Slams from engaging in retaliation against any named plaintiff, including PTPA. Without intervention from the Court, plaintiff PTPA and the putative class members will be irreparably harmed.

## I.    Defendants FFT & AELTC's Retaliatory Conduct

Defendants FFT and AELTC are attempting to block plaintiff PTPA from accessing the named plaintiffs and the professional tennis players who comprise the putative class at the upcoming French Open and Wimbledon Grand Slam tournaments. This cannot stand.

PTPA is a named plaintiff in this case and the leading advocacy organization for professional tennis players. Over 700 future, current, and former professional tennis players have utilized the programs

Hon. Margaret M. Garnett
May 13, 2026
Page 2

and services offered by PTPA, including, but not limited to, publicly and privately advocating for professional tennis players before the sport's governing bodies; developing medical and mental health programs for players; providing access to legal help in the context of anti-doping and anti-corruption investigations; protecting players' data privacy and image rights; travel and accommodation booking services for its members; and enabling players to monetize their name, image, and likeness ("NIL") rights by negotiating group sponsorship opportunities for players. *See* ECF No. 210 ¶¶ 129-131; Declaration of Romain Rosenberg ("Rosenberg Decl.") ¶ 5.

Since its founding, PTPA has never had an issue receiving credentials to player areas from all four of the Grand Slams and dozens of other professional tennis tournaments on the ATP and WTA tours. Declaration of Anastasia Skavronskaia ("Skavronskaia Decl.") ¶ 4; Declaration of Wajid Mir Syed ("Syed Decl.") ¶ 4; Rosenberg Decl. ¶¶ 6, 11. PTPA attended every one of the Grand Slams in the last several years with credentialed access to player spaces. Rosenberg Decl. ¶ 11. On April 13, 2026, PTPA requested credentials from Defendants FFT and AELTC to access player areas for the upcoming 2026 French Open and Wimbledon Grand Slam tournaments. *See* Rosenberg Decl. ¶ 12; Skavronskaia Decl. ¶ 8. Three days later, on April 16, 2026, in emails worded similarly and sent only hours apart, FFT and AELTC denied PTPA's requests on the express ground that PTPA was a plaintiff in this lawsuit. *See* Skavronskaia Decl. ¶¶ 9-10. FFT's representative told PTPA leadership that she had "received clear guidance" that "[FFT] can't grant any credentials to any party suing the FFT." *See* Ex. A (Anastasia Skavronskaia's email correspondence with FFT). AELTC's representative stated that it "will not be accrediting anyone from the PTPA's organisation" "[i]n light of the ongoing litigation[.]" *See* Ex. B (Anastasia Skavronskaia's email correspondence with AELTC). On April 20 and 21, PTPA Executive Director Romain Rosenberg separately emailed representatives from FFT and AELTC asking that they reconsider their decisions because PTPA will be there to support the players. *See* Ex. C (Romain Rosenberg's email correspondence with FFT); Ex. D (Romain Rosenberg's email correspondence with AELTC). Both FFT and AELTC refused. *See* Ex. C; Ex. D; Rosenberg Decl. ¶¶ 13-14. Since then, PTPA has explored potential workarounds without success. *See* Rosenberg Decl. ¶ 15.

## II. Putative Class Members Will Be Harmed

Access to the non-public tournament areas is critical for PTPA to meet with, communicate with, and protect players. Syed Decl. ¶ 9. Without access, the only option for players will be to meet PTPA leadership off-site or in the public areas of the tournaments—often among thousands of fans—which obviously eviscerates any confidentiality and any ability for discussion on sensitive matters, exposes players to scrutiny by the media and by Defendants, and creates safety risks for the top professional athletes. *See* Rosenberg Decl. ¶ 9. Off-site meetings with players, let alone groups of players, are completely unrealistic given the demands on player time (practice, match play, recovery) at a Grand Slam event. There is *no alternative* to meeting the players in player areas. As Your Honor will recall, PTPA's access to player areas at the 2025 Miami Open is the *only* reason the PTPA was able to learn about Defendant ATP's unlawful efforts to coerce and intimidate putative class members for participating in this Action. *See* ECF No. 69 (the "23(d) Order"); Syed Decl. ¶¶ 10-11. That protection evaporates if PTPA cannot be on-site at these events. *See* Rosenberg Decl. ¶ 9. FFT and AELTC are effectively trying

Hon. Margaret M. Garnett                                                      **Weil, Gotshal & Manges LLP**
May 13, 2026
Page 3


to strangle the PTPA by making communication with named plaintiffs and class members impossible at two of the biggest tournaments on the professional tennis calendar.

FFT and AELTC's retaliatory actions will cause immediate, irreparable harm to PTPA. The Grand Slams are the only events on the calendar that draw all the top players from men's and women's tennis into one location for a sustained period of time. *Id.* ¶ 7. This year, the 2026 French Open and Wimbledon tournaments will feature over 200 of the top men's and women's professional tennis players, all of whom are putative class members in this Action. *See* ECF No. 210 ¶¶ 428-29; Rosenberg Decl. ¶ 15. The ability to communicate with named plaintiffs and class members—during litigation and in the face of a pressure campaign to frustrate participation in this lawsuit—is critical to protecting the named plaintiffs and absent class members. Players and named plaintiffs want and depend on PTPA to be in the private areas at these tournaments. Rosenberg Decl. ¶ 8. The venue cannot be replaced, and the harm cannot be remediated. *See* Syed Decl. ¶ 9; Rosenberg Decl. ¶¶ 7-8, 18. The Grand Slams are trying to send a chilling message to professional tennis players that they will be ostracized, isolated, and, most importantly, unsupported at the biggest events of their careers if they associate with the PTPA or this litigation. If PTPA cannot access players at these two Grand Slams, it is inevitable that other major tournaments will ban PTPA in the future.

