**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Vasek Pospisil, Nicholas Kyrgios, Anastasia Rodionova, Nicole Melichar-Martinez, Saisai Zheng, John-Patrick Smith, Noah Rubin, Aldila Sutjiadi, Varvara Gracheva, Tennys Sandgren, Sachia Vickery, Nicolas Zanellato, Christian Harrison, Ingrid Neel, and Marco Trungelliti, on behalf of themselves and all others similarly situated,<br><br>-and-<br><br>The Professional Tennis Players Association,<br><br><br><br>Plaintiffs,<br><br><br>vs.<br><br><br>ATP Tour, Inc., and WTA Tour, Inc., Tennis Australia Limited, Fédération Française de Tennis, All England Lawn Tennis Club (Championships) Limited, and United States Tennis Association Incorporated,<br><br><br>Defendants. | Case No. 25-cv-2207 (MMG) |

**DECLARATION OF ROMAIN ROSENBERG**

I, Romain Rosenberg, declare, upon personal knowledge and under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. I am the Executive Director of the Professional Tennis Players Association ("PTPA"). I have been in my role since March 2026. Prior to serving as Executive Director, I served as PTPA's Senior Vice President of Strategy and Player Relationships from November 2022 through September 2023 and as its Deputy Executive Director from September 2023 until March 2026.

2.      PTPA is an association of professional tennis players, men and women, and is the leading global advocacy organization whose central mission is to support, protect, and advance professional tennis players' well-being.

3.      In my capacity as PTPA's Executive Director, my responsibilities include overseeing PTPA's daily operations, creating and executing a long-term strategic vision for PTPA, managing PTPA's staff, maintaining PTPA's financial health, and marketing our core functions and services by regularly corresponding with professional tennis players.

4.      In my previous roles as Senior Vice President of Strategy and Player Relationships and Deputy Executive Director of PTPA, I was the PTPA staff member most responsible for direct correspondence with professional tennis players, including the players who utilize PTPA services.

5.      Since PTPA's founding, over 700 future, current, and former professional tennis players have utilized programs and services offered by PTPA.  Those programs and services include, but are not limited to, publicly and privately advocating for professional tennis players before the sports' governing bodies; developing medical and mental health programs for players; providing access to legal help in the context of anti-doping and anti-corruption investigations, protecting players' data privacy and image rights; travel and accommodation booking services for its members; and enabling players to monetize their name, image, and likeness ("NIL") rights by negotiating group sponsorship opportunities for players.

6.      As part of the PTPA's efforts to facilitate these programs and services, I annually attend at least fifteen professional tennis tournaments, including the four Grand Slam tournaments, the Australian Open, the US Open, the French Open, and Wimbledon, as well as other tournaments on the ATP and WTA tours, such as the BNP Paribas Open at Indian Wells, the Miami Open, the Rolex Monte Carlo Masters, the Mutua Madrid Open, the Italian Open in Rome, the Japan Open

in Tokyo, the China Open in Beijing, Rolex Shanghai Masters and the Rolex Paris Masters. Several other PTPA employees, including, but not limited to, Wajid Mir Syed, our General Counsel and Executive Vice President of Player Engagement, and Anastasia Skavronskaia, our Director of Player Relations, also attend professional tennis tournaments several times per year to facilitate PTPA's programs and services to players.

7.      Because of the global and nearly year-long nature of the professional tennis calendar, these tournaments are the only time when PTPA is able to provide its constituents with certain in-person activities, such as informing players of the latest services we put together for them, gathering direct feedback from them regarding issues on tournaments' sites so we can escalate with the relevant stakeholders, providing players with the latest updates regarding the lawsuit and our conversations with the Governing Bodies, providing critical and factual unbiased information to players to inform their own conversations with the Governing Bodies. For example, because tournaments are the only time a majority of the PTPA's constituents are in one location during the tournaments, PTPA is able to coordinate with larger groups of players to address broader concerns the players have concerning their well-being.  This is critical to PTPA's mission to represent and advocate for professional tennis players.

