

**Bradley Justus**
Axinn, Veltrop & Harkrider LLP
1901 L Street NW
Washington, DC 20036
Telephone: 202.469.3532
bjustus@axinn.com

May 18, 2026

BY ECF

Hon. Margaret M. Garnett
United States District Court
Southern District of New York
40 Foley Square, Room 2102
New York, NY 10007

> Re:    *Pospisil et al. v. ATP Tour, Inc. et al.,* No. 1:25-cv-02207-MMG (S.D.N.Y.)
> <u>AELTC and FFT's Letter Response to PTPA's Emergency Motion</u>

Dear Judge Garnett:

We write on behalf of The All England Lawn Tennis Club (Championships) Limited ("AELTC") and Fédération Française de Tennis ("FFT") in response to the letter motion (the "Motion") filed by Plaintiff Professional Tennis Players Association ("PTPA") on May 13, 2026, in the above-captioned action (the "Action").[1] PTPA's demand for emergency relief is improper, meritless, and procedurally defective. First, the Court lacks personal jurisdiction over AELTC and FFT—two non-U.S. entities—and cannot order that they provide accreditation to tournaments held entirely outside of the United States. Second, PTPA has provided no basis for the Court to grant the extraordinary relief it demands. Indeed, PTPA's Motion does not even set forth, let alone meet, the requirements to obtain a preliminary injunction or temporary restraining order, including showing that it would suffer irreparable harm if its representatives do not get special private access to AELTC's The Championships and FFT's Roland-Garros tournaments. Finally, PTPA has not complied with the Local Rules or this Court's Individual Rules, having failed to meet and confer with counsel for AELTC and FFT and seeking emergency relief for actions taken a month ago. The Court should deny PTPA's Motion.

### I.    PTPA Has Not Established Personal Jurisdiction Over AELTC Or FFT, And No Exception Applies For The Court To Intervene.

AELTC and FFT have moved to dismiss this Action for lack of personal jurisdiction. *See* ECF No. 187. Courts routinely decline to order injunctive relief against a party until personal jurisdiction has been clearly established. *See, e.g.*, *Weitzman v. Stein*, 897 F.2d 653, 658 (2d Cir. 1990) (holding injunction was "improperly entered because it was not clearly established that the court had jurisdiction over [defendant]"); *Visual Scis., Inc. v. Integrated Commc'ns Inc.*, 660 F.2d 56, 59 (2d Cir. 1981) ("A court must have in personam jurisdiction over a party before it can validly enter even an interlocutory injunction against them.").

---

[1] This response shall in no way be deemed a waiver of any of AELTC's or FFT's defenses or objections, including but not limited to those based on lack of jurisdiction, improper venue, and improper forum.

Hon. Margaret M. Garnett
May 18, 2026
Page 2

PTPA glosses over this well-settled standard by invoking vague arguments about the Court's "inherent authority to preserve the pre-litigation status quo and to protect the rights of the plaintiffs." ECF No. 213 at 4 n.2. But PTPA's arguments miss the mark. While courts may issue injunctions where jurisdiction is not yet established in rare circumstances, such circumstances are not present here. Indeed, in the absence of established jurisdiction, courts issue injunctions to "preserve existing conditions" only when a failure to do so would deprive the court of the ability to reach the merits of the case or assess whether jurisdiction exists at all. *See, e.g.*, *Belbacha v. Bush*, 520 F.3d 452, 456 (D.C. Cir. 2008) (noting that if a case presents a "substantial jurisdictional question . . . a district court may act to preserve its jurisdiction while it determines whether it has jurisdiction" (internal quotes omitted)).[2] Here, there is no danger that the underlying legal issues in Plaintiffs' case will be mooted or otherwise undermined merely because PTPA representatives do not receive the credentials they seek. PTPA does not claim otherwise. And any notion of a change to the "status quo" for the Court to preserve is based on the false premise that PTPA representatives have a perpetual right to accreditation at either tournament. Not so. AELTC and FFT have discretion over providing credentialed access to their own private events from one year to the next and decline requests for accreditation. PTPA is well aware of this: AELTC's Accreditation Terms and Conditions for The Championships explicitly state that "Accreditation is a privilege, not an entitlement," and that AELTC "may revoke or withdraw any rights associated with an Accreditation, in whole or in part, at any time at its absolute discretion." B. Justus Decl. Ex. A § 4.1. FFT's Accreditation Regulations likewise make clear that any "Accreditation badge or Pass to the Accreditation Holder . . . shall" only remain in effect until, at most, the conclusion of that year's Roland-Garros Tournament. M. Schaper Decl. Ex. A § 2 ("Term"). The "status quo" therefore remains intact: AELTC and FFT simply have exercised their discretion here.

