**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Vasek Pospisil, Nicholas Kyrgios, Anastasia Rodionova, Nicole Melichar-Martinez, Saisai Zheng, John-Patrick Smith, Noah Rubin, Aldila Sutjiadi, Varvara Gracheva, Tennys Sandgren, Sachia Vickery, Nicolas Zanellato, Christian Harrison, Ingrid Neel, and Marco Trungelliti, on behalf of themselves and all others similarly situated,<br><br>-and-<br><br>The Professional Tennis Players Association,<br><br>Plaintiffs,<br><br>vs.<br><br>ATP Tour, Inc., WTA Tour, Inc., Tennis Australia Limited, Fédération Française de Tennis, All England Lawn Tennis Club (Championships) Limited, and United States Tennis Association Incorporated,<br><br>Defendants. | Civil Action No. 1:25-cv-02207-MMG |

**PLAYER PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR APPROVAL OF THE NOTICE PLAN**

## TABLE OF CONTENTS

INTRODUCTION ........ 1

BACKGROUND ........ 2

THE PROPOSED NOTICE PLAN ........ 4

I. Direct Individual Notice ........ 5

II. Dedicated Website and Telephone Support ........ 7

III. Media Campaign ........ 7

ARGUMENT ........ 8

I. The Proposed Notice Plan is Reasonably Designed to Reach the Damages Class and Satisfies Rule 23 ........ 8

A. Legal Standard ........ 8

B. The Proposed Notice Plan is the Best Notice Practicable Under the Circumstances and Satisfies the Requirements of Due Process ........ 10

C. The Proposed Notice Plan Satisfies Fed. R. Civ. P. 23(c) and Due Process ........ 14

II. The Class Notice Administrator Has the Experience and Expertise Necessary to Provide Adequate Notice ........ 16

III. The Proposed Notice Schedule is Appropriate ........ 16

CONCLUSION ........ 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Actos Antitrust Litig.*,
2024 WL 5009620 (S.D.N.Y. Dec. 7, 2024) ....15

*Batchelar v. Interactive Brokers, LLC*,
2026 WL 207957 (D. Conn. Jan. 27, 2026) ....10

*Belton v. GE Cap. Consumer Lending, Inc.*,
2022 WL 407404 (S.D.N.Y. Feb. 10, 2022) ....13

*Cazares v. AVA Rest. Corp.*,
2017 WL 1229727 (E.D.N.Y. Mar. 31, 2017) ....11

*Chalmers v. City of New York*,
2024 WL 6837879 (S.D.N.Y. Nov. 26, 2024) ....14

*Charron v. Pinnacle Grp. N.Y. LLC*,
874 F. Supp. 2d 179 (S.D.N.Y. 2012), *aff'd sub nom. Charron v. Wiener*, 731 F.3d 241 (2d Cir. 2013) ....17

*Chen v. Oceanica Chinese Rest., Inc.*,
2014 WL 1338315 (E.D.N.Y. Apr. 2, 2014) ....11

*Chen v. Thai Greenleaf Rest. Corp.*,
2024 WL 3742718, at *5 (E.D.N.Y. Aug. 9, 2024) ....11

*Christine Asia Co. v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ....13

*City of Philadelphia v. Bank of Am. Corp.*,
2023 WL 6633559 (S.D.N.Y. Oct. 12, 2023) ....11

*Clark v. Ecolab Inc.*,
2009 WL 6615729, at *6 (S.D.N.Y. Nov. 17, 2009) ....10

*Delk v. Harborview Health Sys. Inc.*,
2025 WL 2653903 (E.D.N.Y. Sept. 16, 2025) ....11

*In re Domestic Airline Travel Antitrust Litig.*,
322 F. Supp. 3d 64 (D.D.C. 2018) ....11

*Dornberger v. Metro. Life Ins. Co.*,
203 F.R.D. 118 (S.D.N.Y. 2001) ....13

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156, 173 (1974)....................9

*In re Glob. Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004)....................9, 15

*Gonzalez v. City of New York*,
396 F. Supp. 2d 411 (S.D.N.Y. 2005)....................12

*In re Holocaust Victim Assets Litig.*,
105 F. Supp. 2d 139 (E.D.N.Y.2000)....................14

*In. re GSE Bonds Antitrust Litig.*,
414 F. Supp. 3d 686 (S.D.N.Y. 2019)....................15

*In re Initial Pub. Offering Sec. Litig*.,
260 F.R.D. 81 (S.D.N.Y. 2009)....................11

*Jermyn v. Best Buy Stores, L.P.*,
2010 WL 5187746 (S.D.N.Y. Dec. 6, 2010)....................14

*Kessler v. Quaker Oats Co.*,
2025 WL 815347 (S.D.N.Y. Mar. 13, 2025)....................12

