October 26, 2026

Hon. Margaret M. Garnett
United States District Judge
Southern District of New York
40 Foley Square, Room 2102
New York, NY 10007

Re: *Pospisil et al. v. ATP Tour, Inc. et al.,* No. 1:25-cv-02207-MMG (S.D.N.Y.) – Joint Letter Regarding October 29, 2026 Conference

Dear Judge Garnett,

The parties submit this joint letter in advance of the conference scheduled for October 29, 2026, pursuant to Your Honor's Order (ECF No. 234) in the above-captioned case.

**A. Statement of the Case**

***Plaintiffs' Position*:** Fifteen current and former professional tennis players (the "Player Plaintiffs") and the Professional Tennis Players Association (the "PTPA," and together with the Player Plaintiffs, "Plaintiffs"), filed this putative class action against Defendants the ATP Tour, Inc. and the WTA Tour, Inc., which control the premier men's and women's professional tennis tours, respectively, and the Grand Slam entities, the All England Lawn Tennis Club (Championships) Limited, Fédération Française de Tennis, and the United States Tennis Association Incorporated, which own and operate the most prestigious and well-known tennis tournaments in the world (collectively, "Defendants").[1] Plaintiffs assert four counts of unlawful conspiracy in restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. §1 et seq., and four counts alleging unlawful monopolization or conspiracy to monopolize the sport of professional tennis in violation of Section 2 of the Sherman Act. ECF No. 210. The Player Plaintiffs also assert a claim for unjust enrichment. *Id.*

The Third Amended Complaint alleges, inter alia, that Defendants engaged in a broad, anticompetitive scheme by coordinating rules governing player compensation, ranking, scheduling, commercial rights, tournament participation, and player discipline in order to suppress competition in the markets for the services of professional tennis players, all to the detriment of players, fans, and other participants in the business of professional tennis. *Id.*

Player Plaintiffs seek, inter alia, treble damages for the compensation they have lost by virtue of Defendants' unlawful actions and the disgorgement of all profits earned at their expense. Plaintiffs also seek orders enjoining ATP and WTA from continuing to operate their unlawful monopsonies over the services of professional tennis players and orders enjoining all Defendants from

[1] Plaintiffs and Grand Slam Defendant Tennis Australia Limited reached a final settlement on Player Plaintiffs' Damages Claims and a settlement in principal on Plaintiffs' Injunctive Relief Claims, ECF No. 199, and the court entered a stay of Plaintiffs claims against Tennis Australia on November 21, 2025. *See* ECF No. 171.

implementing their unlawful agreement to unreasonably restrain trade and fix wages in the markets for the services of professional tennis players. *Id.*

The Rule 12 motions filed by Defendants ATP, WTA, FFT, All England Lawn and Tennis Club, and USTA have been denied, ECF No. 234, and their deadline to file an Answer to the Third Amended Complaint has been extended to November 16, 2026, ECF No. 236. This action is therefore now ripe to proceed expeditiously through discovery.

***Defendants' Position*****:** Plaintiffs' claims against the ATP and WTA Tours do not present a viable antitrust dispute, but rather reflect an attempt by Plaintiffs to use the antitrust laws to materially alter virtually all aspects of the ATP and WTA Tours' formats and operations, and for PTPA to gain a seat at the table where the Tours make decisions, taking over the responsibilities of the representatives elected by the Tours' player members. The ATP and the WTA each provide for player membership, representation, and decision-making participation across all aspects of the Tours. Through their respective structures and formats, ATP and WTA have developed and grown a worldwide circuit of tournaments and players, serving fans across the globe, enhancing the number and quality of events, growing compensation for players, and creating a product that can compete with other sports in a highly competitive sports and entertainment marketplace. The Tour Defendants dispute virtually all of the Third Amended Complaint's material allegations. Moreover, many of the underlying issues Plaintiffs raise, including with respect to schedules and earnings, are ones that the Tour Defendants have worked for years, and continue to work, to address. That plaintiffs purport to be dissatisfied with the progress made to date, or would prefer a different model for professional tennis, does not mean that the Tour Defendants have violated the antitrust laws.