Qualifying matches for the French Open are scheduled to begin on May 18, 2026, with the tournament concluding on June 7. *See* Rosenberg Decl. ¶ 16. Wimbledon qualifying matches begin just two weeks later, on June 22, 2026, with the tournament running until July 12. *See id.* ¶ 17. In light of these rapidly approaching dates, plaintiff PTPA seeks emergency relief from this Court.[1]

Damages cannot remedy PTPA's missed presence at these events. By blocking PTPA's access to the players at their Grand Slam tournaments, FFT and AELTC are sending a clear message: if you challenge our conduct in court, you will be punished. The uncertainty of future punishment will undoubtedly have a chilling effect on certain of the putative class members' willingness to support this Action.

---

[1] FFT's claim that PTPA could request the non-public access credentials from a player is not practical and serves to punish putative class members. Each player is granted a limited number of non-public access credentials, which are generally reserved for the player's coach, agent, medical staff, and family. Asking a player to give up one of their access credentials for PTPA would undermine PTPA's mission to advocate and protect the well-being of all professional tennis players. Moreover, credentials expire when a player loses in the tournament (which is highly unpredictable). Unless PTPA has credentials from the ultimate champions in the tournaments, access to player areas through individual player credentials is not a meaningful or practical alternative. *See* Rosenberg Decl. ¶ 9.

Hon. Margaret M. Garnett
May 13, 2026
Page 4

**Weil, Gotshal & Manges LLP**

### III.    Requested Relief

An order from this Court is necessary to preserve the pre-litigation status quo and to protect the rights of the plaintiffs and putative class members in this Action.[2]  This Court has inherent authority to protect PTPA from retaliation for exercising its right to bring this litigation, and to ensure that PTPA can maintain its access to the players who have stepped forward at great personal sacrifice and risk.  *See Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) (holding that "[f]ederal courts possess certain 'inherent powers,' not conferred by rule or statute, 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases" (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962)); *see also EEOC v. Int'l Union of Operating Eng'rs*, 438 F. Supp. 876, 879-80 (S.D.N.Y. 1977) (asserting jurisdiction over retaliation allegations because "[p]art of [the] duty of the government to provide the protection of law is that litigants and witnesses who appear before federal courts do so secure in the knowledge that they cannot be harassed, intimidated, punished or otherwise suffer harm because they availed themselves of the judicial system").[3]  This Court also has continuing authority under Rule 23(d) to issue orders preventing retaliation against named plaintiffs and absent class members.  *See* 23(d) Order at 28.

---

[2] AELTC and FFT have argued in the pending motions to dismiss that the Court lacks personal jurisdiction over them.  ECF Nos. 187, 212.  While this Court cannot assert "hypothetical jurisdiction" over the Defendants to resolve merits issues (*see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 84 (1988)), the Court possesses clear and unmistakable authority to issue an order protecting the status quo until those (ill-founded) personal jurisdiction challenges are resolved.  *See Ins. Co. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701-09 (1982) (affirming sanctions order against defendants for failing to comply with discovery requests while personal jurisdiction challenges remained pending).  This Court also has plenary jurisdiction to protect the integrity of its proceedings.  *See United States v. United Mineworkers of Am.*, 330 U.S. 258, 290-95 (1947) ("The District Court unquestionably had the power to issue a restraining order for the purpose of preserving existing conditions pending a decision upon its own jurisdiction.").  And this is particularly true with respect to named plaintiffs and absent class members under Rule 23, where the Court serves as the guardian of the class.  *See* 23(d) Order at 16-17.

[3] *See also Bowens v. Atl. Maint. Corp.*, 546 F. Supp. 2d 55, 73 (E.D.N.Y. 2008) (imposing sanctions on defendants who offered money to plaintiff to drop his case and discharge his attorneys because "[t]he Court has the authority to sanction improper conduct simply as a matter of the court's inherent power" which "stems from the very nature of courts and their need to be able 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases'" (internal citations omitted)); *Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen*, No. 14-CV-1112, 2015 WL 13840969, at *11–12 (S.D.N.Y. Mar. 16, 2015) (modifying a preliminary injunction to enjoin defendants from marketing and selling circumventing infringing software because courts "have 'authority to enjoin actions otherwise lawful when such action is deemed by [the Court] necessary to correct the evil effects of unlawful conduct'" (internal citations omitted)).

Hon. Margaret M. Garnett                                    **Weil, Gotshal & Manges LLP**
May 13, 2026
Page 5

For years and without issue, PTPA has attended the French Open and Wimbledon with credentialed access.  The only thing that has changed is this litigation.  The Grand Slams are engaged in petulant retaliation that undermines PTPA's ability to communicate with and protect the named plaintiffs and class members.  Accordingly, Plaintiffs ask the Court to prohibit these tournaments from retaliating against PTPA by denying the credentialed access PTPA has exercised for years.

We thank the Court for its attention and are available for a hearing at the Court's convenience.

Respectfully submitted,

*/s/ Andrew S. Tulumello*
Andrew S. Tulumello
*Counsel for Plaintiffs*

cc:     all counsel of record (via ECF)