8.      To effectuate PTPA's services to players, my fellow PTPA employees and I are required to obtain credentials from each tournament that permit us access to the non-public facilities that the players occupy and use during the tournaments. Typically, these credentials grant us access to areas inaccessible by the general attending public, such as player lounges, restaurants, and rest areas. These access credentials do not grant PTPA employees access to the most intimate areas of the facility, such as the players' locker room, which are available only to players and their

coaches. Because of the protection and services that PTPA provides players at these tournaments, players depend on our attendance and access to private player areas.

9. It is crucial for PTPA to be able to operate at tournaments in private areas. While PTPA employees and players can technically meet in both public and private places, security concerns and confidential business considerations almost always require these meetings to take place in private areas subject to the access credentials that FFT and AELTC denied PTPA. Meetings between PTPA employees and players in public areas at tournaments, while exposed to fans and the media, would create an unsafe and unproductive atmosphere for our employees and the players, many of whom are world famous athletes. PTPA is only able to monitor potential mistreatment of named plaintiffs and class members if given access to the private player areas.

10. To obtain an access credential from a tournament, a PTPA employee submits a request, usually via email for the Grand Slams or via the centralized Tennis Uno web-platform for the ATP and WTA, to the tournament several weeks before the tournament begins.

11. From the beginning of my tenure at PTPA until April 2026, no PTPA staff member had ever been denied an access credential he or she sought, including from tournaments on the ATP and WTA tours.

12. Consistent with the PTPA's historic practices and her prior experiences, on April 13, 2026, Anastasia Skavronskaia, PTPA Director of Player Relations, sent separate emails to representatives from Fédération Française de Tennis ("FFT") and All England Lawn Tennis Club (Championships) Limited ("AELTC") seeking access credentials for three PTPA employees for the 2026 French Open and the 2026 Wimbledon Championships ("Wimbledon"), respectively—the two Grand Slam tennis tournaments owned and/or operated by FFT and AELTC.

4

13.     On April 21, 2026, after Ms. Skavronskaia's credential requests were denied by representatives from FFT and AELTC, I separately emailed representatives from FFT and AELTC asking that they reconsider their decisions to withhold credential access for the PTPA. FFT's representatives responded on April 28, 2026, stating that FFT would not grant credentials to PTPA or "any parties who sue the FFT." Attached hereto as Exhibit C is a true and correct copy of the email correspondence with FFT. AELTC's representatives responded on May 1, 2026, stating that AELTC would not grant credentials to PTPA "[i]n light of the ongoing litigation." Attached hereto as Exhibit D is a true and correct copy of the email correspondence with AELTC. FFT and AELTC's representatives additionally refused to engage in conversations with myself and the PTPA due to the ongoing litigation. FFT's representatives declined to have a conversation "unless [the PTPA] pull[s] out from [its] legal action first, which would obviously change our position on PTPA credentials too." Ex. C.

14.     FFT suggested there would be "no issue to get you and/or your colleagues a credential through a player allotment," but this is unfair to the players that PTPA aims to protect. Ex. C. Players have a limited number of access credentials to share and reserve them for coaches, agents, medical staff, and family.

15.     While PTPA employees could still attend the 2026 French Open and Wimbledon by purchasing general admission tickets, general admission tickets will not provide PTPA access to the player lounges, restaurants, and rest areas where PTPA offers services to its constituents. This year, the 2026 French Open and Wimbledon tournaments will feature over 200 of the top men's and women's professional tennis players.

16.     The French Open is scheduled to begin qualifying matches on May 18, 2026, and conclude all match play on June 7, 2026.

17.     Wimbledon is scheduled to begin qualifying matches on June 22, 2026, and conclude all match play by July 12, 2026.

18.     PTPA will not have the ability to serve players and fulfill its mission during the 2026 French Open and 2026 Wimbledon if FFT and AELTC do not grant their requested credentials.

Dated: May 13, 2026
        Marrakech, Morocco

_____
        Romain Rosenberg

6