Thus, while PTPA claims this Court must "protect the rights of the plaintiffs," ECF No. 213 at 4, PTPA representatives have no "right" to the special privileges at The Championships or Roland-Garros that come with accreditation *nor are these individuals even plaintiffs in this Action*. The mere fact that PTPA representatives have received accredited access in the past does not entitle them to these credentials indefinitely. *Cf. Ancile Inv. Co. v. Archer Daniels Midland Co.*, 784 F. Supp. 2d 296, 305 (S.D.N.Y. 2011) ("[A]s a general rule, a prior course of dealing in and of itself is not a source of future contractual obligation.").[3] And while courts occasionally invoke their inherent powers to manage the "integrity of its proceedings," ECF No. 213 at 4 n.2, that does not extend to enjoining defendants over whom personal jurisdiction has not been established from engaging in conduct *outside the litigation* with respect to individuals who are *not plaintiffs*.

---

[2] *United States v. United Mineworkers of America* does not suggest otherwise, *see* ECF No. 213 at 4 n.2, as the Supreme Court found a court had authority to preserve the status quo to prevent a "serious threat to orderly constitutional government, and to the economic and social welfare of the nation." 330 U.S. 258, 290-95 (1947).

[3] Indeed, to the extent PTPA claims accreditation in the past entitles its representatives to continue receiving it going forward, the Court's lack of jurisdiction is even more apparent, as the terms of accreditation (to which PTPA agreed) for AELTC state that "the courts of England and Wales shall have exclusive jurisdiction to settle any dispute arising under or in connection with" those terms. B. Justus Decl. Ex. A § 18. Likewise, the terms of accreditation for FFT state that the accreditation regulations "shall be governed by the laws of France" and that courts "within the jurisdiction of the Paris Court of Appeal shall have exclusive jurisdiction to settle any dispute arising out of or in connection with the interpretation and/or performance of these Regulations." M. Schaper Decl. Ex. A § 4.2.

Hon. Margaret M. Garnett
May 18, 2026
Page 3

PTPA's case citations are not contrary.[4] PTPA does not cite to a single case in any jurisdiction in which a U.S. court granted the relief PTPA seeks: requiring defendants located outside of the United States to give special access to events held outside the United States to an opposing litigant's staff.

**II.    PTPA Has Not Even Attempted To Show Injunctive Relief Is Warranted.**

In addition to the jurisdictional defects noted above, PTPA fails to satisfy the elements that would justify emergency injunctive relief. Injunctive relief is an "extraordinary and drastic remedy" that is only available based on a showing that the moving party will "suffer irreparable harm absent injunctive relief," and either "is likely to succeed on the merits" or "there are sufficiently serious questions going to the merits to make them a fair ground for litigation, and that the balance of hardships tips decidedly in favor of the moving party." *Moore v. Consol. Edison Co. of N.Y.*, 409 F.3d 506, 510 (2d Cir. 2005). PTPA does not set forth a legal standard for its underlying claim, let alone how it has shown a "likelihood of success on the merits."[5]

The denial of private access credentials to PTPA representatives for The Championships and Roland-Garros also cannot plausibly cause irreparable harm—"the single most important prerequisite for the issuance of injunctive relief." *Murray v. Cuomo*, 460 F. Supp. 3d 430, 443 (S.D.N.Y. 2020) (internal quotes omitted). Again, PTPA's representatives are not plaintiffs in this Action, and PTPA itself is not a proposed class representative. *See* ECF No. 210. And even if PTPA representatives cannot access certain areas at these tournaments, which are otherwise restricted to the general public, these individuals still have the same rights as the public to access the tournament grounds and can communicate with players (i) at both tournaments outside the restricted areas, (ii) during both tournaments anywhere outside of the tournament grounds, (iii) during both tournaments by means such as Zoom, Teams, telephone, email, etc., and (iv) *in any location by any means during any other week of the year*.

PTPA's claim that access to the specific restricted areas at these tournaments is uniquely necessary to effectuate its "core initiatives, services, and programs" is not credible. *See* ECF No. 213-5; ECF No. 213-6; ECF No. 213-7. Nothing about PTPA's services—which include activities such as "advocating before sport's governing bodies," "developing medical and mental health programs," and "providing access to legal help in the context of anti-doping and anti-corruption investigation," ECF No. 213 at 2—suggests that PTPA will be irreparably harmed if its representatives cannot speak to players in person in specific private areas at these two events.