*Markson v. CRST Int'l, Inc.*,
2022 WL 805615 (C.D. Cal. Feb. 24, 2022)....................11

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009)....................12

*In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*,
246 F.R.D. 156 (S.D.N.Y. 2007)....................8, 9

*In re Michael Milken & Assocs. Sec. Litig*.,
150 F.R.D. 57, 60 (S.D.N.Y. 1993)....................10

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306, 314 (1950)....................9

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig*.,
330 F.R.D. 11 (E.D.N.Y. 2019)....................10, 15

*Peni v. Daily Harvest, Inc.*,
2024 WL 4564198 (S.D.N.Y. Oct. 24, 2024)....................12

*Pinsker v. Borders, Inc*. (*In re BGI, Inc.)*,
465 B.R. 365 (Bankr. S.D.N.Y. 2012)....................9

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.*,
164 F.R.D. 362, 368 (S.D.N.Y. 1996) ....................................................................12

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
527 F. Supp. 3d 269 (E.D.N.Y. 2021) ...............................................................10, 12

*Sanborn v. Viridian Energy, Inc.*,
2018 WL 940542 (D. Conn. Feb. 16, 2018) ..........................................................14

*In re Stock Exchanges Options Trading Antitrust Litig.*,
2006 WL 3498590 (S.D.N.Y. Dec. 4, 2006) ...........................................................10

*In re W. Union Money Transfer Litig.*,
2004 WL 3709932 (E.D.N.Y. Oct. 19, 2004)...........................................................14

*Whelan v. Diligent Corp.*,
349 F.R.D. 79 (S.D.N.Y. 2025) ..............................................................................11

**Statutes**

Sherman Act Sections 1 and 2, 15 U.S.C. §§ 1, 2 .......................................................3, 6

**Other Authorities**

Fed. R. Civ. P. 23(c) ........................................................................................... *passim*

## INTRODUCTION

Pursuant to this Court's January 28, 2026 Order, ECF No. 204, which granted Preliminary Approval of the Damages Settlement between the Player Plaintiffs[1] and Defendant Tennis Australia Limited (the "Preliminary Approval Order"), Plaintiffs hereby submit a proposed plan for administering notice to the Putative Damages Class (the "Notice Plan") that provides the best notice practicable under the circumstances. As set forth below, Plaintiffs' Notice Plan provides both direct and indirect notice to the Putative Damages Class. Direct notice will be effectuated via emails sent by the proposed Notice Class Administrator to the professional tennis players who have participated in the Australian Open since 2021 and/or their agent representatives. The proposed Notice Plan also includes indirect notice to the Putative Damages Class through an extensive media campaign. Plaintiffs' Notice Plan complies with due process, meets the requirements of Rule 23(c)(2)(B), and is designed to provide individual and personal notice to all members of the Putative Damages Class. Plaintiffs have designed the Notice Plan in collaboration with Verita Global ("Verita"), an experienced notice administrator in class actions. As part of the Notice Plan, Plaintiffs seek approval of Verita to act as the Class Notice Administrator.

The form of both the proposed Long and Short Form Notices are attached hereto to the declaration of Janeth Antonio (the "Antonio Decl.") as **Exhibits A** (the "Short Form Notice") and **B** (the "Long Form Notice") together "the Notice Forms."[2]

Plaintiffs' proposed Notice Plan consists of the following components:

1) Verita will email the Short Form Notice (**Exhibit A** to the Antonio Declaration) ("Exhibit A") to all class members for whom the parties have a valid email

---

[1] The Player Plaintiffs include Vasek Pospisil, Nicholas Kyrgios, Anastasia Rodionova, Nicole Melichar-Martinez, Saisai Zheng, John-Patrick Smith, Noah Rubin, Aldila Sutjiadi, Varvara Gracheva, Tennys Sandgren, Sachia Vickery, Nicolas Zanellato, Christian Harrison, Ingrid Neel, and Marco Trungelliti.

[2] Ms. Antonio is the Director – Client Services, Settlement Administrations at Verita.

address. The Short Form Notice will include a URL to a dedicated website that will contain additional information such as the Long Notice Form (**Exhibit B** to the Antonio Declaration) ("Exhibit B") and relevant litigation documents.

2) If after three attempts to send the Short Form Notice via email, the email address is determined to be undeliverable, Verita will conduct public research to locate the class member's address. Verita will then print and send by regular mail the Long Form Notice (**Exhibit B**) to those class members. Should such notice be returned as undeliverable, mailing will be re-attempted to any mailing address obtained through a reasonable investigation.

3) Verita will implement a robust media campaign consisting of earned media via digital media, including programmatic media advertising via one or more platforms, such as the Google Display Network, social media advertising via Facebook, Instagram, and Reddit, display advertising on one or more industry-related websites and/or e-newsletters, and paid search advertising in one or more platforms, such as Google Ads. Additional efforts will include direct outreach to one or more sports agencies that represent players associated with the ATP or WTA, across all rankings to inform their clients of the Damages Settlement opt-out.