Plaintiffs' claims against the three Grand Slam Defendants—Fédération Française de Tennis, The All England Lawn Tennis Club (Championships) Limited, and the United States Tennis Association—are likewise misplaced as Plaintiffs have not identified any conduct by any Grand Slam Defendant that could plausibly give rise to a viable antitrust claim. To the contrary, the Grand Slams' only relevant conduct is their joint promulgation of the Grand Slam Rulebook, which helps ensure the orderly and fair administration of the four independently owned and operated Grand Slam Tournaments, has only procompetitive effects, and is not plausibly alleged to have affected player prize money at the Grand Slam Tournaments or otherwise harmed Plaintiffs.

In addition, this case is particularly ill-conceived as a class action. The proposed ATP and WTA player classes encompass players with materially different—and often competing—interests, many of whom benefit from the very agreements and rules the named plaintiffs seek to invalidate. Nor are the named plaintiffs representative of the proposed classes.

**B. Anticipated Motions & Appeals**

***Plaintiffs' Position:*** At the appropriate time as indicated in Plaintiffs' proposed case schedule, attached hereto as **Exhibit A**, Plaintiffs anticipate filing a motion for class certification pursuant to Fed. R. Civ. P. 23. Plaintiffs also may file discovery motions, motions *in limine*, *Daubert* motions, and/or a motion for summary judgment, as indicated in **Exhibit A.**

***Defendants' Position:*** WTA intends to appeal the Court's decision denying its motion to compel arbitration and to seek a stay of proceedings pending resolution of that appeal. Defendants

anticipate opposing Plaintiffs' motion for class certification and may also file discovery motions, motions *in limine*, *Daubert* motions, and/or a motion for summary judgment, as indicated in **Exhibit A.**

**C. Settlement**

***Plaintiffs' Position*:** Since the case management conference on May 27, 2025, the Player Plaintiffs and Defendant Tennis Australia Limited ("Tennis Australia") reached a settlement concerning the damages claims asserted by the Player Plaintiffs against Tennis Australia in this action (the "Damages Settlement"). ECF No. 198. During the pendency of settlement negotiations, this action was stayed against Tennis Australia. ECF No. 171. The Damages Settlement was preliminarily approved pursuant to Fed. R. Civ. P. 23(e)(1)(B). ECF No. 204. Administration of the notice of the Damages Settlement is ongoing. ECF No. 231. The Injunctive Relief claims against Tennis Australia remain stayed.

Plaintiffs remain open to engaging in further settlement discussions with the remaining Defendants, including mediation.

***Defendants' Position:*** Counsel have been conferring about arranging a meeting to explore a potential resolution. Defendants sent Plaintiffs a letter on October 23, 2026, to advance those efforts regarding the purported classes.

**D. Case Schedule**

The parties were unable to reach an agreement on a case schedule. The parties have attached a chart illustrating their respective proposed schedules as **Exhibit A**.

Notwithstanding the parties' disagreement on the overall case schedule, the parties agree that, given (1) the nature of Plaintiffs' claims and (2) the necessity of obtaining discovery from various foreign defendants and third parties, discovery will require a longer period than the default schedule contemplated by Your Honor's model Civil Case Management Plan. The parties also remain in agreement that summary judgment and *Daubert* motions should be filed following the conclusion of—rather than before—expert discovery. As the parties respectfully submitted, ECF No. 89, expert discovery and analysis with respect to the parties' proposed market definitions and other economic arguments will likely be relevant to issues for summary judgment. For these same reasons, the parties still propose briefing *Daubert* motions simultaneously with summary judgment.

***Plaintiffs' Position*:** In light of Your Honor's denial of Defendants' motions to dismiss, ECF No. 234, Plaintiffs respectfully submit that there is no reason for this action to not proceed expeditiously through discovery on its way to final resolution.

Plaintiffs' proposed schedule provides dates certain for each of the deadlines required by the Court's Civil Case Management Plan, which Plaintiffs respectfully reiterate is critical to move this case forward. As Plaintiffs previously stated, given the scope of discovery that will be required—including third party discovery and discovery from foreign defendants—an orderly process with firm deadlines is necessary for the Court to "establish[] early and continuing control so that the case will not be protracted because of lack of management." Fed. R. Civ. P. 16(a)(2), ECF No. 89.