---

[4] *See Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) (approving sanctions where the defendant deliberately withheld information in discovery); *Ins. Co. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701-09 (1982) (imposing sanctions for repeatedly failing to comply with discovery orders); *Bowens v. Atl. Maint. Corp.*, 546 F. Supp. 2d 55, 73 (E.D.N.Y. 2008) (imposing sanctions against defendant for threatening or attempting to pay putative class members to drop suit); *see also Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen*, No. 14-CV-1112, 2015 WL 13840969, at *11-12 (S.D.N.Y. Mar. 16, 2015) (enjoining conduct designed to circumvent an injunction).

[5] PTPA's invocation of *EEOC v. International Union of Operating Engineers* is plainly inapplicable, as the Court there considered whether the evidence presented a case of retaliation against witnesses under Title VII. 438 F. Supp. 876, 879-80 (S.D.N.Y. 1977). No comparable rule exists here.

Hon. Margaret M. Garnett
May 18, 2026
Page 4

PTPA's claim that AELTC and FFT are sending a "chilling message to professional tennis players that they will be ostracized [and] unsupported" if they associate with this Action is baseless. ECF No. 213 at 3. PTPA does not claim that any professional tennis players—including other named plaintiffs—have been banned from The Championships or Roland-Garros or otherwise treated negatively by AELTC or FFT based on this Action. Nor has PTPA put forth any evidence that these players would suffer from PTPA representatives' inability *independently* to obtain access to the private credentialed areas on the tournament grounds. Indeed, PTPA has not put forth any evidence that any named player-Plaintiff is even participating in either tournament or has requested access for a PTPA representative and been denied.

Finally, any claim of "emergency" based on the proximity of the tournaments is due to PTPA's lack of diligence. PTPA did not reach out for credentials to either AELTC or FFT until April 13, 2026—just a month before the Roland-Garros tournament will begin—and then did not file this letter request until a full month later. PTPA cannot claim emergency after its own delay.

### III.    PTPA Did Not Comply With Local Rules Or The Court's Individual Rules.

The Motion disregards the procedural requirements set forth in the Local Rules and the Court's Individual Rules. The Local Rules for the Southern District of New York allow for letter motions for only discrete categories. *See* Local Civ. R. 7.1(a). This includes "[a]pplications for extensions or adjournments, applications for a pre-motion conference, and similar non-dispositive matters." *Id.* 7.1(e).[6] PTPA's self-styled "Emergency Motion to Preserve Status Quo and Enjoin Retaliation Against Plaintiff PTPA" is an inappropriate attempt to circumvent the proper procedural steps and legal standard to obtain injunctive relief.

Moreover, PTPA filed its Motion without any outreach to or effort to meet and confer with counsel for AELTC or FFT. The Court's rules require that a party "must confer with his or her adversary before making an application" for a temporary restraining order—which Plaintiffs' letter-motion effectively seeks—"unless the requirements of Fed. R. Civ. P. 65(b) are met." Judge Garnett Individual Rules & Practices, Rule II.B.11. These requirements have not been satisfied here. PTPA made no efforts to give notice to AELTC or FFT prior to filing its "emergency" request. As for the requirement under Fed. R. Civ. P. 65(b) to set forth "specific facts" that show "that immediate and irreparable injury," as detailed above, PTPA's declarations cannot overcome the obvious alternative means PTPA has to access players at and during The Championships, Roland-Garros, and beyond.

Accordingly, AELTC and FFT request that the Court deny PTPA's letter motion both for its lack of merit and procedural deficiency.

---

[6] *See also* S.D.N.Y. ECF Rules & Instructions, 13.1 (providing acceptable list of letter-motions).

Hon. Margaret M. Garnett
May 18, 2026
Page 5

Respectfully submitted,

/s/ Bradley Justus
Bradley Justus (*pro hac vice*)
Jeny M. Maier
Allison Vissichelli (*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
1901 L St NW
Washington, DC 20036
Telephone: (202) 912-4700
bjustus@axinn.com
jmaier@axinn.com
avissichelli@axinn.com

*Attorneys for Defendant The All England Lawn Tennis Club (Championships) Limited*

/s/ Michael Schaper (on consent)
Michael Schaper
Jacob Hochberger
DEBEVOISE & PLIMPTON LLP
66 Hudson Blvd.
New York, NY 10001
Telephone: (212) 909-6000
mschaper@debevoise.com

Tim Cornell
DEBEVOISE & PLIMPTON LLP
801 Pennsylvania Ave NW
Washington, DC 20004
Telephone: (202) 383-8000

*Attorneys for Defendant Fédération Française de Tennis*

axinn.com