4) A dedicated website will be set up where class members can obtain information about the litigation and the Preliminary Approval Order. Contact information for Damages Class Counsel will be distributed to all class members through the website. Verita has established and will maintain the website www.TennisPlayersLitigation.com, which shall contain relevant case documents, important dates, and answers to class members' frequently asked questions. Verita will also establish a toll-free telephone helpline.

The Notice Plan is reasonably designed to ensure that all Damages Settlement Class Members are informed about the proposed Damages Settlement between the Player Plaintiffs and Tennis Australia, the Preliminary Approval Order, their rights as class members, and their option to request exclusion from the Damages Settlement Class. Plaintiffs respectfully request that the Court approve the Notice Plan, the Notice Forms, and the Class Notice Administrator.

## BACKGROUND

Plaintiffs include a group of fifteen men and women professional tennis players and the Professional Tennis Players Association, an organization that advocates for the rights of professional tennis players. Together they filed this action against Defendants ATP Tour, Inc. and

WTA Tour, Inc. (together, "Tour Defendants") as well as Tennis Australia Limited, Fédération Française de Tennis, All England Lawn Tennis Club (Championships) Limited, and United States Tennis Association Incorporated (together, "Grand Slam Defendants"), alleging that "Defendants conspired to, among other things, (1) fix the amount of prize money that professional tennis tournaments may award to professional tennis players, (2) restrict the amount and extent of the endorsements professional tennis players may sign, (3) restrict the number and types of companies that may sponsor professional tennis players, (4) require professional tennis players to work on restrictive terms, (5) compel professional tennis players to participate in specified professional tennis tournaments, (6) require players to refrain from playing in professional tennis tournaments other than those owned and operated by Defendants and their co-conspirators, and (7) refrain from competing with each other for the services of professional tennis players, in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2." Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Approval of Damages Class Settlement with Tennis Australia (ECF No. 199 at 2-3); *see also* Plaintiffs' Third Amended Complaint (ECF No. 210) ("TAC").

On January 16, 2026, Plaintiffs moved for this Court's preliminary approval of the Damages Class Settlement with Defendant Tennis Australia. *See* ECF No. 199. On January 28, 2026, this Court granted preliminary approval and ordered Plaintiffs' counsel to file a motion for approval of the Notice Plan by July 22, 2026. *See* Preliminary Approval Order at 2.

The Damages Settlement Class is defined as follows:

> 'ATP Damages Class' means all male tennis players who compete in, have competed in, or will compete in any ATP-sanctioned tennis tournament or any of the four Grand Slams between March 18, 2021, through the date of final judgment in this Action.
>
> 'WTA Damages Class' means all female tennis players who compete in, have competed in, or will compete in any WTA-sanctioned tennis tournament or any of

> the four Grand Slams between March 18, 2021, through the date of final judgment in this Action.

ECF No. 199 at 5-6; Preliminary Approval Order at 2. The Court further stayed all proceedings in this action with respect to Tennis Australia "except as may be necessary to implement the Damages Settlement set forth in the Damages Settlement Agreement or comply with the terms thereof." Preliminary Approval Order at 4.[3]

To prepare for individual notice, Plaintiffs' counsel requested that Tennis Australia provide Verita, the proposed Class Notice Administrator, with player contact information (including name, email address, physical address, and phone number) for all Damages Settlement Class Members. Tennis Australia agreed to provide the email addresses it receives from players when they enter the Australian Open directly to the Class Notice Administrator solely for the purposes of administering the notice process.

Plaintiffs provided drafts of the proposed Notice Forms to Tennis Australia, and on July 21, 2026, Plaintiffs implemented Tennis Australia's revisions to the proposed Notice Forms.

## THE PROPOSED NOTICE PLAN

Verita, the proposed Class Notice Administrator, is highly experienced and nationally recognized in the field of legal notice and has administered hundreds of class action notice plans throughout the country. *See* Verita Resume (**Exhibit C** to the Antonio Decl.) ("Exhibit C").

There are thousands of active professional tennis players and retired professional tennis players who meet the requirements of the Proposed Settlement Class Definitions as defined in Player Plaintiffs' Motion for Preliminary Approval. ECF No. 199 at 5-6. The scope of the Proposed

---

[3] Plaintiffs, the Putative Injunctive Relief Classes (together, the "Injunctive Relief Class Plaintiffs") and Tennis Australia also reached an agreement in principle to settle Plaintiffs' separate claims for injunctive relief that is the subject of Plaintiffs' Motion to Stay Injunctive Relief Class Claims Against Tennis Australia. *See* ECF No. 202.