As included in **Exhibit A**, Plaintiffs' proposed schedule places the close of fact discovery on August 27, 2027,[2] which is ten months from the date of the forthcoming conference on October 29, 2026 (six months longer than the default in Section 2(a) of the Court's Civil Case Management Plan). Expert discovery then takes place over eight months[3] following a ruling on Plaintiffs' motion for class certification. These are reasonable timelines given the needs of discovery and assuming appropriate cooperation from Defendants and third parties. Indeed, in the 19 months that this case has been pending, the parties have had ample time to prepare for discovery (and have in fact completed some preliminary discovery on class certification, pursuant to You Honor's July 2, 2025 Order). ECF No. 112.[4]

Nonetheless, Defendants propose a prolonged schedule in which discovery would not end until January 27, 2028, which Plaintiffs are concerned will unnecessarily delay this action, compounding ongoing harm to Plaintiffs. Defendants offer no countervailing interest or sound basis for the relaxed pace they propose

Further, as noted herein, Plaintiffs will file a motion for class certification. The parties disagree on the timing of Plaintiffs' motion for class certification. Plaintiffs respectfully submit that their proposed schedule for briefing on the motion for class certification, which briefing should occur prior to the close of expert discovery, is reasonable given Rule 23's mandate that a motion for class certification should be made at "an early practicable time." Fed. R. Civ. P. 23(c)(1)(A).

***Defendants' Position*:**

Defendants respectfully submit that Plaintiffs' proposed 10-month fact discovery period is insufficient given the scope of Plaintiffs' allegations and the discovery anticipated in this action, which involves five defendants, including two foreign defendants. Indeed, in their prior submission to this Court which predated the addition of the Grand Slams as parties, Plaintiffs themselves proposed *more than 13 months* between initial disclosures and the close of fact discovery. *See* Dkt. 89-02. Now, despite adding *more* parties to this action, Plaintiffs are advocating for *less* time to conduct discovery. On Tuesday, October 20, Defendants called Plaintiffs and asked them about the scope of their anticipated discovery to better assess a reasonable schedule. Plaintiffs were unable to offer any information about the scope of discovery they intend to take, providing neither

---

[2] Defendants raised concerns about the August 2027 deadline occurring during the US Open during the parties' conference on October 26—the date this letter was due. As indicated during that conference, Plaintiffs remain amenable to discussing the timing of the deadlines.

[3] In the event Defendants' Rebuttal Expert report(s) during the Merits Phase raises any topics not addressed in Plaintiffs' Expert Reports in the Merits Phase, Plaintiffs request the opportunity to provide rebuttal reports, which extends the Merits Expert Discovery phase to 11.5 months.

[4] Defendants assert that Plaintiffs have declined to discuss discovery limitations with Defendants. This is not true. Plaintiffs remain eager and amenable to discussing discovery limitations with Defendants but did not receive Defendants' proposed schedule until Friday, October 26 despite Plaintiffs' repeated requests for a counter-proposal. Due to the delayed timing, the parties were unable to meaningfully engage on the scope of discovery prior to the filing of this letter.

an estimate of the number of anticipated depositions nor any indication that Plaintiffs would agree to discovery limits that could make a period shorter than Defendants' proposed 15 months workable.[5]

While Plaintiffs state that the parties disagree as to the timing of Plaintiffs' motion for class certification, Defendants do not understand there to be any such dispute. As reflected in **Exhibit A**, both proposed schedules contemplate Plaintiffs filing their motion for class certification two months after the close of fact discovery and before merits expert discovery.

Defendants have also requested slightly expanded deadlines for deposing Plaintiffs' class expert, opposing Plaintiffs' motion for class certification (as well as submission of the corresponding expert report and any motion to exclude), and briefing summary judgment and *Daubert* motions.[6] Defendants believe that their longer requested deadlines are necessary to provide sufficient time to adequately coordinate on and prepare depositions, briefs, and expert reports and appropriately reflect the stakes and complexity of the dispute.

We look forward to appearing before Your Honor for the conference this week.