Settlement Class is narrow as compared to the largest classes to which Verita has administered notice. *See* **Exhibit C**.

## I. Direct Individual Notice

There are approximately 4,000 active professional tennis players and thousands more retired professional tennis players who meet the requirements of the Proposed Settlement Class Definitions as defined in Player Plaintiffs' Motion for Preliminary Approval. ECF No. 199 at 5-6. These active and retired players are geographically dispersed around the world.

Considering the uniquely nomadic lifestyle of professional tennis players, the Notice Plan calls for electronic methods of notice to maximize the likelihood that direct notice reaches as many class members as possible.

The Class Notice Administrator will email the Short Form Notice to all Damages Settlement Class Members for whom the Class Notice Administrator has been provided an email address. The Short Form Notice shall be embedded in the body of the email so as to avoid spam filters that can be triggered by email attachments. The Class Notice Administrator will attempt delivery multiple times over 48 hours and re-attempt delivery of blocked emails once the blocks have been removed.

The Short Form Notice, which is attached as **Exhibit A** to the Antonio Declaration, includes the following information:

- Identification of the parties and class member identification, including who may be a member of the settlement class;
- A brief description of the Damages Settlement, including that the Damages Settlement is between only the Damages Class and Tennis Australia Limited, and only resolves claims for monetary damages and/or monetary relief;
- An explanation that the lawsuit continues against non-settling Defendants;
- A summary of the allegations in the lawsuit;

- Key deadlines, such as the opt-out/objection deadline and the Fairness Hearing date, to be set by the Court;

- The consequences of inaction, including a warning that taking no action means the recipient will be bound by the Damages Settlement; and

- Contact information for the Class Settlement Administrator, including the settlement website (www.TennisPlayersLitigation.com) and a phone number placeholder.

In the event that an email notice is determined to be undeliverable, the Class Notice Administrator will conduct public research to identify any physical mailing address associated with the class member's email address. For any such addresses the Class Administrator is able to identify, the Class Notice Administrator shall send the Long Form Notice to the class member via first-class United States mail. Should any mailed Notice be returned as undeliverable, the Class Notice Administrator will conduct a reasonable investigation into an alternative address and will re-attempt delivery.

The Long Form Notice, which is attached as **Exhibit B** to the Antonio Declaration, includes the same information as that which is included in the Short Form Notice, as well as the following information:

- Background information about the lawsuit, including the presiding judge, full case information, and the purpose of the notice;

- Detailed allegations, enumerating the specific alleged antitrust violations (price-fixing of prize money, NIL/sponsorship restrictions, scheduling requirements, non-compete agreements, etc.) under Sections 1 and 2 of the Sherman Act;

- The reason for the Damages Settlement and that claims remain against non-settling Defendants;

- The Damages Settlement class definitions and the named plaintiffs;

- An options table, summarizing the three choices (opt out, object, do nothing) and their consequences as well as a decisions flowchart to help class members weigh their options.

- The Damages Settlement benefits, detailing Tennis Australia's cooperation obligations; and

- An explanation of the release of claims, including what claims class members give up (monetary damages against Tennis Australia) and what is preserved (claims against other Defendants, injunctive/equitable relief).

## II. Dedicated Website and Telephone Support

Under the Notice Plan, the Class Notice Administrator will establish a customized case website and toll-free telephone helpline to provide information and further disseminate notice.

The Class Notice Administrator has secured the domain name www.TennisPlayersLitigation.com for the dedicated website, which is clear in its purpose and can be used for any subsequent administration purposes. On this website, the Class Notice Administrator will post relevant information such as key case documents (*e.g.*, TAC, Preliminary Approval Order), important dates in connection with the Settlement, the Short and Long Form Notices, as well as answers to Frequently Asked Questions about the lawsuit and Damages Settlement.

The telephone helpline will field calls, answer frequently asked questions using Interactive Voice Response, and allow callers to request a copy of the Long Form Notice or reach a live operator.

## III. Media Campaign

In addition to the direct notice described above, the Notice Plan includes a comprehensive media campaign. The Proposed Notice is also designed to adhere to the Federal Judicial Center's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*, which considers a notice plan to be effective if it has a high reach (above 70%). The proposed Notice Plan is expected to reach the vast majority of Damages Settlement Class Members and exceed the 70% benchmark for US class members with additional media targeted to international class members. The media campaign may consist of the following:

- *PR Newswire* press release distributions in both the US and UK, alongside press release distributions in Eastern and Western Europe, which will include the Czech Republic,

France, Germany, Italy, Serbia and Spain, as well as single country press release distributions in Argentina, Australia and Brazil;

- Direct outreach to sports agencies who represent professional tennis players associated with the ATP or WTA, across all rankings, to inform their clients of the Damages Settlement opt-out, which may include, but are not limited to, Creative Artists Agency (CAA), Octagon, GSE Worldwide (GSE), SeventyTwo Sports Group, Elite Athletes Agency, StarWing Sports, and Wasserman;