Respectfully submitted,

Dated: October 26, 2026

By: */s/ Andrew Tulumello*

Andrew S. Tulumello (admitted pro hac vice)
Meagan Bellshaw (admitted pro hac vice)
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, D.C.
Tel: (202) 682-7100
Fax: (202) 857-0940
drew.tulumello@weil.com
meagan.bellshaw@weil.com

---

[5] Moreover, Plaintiffs' proposed fact discovery cutoff in late August 2027 falls during the US Open, when many of USTA's witnesses will have limited availability, making scheduling and preparing for depositions difficult.

[6] As for expert discovery, Defendants do not believe that the schedule requires a deadline by which Plaintiffs can file an additional expert report in the event Defendants' Rebuttal Reports contain "any topics not addressed in Plaintiffs' Expert Reports in the Merits Phase." Read literally, this formulation would allow Plaintiffs largely unlimited discretion to serve additional reports. To the extent there is a good faith dispute about the scope of topics in Defendants' Rebuttal Reports, the parties can meet and confer, and Plaintiffs can seek relief from the Court should the parties be unable to reach agreement.

Luna N. Barrington
Nicholas J. Reade
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Tel: (212) 310-8000
Fax: (212) 310-8007
luna.barrington@weil.com
nick.reade@weil.com

James W. Quinn
JW QUINN ADR LLC
767 Fifth Avenue
Suite RP4
New York, NY 10153
Tel: (646) 465-3607
Fax: (646) 219-1977
quinn@jwquinnlaw.com

*Attorneys for Plaintiffs*

*/s/ Derek Ludwin (on consent)*
Derek Ludwin
John S. Playforth (pro hac vice)
**COVINGTON & BURLING LLP**
850 Tenth Street
N.W. Washington, D.C. 20001
Telephone: (202) 662-6000
dludwin@cov.com
jplayforth@cov.com

Neema Sahni (pro hac vice)
**COVINGTON & BURLING LLP**
1999 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (424) 332-4757
nsahni@cov.com

Kyle W. Chow
**COVINGTON & BURLING LLP**
30 Hudson Yards
New York, NY 10001-2170
Telephone: (212) 841-1245
kchow@cov.com

*Attorneys for Defendant United States*

*Tennis Association Incorporated*

/s/ Michael Schaper (on consent)
Michael Schaper
Jillian Tancil
**DEBEVOISE & PLIMPTON LLP**
66 Hudson Blvd.
New York, NY 10001
Telephone: (212) 909-6000
mschaper@debevoise.com
jtancil@debevoise.com

Tim Cornell
**DEBEVOISE & PLIMPTON LLP**
801 Pennsylvania Ave NW
Washington, DC 20004
Telephone: (202) 383-8000
tjcornell@debevoise.com

*Attorneys for Defendant Federation Francaise de Tennis*

/s/ Bradley Justus (on consent)
Bradley Justus (pro hac vice)
Jeny M. Maier
Allison Vissichelli (pro hac vice)
**AXINN LLP**
1901 L St NW
Washington, DC 20036
Telephone: (202) 912-4700
bjustus@axinn.com
jmaier@axinn.com
avissichelli@axinn.com

*Attorneys for Defendant The All England Lawn Tennis Club (Championships) Limited*

/s/ Lawrence E. Buterman (on consent)
Lawrence E. Buterman
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
lawrence.buterman@lw.com

Amanda P. Reeves (admitted pro hac vice)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
amanda.reeves@lw.com

Christopher S. Yates (admitted pro hac vice)
**LATHAM & WATKINS LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
Facsimile: (415) 395-8157
chris.yates@lw.com

*Counsel for Defendant WTA Tour, Inc.*

*/s/ Bradley I. Ruskin (on consent)*
Bradley I. Ruskin
Lee M. Popkin
Jordan B. Leader
**Proskauer Rose LLP**
11 Times Square
New York, NY 10036
Telephone: (212) 969-3000
bruskin@proskauer.com
lpopkin@proskauer.com
jleader@proskauer.co

*Counsel for Defendant ATP Tour, Inc.*

cc: all counsel of record (via ECF)