- Over 5MM impressions purchased programmatically on various websites and mobile apps via one or more ad exchanges, such as the Google Display Network, and on the social media platforms Facebook, Instagram, and Reddit. Impressions may also be purchased to run display ads on one or more industry-related websites and/or e-newsletters, which may include, but are not limited to, either Tennis.com, TennisChannel.com, TennisViewMag.com, MyTennisHQ.com, LastWordOnTennis.com, and/or TennisHead.net, among others. Programmatic display and social media impressions will be targeted to US adults 18+ nationwide, as well as adults 18+ located in the following top 10 countries, outside the US, where ATP and WTA players currently reside: Argentina, Australia, Brazil, the Czech Republic, France, Germany, Italy, Serbia, Spain, and the United Kingdom. These impressions will be behaviorally targeted to tennis players, tennis professionals, professional athletes, those who have attended tennis matches, those who have expressed interest in the ATP, WTA, etc. Impressions may appear on desktop, mobile, and/or OTT devices, including tablets, smartphones, and/or smart TVs over a 30-day duration; and

- Paid search advertising, including web traffic driven by bidding on tennis-related legal keywords, such as “ATP Lawsuit,” “WTA Lawsuit,” “TA Settlement,” “Professional Tennis Settlement,” “Tennis Player Class Action,” etc., to direct users who are actively searching for information about professional tennis lawsuits to the official case website.

## ARGUMENT

### I. The Proposed Notice Plan is Reasonably Designed to Reach the Damages Class and Satisfies Rule 23

#### A. Legal Standard

Under Federal Rule of Civil Procedure 23(c)(2)(B), “the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.” The Second Circuit has held that there are no rigid standards that govern the contents and method of notice; instead, the governing standard is “generally that of reasonableness.” *In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec.*

*Litig.,* 246 F.R.D. 156, 165 (S.D.N.Y. 2007); *see also* Fed. R. Civ. P. 23(c)(2) advisory committee's note to the 2018 amendment (explaining that "the amended rule relies on courts and counsel to focus on the means or combination of means most likely to be effective in the case before the court"). "Notice need not be perfect, but need be only the best notice practicable under the circumstances[.]" *Merrill Lynch,* 246 F.R.D. at 166. And while the notice must also satisfy due process, "[c]onformity with the requirements of Rule 23(c)(2) fulfills the due process mandate." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 448 (S.D.N.Y. 2004).

"As for the manner of notice, due process requires that 'notice [be] reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Pinsker v. Borders, Inc*. (*In re BGI, Inc.)*, 465 B.R. 365, 378 (Bankr. S.D.N.Y. 2012) (emphasis in original) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). Under Federal Rule of Civil Procedure 23(c)(2)(B), "notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." "[E]ach and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members." *Merrill Lynch,* 246 F.R.D. at 166. For "opt-out class actions, due process and the Federal Rules require individual notice only to 'all class members whose names and addresses may be ascertained through reasonable effort.'" *Glob. Crossing*, 225 F.R.D. at 448 (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974)).

As to the contents of the notice, Federal Rule of Civil Procedure 23(c)(2)(B) requires that the "notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (iv)

that the court will exclude from the class any member who requests exclusion; (v) the time and manner for requesting exclusion; and (vi) the binding effect of a class judgment on members under Rule 23(c)(3)." "Notice is generally deemed reasonable if the average person understands the terms of the proposed settlement and the options provided to class members thereunder." *In re Stock Exchanges Options Trading Antitrust Litig.*, 2006 WL 3498590 at *6 (S.D.N.Y. Dec. 4, 2006). Rule 23 notice satisfies due process "when it describes the terms of the settlement generally, informs the class about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 59 (E.D.N.Y. 2019) (internal quotations omitted) (citing *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) and *Clark v. Ecolab Inc.*, 2009 WL 6615729, at *6 (S.D.N.Y. Nov. 17, 2009)).

### B. The Proposed Notice Plan is the Best Notice Practicable Under the Circumstances and Satisfies the Requirements of Due Process

The manner of notice to be employed under the Notice Plan facilitates the best notice practicable under the circumstances. Given the geographically diverse and nomadic nature of the class, the Notice Plan utilizes a variety of notice formats to ensure the widest reach practicable, with the goal of reaching "a large percentage of the class." *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 527 F. Supp. 3d 269, 273 (E.D.N.Y. 2021). As detailed below, the Notice Plan is "reasonably calculated under all of the conditions to apprise Damages Settlement Class Members of the nature of this action, the scope of the Settlement Class, the terms of the Settlement, the rights of Settlement Class Members to object to or opt out of the Settlement and the process for doing so, and the date, time, and location of Final Fairness Hearing." *Batchelar v. Interactive Brokers, LLC*, 2026 WL 207957, at *3 (D. Conn. Jan. 27, 2026).

Specifically, the Class Notice Administrator will contact players directly via email. Antonio Decl. ¶¶ 5-7. *Delk v. Harborview Health Sys. Inc.*, 2025 WL 2653903, at *8 (E.D.N.Y. Sept. 16, 2025) (quoting *Chen v. Thai Greenleaf Rest. Corp*., 2024 WL 3742718, at *5 (E.D.N.Y. Aug. 9, 2024) ("Courts have held that the dissemination of notices via mail, email, and text are appropriate vehicles."). In order to effectuate direct notice, Plaintiffs requested, and Tennis Australia agreed to provide, the email addresses Tennis Australia receives from players who participate in the Australian Open directly to the Class Notice Administrator. Tennis Australia is "best positioned to identify their current and former [players] who are members of the settlement class." *Markson v. CRST Int'l, Inc.*, 2022 WL 805615, at *3 (C.D. Cal. Feb. 24, 2022) (court requiring non-settling defendants to provide contact information of the settlement class); *see also In re Domestic Airline Travel Antitrust Litig.*, 322 F. Supp. 3d 64, 66 (D.D.C. 2018) (ordering non-settling defendants to provide member information for direct notice).

The Class Notice Administrator will rely on contact information procured from Tennis Australia to achieve direct notice. *See City of Philadelphia v. Bank of Am. Corp*., 2023 WL 6633559, at *2 (S.D.N.Y. Oct. 12, 2023) (finding that procuring contact information from defendants is a sufficient method for achieving direct notice); *see also Chen v. Oceanica Chinese Rest., Inc*., 2014 WL 1338315, at *8 (E.D.N.Y. Apr. 2, 2014) (directing defendants to produce to plaintiffs the names, last mailing addresses, alternate address, and phone numbers of all potential class members); *see also Cazares v. AVA Rest. Corp*., 2017 WL 1229727, at * 2 (E.D.N.Y. Mar. 31, 2017) (same); *see also Whelan v. Diligent Corp*., 349 F.R.D. 79, 86 (S.D.N.Y. 2025) (same).

Moreover, as another method of effectuating notice, the Class Notice Administrator will provide notice directly to players' agents, utilizing email addresses provided by Tennis Australia directly to the Class Notice Administrator. *See In re Initial Pub. Offering Sec. Litig*., 260 F.R.D.

81, 120 (S.D.N.Y. 2009) (approving notice plan where, in addition to mail notice, the administrator notified "2,000 brokers and nominee owners of the proposed settlement and request[ed] that they provide a list of beneficiaries or that they forward the notice on to their beneficiaries."); *see also Gonzalez v. City of New York*, 396 F. Supp. 2d 411, 417–18 (S.D.N.Y. 2005) ("notice conferred upon a class member's counsel may be imputed to the class member himself.") (quoting *In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 164 F.R.D. 362, 368 (S.D.N.Y. 1996)).

Such efforts are regularly found to be reasonable efforts to provide notice. *See, e.g.*, *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 527 F. Supp. 3d 269, 272 (E.D.N.Y. 2021) (approving plan to notify consumer class members via news releases over PR Newswire as well as a "30-day campaign to distribute at least 204 million internet impressions over leading networks, including Google's advertising network and social media websites such as Facebook, Instagram, and YouTube."); *Peni v. Daily Harvest, Inc.,* 2024 WL 4564198, at *5 (S.D.N.Y. Oct. 24, 2024) (holding that notice plan consisting only of email notice and a settlement website, designed to notify members of a putative class that had purchased a product over the internet, was reasonable under the circumstances); *Kessler v. Quaker Oats Co.,* 2025 WL 815347, at *2 (S.D.N.Y. Mar. 13, 2025) (approving plan consisting of notification via social media advertising, a toll free telephone number, and a settlement website, to notify a class of purchasers of certain Quaker products).

Employing these forms of direct notice will ensure that Damages Settlement Class Members receive notice no matter where in the world their busy match schedule takes them. *See In re Marsh & McLennan Companies, Inc. Sec. Litig.*, 2009 WL 5178546, at *24 (S.D.N.Y. Dec. 23, 2009) (finding that the notice plan satisfied due process where "class counsel acted reasonably in selecting means likely to inform persons affected" and "notice of the settlement was reasonably

provided through individually mailed notice to all known and reasonably identifiable class members, publication in several major newspapers[.]") (quotation marks and citation omitted); *see also Belton v. GE Cap. Consumer Lending, Inc.*, 2022 WL 407404, at *6 (S.D.N.Y. Feb. 10, 2022) (finding that the notice plan afforded class members due process where notice was provided "in a timely fashion," was "sufficiently detailed" as to the rights of Settlement Class Members and the process for opting out, and included contact information for Class Counsel).

The Class Notice Administrator has secured the domain name www.TennisPlayersLitigation.com which will host information about the Settlement, including information about the class member's rights and options, key litigation documents and an FAQ section. Antonio Decl. ¶ 11. The Class Notice Administrator will also commence a comprehensive media campaign to target online forums with which current and retired professional tennis players are likely to interact, such as industry-related websites, and targeted Google advertising, and will coordinate with prominent sports agencies to engage with class members via as many touch points as possible. Antonio Decl. ¶ 10. Providing these additional touch points will significantly increase the likely reach of notice to class members, satisfying Plaintiffs' obligation to make "reasonable efforts . . . to notify all members of the class." *See Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 124 (S.D.N.Y. 2001) (finding notice to be reasonable where direct contact information was not available so Plaintiff published notice in "two newspapers with national and international reach."); *see also Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *16 (S.D.N.Y. Oct. 16, 2019) (approving notice plan where notice administrator mailed copies of the notice packet, published notice in prominent newspapers, posted relevant notice materials and case documents on a website dedicated to the Settlement, and purchased targeted search engine advertising).

The Notice Plan's multifaceted approach, which employs multiple types of direct and indirect notice is more than "reasonably likely to notify members of the Settlement Class[] of the Settlement" and thus satisfies both Rule 23 and due process requirements. *Sanborn v. Viridian Energy, Inc.*, 2018 WL 940542, at *6 (D. Conn. Feb. 16, 2018); *see also Chalmers v. City of New York*, 2024 WL 6837879, at *10 (S.D.N.Y. Nov. 26, 2024) (finding the notice plan to be the "best notice practicable under the circumstances" where settlement administrator mailed Notice to class members, maintained a Settlement website, took reasonable steps to obtain correct contact information, and attempted re-mailings for returned Notices); *Jermyn v. Best Buy Stores, L.P.*, 2010 WL 5187746, at *4-5 (S.D.N.Y. Dec. 6, 2010) (approving notice distribution plan consisting of case website, state-wide newspaper publication, and publication on defendants' website); *In re W. Union Money Transfer Litig.*, 2004 WL 3709932, at *5 (E.D.N.Y. Oct. 19, 2004) (approving notice plan comprised of direct mail where possible, publication in newspapers and magazines, press release, and establishment of settlement website and toll-free telephone hotline); *In re Holocaust Victim Assets Litig.*, 105 F. Supp. 2d 139, 144 (E.D.N.Y.2000) (approving multi-faceted notice plan involving direct mail, worldwide publication, public relations, and Internet and grass roots community outreach in light of inability to send notice exclusively by direct mail).

### C. The Proposed Notice Plan Satisfies Fed. R. Civ. P. 23(c) and Due Process

The Notice Plan complies with Fed. R. Civ. P. 23(c)(2)(B) because it informs class members of their rights in connection with the Proposed Damages Settlement.

The Long Form Notice, which reflects the substance of the information that will be provided on the website, provides an easy to understand and comprehensive review of the case, the terms of the Damages Settlement, and options for class members, including visuals and flowcharts to support class member's review and understanding of the settlement. **Exhibit B**. In addition to this information, the Long Form Notice advises the Damages Settlement Class

Members: (1) that they do not need to do anything further at this point to receive the benefit of any settlement or judgment, but will be bound by the result of the litigation and will not be able to bring any other claims arising from these allegations against Tennis Australia, ***id.* at 9**; (2) that they may hire their own attorney, ***id.***; and (3) of their rights to opt out, provided that they notify the Class Notice Administrator and Plaintiffs' Counsel in writing before the applicable deadline, but that they will not receive any benefit from any class settlement or judgment if they opt out, ***id.* at 10-11**.

The Short Form Notice provides the same information provided in the Long Form Notice in summary form and directs Damages Settlement Class Members on where they can obtain more information. **Exhibit A.**

In sum, the Notice Plan provides the information required in "plain, clear terms" necessary to inform the Putative Class Damages members of their rights and option to opt out, and thus are "sufficient and reasonable." *In re Payment Card*, 330 F.R.D. at 59 (E.D.N.Y. 2019); *see also Passafiume v. NRA Grp., LLC*, 274 F.R.D. 424, 431 (E.D.N.Y. 2010) (holding that Form Notice satisfied Rule 23(c)(2)(B) when it included "the nature of the lawsuit, the class, the settlement terms, and the options available to the members of the class.").

Courts routinely approve class notice plans that include the information set forth above. *See, e.g., In re Actos Antitrust Litig.*, 2024 WL 5009620, at *2 (S.D.N.Y. Dec. 7, 2024); *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 703 (S.D.N.Y. 2019); *Payment Card*, 330 F.R.D. at 59. By satisfying Rule 23(c)(2) and constituting reasonable efforts to reach Damages Settlement Class Members, the Notice Plan and Notice Forms comply with due process. *See Glob. Crossing,* 225 F.R.D. at 448. Further, Tennis Australia has stated that it does not object to the contents of the

notice and the outline of the Notice Plan. Accordingly, Plaintiffs respectfully request that the Court approve the Notice Plan.

## II. The Class Notice Administrator Has the Experience and Expertise Necessary to Provide Adequate Notice

Verita is an industry leader in Class Notice Administration, having acted as the Class Notice Administrator in more than 10,000 large class action settlements. Verita has managed the Notice in a number of sports antitrust cases, including *In re National Collegiate Athletic Association Athletic Grant-in-Aid Cap Antitrust Litigation*, No. 4:14-md-02541-CW (N.D. Cal.), *O'Bannon v. National Collegiate Athletic Association*, No. 4:09-cv-03329-CW (N.D. Cal.), and *In Re College Athlete NIL Litigation,* No. 4:20-cv-03919-CW (N.D. Cal.). Moreover, Verita has managed the Notice in a variety of antitrust class actions including *Newby v. Enron Corp.,* 4:01-cv-3624 (S.D. Tex.), *In re: Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices and Products Liability Litigation*, No. 8:10-ml-02151 (C.D. Cal.), *In re Thalomid and Revlimid Antitrust Litigation*, No. 2:14-cv-06997 (D. N.J.), and *Liberty Capital Group v. Oppenheimer Holdings Inc. et al*, No. 1:2025-cv-04822 (S.D.N.Y.), to name a few. Verita has been recognized as one of the top claims administration firms by industry publications, including The Recorder, The New York Law Journal, and The National Law Journal. Accordingly, Verita is uniquely capable of administering this Damages Settlement.[4]

## III. The Proposed Notice Schedule is Appropriate

Plaintiffs propose that within 30 days of the later of (a) an Order from this Court approving the Notice Plan, or (b) Defendant Tennis Australia's production of class member contact information, the Class Notice Administrator shall: (i) initiate sending the Short Form Notice and

---

[4] More information about Verita's experience can be found at https://veritaglobal.com.

Long Form Notice directly to all class members for whom Defendant has provided email addresses; (ii) initiate the media campaign described above and in the Antonio Declaration; (iii) complete the dedicated website for the Settlement and (iv) coordinate with sports agencies who may notify their clients of the Settlement process.

The deadline for class members to opt-out of the Settlement shall be 45 days after the Notice date. Given the relative size of the class (roughly 4,000 active players, and thousands more retired players) and the breadth of Notice procedures, 45 days is more than sufficient time to afford class members the opportunity to opt out. *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 193 (S.D.N.Y. 2012), *aff'd sub nom. Charron v. Wiener*, 731 F.3d 241 (2d Cir. 2013) (collecting cases) ("Courts have held that opt out periods of less than 45 days satisfy due process, even where unsophisticated class members must make decisions regarding complex issues of law or fact."). Finally, the parties propose that the deadline for the Class Notice Administrator to file a declaration of compliance with the Court be 14 days after the opt-out deadline.

**CONCLUSION**

For the foregoing reasons, the Player Plaintiffs respectfully request the Court approve the proposed Notice Plan, including the Notice Forms and manner of notice to the Class.

DATED: July 22, 2026
New York, New York

Respectfully submitted,

By: /s/ Andrew S. Tulumello
Andrew S. Tulumello

Andrew S. Tulumello (admitted *pro hac vice*)
Meagan Bellshaw (admitted *pro hac vice*)
**WEIL, GOTSHAL & MANGES LLP**
2001 M Street NW, Suite 600
Washington, D.C.
Tel: (202) 682-7100
Fax: (202) 857-0940
drew.tulumello@weil.com
meagan.bellshaw@weil.com

Luna N. Barrington
Nicholas J. Reade
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, NY 10153
Tel: (212) 310-8000
Fax: (212) 310-8007
luna.barrington@weil.com
nick.reade@weil.com

James W. Quinn
**JW QUINN ADR LLC**
767 Fifth Avenue
Suite RP4
New York, NY 10153
Tel: (646) 465-3607
Fax: (646) 219-1977
quinn@jwquinnlaw.com

*Counsel for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

I, Andrew S. Tulumello, certify that the foregoing memorandum of law complies with the word-count limitations set forth in Local Civil Rule 7.1(c) and ECF No. 177 in the above-captioned case. According to the word count of the word processing program used to prepare the memorandum, and exclusive of the portions of it that are excluded by the rules, there are 5,347 words in the document.

DATED: July 22, 2026
New York, New York

Respectfully submitted,

By: */s/ Andrew S. Tulumello*
Andrew S. Tulumello